# 14-2450

IN THE

## United States Court of Appeals

FOR THE SECOND CIRCUIT

---

UNITED STATES OF AMERICA,

*Appellee,*

vs.

JOHN E. MAYE,

*Defendant-Appellant.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

## JOINT APPENDIX
### VOLUME I—Pages 1-280

---

JOSEPH J. KARASZEWSKI
ASSISTANT UNITED STATES ATTORNEY
UNITED STATES ATTORNEY'S OFFICE
    WESTERN DISTRICT OF NEW YORK
*Attorney for Appellee*
138 Delaware Avenue
Buffalo, New York 14202
Telephone: (716) 843-5700
Email: joseph.j.karaszewski@usdoj.gov

HODGSON RUSS LLP
DANIEL C. OLIVERIO, ESQ.
REETUPARNA DUTTA, ESQ.
*CJA Appointed Counsel
    for Defendant-Appellant*
The Guaranty Building
140 Pearl Street
Suite 100
Buffalo, New York 14202
Telephone: (716) 856-4000
Email: doliverio@hodgsonruss.com
    rdutta@hodgsonruss.com

# TABLE OF CONTENTS

|  | Volume | Page |
|---|---|---|
| Docket Entries.................................................... I | | 1 |
| Second Superseding Indictment, Filed April 29, 2010 ....................................... I | | 50 |
| Defendant's Notice of Motions in Limine, Filed November 21, 2011............................... I | | 60 |
| Memorandum of Law in Support of Defendant's Motions in Limine (Dated November 21, 2011, Filed November 30, 2011) (Filed Under Seal in the District Court) [Docket No. 131]. | | |
| Referenced at ................................................ I | | 63 |
| Printed at....................................................VI | | 1505 |
| Declaration of Reetuparna Dutta, Esq., In Support of Defendant's Motions in Limine, with Exhibits A-I Dated November 21, 2011, Filed November 30, 2011, (Filed Under Seal in the District Court) [Docket No. 132]. | | |
| Referenced at ................................................ I | | 63 |
| Printed at....................................................VI | | 1520 |
| Government's Notice of Motion and Motions in Limine, Filed November 21, 2011............................... I | | 64 |
| Memorandum of Law In Support of Government's Motions in Limine, Filed November 21, 2011 ............................ I | | 66 |

|  |  | Volume | Page |
|---|---|---|---|
| Exhibit "A" - | DEA Guidance Dispensing & Purchasing Controlled Substances Over the Internet, 66 FR 21181-01, 2001 WL 424546 | I | 101 |
| Government's Response to Defendant's Motions in Limine, Filed December 30, 2011 | | I | 109 |
| Exhibit "A" - | DEA Order to Show Cause, Dated October 31, 2007 | I | 123 |
| Defendant's Memorandum of Law In Opposition to Government's Motions in Limine, Filed December 30, 2011 | | I | 125 |
| Declaration of Reetuparna Dutta, Esq., In Support of Defendant's Opposition to Government's Motions in Limine, Filed December 30, 2011 | | I | 142 |
| Exhibit "A" - | Letter from John E. Maye, MD to the Office of Professional Medical Conduct (Sondra Rennick), Dated March 16, 2004 | I | 145 |
| Exhibit "B" - | Letter from Sondra Rennick, Office of Professional Medical Conduct, to John E. Maye, Dated March 31, 2004 with Attachments | I | 146 |
| Reply Memorandum of Law In Support of Defendant's Motions in Limine, Filed January 11, 2012 | | I | 164 |

|  | Volume | Page |
|---|---|---|
| Government's Reply In Support of Motions in Limine, Filed January 11, 2012 ................................................. I | | 176 |
|     Exhibit "A" - Office of Professional Medical Conduct, Interoffice Memorandum, From Sondra Rennick to Dennis Graziano, Dated March 25, 2004 ....... I | | 189 |
| Transcript of Proceedings, Held April 24, 2012, Filed June 6, 2012, Regarding Decisions on Motions in Limine [pages 1-19] ...................................... I | | 190 |
| Defendant's Proposed Jury Instructions, Filed November 16, 2012 .............................................. I | | 209 |
| Government's Notice of Supplemental Motions and Supplemental Motions in Limine, Filed November 16, 2012 .............................................. I | | 233 |
| Memorandum of Law In Support of Government's Supplemental Motions in Limine, Filed November 16, 2012 .............................................. I | | 235 |
|     Exhibit "A" - Proposed Jury Charges Regarding Attempt ............................. I | | 254 |
| Defendant's Notice of Motions in Limine, Filed November 16, 2012 .............................................. I | | 259 |
| Memorandum of Law In Support of Defendant's Motions in Limine, Filed November 16, 2012 .............. I | | 261 |
| Declaration of Reetuparna Dutta, Esq., In Support of Defendant's Motions in Limine, Filed November 16, 2012 ............................ II | | 281 |

|  |  | Volume | Page |
|---|---|---|---|
| Exhibit "A" - | Example of a Questionnaire Corresponding to Prescriptions in the Indictment | II | 285 |
| Exhibit "B" - | Various DEA Reports of Investigation | II | 290 |
| Exhibit "C" - | Excerpt of Report from National Drug Intelligence Center Regarding Analysis of Records Seized from John E. Maye | II | 316 |

Defendant's Memorandum of Law In Opposition to Government's Motions in Limine, Filed March 18, 2013 ..... II    329

Government's Response to Defendant's Motions in Limine, Filed March 18, 2013 ..... II    343

| Exhibit "A" - | DEA Summary Charts of Prescriptions Issued by John E. Maye (Government Exhibit 302) | II | 367 |
| Exhibit "B" - | National Drug Intelligence Center Summary Charts from Defendant's Records | II | 369 |

Reply Brief In Further Support of Defendant's Motions in Limine, Filed March 28, 2013 ..... II    376

Government's Response to Defendant's Opposition to Government's Motions in Limine, Filed March 28, 2013 ..... II    392

|                                                                                                           | Volume | Page |
|-----------------------------------------------------------------------------------------------------------|--------|------|
| Transcript of Proceedings, Held July 24, 2013, Filed August 5, 2013, Regarding Decision on Motions in Limine [pages 1-17] | II | 399 |
| Text Order and Corrected Text Order of the Honorable William M. Skretny, Entered and Filed September 16, 2013, Denying Defendant's Requests for Further Clarification [Docket Nos. 228 and 229] | II | 416 |
| Transcript of Proceedings, Held September 23, 2013 (Excerpt of Preliminary Jury Instructions) [pages 1, *10-20*] | II | 418 |
| Transcript of Proceedings, Held September 23, 2013 (Excerpt of Witness Testimony of Joseph Cowell) [pages 1, *53-55*] | II | 430 |
| Transcript of Proceedings, Held September 23, 2013 (Excerpt of Witness Testimony of Joseph Cowell) [pages 1, *119-127*] | II | 434 |
| Transcript of Proceedings, Held September 25, 2013 Excerpt of Witness Testimony of Joseph Cowell [pages 1, *204-256*] | II | 444 |
| Transcript of Proceedings, Held September 26, 2013 (Complete Witness Testimony of Mitchell Frank) [pages 1, *283-299*] | II | 498 |
| Transcript of Proceedings, Held September 26, 2013 (Complete Witness Testimony of Carrie Dooley) [pages 1, *299-325*] | II | 516 |

VI

|  | Volume | Page |
|---|---|---|
| Transcript of Proceedings, Held September 26, 2013 (Complete Witness Testimony of Terry McGrath) [pages 1, *325-337*] | II | 544 |
| Transcript of Proceedings, Held September 26, 2013 (Complete Witness Testimony of Amanda Kobernick) [pages 1, *337-350*] | II | 558 |
| Transcript of Proceedings, Held September 26, 2013 (Complete Witness Testimony of James Husted) [pages 1, *405-432*] | III | 573 |
| Transcript of Proceedings, Held September 27, 2013 (Complete Witness Testimony of James Husted) [pages 1, *441-461*] | III | 602 |
| Transcript of Proceedings, Held September 27, 2013 (Complete Witness Testimony of Joseph Nacca) [pages 1, *462-488*] | III | 624 |
| Transcript of Proceedings, Held October 1, 2013 (Argument Regarding New York State Regulation at 10 N.Y.C.R.R. § 80.63) [pages 1, *494-518*] | III | 652 |
| Transcript of Proceedings, Held October 1, 2013 (Complete Witness Testimony of Sondra Rennick) [pages 1, *520-546*] | III | 678 |
| Transcript of Proceedings, Held October 2, 2013 (Complete Witness Testimony of Andrew Wirfel) [pages 1, *589-659*] | III | 706 |

|                                                                                                                                               | Volume | Page |
|---|---|---|
| Transcript of Proceedings, Held October 2, 2013 (Complete Witness Testimony of Dr. Theodore Parran Jr.) [pages 1, *661-729*] | III | 778 |
| Transcript of Proceedings, Held October 3, 2013 (Complete Witness Testimony of Dr. Theodore Parran Jr.) [pages 1, *738-827*] | IV | 849 |
| Transcript of Proceedings, Held October 3, 2013 (Excerpt of Proceedings Regarding Dismissal of Count 1) [pages 1, *859-862*] | IV | 940 |
| Transcript of Proceedings, Held October 4, 2013 (Government Closing Argument ) [pages 1, *880-910*] | IV | 945 |
| Transcript of Proceedings, Held October 4, 2013 (Government Rebuttal) [pages 1, *942-950*] | IV | 977 |
| Transcript of Proceedings, Held October 4, 2013 (Excerpt of Argument Regarding Jury Instructions) [pages 1, *952-958*] | IV | 987 |
| Transcript of Proceedings, Held October 4, 2013 (Jury Instructions) [pages 1, *969-1020] | IV | 995 |
| Transcript of Proceedings, Held October 7, 2013 (Jury Notes, Conflict Between Juror No. 5 and Juror No. 9, and Mistrial Issues) [pages 1, 1022-1107] | IV | 1048 |
| Transcript of Proceedings, Held October 8, 2013 (Mistrial Issues, Jury Voir Dire, and Verdict) [pages 1, 1109-1179] | V | 1137 |

|  | Volume | Page |
|---|---|---|

Government's Trial Exhibit 26A - Patient
Order History for James Franklin,
Dated November 4, 2005 ............................................... V      1209

Government's Trial Exhibit 284 - Letter
Dated March 16, 2004 from John E. Maye
to Sondra Rennick at the New York State
Department of Health, OPMC ...................................... V      1216

Government's Trial Exhibit 285 - Interoffice Memorandum
Dated March 25, 2004 from Sondra Rennick to
Dennis Graziano ........................................................... V      1217

Government's Trial Exhibit 286 - Letter
Dated March 31, 2004 from Sondra Rennick
to John E. Maye and Enclosing the January 2003
Special Committee's Statements on Telemedicine
by the Board for Professional Medical
Conduct and the State Education
Department's Office of the Professions 1999
Report Regarding Telepractice ...................................... V      1218

Government's Trial Exhibit 288 – New York State
Regulation at 10 N.Y.C.R.R. § 80.63 ............................ V      1234

Government's Trial Exhibit 295 - NDIC
Summary Chart, Analysis of Prescription
Orders, Prescriptions by Year for 2005-2006 .............. V      1236

Government's Trial Exhibit 297 - NDIC Summary
Chart, Analysis of Prescription Orders,
Prescriptions Approved/Denied .................................... V      1237

Notice of Motion for Declaration of a Mistrial by
Defendant, Filed October 8, 2013 ................................ V      1238

|  | Volume | Page |
| --- | --- | --- |
| Memorandum of Law In Support of Defendant's Motion for a Mistrial, Filed October 8, 2013 | V | 1239 |
| Declaration of Reetuparna Dutta, Esq., In Support of Defendant's Motion for a Mistrial, Filed October 8, 2013 | V | 1245 |
| Minute Entry for Proceedings Regarding Defendant's Motion for a Mistrial, Jury Voir Dire and Verdict, Held October 8, 2013 [Docket No. 249] | V | 1249 |
| Redacted Indictment Removing Count 1, Filed October 8, 2013 | V | 1250 |
| Jury Verdict, Filed October 8, 2013 | V | 1257 |
| Notice of Motion for a Judgment of Acquittal or for a New Trial, Filed October 21, 2013 | V | 1292 |
| Declaration of Reetuparna Dutta, Esq., In Support of Defendant's Motion for Judgment of Acquittal or for a New Trial, Filed October 21, 2013 | V | 1294 |
| Memorandum of Law In Support of Defendant's Motion for a Judgment of Acquittal or for a New Trial, Filed October 21, 2013 | V | 1301 |
| Government's Response to Defendant's Motion for a Judgment of Acquittal or for a New Trial, Filed November 7, 2013 | V | 1317 |
| Reply Memorandum of Law In Further Support of Defendant's Motion for a Judgment of Acquittal or for a New Trial, Filed November 15, 2013 | V | 1329 |

x

|                                                                                                          | Volume | Page |
|----------------------------------------------------------------------------------------------------------|--------|------|
| Decision and Order of the Honorable William M. Skretny, Filed April 8, 2014.............................. | V      | 1341 |
| Judgment, Filed July 2, 2014.............................................................................. | V      | 1350 |
| Notice of Appeal, Filed July 3, 2014...................................................................... | V      | 1356 |
| Second Circuit Order Allowing Defendant to File Documents Under Seal and Extending Briefing Deadline........................ | V      | 1357 |

Volume   Page

## DOCUMENTS UNDER SEAL

Government's Trial Exhibit 113 - Patient
Order History for D.H., Dated July 12, 2004[1, 2] .........VI     1359

Government's Trial Exhibit 114 - Patient
Order History for J.S., Dated July 12, 2004 ..............VI     1364

Government's Trial Exhibit 115 - Patient
Order History for M.F., Dated July 12, 2004 ............VI     1369

Government's Trial Exhibit 116 - Patient
Order History for J.F., Dated July 12, 2004 ..............VI     1374

Government's Trial Exhibit 117 - Patient
Order History for T.S., Dated July 12, 2004 ..............VI     1378

Government's Trial Exhibit 118 - Patient
Order History for J.M., Dated July 12, 2004 ............VI     1383

Government's Trial Exhibit 119 - Patient
Order History for K.F., Dated July 13, 2004 ............VI     1388

Government's Trial Exhibit 120 - Patient
Order History for T.M., Dated July 13, 2004 ............VI     1392

Government's Trial Exhibit 121 - Patient
Order History N.B., Dated July 13, 2004 ..................VI     1397

---

[1]    The defense requested permission to file Government Exhibits 113 to 144 under seal in the Second Circuit. Dkt. 33. This request was granted. Dkt. 37.

[2]    The dates identified in Government Exhibits 113 to 144 are based on the dates set forth in the Indictment for the corresponding counts.

|  | Volume | Page |
|---|---|---|
| Government's Trial Exhibit 122 - Patient Order History for D.S., Dated July 15, 2004 ............. | VI | 1401 |
| Government's Trial Exhibit 123 - Patient Order History for N.K., Dated August 5, 2004 ......... | VI | 1406 |
| Government's Trial Exhibit 124 - Patient Order History for M.R., Dated August 6, 2004 ......... | VI | 1411 |
| Government's Trial Exhibit 125 - Patient Order History for R.B., Dated July 9, 2004 ................. | I | 1415 |
| Government's Trial Exhibit 126 - Patient Order History for A.K., Dated August 3, 2004 ......... | VI | 1419 |
| Government's Trial Exhibit 127 - Patient Order History for G.T., Dated July 29, 2004 ............. | VI | 1424 |
| Government's Trial Exhibit 128 - Patient Order History for A.M., Dated July 12, 2004 ............. | VI | 1428 |
| Government's Trial Exhibit 129 - Patient Order History for J.H., Dated July 12, 2004 ............. | VI | 1432 |
| Government's Trial Exhibit 130 - Patient Order History for P.Z., Dated July 13, 2004 ............. | VI | 1436 |
| Government's Trial Exhibit 131 - Patient Order History for M.C., Dated July 13, 2004 ............. | VI | 1440 |
| Government's Trial Exhibit 132 - Patient Order History for B.W., Dated July 14, 2004 ............. | VI | 1444 |
| Government's Trial Exhibit 133 - Patient Order History for A.S., Dated November 28, 2005 ... | VI | 1448 |

|  | Volume | Page |
|---|---|---|
| Government's Trial Exhibit 134 - Patient Order History for G.B., Dated August 4, 2004 and Patient Order History for N.K., Dated August 5, 2004[3] ...............VI | | 1454 |
| Government's Trial Exhibit 135 - Patient Order History for N.H., Dated January 27, 2006 ......VI | | 1463 |
| Government's Trial Exhibit 136 - Patient Order History for J.L., Dated July 13, 2004 ..............VI | | 1469 |
| Government's Trial Exhibit 137 - Patient Order History for D.A., Dated July 22, 2004 .............VI | | 1473 |
| Government's Trial Exhibit 138 - Patient Order History for J.P., Dated August 2, 2004 ...........VI | | 1477 |
| Government's Trial Exhibit 139 - Patient Order History for N.L., Dated August 3, 2004 ..........VI | | 1481 |
| Government's Trial Exhibit 140 - Patient Order History for B.Y., Dated July 13, 2004 .............VI | | 1485 |
| Government's Trial Exhibit 141 - Patient Order History for R.G., Dated July 14, 2004 .............VI | | 1489 |
| Government's Trial Exhibit 142 - Patient Order History for M.M., Dated July 14, 2004 ...........VI | | 1493 |
| Government's Trial Exhibit 143 - Patient Order History for L.M., Dated July 28, 2004 ............VI | | 1497 |

---

[3] The Patient Order History for N.K. in Government Exhibit 134 is the same as that in Government Exhibit 123. N.K. is referenced twice in the Indictment – in Counts 12 and 24.

|  | Volume | Page |
|---|---|---|

Government's Trial Exhibit 144 - Patient
    Order History for C.D., Dated July 28, 2004 ............ VI        1501

Memorandum of Law in Support of Defendant's
    Motions in Limine (Dated November 21, 2011,
    Filed November 30, 2011) [Docket No. 131].
    *(Filed Under Seal in District Court)*............................ VI        1505

Declaration of Reetuparna Dutta, Esq.,
    In Support of Defendant's Motions in Limine,
    Dated November 21, 2011, Filed November 30, 2011
    [Docket No. 132].
    *(Filed Under Seal in District Court)*............................ VI        1520

        Exhibit "A" -    Record from Bureau of
                         Prisons Showing John E. Maye's
                         Incarceration from
                         August 5, 1997 through
                         November 25, 1998
                         (Dated September 1, 2011) ............... VI        1525

        Exhibit "B" -    State Board for Professional
                         Medical Conduct Determination
                         and Order as to John E. Maye
                         (Dated April 4, 1997) ........................ VI        1528

        Exhibit "C"-     Administrative Review Board for
                         Professional Medical Conduct,
                         Determination as to John E. Maye
                         (July 1997) ......................................... VI        1539

        Exhibit "D" -    Portions of Malpractice
                         Payment Reports
                         Involving John E. Maye .................. VI        1549

|  |  | Volume | Page |
|---|---|---|---|
| Exhibit "E" - | Portions of Transcript of Testimony of Joseph Cowell before the Grand Jury in United States v. Maye, No. 2004-R-01017 (W.D.N.Y. July 31, 2008) ................ VI | | 1559 |
| Exhibit "F" - | Portions of Intelligence Support Report, Authored by the National Drug Intelligence Center Regarding Review of Documents Seized from John E. Maye's Office ...................... VI | | 1564 |
| Exhibit "G" - | Letter from John F. Speranza, Esq. to DEA Regarding the Matter of John E. Maye, M.D. (Dated September 8, 2008) ............... VI | | 1566 |
| Exhibit "H" - | DEA Order Terminating Proceedings Against John E. Maye, M.D. (Dated September 9, 2008) ............... VI | | 1569 |
| Exhibit "I" - | Complaint, United States of America v. John E. Maye (Filed July 6, 2011) ........................... VI | | 1570 |

1

**Docket Entries.**

APPEAL,CLOSED_2014

# U.S. DISTRICT COURT
## U.S. District Court, Western District of New York (Buffalo)
## CRIMINAL DOCKET FOR CASE #: 1:08-cr-00194-WMS-JJM-1

Case title: USA v. Maye                                 Date Filed: 07/31/2008
                                                        Date Terminated: 07/02/2014

Assigned to: Hon. William M. Skretny
Referred to: Hon. Jeremiah J. McCarthy

**Defendant (1)**

**John E. Maye**                    represented by   **Daniel C. Oliverio**
*TERMINATED: 07/02/2014*                            Hodgson Russ LLP
                                                    The Guaranty Building, Suite 100
                                                    140 Pearl Street
                                                    Buffalo, NY 14202-4040
                                                    716-848-1433
                                                    Fax: 716-849-0349
                                                    Email: doliveri@hodgsonruss.com
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*
                                                    *Designation: CJA Appointment*

                                                    **Michelle L. Merola**
                                                    Hodgson Russ, LLP
                                                    The Guaranty Building
                                                    140 Pearl Street
                                                    Suite 100
                                                    Buffalo, NY 14202
                                                    716-848-1686
                                                    Fax: 716-819-4745
                                                    Email: mmerola@hodgsonruss.com
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

                                                    **Reetuparna Dutta**
                                                    Hodgson Russ LLP
                                                    The Guaranty Building
                                                    140 Pearl Street
                                                    Suite 100
                                                    Buffalo, NY 14202
                                                    716-848-1626
                                                    Email: rdutta@hodgsonruss.com
                                                    *LEAD ATTORNEY*

Case 14-2450, Document 39, 10/13/2015, 1618001, Page18 of 296

*ATTORNEY TO BE NOTICED*

**Timothy W. Hoover**
Phillips Lytle LLP
3400 HSBC Center
Buffalo, NY 14203
716-504-5754
Fax: 716-852-6100
Email: thoover@phillipslytle.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

**John F. Speranza**
28 East Main Street
Suite 1800
Rochester, NY 14614
585-454-1500
Fax: 585-454-2150
Email: speranza@frontiernet.net
*TERMINATED: 09/18/2008*
*Designation: Retained*

| **Pending Counts** | **Disposition** |
|---|---|
| 21:841A=CD.F CONTROLLED SUBSTANCE - SELL, DISTRIBUTE, OR DISPENSE<br>(2rss-14rss) | The Defendant is sentenced to the custody of the BOP for a term of 1 year and 1 day on each of Counts 2-34 to run concurrent and 2 years Supervised Release on Counts 2-15 and 1 year Supervised Release on Counts 16-34 to run concurrent. Conditions of Supervised Release are as detailed in attached Sentencing Minute Sheet. $100.00 Special Assessment on each Count for a total of $3,300.00 imposed. |
| 21:841A=CD.F CONTROLLED SUBSTANCE - SELL, DISTRIBUTE, OR DISPENSE<br>(15rss) | The Defendant is sentenced to the custody of the BOP for a term of 1 year and 1 day on each of Counts 2-34 to run concurrent and 2 years Supervised Release on Counts 2-15 and 1 year Supervised Release on Counts 16-34 to run concurrent. Conditions of Supervised Release are as detailed in attached Sentencing Minute Sheet. $100.00 Special Assessment on each Count for a total of $3,300.00 imposed. |
| 21:841A=CD.F CONTROLLED SUBSTANCE - SELL, DISTRIBUTE, | The Defendant is sentenced to the custody of the BOP for a term of 1 year |

**3**

**Docket Entries.**

| | |
|---|---|
| OR DISPENSE<br>(16rss-34rss) | and 1 day on each of Counts 2-34 to run concurrent and 2 years Supervised Release on Counts 2-15 and 1 year Supervised Release on Counts 16-34 to run concurrent. Conditions of Supervised Release are as detailed in attached Sentencing Minute Sheet. $100.00 Special Assessment on each Count for a total of $3,300.00 imposed. |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| CONTROLLED SUBSTANCE -<br>SELL, DISTRIBUTE, OR DISPENSE<br>21:841A=CD.F<br>(1-2) | Dismissed |
| 21:846=CD.F CONSPIRACY TO<br>DISTRIBUTE CONTROLLED<br>SUBSTANCE<br>(1s) | Dismissed |
| 21:846=CD.F CONSPIRACY TO<br>DISTRIBUTE CONTROLLED<br>SUBSTANCE<br>(1ss) | Dismissed |
| 21:841A=CD.F CONTROLLED<br>SUBSTANCE - SELL, DISTRIBUTE,<br>OR DISPENSE<br>(2s-8s) | Dismissed |
| CRIMINAL FORFEITURES 21:853.F<br>(3) | Dismissed |
| 21:853 CRIMINAL FORFEITURES<br>(9s) | Dismissed |

**Highest Offense Level (Terminated)**

Felony

| **Complaints** | **Disposition** |
|---|---|
| None | |

**Plaintiff**

**4**

**Docket Entries.**

CM/ECF LIVE - U.S. District Court:nywd                    Page 4 of 49

**USA**                          represented by **Frank T. Pimentel**
U.S. Attorney's Office
Federal Centre
138 Delaware Avenue
Buffalo, NY 14202
716-843-5868
Fax: 716-551-3250
Email: frank.t.pimentel@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert C. Moscati**
U.S. Attorney's Office
Federal Centre
138 Delaware Avenue
Buffalo, NY 14202
716-843-5869
Fax: 716-551-3250
Email: robert.c.moscati@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joseph M. Guerra , III**
U.S. Attorney's Office
Federal Centre
138 Delaware Avenue
Buffalo, NY 14202
716-843-5824
Fax: 716-551-5563
Email: joseph.m.guerra@usdoj.gov
*TERMINATED: 06/06/2013*

**Joseph J. Karaszewski**
U.S. Attorney's Office
Federal Centre
138 Delaware Avenue
Buffalo, NY 14202
716-843-5837
Fax: 716-551-5563
Email: joseph.j.karaszewski@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Mary C. Baumgarten**
U.S. Attorney's Office
Federal Centre
138 Delaware Avenue
Buffalo, NY 14202
716-843-5864
Fax: 716-551-3250

**5**

## Docket Entries.

Email:
mary.catherine.baumgarten@usdoj.gov
*TERMINATED: 07/29/2013*

**Richard D. Kaufman**
U.S. Attorney's Office
Federal Centre
138 Delaware Avenue
Buffalo, NY 14202
716-843-5871
Fax: 716-551-5563
Email: richard.kaufman@usdoj.gov
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 07/31/2008 | 1 | INDICTMENT as to John E. Maye (1) count(s) 1-2, 3. (DZ) (Entered: 08/04/2008) |
| 08/21/2008 | 2 | ORDER TO CONTINUE - Ends of Justice as to John E. Maye. Time excluded from 8/21/08 until 9/4/08. Signed by Hon. Jeremiah J. McCarthy on 8/21/08. (DAZ) (Entered: 08/22/2008) |
| 08/21/2008 | 3 | APPEARANCE Bond Entered as to John E. Maye (DZ) (Entered: 08/22/2008) |
| 08/21/2008 | 5 | Minute Entry for proceedings held before Hon. Jeremiah J. McCarthy:Arraignment as to John E. Maye (1) Count 1-2,3 held on 8/21/2008, Added attorney John F. Speranza for John E. Maye., ( Status Conference set for 9/4/2008 02:00 PM before Hon. Jeremiah J. McCarthy.), Time Excluded as to John E. Maye from: 8-21-08, Excludable(s) stopped 9-4-08 as to John E. Maye, Location start as to John E. Maye. PROVISIONAL ATTY APPEARANCE BY RETAINED COUNSEL -- JOHN SPERANZA. Deft waives reading of indictment and enters plea of NOT GUILTY to all counts. COURT ORDERS DEFT'S RELEASE ON A NON-FINANCIAL BOND + CONDITIONS. Deft admonished and states he understands same and that any violation would subject him to add'l consequences and possible revocation of bail release. If Atty Speranza is not going to be fully retained, deft is responsible to obtain other counsel by the next proceeding or make application for assigned counsel. If the latter, deft to so advise the court with the understanding deft will have to qualify for assignment of counsel. Time excluded, no days have elapsed from the STA calendar -- deft agrees -- written STA order to follow. Gov't states deft has to be processed by USMS. Defense will make arrangements for deft to do so. AUSA J. Guerra, J. Speranza w/deft and USPO T. Blackman w/USPOA J. Sirek. (LL) (Entered: 09/03/2008) |
| 08/26/2008 | 4 | ORDER Setting Conditions of Release as to John Maye. Signed by Hon. Jeremiah J. McCarthy on 8/21/08.(DZ) (Entered: 08/27/2008) |
| 09/04/2008 | 8 | Minute Entry for proceedings held before Hon. Jeremiah J. McCarthy:Status Conference as to John E. Maye held on 9/4/2008, ( Atty Appearance/Status Conference set for 9/18/2008 02:00 PM before Hon. Jeremiah J. McCarthy.), |

**6**

**Docket Entries.**

| | | |
|---|---|---|
| | | Time Excluded as to John E. Maye from: 9-4-08, Excludable(s) stopped 9-18-08 as to John E. Maye. Defense rpts he will not be able to continue representation for the reasons stated on the record. AUSA Martin indicates AUSA Guerra has been in contact w/defense -- s'seding indictment is anticipated. Gov't does not oppose giving deft opportunity to retain local counsel. Time excluded, no days have elapsed, written STA order to follow. AUSA K. Martin for AUSA J. Guerra and J. Speranza w/deft. (LL) (Entered: 09/18/2008) |
| 09/05/2008 | 6 | ORDER TO CONTINUE - Ends of Justice as to John E. Maye ; Time excluded from 9/4/08 until 9/18/08. Signed by Hon. Jeremiah J. McCarthy on 9/5/08. (DZ) (Entered: 09/05/2008) |
| 09/10/2008 | 7 | NOTICE by USA as to John E. Maye *Notice of Lis Pendens* (Guerra, Joseph) (Entered: 09/10/2008) |
| 09/18/2008 | 9 | Minute Entry for proceedings held before Hon. Jeremiah J. McCarthy:Atty Appearance & Scheduling Status Conference as to John E. Maye held on 9/18/2008, Time Excluded as to John E. Maye from: 9-18-08, Excludable(s) stopped 12-31-08 as to John E. Maye. **ATTY APPEARANCE BY DANIEL OLIVERIO AS FULLY RETAINED COUNSEL.** Discussion re: substitution of counsel including turning over file, voluminous voluntary discovery and filing of pretrial motions, etc. Scheduling order deadlines set. **Court advises counsel if no motions are filed on or before 12-31-08, parties are ordered to appear before Judge Skretny on 1-5-09 at 9 am to set a trial date.** Time excluded, no days have elapsed, written scheduling/STA order to follow. Defense advises he may need to extend his mtn deadline due to the volume of discovery. Court will consider for good cause shown including Gov't's position. AUSA K. Martin for AUSA J. Guerra and D. Oliverio w/deft. (LL) (Entered: 09/18/2008) |
| 09/18/2008 | 10 | SCHEDULING ORDER as to John E. Maye. Signed by Hon. Jeremiah J. McCarthy on 9/18/08.(LL) (Entered: 09/18/2008) |
| 12/17/2008 | 11 | MOTION for Extension of Time to File by John E. Maye. (Attachments: # 1 Declaration in Support, # 2 Certificate of Service)(Oliverio, Daniel) (Entered: 12/17/2008) |
| 01/09/2009 | 12 | REFERRAL ORDER as to John E. Maye referring case to Magistrate Judge Jeremiah J. McCarthy. Signed by Judge William M. Skretny on 1/7/2009. (JCD) (Entered: 01/09/2009) |
| 01/09/2009 | 13 | AMENDED SCHEDULING ORDER granting 11 Motion for Extension of Time to File as to John E. Maye (1). Signed by Hon. Jeremiah J. McCarthy on 1/9/09.(DAZ) (Entered: 01/09/2009) |
| 01/11/2009 | 15 | NOTICE as to John E. Maye. In the event no motions are filed by 1/14/2009 as directed by Magistrate Judge McCarthy, a Status Conference is scheduled for 1/21/2009 at 9:00 AM (instead of 1/20/2009) before William M. Skretny U.S.D.J. (MEAL) (Entered: 01/11/2009) |
| 01/14/2009 | 16 | MOTION for Bill of Particulars *and to Preclude Evidence* by John E. Maye. (Attachments: # 1 Declaration in Support of Defendant's Motion to Preclude |

Case 14-2450, Document 39, 10/13/2015, 1618001, Page23 of 296

# 7

## Docket Entries.

| | | |
|---|---|---|
| | | Evidence and For Particularization of Charges, # 2 Memorandum in Support, # 3 Certificate of Service)(Oliverio, Daniel) (Entered: 01/14/2009) |
| 02/03/2009 | 17 | MOTION to Withdraw as Attorney by Daniel C. Oliverio. by John E. Maye. (Attachments: # 1 Declaration in Support of Motion to Withdraw, # 2 Certificate of Service)(Oliverio, Daniel) (Entered: 02/03/2009) |
| 02/04/2009 | 18 | Certificate of Service by John E. Maye re 17 MOTION to Withdraw as Attorney by Daniel C. Oliverio. *Amended* (Oliverio, Daniel) (Entered: 02/04/2009) |
| 02/04/2009 | 19 | TEXT ORDER : A conference concerning defendant's counsel's motion to withdraw 17 is set for February 10, 2009 at 11:00 a.m. before Hon. Jeremiah J. McCarthy. Defendant shall appear in person. SO ORDERED. Issued by Hon. Jeremiah J. McCarthy on 2/4/09.(DAZ) (Entered: 02/04/2009) |
| 02/10/2009 | 21 | Minute Entry for proceedings held before Hon. Jeremiah J. McCarthy:Status Conference re: Atty Oliverio Mtn to Withdraw (#17) as to John E. Maye held on 2/10/2009, ( Atty Status Conference/Atty Oliverio Mtn to Withdraw cont'd to 2/24/2009 03:30 PM before Hon. Jeremiah J. McCarthy.). Defense acknowledges receipt of Atty Oliverio's mtn to withdraw. Court advises deft of his right to file papers in opposition or be heard. Deft advises he is in process of retaining new counsel. Gov't does not oppose Atty Oliverio's mtn. Court notes under amended scheduling order, deft has filed motions and the Gov't response is due 2-13-09, suggest to hold same in abeyance until atty representation is resolved -- Gov't concurs. Atty Oliverio indicates in the short term, Gov't may supersede indictment which might change mtn practice. Gov't undecided/still considering and indicates one of the reasons it does not oppose Atty Oliverio mtn to w/draw. Atty Oliverio mtn to w/draw held in abeyance to facilitate deft's attempt to arrange for new counsel. Court statrs if new counsel is not obtained and deft wishes to oppose mtn, deft may do so and court will render decision. Deft reqs a couple of weeks to rpt back to the court -- Granted. Court advises deft if he wishes to oppose Atty Oliverio's mtn to w/draw, to file papers no later than Friday before 2-24-09, to wit: 2-20-09. Time remains excluded due to defense mtns pending (mtn to w/draw and PT mtns). AUSA J. Guerra and D. Oliverio w/deft (LL) (Entered: 02/18/2009) |
| 02/17/2009 | 20 | ORDER TO CONTINUE - Ends of Justice as to John E. Maye. Time excluded from 2/10/09 until 2/24/09. Signed by Hon. Jeremiah J. McCarthy on 2/17/09. (DAZ) (Entered: 02/18/2009) |
| 02/24/2009 | 22 | TEXT ORDER : With good cause shown and the government's consent, defendant's request to adjourn today's status conference is GRANTED. The status conference concerning counsel's motion to withdraw 17 is rescheduled to March 10, 2009 at 2:00 p.m. before Hon. Jeremiah J. McCarthy. Defendant shall appear in person and, if he has retained new counsel, his newly retained counsel shall appear as well. The time from February 24, 2009 through March 10, 2009 remains excluded from the Speedy Trial Act calendar due to the pendency of counsel's motion to withdraw 17 pursuant to 18 U.S.C. Section 3161(h)(1)(D). SO ORDERED. Issued by Hon. Jeremiah J. McCarthy on 2/24/09.(DAZ) (Entered: 02/24/2009) |
| | | |

**8**

**Docket Entries.**

| | | |
|---|---|---|
| 02/24/2009 | | Set/Reset Deadlines/Hearings as to John E. Maye: Status Conference set for 3/10/2009 02:00 PM before Hon. Jeremiah J. McCarthy. (DZ) (Entered: 02/25/2009) |
| 03/10/2009 | 23 | Minute Entry for proceedings held before Hon. Jeremiah J. McCarthy:Atty Status Conference re: atty retainment as to John E. Maye held on 3/10/2009, ( Status Conference set for 3/24/2009 11:00 AM before Hon. Jeremiah J. McCarthy.), Time Excluded as to John E. Maye from: 3-10-09, Excludable(s) stopped 3-24-09 as to John E. Maye. Court indicates it has not ruled on Atty Oliverio's mtn to withdraw with the expectation mtn might become moot if deft able to retain new counsel. Defense rpts deft has been consulting with Atty Personius for the last several weeks, spoke to Atty Personius today and deft today outside courtroom, deft needs more time to finalize negotiations (perhaps another week or two), Atty Personius expected to take over case. Court states if deft/Personius do not come to an agreement, court will decide Oliverio mtn to w/draw. Defense advises deft has other alternatives for new counsel. Gov't has no objection to continuance reqs, time should be excluded based on pending motions for discovery and Oliverio mtn to w/draw. Court takes judicial note delay/time is not attributable to the Gov't followed by discussion re: date/time for next proceeding. Deft states his intention to retain counsel, still in negotiations. Deft advised if there is new counsel case will go forward. If not, court directs deft to advise court of his position on the Oliverio mtn to w/draw in writing to chambers -- court will send submission to Oliverio and the Gov't (to the extent no privileged information is a part of said submission). Time excluded from today to 3-24-09 as stated on the record, STA order not necessary due to pending motions and Scheduling Order. AUSA J. Guerra and D. Oliverio w/deft (LL) (Entered: 03/11/2009) |
| 03/24/2009 | 24 | Minute Entry for proceedings held before Hon. Jeremiah J. McCarthy: Oral Argument/Atty Appearance re: defense counsel motion to withdraw (#17) held on 3/24/2009. Arguments presented. The court marked the following exhibits: Court Exs. 1, 2 & 4 - Redacted and unredacted copies of retainer agreement dated October 21, 2008; Court Ex. 3 - Unredacted letter from Dr. Maye dated March 20, 2009. COURT WILL ISSUE A WRITTEN DECISION. Time remains excluded due to pendency of motions. AUSA J. Guerra, Daniel Oliverio w/deft. (DAZ) (DAZ). (Additional attachment(s) added on 8/26/2014: # 1 Exhibit Court Ex. 1, # 2 Exhibit Court Ex. 2, # 3 Exhibit Court Ex. 3, # 4 Court Ex. 4, # 5 Exhibit Court Ex. 5) (DAZ). (Exhibits added on 8/26/14) (Entered: 03/24/2009) |
| 03/25/2009 | 25 | DECISION AND ORDER denying 17 Motion to Withdraw as Attorney as to John E. Maye (1). Signed by Hon. Jeremiah J. McCarthy on 3/25/09. (The Court has mailed a copy of this Decision and Order to Dr. Maye).(DAZ) (Entered: 03/25/2009) |
| 03/25/2009 | 26 | TEXT ORDER as to John E. Maye : The government's response to defendant's motion 16 shall be filed by April 15, 2009. Defendant's reply, indicating which aspects of its motion remain in dispute in light of the government's response, shall be filed by April 22, 2009, and oral argument of the motion will be held on April 28, 2009 at 11:00 a.m. before Hon. Jeremiah J. McCarthy. If a superseding indictment is filed, the status of defendant's motion will be initially |

**Docket Entries.**

| | | |
|---|---|---|
| | | addressed at defendant's arraignment on the superseding indictment. The time through April 28, 2009 remains excluded from the Speedy Trial Act calendar pursuant to 18 U.S.C. Section 3161(h)(1)(F) due to the pendency of defendant's pretrial motions 16 . SO ORDERED. Issued by Hon. Jeremiah J. McCarthy on 3/25/09.(DAZ) (Entered: 03/25/2009) |
| 04/10/2009 | 27 | RESPONSE to Motion by USA as to John E. Maye re 16 MOTION for Bill of Particulars *and to Preclude Evidence* (Attachments: # 1 Exhibit)(Guerra, Joseph) (Entered: 04/10/2009) |
| 04/15/2009 | 28 | TEXT ORDER as to John E. Maye : At defendant's request and with the government's consent, defendant's reply, indicating which aspects of his motion remain in dispute in light of the government's response, shall be filed by April 24, 2009, and oral argument of the motion remains set for April 28, 2009 at 11:00 a.m. before Hon. Jeremiah J. McCarthy. SO ORDERED. Issued by Hon. Jeremiah J. McCarthy on 4/15/09.(DAZ) (Entered: 04/15/2009) |
| 04/23/2009 | 29 | RESPONSE in Support by John E. Maye re 16 MOTION for Bill of Particulars *and to Preclude Evidence Defendant's Reply Memorandum* (Attachments: # 1 Certificate of Service)(Oliverio, Daniel) (Entered: 04/23/2009) |
| 04/28/2009 | 30 | Minute Entry for proceedings held before Hon. Jeremiah J. McCarthy: Oral argument scheduled, but not held. Status Conference as to John E. Maye held on 4/28/2009, ( Oral Argument RESET for 7/9/2009 02:00 PM before Hon. Jeremiah J. McCarthy.). Court advises attys it understands the focus of the argument is on particularization issue and defense has agreed the other aspects of motion should be deferred for determination by Judge Skretny. Defense concurs and wants to make sure nothing else is waived -- court concurs. Court further understands the Gov't has agreed to at some prior to trial to specify the transactions the Gov't will offer re: expert testimony without prejudice to the Gov't's position that all the transactions were illegal -- Gov't concurs and advises court of parties' ongoing discussions and reqs to continue mtn as a status argument date for 60 days for the reasons stated on the record. Parties agree their are issues to be resolved even if unsuccessful, it will move the case towards a better trial posture. S'seding indictment possible in the interim subject to ongoing related investigations throughout the country. Gov't has seized deft's records and sent same to Nat'l Drug Information Center -- rpt forthcoming to defense. Mtn remains pending and time continues to be excluded from the STA calendar. Court expected to resolve mtn today one way or another and intended to set a timetable for disclosure of expert witnesses by the parties but will not in view of aforementioned circumstances. AUSA J. Guerra and D. Oliverio w/deft(LL) (Entered: 04/28/2009) |
| 07/09/2009 | 31 | SUPERSEDING INDICTMENT as to John E. Maye (1) count(s) 1s, 2s-8s, 9s. (DZ) (Entered: 07/14/2009) |
| 07/14/2009 | 32 | Minute Entry for proceedings held before Hon. Jeremiah J. McCarthy:Arraignment re: S'seding Indictment as to John E. Maye (1) Count 1s,2s-8s,9s held on 7/14/2009, ( Status Conference re: atty apptmt application set for 7/28/2009 01:30 PM before Hon. Jeremiah J. McCarthy.), Time Excluded as to John E. Maye from: 7-14-09, Excludable(s) stopped 7-28-09 as to John E. Maye. Deft acknowledges receipt of indictment. Gov't summarizes |

Case 14-2450, Document 39, 10/13/2015, 1618001, Page26 of 296

| | | |
|---|---|---|
| | | charges and potential penalties. Deft advised of her rights including right to counsel. DANIEL OLIVERIO INDICATES HE IS NOT FULLY RETAINED and states there has been a change in deft's employment circumstances, deft may qualify for assignment of counsel, assets have been seized, etc. Defense prepared to represent deft for today's proceedings. Deft waives reading of indictment and enters plea of guilty. Setting scheduling order deadlines deferred until counsel issue resolved. Deft directed to proceed to USPO, Pretrial Unite, immediately after this proceeding to complete a financial aff'd. Bail/release conditions cont'd. Time excluded, no days have elapsed, (70) days remain in the STA calendar, written STA order to follow. AUSA J. Guerra and D. Oliverio w/deft. (LL) (Entered: 07/14/2009) |
| 07/14/2009 | 33 | TEXT ORDER as to John E. Maye: At today's arraignment on the superseding indictment, defendant's counsel, Daniel Oliverio, advised that he is not fully retained to represent defendant on the superseding indictment, and suggested that in view of his changed financial circumstances defendant may be eligible for appointment of counsel under the Criminal Justice Act. Further proceedings are scheduled for July 28, 2009 at 1:30 p.m. At that time, defendant and Mr. Oliverio should be prepared to address, inter alia, the retainer agreement's provision that it "will extend to any superseding indictment returned in this case provided we uncover no conflicts or other impediments to our representation", and to discuss the current state of defendant's compliance with the terms of the retainer agreement, including his payment of fees. Defendant shall appear in person.. Issued by Hon. Jeremiah J. McCarthy on 7/14/09.(LL) (Entered: 07/14/2009) |
| 07/14/2009 | 34 | CJA 23 Financial Affidavit by John E. Maye. (DZ) (Entered: 07/14/2009) |
| 07/17/2009 | 35 | MOTION for Disclosure *of the CJA 23 Financial Affidavit* by USA as to John E. Maye. (Guerra, Joseph) (Entered: 07/17/2009) |
| 07/21/2009 | 36 | ORDER TO CONTINUE - Ends of Justice as to John E. Maye. Time excluded from 7/14/09 until 7/28/09. Signed by Hon. Jeremiah J. McCarthy on 7/21/09. (DAZ) (Entered: 07/21/2009) |
| 07/21/2009 | 37 | RESPONSE to Motion by John E. Maye re 35 MOTION for Disclosure *of the CJA 23 Financial Affidavit* (Attachments: # 1 Certificate of Service)(Oliverio, Daniel) (Entered: 07/21/2009) |
| 07/21/2009 | | E-Filing Notification: 37 RESPONSE to Motion by John E. Maye re 35 MOTION for Disclosure (Oliverio, Daniel) **Document to be re-filed for signature requirements; full signature block required; proof of service required on re-filed document. (DZ) (Entered: 07/22/2009) |
| 07/22/2009 | 38 | RESPONSE to Motion by John E. Maye re 35 MOTION for Disclosure *of the CJA 23 Financial Affidavit* (Attachments: # 1 Certificate of Service)(Oliverio, Daniel) (Entered: 07/22/2009) |
| 07/23/2009 | 39 | TEXT ORDER : The government's unopposed motion for disclosure of the CJA 23 financial affidavit is GRANTED. SO ORDERED. Issued by Hon. Jeremiah J. McCarthy on 7/23/09.(DAZ) (Entered: 07/23/2009) |
| 07/28/2009 | 40 | |

## 11

### Docket Entries.

|  |  |  |
|---|---|---|
|  |  | MEMORANDUM IN OPPOSITION *to Application for Assignment of Counsel* by USA as to John E. Maye (Guerra, Joseph) (Entered: 07/28/2009) |
| 07/28/2009 | 41 | Minute Entry for proceedings held before Hon. Jeremiah J. McCarthy: Atty Assignment Hearing re: atty retainment as to Daniel Oliverio held on 7/28/09. Parties to continue working on issues relating to retainment of counsel and report to the court. A further status conference is set for 8/28/09 at 3:30 PM before Hon. Jeremiah J. McCarthy. Time excluded from 7/28/09 to 8/28/09 as stated on the record, Govt to submit order. AUSA J. Guerra and D. Oliverio w/deft. (DAZ) (Entered: 07/29/2009) |
| 07/30/2009 | 42 | ORDER TO CONTINUE - Ends of Justice as to John E. Maye. Time excluded from 7/28/09 until 8/28/09. Signed by Hon. Jeremiah J. McCarthy on 7/30/09. (DAZ) (Entered: 07/30/2009) |
| 08/04/2009 | 43 | ORDER re application as to John E. Maye for assignment of counsel. (Status Conference set for 8/28/2009 at 03:30 PM before Hon. Jeremiah J. McCarthy.) Signed by Hon. Jeremiah J. McCarthy on 8/4/09.(DAZ) (Entered: 08/05/2009) |
| 08/24/2009 | 44 | DEMAND for *Discovery and Inspection* as to John E. Maye (Guerra, Joseph) (Entered: 08/24/2009) |
| 08/28/2009 | 45 | TEXT ORDER: In accordance with today's proceeding, on or before September 4, 2009, the government shall file and serve its supplemental papers in opposition to defendant's motion for appointment of counsel; on or before September 11, 2009, defendant shall file and serve a response, including a supplemental affidavit addressing the exact amount remaining in his retainer with Hodgson Russ LLP, what will occur with the $25,000 recently received by defendant, and defendant's current tax liabilities. The time from August 28, 2009 through September 11, 2009 is excluded from the Speedy Trial Act calendar due to the pendency of defendant's motion for appointment of counsel pursuant to 18 U.S.C. Section 3161(h)(1)(D) After September 11, 2009, defendant's motion for appointment of counsel will be taken under advisement, and time will continue to remain excluded from the Speedy Trial Act calendar until October 12, 2009 pursuant to 18 U.S.C. Section 3161(h)(1)(H). Issued by Hon. Jeremiah J. McCarthy on 8/28/09.(LL) (Entered: 08/28/2009) |
| 08/28/2009 | 51 | Minute Entry for proceedings held before Hon. Jeremiah J. McCarthy:Status Conference as to John E. Maye held on 8/28/2009 as to deft's CJA atty assignment application. AUSA J. Guerra, D. Oliverio w/deft and (via phone) Atty Dale Sisco for Secure Telemed. Court acknowledges letter received yesterday from Atty Sisco requesting to participate in lieu of Mr. Shlagman, Gov't acknowledges receipt of a copy of said letter, defense has no objection. Court wanted to explore w/Sisco sitaution re: retainer ltr dtd 10-21-08 from Oliverio btn Oliverio firm, deft and Sisco followed by discussion. Court sets further submissions schedule -- UPON SUBMISSIONS, COURT WILL TAKE MTN FOR ASSIGNED COUNSEL UNDER ADVISEMENT -- TEXT ORDER TO FOLLOW. Parties agree time continues to be excluded as stated on the record by the Gov't. COURT EXCLUDES TIME THRU 9-11-09,MTN WILL THEN BE UNDER ADVISEMENT AND THEREAFTER EXCLUDED FOR ANOTHER (30) DAYS, TO WIT: 10-12-09 -- GOV'T TO SUBMIT ORDER. Gov't rec'd redacted letter sent to the court by deft re: |

**12**

**Docket Entries.**

| | | |
|---|---|---|
| | | money taken out of deft's pay to be used towards legal fees, etc. Court directs defense/deft to review and advise accordingly. (LL) (Entered: 09/23/2009) |
| 09/02/2009 | 46 | ORDER TO CONTINUE - Ends of Justice as to John E. Maye. Time excluded from 8/28/09 until 10/12/09. Signed by Hon. Jeremiah J. McCarthy on 9/2/09. (DAZ) (Entered: 09/02/2009) |
| 09/04/2009 | 47 | MEMORANDUM/BRIEF *Supplemental Opposition to Application for Assignment of Counsel* by USA as to John E. Maye (Guerra, Joseph) (Entered: 09/04/2009) |
| 09/14/2009 | 48 | DECLARATION by John E. Maye *in Support of Assigned Counsel* (Oliverio, Daniel) (Entered: 09/14/2009) |
| 09/16/2009 | 49 | DECLARATION by John E. Maye *of Daniel C. Oliverio* (Oliverio, Daniel) (Entered: 09/16/2009) |
| 09/23/2009 | 50 | TEXT ORDER as to John E. Maye : A status conference concerning defendant's motion for appointment of counsel is set for September 28, 2009 at 11:00 a.m. SO ORDERED. Issued by Hon. Jeremiah J. McCarthy on 9/23/09. (DAZ) (Entered: 09/23/2009) |
| 09/24/2009 | | CALENDAR EVENT as to John E. Maye: At the government's request, the September 28, 2009 conference is rescheduled to 2:00 p.m. (LL) (Entered: 09/24/2009) |
| 09/28/2009 | 52 | Minute Entry for proceedings held before Hon. Jeremiah J. McCarthy:Status Conference as to John E. Maye held on 9/28/2009, ( Status Conference set for 10/13/2009 03:30 PM in US Courthouse, 68 Court Street, Buffalo, NY 14202 before Hon. Jeremiah J. McCarthy.), Time Excluded as to John E. Maye from: 9-28-09, Excludable(s) stopped 10-13-09 as to John E. Maye. Further review of deft's financial aff'd submitted to the court. Gov't excused from courtroom for court's in-depth interrogatories involving privileged consideration/issues. [AUSA excused and following portion of proceeding ordered under seal]. **SEALED PROCEEDING from approx. 2:11:12 to 2:21:01.** [AUSA returns to courtroom]. Court advises Gov't, defense directed to rpt back to the court within a week on a particular question (not disclosed to the Gov't) after which the court will render decision on the assignmnt of counsel reqs and the case will proceed to discuss progress of the underlying case. Gov't's states its view of the court's under advisement/decision calculation deadline as 10-13-09 followed by colloquy. Court sets status for 10-13-09 at 3:30 pm and states court's written decision will either be in the form of a text order or more lengthy decision by 10-13-09 or given to attys at 10-13-09 proceeding. Time excluded from now to 10-13-09 as stated on the record based on pendency of current mtn, parties agree no days have elapsed from the STA calendar. AUSA J. Guerra and D. Oliverio w/deft. (LL) (Entered: 09/28/2009) |
| 10/13/2009 | 53 | SCHEDULING ORDER as to John E. Maye : (Please Note: This docket text may not contain the entire contents of the attached Order. It is your responsibility to read the attached Order and download it for future reference. Direct any questions to the Chambers of the Judge who entered this Order.) Status Conference set for 12/3/2009 at 09:00 AM before Hon. William M. |

|            |    |                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                     |
|------------|----|---------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|            |    | Skretny. Oral Argument set for 1/7/2010 at 02:00 PM before Hon. Jeremiah J. McCarthy. Signed by Hon. Jeremiah J. McCarthy on 10/13/09.(DAZ) (Entered: 10/14/2009)                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                     |
| 10/13/2009 | 54 | Minute Entry for proceedings held before Hon. Jeremiah J. McCarthy:Status Conference as to John E. Maye held on 10/13/2009. Court reiterates its email to attys late last week indicating it would be issuing a scheduling order today and would be appointing Atty Oliverio as CJA counsel. Court advises parties some of its comments/remarks on the record will be made with AUSA present and some outside of AUSA Guerra's presence relating to why the court is appointing Atty Oliverio. Court notes for the record this court's review of this court's practice on inquiries as to whether counsel is fully retained at the outset of the case, court's reiterates prior examination at last proceeding involving 3rd party atty, reference to *Parker* decision, court's comments/ruling in appointing Atty Oliverio -- **DANIEL OLIVERIO APPOINTED WITH DIRECTIVES FOR CONTRIBUTION TOWARDS DEFENSE, ETC. -- CJA ORDER TO FOLLOW.** Scheduling order deadlines discussed and set -- SCHEDULING ORDER TO FOLLOW. Parties advised if no mtns filed on or before 11-30-09, counsel ordered to appear before Judge Skretny at 9 am on 12-3-09 to schedule trial date. Time excluded, parties agree no days have elapsed from STA calendar, speedy trial order will be incorporated into scheduling order. [Court excused AUSA Guerra from the courtroom for the balance of the proceeding and ORDERS NEXT PORTION OF PROCEEDING SEALED WITH ONLY DEFT/DEFENSE PRESENT]. AUSA J. Guerra and D. Oliverio w/deft. (LL) (Entered: 10/16/2009) |
| 11/02/2009 | 55 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to John E. Maye held on 8/28/09 before Judge Jeremiah J. McCarthy. Court Reporter/Transcriber Christi A. Macri, Telephone number (585) 613-4310. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 11/23/2009. Redacted Transcript Deadline set for 12/3/2009. Release of Transcript Restriction set for 2/1/2010. (DZ) (Entered: 11/02/2009)                                                                                                                                                                                                                                                                                                            |
| 11/10/2009 | 56 | CJA 20 as to John E. Maye: Appointment of Attorney Daniel C. Oliverio for John E. Maye nunc pro tunc 10/13/09(DZ) (Entered: 11/13/2009)                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                             |
| 11/30/2009 | 57 | MOTION to Dismiss *or to Obtain a Bill of Particulars* by John E. Maye. (Attachments: # 1 Memorandum in Support, # 2 Declaration of Daniel C. Oliverio, # 3 Exhibit s to Declaration of Daniel C. Oliverio, # 4 Certificate of Service)(Oliverio, Daniel) (Entered: 11/30/2009)                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                         |
| 12/21/2009 | 58 | MOTION for Extension of Time to File Response/Reply by USA as to John E. Maye. (Guerra, Joseph) (Entered: 12/21/2009)                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                 |
| 12/21/2009 | 59 | AMENDED SCHEDULING ORDER ON THE SUPERSEDING INDICTMENT as to John E. Maye: Oral Argument set for 1/26/2010 AT 04:00 PM before Hon. Jeremiah J. McCarthy. Signed by Hon. Jeremiah J. McCarthy on 12/21/09.(DAZ) (Entered: 12/22/2009)                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                   |
| 12/21/2009 |    |                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                     |

## 14

### Docket Entries.

| | | |
|---|---|---|
| | | *** Motion Terminated*** 58 Motion for Extension of Time to File Response/Reply as to John E. Maye (1) granted per 59 .(DAZ) (Entered: 12/22/2009) |
| 01/15/2010 | 60 | TEXT ORDER as to John E. Maye : At defendant's request and with the government's consent, the following deadlines of the amended scheduling order 59 are amended: defendant's reply shall be served and filed on or before January 29, 2010 and oral argument of defendant's pretrial motions 57 is set for February 2, 2010 at 4:00 p.m. SO ORDERED. Issued by Hon. Jeremiah J. McCarthy on 1/15/10.(DAZ) (Entered: 01/15/2010) |
| 01/20/2010 | 61 | RESPONSE to Motion by USA as to John E. Maye re 57 MOTION to Dismiss *or to Obtain a Bill of Particulars* (Attachments: # 1 Exhibit)(Guerra, Joseph) (Entered: 01/20/2010) |
| 01/21/2010 | 62 | Defendant's motion for a status conference by John E. Maye (Daniel Oliverio). (Filed at the request of Hon. Jeremiah J. McCarthy). (DAZ) (Entered: 01/25/2010) |
| 01/25/2010 | 63 | TEXT ORDER : Defendant's motion for a status conference 62 is GRANTED. A status conference is set for January 27, 2010 at 9:30 a.m. before Hon. Jeremiah J. McCarthy. SO ORDERED. Issued by Hon. Jeremiah J. McCarthy on 1/25/10.(DAZ) (Entered: 01/25/2010) |
| 01/25/2010 | | CALENDAR EVENT as to John E. Maye: Status Conference set for 1/27/2010 AT 09:30 AM before Hon. Jeremiah J. McCarthy. (DAZ) (Entered: 01/25/2010) |
| 01/25/2010 | | CALENDAR EVENT as to John E. Maye: **Status Conference RESET** from 1-27-10 at 9:30 am **to 1/28/2010 03:30 PM** before Hon. Jeremiah J. McCarthy. (LL) (Entered: 01/25/2010) |
| 01/26/2010 | 64 | MOTION to Modify Conditions of Release by USA as to John E. Maye. (Guerra, Joseph) (Entered: 01/26/2010) |
| 01/26/2010 | 65 | MOTION to Seal by John E. Maye. (Oliverio, Daniel) (Entered: 01/26/2010) |
| 01/26/2010 | 89 | Sealed Document as to John E. Maye. (DR) (Entered: 09/24/2010) |
| 01/28/2010 | 66 | TEXT ORDER as to John E. Maye: With the parties' consent, today's status conference and the February 2, 2010 oral argument of defendant's pretrial motions are ADJOURNED pending resolution of the government's motion to modify the conditions of release and for reexamination of defendant's eligibility for assigned counsel 64 . Defendant's response to the government's motion 64 shall be served and filed on or before February 12, 2010 and oral argument of the government's motion 64 is set for February 16, 2010 at 11:00 a.m. before Hon. Jeremiah J. McCarthy. SO ORDERED. Issued by Hon. Jeremiah J. McCarthy on 1/28/10.(DAZ) (Entered: 01/28/2010) |
| 01/29/2010 | 67 | REPLY TO RESPONSE to Motion by John E. Maye re 57 MOTION to Dismiss *or to Obtain a Bill of Particulars* (Oliverio, Daniel) (Entered: 01/29/2010) |
| 01/29/2010 | 68 | |

**15**

**Docket Entries.**

| | | |
|---|---|---|
| | | REPLY TO RESPONSE to Motion by John E. Maye re <u>57</u> MOTION to Dismiss *or to Obtain a Bill of Particulars Declaration of Daniel C. Oliverio* (Attachments: # <u>1</u> Exhibit A)(Oliverio, Daniel) (Entered: 01/29/2010) |
| 01/29/2010 | <u>69</u> | Certificate of Service by John E. Maye re <u>67</u> Reply to Response, <u>68</u> Reply to Response (Oliverio, Daniel) (Entered: 01/29/2010) |
| 02/04/2010 | <u>70</u> | RESPONSE in Opposition by John E. Maye re <u>64</u> MOTION to Modify Conditions of Release *Declaration of Daniel C. Oliverio* (Oliverio, Daniel) (Entered: 02/04/2010) |
| 02/10/2010 | <u>71</u> | MEMORANDUM/BRIEF *Reply to Declaration (Docket Item 70)* by USA as to John E. Maye (Guerra, Joseph) (Entered: 02/10/2010) |
| 02/11/2010 | <u>72</u> | MEMORANDUM/BRIEF *Sur-Reply in Opposition to Defendant's Motion to Dismiss or to Obtain a Bill of Particulars* by USA as to John E. Maye (Guerra, Joseph) (Entered: 02/11/2010) |
| 02/12/2010 | <u>73</u> | MOTION For Permission, Nunc Pro Tunc, for the Filing of a Sur-Reply by USA as to John E. Maye. (Guerra, Joseph) (Entered: 02/12/2010) |
| 02/16/2010 | 74 | TEXT ORDER : In accordance with today's oral argument, the government's motion for re-examination of defendant's eligibility for appointed counsel <u>64</u> is GRANTED. Upon re-examination, defendant continues to be eligible for appointed counsel. The government's motion to modify the conditions of pretrial release <u>64</u> is GRANTED. Defendant shall provide Pretrial Services with 10-day advance notice of any international travel (including travel to Canada). The government's motion <u>73</u> for leave, *nunc pro tunc,* to file a sur-reply in further opposition to defendant's pretrial motion <u>57</u> is GRANTED. Defendant may file and serve a sur-sur-reply on or before March 2, 2010. Oral argument of defendant's pretrial motion <u>57</u> is set for March 10, 2010 at 3:00 p.m. SO ORDERED. Issued by Hon. Jeremiah J. McCarthy on 2/16/10.(DAZ) (Entered: 02/16/2010) |
| 02/16/2010 | | CALENDAR EVENT as to John E. Maye: Oral Argument set for 3/10/2010 at 03:00 PM before Hon. Jeremiah J. McCarthy. (DAZ) (Entered: 02/16/2010) |
| 02/16/2010 | | Minute Entry for proceedings held before Hon. Jeremiah J. McCarthy:Oral Argument re: Gov't mtn to modify conditions of release as to travel and re-examination of deft's eligibility for assigned counsel (#64) and Gov't mtn for permission, nunc pro tuns, to file sur-reply (#73) held on 2/16/2010. Gov't has no objection to deft notifying PTS in advance of international travel which will moot mtn for travel restriction. **COURT ORDERS DEFT TO GIVE 10-DAY NOTICE IN ADVANCE FOR ANY FUTURE PLANS TO TRAVEL INTERNATIONALLY.** As to mtn to re-examine deft's eligiblity for apptmt of counsel -- court notes defense states most trips were not paid for by deft -- defense concurs. Court query to deft as to change in circumstances since last fall CJA qualification for assignment of counsel. Deft states his pay has been reduced. Gov't satisfied. **MTN FOR RE-EXAMINATION IS GRANTED -- DEFT CONTINUES TO BE ELIGIBLE FOR APPTMT OF COUNSEL. COURT REITERATES MTN AS TO TRAVEL, GRANTED TO EXTENT REQUIRES GIVING PTS 10-DAY NOTICE IN ADVANCE** |

| | | |
|---|---|---|
| | | OF INT'L TRAVEL (INCLUDES CANADA) -- AMENDED AO 199 TO FOLLOW. As to Gov't reqs to file sur-reply nunc pro tunc -- defense oppose and in the alternative reqs to respond in (7) days -- GRANTED AS TO BOTH PARTIES. AUSA J. Guerra, D. Oliverio w/deft and USPO B. Horton. (LL) (Entered: 03/12/2010) |
| 02/18/2010 | 75 | ORDER Setting Conditions of Release. Signed by Hon. Jeremiah J. McCarthy on 2/16/10.(DR) (Entered: 02/19/2010) |
| 02/23/2010 | 76 | REPLY TO RESPONSE to Motion by John E. Maye re 57 MOTION to Dismiss *or to Obtain a Bill of Particulars* (Oliverio, Daniel) (Entered: 02/23/2010) |
| 03/10/2010 | 77 | Minute Entry for proceedings held before Hon. Jeremiah J. McCarthy:Oral Argument re: pretrial motions held on 3/10/2010, ( Gov't/Deft further submissions in response to oral argument due by 3/17/2010.). AUSA J. Guerra and D. Oliverio. Deft waived appearance. (LL) (Entered: 03/10/2010) |
| 03/17/2010 | 78 | MEMORANDUM/BRIEF *Government's Post-Argument Submission* by USA as to John E. Maye (Guerra, Joseph) (Entered: 03/17/2010) |
| 03/30/2010 | 79 | REPORT, RECOMMENDATION AND ORDER as to John E. Maye. Signed by Hon. Jeremiah J. McCarthy on 3/30/10.(DAZ) (Entered: 03/30/2010) |
| 04/12/2010 | 80 | MOTION for Extension of Time to File *Objections to Report, Recommendation and Order (Docket Item 79)* by USA as to John E. Maye. (Guerra, Joseph) (Entered: 04/12/2010) |
| 04/16/2010 | 81 | TEXT ORDER as to John E. Maye. IT HEREBY IS ORDERED THAT the Government's 80 Motion for an Extension of Time for the Parties to File Objections to Report, Recommendation and Order is GRANTED. Objections are now due 5/13/2010. SO ORDERED. Issued by William M. Skretny, Chief Judge U.S.D.J. on 4/13/2010.(MEAL) (Entered: 04/16/2010) |
| 04/29/2010 | 82 | SECOND SUPERSEDING INDICTMENT as to John E. Maye (1) count(s) 1ss, 2ss-34ss. (DZ) (Entered: 05/03/2010) |
| 05/12/2010 | | CALENDAR EVENT as to John E. Maye: Arraignment re: Second Superseding Indictment set for 5/20/2010 03:30 PM before Hon. Jeremiah J. McCarthy. (Notice to USPO, Pretrial Services Unit)(LL) (Entered: 05/12/2010) |
| 05/12/2010 | 83 | MOTION to Vacate *Report & Recommendation* by USA as to John E. Maye. (Guerra, Joseph) (Entered: 05/12/2010) |
| 05/20/2010 | 84 | SCHEDULING ORDER as to John E. Maye (Please Note: This docket text may not contain the entire contents of the attached Order. It is your responsibility to read the attached Order and download it for future reference. Direct any questions to the Chambers of the Judge who entered this Order.) Status Conference set for 7/23/2010 09:00 AM before Hon. William M. Skretny. Oral Argument set for 8/26/2010 02:00 PM before Hon. Jeremiah J. McCarthy. Signed by Hon. Jeremiah J. McCarthy on 5/20/10.(DAZ) (Entered: 05/21/2010) |
| 05/20/2010 | 86 | |

| | | |
|---|---|---|
| | | Minute Entry for proceedings held before Hon. Jeremiah J. McCarthy:Arraignment re: Second Superseding Indictment as to John E. Maye (1) Count 1ss,2ss-34ss held on 5/20/2010. Deft acknowledges receipt of indictment. Gov't summarizes charges and potential penalties. Deft advised of his rights including right to counsel. Defense previously appointed, application for apptmt to be finalized, appointmt continues as to second s'seding indictment, defense continues representation. Bail continued from original indictment and first s'seding indictment, conditions of release remain in affect. Discussion re: voluntary discovery -- parties have discussed some of the issues in prior motions and close to resolving same, defense reqs time to review current indictment and re-visit motion situation, defense reqs 60 days to file mtns if any. Gov't has no objection to defense reqs for 60 days to file mtns followed by setting scheduling order deadlines. If no mtns filed by 7-20-10, counsel ordered to appear before Judge Skretny at a date/time that will set forth in the court's scheduling order. Time excluded to 7-20-10, parties agree no days have elapsed, 70 days remain on the STA calendar. Court will issue STA/scheduling order. Gov't filed mtn to vacate R&R -- decision pending before Judge Skretny. AUSA J. Guerra and D. Oliverio w/deft. (LL) (Entered: 06/09/2010) |
| 06/02/2010 | 85 | TEXT ORDER<br><br>On November 30, 2009, Defendant filed a 57 Motion to Dismiss or Obtain Bill of Particulars. Thereafter, on March 30, 2010, the Hon. Jeremiah J. McCarthy, United States Magistrate Judge, filed a 79 Report and Recommendation, recommending that Counts 2-8 of the 31 Superseding Indictment be dismissed. Since the filing of the Report and Recommendation, the grand jury has returned a 82 Second Superseding Indictment.<br><br>Presently before this Court is the government's 83 Motion to Vacate the R&R as moot. Although the government is correct that the issues addressed by Judge McCarthy in his Report and Recommendation are now moot due to the return of the Second Superseding Indictment, it has not filed objections to the Report and Recommendation, nor provided any authority for vacating it. Therefore, although the issues addressed therein are now moot, this Court ACCEPTS Judge McCarthy's 79 Report and Recommendation and GRANTS Defendant's 57 Motion to Dismiss or Obtain Bill of Particulars as it pertains to the Superseding Indictment, consistent with the Report and Recommendation. The government's 83 Motion to Vacate is DENIED.<br><br>SO ORDERED.<br><br>Issued by William M. Skretny, Chief Judge U.S.D.C. on 5/19/2010.(MEAL) (Entered: 06/02/2010) |
| 07/15/2010 | 87 | MOTION for Extension of Time to File by John E. Maye. (Attachments: # 1 Declaration of Daniel C. Oliverio In Support of an Extension of the Discovery and Motion Schedule, # 2 Exhibit A, # 3 Certificate of Service)(Oliverio, Daniel) (Entered: 07/15/2010) |
| 07/20/2010 | 88 | |

Case 14-2450, Document 39, 10/13/2015, 1618001, Page34 of 296

**Docket Entries.**

| | | |
|---|---|---|
| | | AMENDED SCHEDULING ORDER as to John E. Maye (Please Note: This docket text may not contain the entire contents of the attached Order. It is your responsibility to read the attached Order and download it for future reference. Direct any questions to the Chambers of the Judge who entered this Order.) Status Conference set for 10/28/2010 at 09:00 AM before Hon. William M. Skretny. Oral Argument set for 11/23/2010 at 02:00 PM before Hon. Jeremiah J. McCarthy. Signed by Hon. Jeremiah J. McCarthy on 7/20/10.(DAZ) (Entered: 07/21/2010) |
| 07/20/2010 | | *** MOTION TERMINATED *** 87 Motion for Extension of Time to File as to John E. Maye (1) per 88 .(DAZ) (Entered: 07/21/2010) |
| 10/20/2010 | 90 | Defendant's motion for an extension of the time to file pretrial motions (Daniel C. Oliverio, Esq.) (Filed at the request of Hon. Jeremiah J. McCarthy). (DAZ) (Entered: 10/20/2010) |
| 10/20/2010 | 91 | ORDER granting 90 Motion for Extension of Time to File Pretrial Motions as to John E. Maye (1). Signed by Hon. Jeremiah J. McCarthy on 10/20/10.(DAZ) (Entered: 10/20/2010) |
| 10/20/2010 | 92 | SECOND AMENDED SCHEDULING ORDER as to John E. Maye (Please Note: This docket text may not contain the entire contents of the attached Order. It is your responsibility to read the attached Order and download it for future reference. Direct any questions to the Chambers of the Judge who entered this Order.) Pretrial motions due by 1/21/11, Responses to Pretrial Motions due by 2/11/11, Replies due by 2/18/11, Oral Argument on all pretrial motions set for 2/22/11 at 2:00 p.m. before Hon. Jeremiah J. McCarthy, and Status Conference set for 1/26/11 at 9:00 a.m. before Hon. William M. Skretny, U.S.D.J. Signed by Hon. Jeremiah J. McCarthy on 10/20/10.(DAZ) Modified on 10/25/2010 to correct date of status conference before Judge Skretny. (DAZ). (Entered: 10/21/2010) |
| 01/26/2011 | 94 | Minute Entry for proceedings held before William M. Skretny, Chief Judge:Status Conference as to John E. Maye held on 1/26/2011. Case is referred back to Judge McCarthy for completion of expert discovery. Time to be excluded from today until next appearance before Judge McCarthy pursuant to 3161(h)(7)(A). Defendant present. For the govt. - Joseph Guerra, III. For the deft. - Daniel Oliverio. (Court Reporter Michelle McLaughlin.)(MEAL) (Entered: 01/27/2011) |
| 01/27/2011 | 93 | TEXT ORDER as to John E. Maye : In accordance with yesterday's conference conducted in chambers with counsel, a status conference is set for May 3, 2011 at 10:00 a.m. In the interim, defendant shall make his remaining expert disclosures, if any, pursuant to Fed. R. Crim. P. 16. If necessary, at the May 3, 2011 conference, a deadline will be set for the government's rebuttal expert disclosures. I find that the governments and the publics interest in a speedy trial is outweighed by the defendants interest in having effective assistance of counsel by allowing sufficient time for preparation of a defense. Therefore, the time period through May 3, 2011 is excluded under 18 U.S.C. §§3161(h)(7)(A) and 3161(h)(7)(B)(iv). SO ORDERED. Issued by Hon. Jeremiah J. McCarthy on 1/27/11.(DAZ) (Entered: 01/27/2011) |
| | | |

**19**

**Docket Entries.**

| | | |
|---|---|---|
| 02/14/2011 | | TERMINATED SECOND AMENDED SCHEDULING ORDER (#92) as to John E. Maye. (LL) (Entered: 02/14/2011) |
| 05/03/2011 | 95 | Minute Entry for proceedings held before Hon. Jeremiah J. McCarthy:Status Conference as to John E. Maye held on 5/3/2011, ( Discovery/experts to be completed by 7/5/2011., Deft/Gov't Expert Witness names due by 7/5/2011.), Time Excluded as to John E. Maye from 5-3-11:, Excludable(s) stopped 7-5-11 as to John E. Maye. Gov't advises parties appeared before Judge Skretny a couple of months ago to set trial date, defense still in process of determining if expert wtns would be retained for trial, matter sent back to this court to monitor obtaining an expert by deft and potential of obtaining a rebuttal expert by the Gov't and making sure all discovery re: trial experts is exchanged at which point case would go back to Judge Skretny to set a trial date, dft has not made final determination if expert will be retained, parties discussed add'l time to obtain experts, in the interim Gov't will take steps to obtain its expert whether deft obtains expert or not, parties agree a further continuance of approx 60 days appropriate as well as exclusion of time as stated on the record. Court notes three months ago this court issued text order based on in-chambers conference wherein it was represented aforementioned issues would be by today. Defense rpts on efforts to secure a couple of experts, about 90% there (getting close), understand length of time taken to date but difficulty obtaining specific experts (not many or readily available), expect to exchange expert discovery in the interim, etc. Court notes its obligation to consider the interest of the parties as well as the public. Court grants 60-day continuance reqs for continuance w/admonishment at that time parties directed to appear before Judge Skretny to set a trial date, STA clock will begin to run, court expects discovery experts to be completed in the interim. Parties agree. Time excluded as stated on the record from today thru 7-5-11, (70) days remain on STA calendar after which STA clock will begin to run. AUSA J. Guerra, D. Oliverio and associate (Atty Dunn). (Court Reporter FTR Gold.)(LL) (Entered: 05/03/2011) |
| 05/06/2011 | 96 | NOTICE OF ATTORNEY APPEARANCE Richard D. Kaufman appearing for USA. (Kaufman, Richard) (Entered: 05/06/2011) |
| 05/12/2011 | 97 | TEXT ORDER as to John E. Maye : The parties shall complete their remaining discovery by July 5, 2011. The parties shall appear before Hon. William M. Skretny on July 6, 2011 at 9:00 a.m. Based upon the parties' representations, I find that the time through July 5, 2011 is excluded from the Speedy Trial Act calendar pursuant to 18 U.S.C. §§3161(h)(7)(A) and 3161(h)(7)(B)(iv) because the government's and the public's interest in a speedy trial is outweighed by the defendant's interest in having effective assistance of counsel by allowing sufficient time for preparation of a defense. SO ORDERED. Issued by Hon. Jeremiah J. McCarthy on 5/12/11.(DAZ) (Entered: 05/12/2011) |
| 05/16/2011 | 98 | MOTION for Interlocutory Sale *and Affidavit in Support of Motion for Interlocutory Sale (with Exhibits A-E) with Memorandum of Law* by USA as to John E. Maye. (Kaufman, Richard) (Entered: 05/16/2011) |
| 05/20/2011 | 99 | TEXT ORDER as to John E. Maye: Defendant's response to the government's motion for interlocutory sale 98 shall be served and filed on or before June 3, 2011; the government's reply, if any, shall be served and filed on or before |

### Docket Entries.

| | | |
|---|---|---|
| | | June 10, 2011, after which time the motion 98 will be taken under advisement without oral argument unless requested by one of the parties or deemed necessary by the court. Issued by Hon. Jeremiah J. McCarthy on 5/20/11. Issued by Hon. Jeremiah J. McCarthy on 5/20/11.(LL) (Entered: 05/20/2011) |
| 06/01/2011 | 100 | NOTICE OF ATTORNEY APPEARANCE: Reetuparna Dutta appearing for John E. Maye (Dutta, Reetuparna) (Entered: 06/01/2011) |
| 06/02/2011 | 101 | NOTICE OF ATTORNEY APPEARANCE: Michelle L. Merola appearing for John E. Maye (Merola, Michelle) (Entered: 06/02/2011) |
| 06/03/2011 | 102 | DECLARATION by John E. Maye re 98 MOTION for Interlocutory Sale *and Affidavit in Support of Motion for Interlocutory Sale (with Exhibits A-E) with Memorandum of Law* filed by USA (Attachments: # 1 Exhibit A)(Dutta, Reetuparna) (Entered: 06/03/2011) |
| 06/03/2011 | 103 | MEMORANDUM IN OPPOSITION re 98 MOTION for Interlocutory Sale *and Affidavit in Support of Motion for Interlocutory Sale (with Exhibits A-E) with Memorandum of Law* by John E. Maye (Dutta, Reetuparna) (Entered: 06/03/2011) |
| 06/03/2011 | 104 | Certificate of Service by John E. Maye re 102 Declaration, 103 Memorandum in Opposition (Dutta, Reetuparna) (Entered: 06/03/2011) |
| 06/03/2011 | 105 | MOTION for Issuance of a Rule 17(c) Subpoena by John E. Maye. (Dutta, Reetuparna) (Entered: 06/03/2011) |
| 06/03/2011 | 106 | DECLARATION by John E. Maye re 105 MOTION for Issuance of a Rule 17 (c) Subpoena filed by John E. Maye (Dutta, Reetuparna) (Entered: 06/03/2011) |
| 06/03/2011 | 107 | MEMORANDUM IN SUPPORT re 105 MOTION for Issuance of a Rule 17 (c) Subpoena by John E. Maye (Dutta, Reetuparna) (Entered: 06/03/2011) |
| 06/03/2011 | 108 | Certificate of Service by John E. Maye re 107 Memorandum in Support, 106 Declaration *of R. Dutta in Support of Defendant's Motion for Issuance of a Rule 17(c) Subpoena* (Dutta, Reetuparna) (Entered: 06/03/2011) |
| 06/06/2011 | 109 | ORDER granting 105 motion for issuance of subpoena duces tecum as to John E. Maye (1). Signed by Hon. Jeremiah J. McCarthy on 6/6/11.(DAZ) (Entered: 06/07/2011) |
| 06/10/2011 | 110 | MEMORANDUM/BRIEF *(Reply Memorandum to Defendant's Response in Opposition to Interlocutory Sale)* by USA as to John E. Maye (Kaufman, Richard) (Entered: 06/10/2011) |
| 06/24/2011 | 111 | DECISION AND ORDER denying 98 Motion for an interlocutory sale as to John E. Maye (1). Signed by Hon. Jeremiah J. McCarthy on 6/24/11.(DAZ) (Entered: 06/24/2011) |
| 07/06/2011 | 112 | Minute Entry for proceedings held before William M. Skretny, Chief Judge: Status Conference as to John E. Maye held on 7/6/2011. Government to provide additional patient files to defendant. Issues as to copying and fees regarding same to be resolved. Extensive motions in limine expected. An additional Status Conference is scheduled for 8/11/2011 at 9:00 AM before William M. Skretny, Chief Judge. Time Excluded pursuant to 3161(h)(7)(A). |

## Docket Entries.

| | | |
|---|---|---|
| | | Defendant not present. For the govt. - Joseph Guerra, III. For the deft. - Daniel Oliverio, Reetuparna Dutta. (Court Reporter Michelle McLaughlin.) (MEAL) (Entered: 07/07/2011) |
| 08/11/2011 | 113 | Minute Entry for proceedings held before William M. Skretny, Chief Judge: Status Conference as to John E. Maye held on 8/11/2011. Patient files have been produced. Defendant is in receipt of all documents requested. Extensive motions in limines still expected. All motions in limine are to be filed by 11/14/2011. An additional Status Conference is scheduled for 11/21/2011 at 9:00 AM before William M. Skretny, Chief Judge. Time to be excluded pursuant to 3161(h)(7)(A). Defendant not present. Defendant must be present at next status conference. For the govt. - Joseph Guerra, III. For the deft. - Daniel Oliverio. (Court Reporter Michelle McLaughlin.) (MEAL) (Entered: 08/11/2011) |
| 09/28/2011 | 114 | CJA 20 as to John E. Maye: Authorization to Pay Michelle Merola. Amount: $1, 331.00, Voucher #1109 22 0000 01. (Original Document Maintained in the Financial Department). Signed by Hon. Jeremiah J. McCarthy on 8/2/2011. (DLC) (Entered: 09/29/2011) |
| 09/28/2011 | 115 | CJA 20 as to John E. Maye: Authorization to Pay Daniel C. Oliverio. Amount: $5,302.00, Voucher # 1109 21 000 265. Signed by Hon. Jeremiah J. McCarthy on 8/2/2011.(DLC) (Entered: 10/04/2011) |
| 10/21/2011 | 116 | **TEXT ORDER**<br><br>The status conference scheduled before this Court for November 21, 2011 at 9:00 a.m. is ADJOURNED to November 29, 2011, at 9:00 a.m. This adjournment is necessary because the United States Courthouse will be closed for its move and this time will allow counsel to further consider and develop the anticipated motions in limine previously discussed. Time is therefore excluded through November 29, 2011, pursuant to 18 U.S.C. § 3161(h)(7)(A), and this Court specifically finds that the ends of justice outweigh the best interest of the public and the defendant in a speedy trial. Any objection to this exclusion of time must be filed by October 24, 2011, or will be deemed waived.<br><br>SO ORDERED.<br><br>Issued by William M. Skretny, Chief Judge U.S.D.C. on 10/20/2011.(CMD) (Entered: 10/21/2011) |
| 10/21/2011 | 117 | NOTICE OF ATTORNEY APPEARANCE Mary C. Baumgarten appearing for USA. (Baumgarten, Mary) (Entered: 10/21/2011) |
| 11/08/2011 | 118 | MOTION for Leave to File Excess Pages *for his Motions in Limine* by John E. Maye. (Attachments: #   Declaration of Reetuparna Dutta)(Dutta, Reetuparna) (Entered: 11/08/2011) |
| 11/09/2011 | | E-Filing Notification: Certificate of Service missing electronic signature. Action required: re-file document with proper signature. Re the certificate of |

## 22

### Docket Entries.

|  |  |  |
|---|---|---|
|  |  | service for 118 MOTION for Leave to File Excess Pages. (DLC) (Entered: 11/09/2011) |
| 11/09/2011 | 119 | Certificate of Service by John E. Maye re 118 MOTION for Leave to File Excess Pages *for his Motions in Limine* (Dutta, Reetuparna) (Entered: 11/09/2011) |
| 11/09/2011 | 120 | MOTION for Extension of Time to File *Motions In Limine* by USA as to John E. Maye. (Guerra, Joseph) (Entered: 11/09/2011) |
| 11/09/2011 | 122 | CJA 20 as to John E. Maye: Authorization to Pay Reetupama Dutta. Amount: $4698.00, Voucher # 111 028 0000 98. Signed by Hon. Jeremiah J. McCarthy on 8/2/11.(DLC) (Entered: 11/18/2011) |
| 11/18/2011 | 121 | TEXT ORDER as to John E. Maye. IT HEREBY IS ORDERED THAT Defendant's 118 Motion for Leave to File Excess Pages is GRANTED. FURTHER, that the Government's 120 Motion for Extension of Time to File Motions in Limine is GRANTED. The deadline for Motions in Limine for all parties is extended to 11/21/2011. SO ORDERED. Issued by William M. Skretny, Chief Judge U.S.D.C. on 11/17/2011. (MEAL) (Entered: 11/18/2011) |
| 11/18/2011 | 123 | MOTION to Re-Examine Defendant's Eligibility for Assigned Counsel by USA as to John E. Maye. (Guerra, Joseph) (Entered: 11/18/2011) |
| 11/21/2011 | 124 | MOTION to Seal *Defendant's Motions in Limine* by John E. Maye. (Dutta, Reetuparna) (Entered: 11/21/2011) |
| 11/21/2011 | 125 | MOTION in Limine by John E. Maye. (Dutta, Reetuparna) (Entered: 11/21/2011) |
| 11/21/2011 | 126 | MOTION Motions In Limine by USA as to John E. Maye. (Guerra, Joseph) (Entered: 11/21/2011) |
| 11/21/2011 | 127 | MEMORANDUM IN SUPPORT *of Government's Motions In Limine* by USA as to John E. Maye (Attachments: # 1 Exhibit)(Guerra, Joseph) (Entered: 11/21/2011) |
| 11/22/2011 | 128 | Certificate of Service by John E. Maye (Dutta, Reetuparna) (Entered: 11/22/2011) |
| 11/22/2011 | 129 | RESPONSE to Motion by John E. Maye re 123 MOTION to Re-Examine Defendant's Eligibility for Assigned Counsel (Attachments: # 1 Certificate of Service)(Dutta, Reetuparna) (Entered: 11/22/2011) |
| 11/29/2011 | 133 | Minute Entry for proceedings held before William M. Skretny, Chief Judge: Status Conference as to John E. Maye held on 11/29/2011. Court grants Defendant's 124 Motion to Seal his Motion in Limine. The Clerk of the Court is directed to seal said motion. Responses to Motions in Limine are due 12//30/2011. Replies are due 1/10/2012. Updated Financial Affidavit is due 12/20/2011. Response to 123 Motion is due 1/10/2012. Financial Affidavit to be filed under seal along with response if appropriate A Status Conference/Decision/Setting of trial date is scheduled for 2/13/2012 at 9:00 AM before William M. Skretny, Chief Judge. Government advises that the plea offer will be withdrawn upon the setting of a trial date. Time to be excluded |

**Docket Entries.**

| | | |
|---|---|---|
| | | pursuant to 3161(h)(7)(A) and 3161(h)(1)(D). Defendant present. For the govt. - Joseph Guerra, III, Mary C. Baumgarten. For the deft. - Daniel Oliverio. (Court Reporter Michelle McLaughlin.) (MEAL) (Entered: 12/14/2011) |
| 11/30/2011 | 130 | TEXT ORDER as to John E. Maye. IT HEREBY IS ORDERED THAT, there being no objection by the Government, Defendant's 124 Motion to Seal is GRANTED to protect patient privacy and the secrecy of the grand jury. The Clerk is DIRECTED to file Defendant's Memorandum of Law and the Declaration of Reetuparna Dutta, both dated 11/21/2011, under seal. SO ORDERED. Issued by William M. Skretny, Chief Judge U.S.D.C. on 11/30/2011. (CMD) (Entered: 11/30/2011) |
| 11/30/2011 | 131 | Sealed Document - Memorandum of Law in Support as to John E. Maye. (CMD) (Entered: 11/30/2011) |
| 11/30/2011 | 132 | Sealed Document - Declaration in Support by Reetuparna Dutta as to John E. Maye. (Attachments: (1) Exhibit A, (2) Exhibit B, (3) Exhibit C, (4) Exhibit D, (5) Exhibit E, (6) Exhibit F, (7) Exhibit G, (8) Exhibit H, (9) Exhibit I)(CMD) (Entered: 11/30/2011) |
| 12/15/2011 | 134 | MOTION for Extension of Time to File *Financial Affidavit* by John E. Maye. (Attachments: # 1 Declaration of Reetuparna Dutta, # 2 Certificate of Service) (Dutta, Reetuparna) (Entered: 12/15/2011) |
| 12/20/2011 | 135 | DECLARATION by John E. Maye re 134 MOTION for Extension of Time to File *Financial Affidavit* filed by John E. Maye (Attachments: # 1 Certificate of Service)(Dutta, Reetuparna) (Entered: 12/20/2011) |
| 12/22/2011 | 136 | TEXT ORDER as to John E. Maye. IT HEREBY IS ORDERED THAT, the Defendant's 134 Motion for Extension of Time is GRANTED. Defendant's updated Financial Affidavit is due by 12/30/2011. SO ORDERED. Issued by William M. Skretny, Chief Judge U.S.D.C. on 12/22/2011. (CMD) (Entered: 12/22/2011) |
| 12/30/2011 | 137 | RESPONSE to Motion by USA as to John E. Maye re 125 MOTION in Limine (Attachments: # 1 Exhibit)(Guerra, Joseph) (Entered: 12/30/2011) |
| 12/30/2011 | 138 | MEMORANDUM IN OPPOSITION re 126 MOTION Motions In Limine by John E. Maye (Dutta, Reetuparna) (Entered: 12/30/2011) |
| 12/30/2011 | 139 | DECLARATION by John E. Maye re 138 Memorandum in Opposition filed by John E. Maye (Attachments: # 1 Exhibit A&B)(Dutta, Reetuparna) (Entered: 12/30/2011) |
| 12/30/2011 | 140 | Certificate of Service by John E. Maye re 139 Declaration, 138 Memorandum in Opposition (Dutta, Reetuparna) (Entered: 12/30/2011) |
| 12/30/2011 | 141 | Certificate of Service by John E. Maye *for Declaration in Support of the Continuation of the Assignment of Counsel* (Dutta, Reetuparna) (Entered: 12/30/2011) |
| 12/30/2011 | 142 | Sealed Document as to John E. Maye. (DLC) (Entered: 01/04/2012) |
| 01/10/2012 | 143 | MOTION for Extension of Time to File *Replies to Motions In Limine* by USA as to John E. Maye. (Guerra, Joseph) (Entered: 01/10/2012) |

Case 14-2450, Document 39, 10/13/2015, 1618001, Page40 of 296

| 01/10/2012 | 144 | MEMORANDUM/BRIEF *Notice Regarding Motion to Re-Examine Defendant's Eligibility for Assigned Counsel* by USA as to John E. Maye (Guerra, Joseph) (Entered: 01/10/2012) |
| 01/11/2012 | 145 | RESPONSE in Support by John E. Maye re 125 MOTION in Limine (Attachments: # 1 Certificate of Service)(Dutta, Reetuparna) (Entered: 01/11/2012) |
| 01/11/2012 | 146 | Certificate of Service by John E. Maye re 145 Response in Support *(Corrected)* (Dutta, Reetuparna) (Entered: 01/11/2012) |
| 01/11/2012 | 147 | MEMORANDUM/BRIEF *Government's Reply Submission in Support of Motions In Limine (Docket Items 138, 139)* by USA as to John E. Maye (Attachments: # 1 Exhibit)(Guerra, Joseph) (Entered: 01/11/2012) |
| 01/18/2012 | 148 | TEXT ORDER as to John E. Maye. IT HEREBY IS ORDERED THAT, the Government's 143 Motion for Extension of Time to File Replies to Motions In Limine is GRANTED. Replies to Motions In Limine are now due 1/11/2012. SO ORDERED. Issued by William M. Skretny, Chief Judge U.S.D.C. on 1/18/2012. (CMD) (Entered: 01/18/2012) |
| 02/13/2012 | 149 | Minute Entry for proceedings held before William M. Skretny, Chief Judge: Status Conference as to John E. Maye held on 2/13/2012. Motions are voluminous. oral argument may be necessary. A Status Conference is set for 3/27/2012 at 9:00 AM before William M. Skretny, Chief Judge. Government has withdrawn 123 Motion to Re-examine Defendant's Elgibility for Assigned Counsel. Order to issue denying motion as moot. Government to withdraw plea offer upon setting of trial date. Time to be excluded pursuant to 3161(h)(7)(A) and 3161(h)(1)(D). For the govt. - Joseph Guerra, III, Mary C. Baumgarten. For the deft. - Reetuparna Dutta. Defendant present. (Court Reporter Michelle McLaughlin.)(MEAL) (Entered: 02/13/2012) |
| 02/14/2012 | 150 | TEXT ORDER. IT HEREBY IS ORDERED THAT, in light of the Government's 144 Notice, the Government's 123 Motion to Re-Examine Financial Eligibility is deemed WITHDRAWN. The Clerk of Court is DIRECTED to terminate the 123 motion. SO ORDERED. Issued by William M. Skretny, Chief Judge U.S.D.C. on 2/12/2012. (CMD) (Entered: 02/14/2012) |
| 03/23/2012 | 151 | TEXT ORDER as to John E. Maye<br><br>Before this Court are the parties' 125 126 Motions in Limine. Oral argument is not required and this case will take the motions under advisement at this time. The status conference scheduled for March 27, 2012, is adjourned to April 24, 2012, at 9:00 a.m., at which time counsel shall appear for decision on the motions and a status conference. This Court finds that the ends of justice in reaching a complete and final determination of the motions outweigh the best interest of the public and the defendants in a speedy trial. Time is excluded through April 24, 2012, pursuant to 18 U.S.C. §§ 3161(h)(1)(D), (h)(1)(H), and (h)(7)(A). Any objection to this exclusion must be filed by March 29, 2012, or will be deemed waived.<br><br>SO ORDERED. |

## 25

### Docket Entries.

| | | Issued by William M. Skretny, Chief Judge U.S.D.C. on 3/23/2012. (MEAL) (Entered: 03/23/2012) |
|---|---|---|
| 04/24/2012 | 152 | Minute Entry for proceedings held before Hon. William M. Skretny: Status Conference/Bench Statement as to John E. Maye on 125 126 Motions in Limine held on 4/24/2012. Court grants in part and denies in part Defendant"s 125 Motion in Limine and grants in part and denies in part the Government's 126 Motion in Limine. All for the reasons stated on the record. Jury selection and jury trial is scheduled to commence on 1/15/2013 at 9:30 a.m. Jury selection and trial will commence earlier on 10/18/2012 at 9:30 a.m. if the Court's trial calendar allows. A Status Conference is set for 7/10/2012 at 9:00 AM before William M. Skretny to discuss the actual trial date further. Government to keep plea offer open until 7/10/2012. Time to be excluded through and including 1/15/2013 pursuant to 3161(h)(7)(A) and 3161(h)(7)(B) (iv). For the govt.- Joseph Guerra, III. For the deft. - Reetuparna Dutta. Defendant present. (Court Reporter Michelle McLaughlin.) (MEAL) (Entered: 04/24/2012) |
| 06/15/2012 | 153 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to John E. Maye held on April 24, 2012 before Judge William M. Skretny. Court Reporter/Transcriber Michelle L. McLaughlin, Telephone number 716-332-3560. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 7/3/2012. Redacted Transcript Deadline set for 7/13/2012. Release of Transcript Restriction set for 9/10/2012. (DLC) (Entered: 06/18/2012) |
| 06/19/2012 | 154 | MOTION Increased Compensation for Associate Attorney by John E. Maye. (Attachments: # 1 Declaration of Daniel C. Oliverio, # 2 Certificate of Service) (Oliverio, Daniel) (Entered: 06/19/2012) |
| 07/09/2012 | 155 | TEXT ORDER as to John E. Maye. Presently before this Court is a 154 Motion for Increased Compensation filed by Defendant's appointed lawyer. Defense counsel accepted this case on a retainer basis and later sought appointment under the Criminal Justice Act after exhausting the retainer. Defense counsel now seeks an Order increasing the compensation of associate attorney Dutta from $90 to $110, per hour, and seeks that increase nunc pro tunc to January 1, 2010, just two months after appointment. Given the circumstances of the mid-case appointment which is the exception and not the rule, the motion is DENIED. SO ORDERED. Issued by William M. Skretny, Chief Judge U.S.D.C. on 7/8/2012.(MEAL) (Entered: 07/09/2012) |
| 07/10/2012 | 156 | Minute Entry for proceedings held before Hon. William M. Skretny: Status Conference as to John E. Maye held on 7/10/2012. No pretrial resolution. A Status Conference is set for 7/23/2012 at 9:00 AM before William M. Skretny to discuss the actual trial date further. Time to remain as previously stated. or the govt. - Joseph Guerra, III. For the deft. - Daniel Olvierio. Defendant present. (Court Reporter Michelle McLaughlin.) (MEAL) (Entered: 07/11/2012) |

**Docket Entries.**

| 07/23/2012 | 157 | Minute Entry for proceedings held before William M. Skretny, Chief Judge: Status Conference as to John E. Maye held on 7/23/2012. Trial to remain as scheduled A Final Pretrial Conference is scheduled for 11/16/2012 at 9:00 AM before William M. Skretny. For the govt. - Joseph Guerra, III. For the deft. - Reetuparna Dutta. Defendant present. (Court Reporter Michelle McLaughlin.) (MEAL) (Entered: 07/25/2012) |
|---|---|---|
| 07/25/2012 | 158 | PRETRIAL ORDER as to John E. Maye. Jury Selection is scheduled to begin on 1/15/2013 at 9:30 a.m. A Final Pretrial Conference will be held on 11/16/2012 at 9:00 a.m. Both will take place before the Hon. William M. Skretny. Issued by Chief Judge William M. Skretny on 7/24/2012. (Attachments: # 1 Pretrial Order Attachment)(JCD) (Entered: 07/25/2012) |
| 10/05/2012 | 159 | MOTION for Extension of Time to File *Dates in the Pretrial Order* by John E. Maye. (Attachments: # 1 Declaration of Reetuparna Dutta in Support of Motion for Extension, # 2 Certificate of Service)(Dutta, Reetuparna) (Entered: 10/05/2012) |
| 10/09/2012 | 160 | TEXT ORDER as to John E. Maye. IT HEREBY IS ORDERED, that Defendants 159 unopposed Motion for Extension of Time to File Pretrial Submissions is GRANTED. Trial submissions are due October 19, 2012; Motions in Limine and responses to trial submissions are due November 2, 2012; Motion in Limine responses are due November 9, 2012; Motion in Limine replies and the Joint Statement of the Case are due November 14, 2012. The Final Pretrial Conference will remain as scheduled on November 16, 2012, at 9:00 a.m. Issued by Chief Judge William M. Skretny on 10/9/2012.(JCD) (Entered: 10/09/2012) |
| 10/19/2012 | 161 | TRIAL BRIEF by USA as to John E. Maye (Guerra, Joseph) (Entered: 10/19/2012) |
| 10/19/2012 | 162 | WITNESS LIST by USA as to John E. Maye (Guerra, Joseph) (Entered: 10/19/2012) |
| 10/19/2012 | 163 | EXPERT WITNESS LIST by USA as to John E. Maye (Guerra, Joseph) (Entered: 10/19/2012) |
| 10/19/2012 | 164 | EXHIBIT LIST by USA as to John E. Maye (Guerra, Joseph) (Entered: 10/19/2012) |
| 10/19/2012 | 165 | Proposed Jury Instructions by USA as to John E. Maye (Guerra, Joseph) (Entered: 10/19/2012) |
| 10/19/2012 | 166 | Proposed Voir Dire by USA as to John E. Maye (Guerra, Joseph) (Entered: 10/19/2012) |
| 10/19/2012 | 167 | WITNESS LIST by John E. Maye (Dutta, Reetuparna) (Entered: 10/19/2012) |
| 10/19/2012 | 168 | Proposed Voir Dire by John E. Maye (Dutta, Reetuparna) (Entered: 10/19/2012) |
| 10/19/2012 | 169 | TRIAL BRIEF by John E. Maye (Dutta, Reetuparna) (Entered: 10/19/2012) |
| 10/19/2012 | 170 | EXHIBIT LIST by John E. Maye (Dutta, Reetuparna) (Entered: 10/19/2012) |

**27**

**Docket Entries.**

| | | |
|---|---|---|
| 10/19/2012 | 171 | Certificate of Service by John E. Maye re 167 Witness List, 169 Trial Brief, 170 Exhibit List, 168 Proposed Voir Dire (Dutta, Reetuparna) (Entered: 10/19/2012) |
| 11/01/2012 | 172 | NOTICE by John E. Maye *of Motion for Joint Motion for Extension of Time* (Attachments: # 1 Declaration of Reetuparna Dutta, # 2 Certificate of Service) (Dutta, Reetuparna) (Entered: 11/01/2012) |
| 11/05/2012 | 173 | TEXT ORDER as to John E. Maye. IT HEREBY IS ORDERED, that Defendant's 172 unopposed Motion for Extension of Time to File Pretrial Submissions is GRANTED. Motions in Limine and responses to trial submissions are now due November 16, 2012; Motion in Limine responses and Exhibit Lists are due November 30, 2012; Motion in Limine replies and the Joint Statement of the Case are due December 7, 2012. The Final Pretrial Conference scheduled on November 16, 2012, is ADJOURNED to December 14, 2012, at 9:00 a.m. SO ORDERED. Issued by William M. Skretny, Chief Judge U.S.D.C. on 11/2/2012. (CMD) (Entered: 11/05/2012) |
| 11/06/2012 | 174 | MOTION to Withdraw as Attorney by Daniel C. Oliverio. by John E. Maye. (Attachments: # 1 Declaration of Daniel C. Oliverio, # 2 Certificate of Service) (Oliverio, Daniel) (Entered: 11/06/2012) |
| 11/16/2012 | 175 | Proposed Jury Instructions by John E. Maye (Dutta, Reetuparna) (Entered: 11/16/2012) |
| 11/16/2012 | 176 | *PLEASE DISREGARD, docketed in error** MEMORANDUM IN SUPPORT by John E. Maye (Attachments: # 1 Declaration of Reetuparna Dutta)(Dutta, Reetuparna)Text modified on 11/19/2012 (DZ). (Entered: 11/16/2012) |
| 11/16/2012 | 177 | MOTION in Limine by USA as to John E. Maye. (Guerra, Joseph) (Entered: 11/16/2012) |
| 11/16/2012 | 178 | MEMORANDUM IN SUPPORT *Of Government's Supplemental Motions In Limine* by USA as to John E. Maye (Guerra, Joseph) (Entered: 11/16/2012) |
| 11/16/2012 | 179 | MOTION in Limine by John E. Maye. (Attachments: # 1 Memorandum in Support, # 2 Declaration of Reetuparna Dutta)(Dutta, Reetuparna) (Entered: 11/16/2012) |
| 11/16/2012 | 180 | Certificate of Service by John E. Maye re 179 MOTION in Limine , 175 Proposed Jury Instructions (Dutta, Reetuparna) (Entered: 11/16/2012) |
| 11/16/2012 | | E-Filing Notification: 176 MEMORANDUM by John E. Maye *PLEASE DISREGARD, docketed in error** (DZ) (Entered: 11/19/2012) |
| 11/28/2012 | 181 | TEXT ORDER as to John E. Maye. IT HEREBY IS ORDERED, that the pretrial submission deadlines set forth in this Court's 173 text order are STAYED. Counsel shall appear before this Court on December 14, 2012, at 9:00 a.m. to discuss Defendant's 174 Motion to Withdraw as Attorney. SO ORDERED. Issued by William M. Skretny, Chief Judge U.S.D.C. on 11/27/2012. (CMD) (Entered: 11/28/2012) |
| 12/14/2012 | 182 | |

28

**Docket Entries.**

|  |  |  |
|---|---|---|
|  |  | Letter from John E. Maye, dated 12/6/2012, to William M. Skretny, Chief Judge, U.S.D.C. (CMD) (Entered: 12/14/2012) |
| 12/14/2012 | 183 | Minute Entry for proceedings held before William M. Skretny, Chief Judge: Status Conference as to John E. Maye held on 12/14/2012. Defendants attorney has filed 174 a motion to withdraw. The Court is in receipt of a letter from the defendant dated 12/6/2012 outlining his concerns. The Court directs the clerk to file defendants letter, and directs the parties to attempt to resolve their differences. An additional status conference is scheduled for 12/27/2012 at 9:00 AM before William M. Skretny, Chief Judge. The 1/15/2013 trial date will remain in place. Time was previously excluded through 1/15/2013. For the govt. - Joseph Guerra. For the deft. - Daniel Oliverio. Defendant present. (Court Reporter Michelle McLaughlin.) Modified on 12/14/2012 to correct date of defendants letter (JDK). (Entered: 12/14/2012) |
| 12/27/2012 | 184 | Minute Entry for proceedings held before William M. Skretny, Chief Judge: Status Conference as to John E. Maye held on 12/274/2012. Defense counsel reports that impediment to representation still remains. Court to assign independent counsel to meet with defendant. Defendant did not appear today due to weather conditions. A Status Conference is scheduled for 1/4/2013 at 9:00 AM before William M. Skretny, Chief Judge. For the govt. - Joseph Guerra, III. For the deft. - Daniel Oliverio. (Court Reporter Michelle McLaughlin.) (MEAL) (Entered: 12/27/2012) |
| 01/02/2013 | 185 | ORDER as to John E. Maye APPOINTING Timothy Hoover, Esq., to represent the Defendant under the Criminal Justice Act U.S.C. § 3006A, as specified. FURTHER, Timothy Hoover, Esq. shall meet and consult with Defendant John E. Maye and trial Counsel, Daniel Oliverio, as soon as practicable. FURTHER, a Status Conference is set for 1/4/2013 at 9:00 AM before William M. Skretny, Chief Judge, U.S.D.C. Signed by William M. Skretny, Chief Judge U.S.D.C. on 12/28/2012. (CMD) (Entered: 01/02/2013) |
| 01/02/2013 |  | Attorney update in case as to John E. Maye: Attorney Timothy W. Hoover. (CMD) (Entered: 01/02/2013) |
| 01/04/2013 | 186 | Minute Entry for proceedings held before William M. Skretny, Chief Judge: Status Conference as to John E. Maye held on 1/4/2013. Independent counsel Timothy Hoover, Esq. met with Attorney Oliverio and defendant prior to today's appearance. Matters at issue thoroughly discussed. Defendant has no objection to Attorney Oliverio's continued representation. Court directs same as specified on the record. Defendant requests adjournment of trial scheduled for 1/15/2013. Court grants request. Rather than setting a new trial date today, the Government requests the scheduling of an additional status conference in approximately a week to allow counsel time to determine availability of witnesses/experts at trial. Attorney Hoover to stay on as backup counsel pending next conference. Court directs defendant to resume communications with his attorneys. Government to provide proposed trial dates to Court and counsel as soon as available -- if confirmed prior to the next scheduled appearance. A Status Conference is scheduled for 1/14/2013 at 9:00 AM before William M. Skretny, Chief Judge. For the govt. - Joseph Guerra, III. For the |

Case 14-2450, Document 39, 10/13/2015, 1618001, Page45 of 296

## 29

### Docket Entries.

| | | |
|---|---|---|
| | | deft. - Daniel Oliverio. Independent Counsel -Timothy Hoover. (Court Reporter Michelle McLaughlin.) (CMD) (Entered: 01/07/2013) |
| 01/14/2013 | 187 | Minute Entry for proceedings held before William M. Skretny, Chief Judge: Status Conference as to John E. Maye held on 1/14/2013. Defendant to considered new plea proposal and discuss same with counsel, Independent counsel Timothy Hoover, Esq. and his family. Attorney Hoover to stay on as independent counsel pending next conference. A Status Conference is scheduled for 1/28/2013 at 9:00 AM before William M. Skretny, Chief Judge. Time to be excluded pursuant to 3161(h)(7)(A) and 3161(h)(7)(B)(iv). For the govt. - Joseph Guerra, III. For the deft. - Daniel Oliverio. Independent Counsel -Timothy Hoover. (Court Reporter Michelle McLaughlin.) (MEAL) (Entered: 01/17/2013) |
| 01/22/2013 | 188 | MOTION to Adjourn Status Conference by John E. Maye. (Attachments: # 1 Declaration of Reetuparna Dutta, Esq. in Support of Adjournment of Status Conference, # 2 Certificate of Service)(Dutta, Reetuparna) (Entered: 01/22/2013) |
| 01/25/2013 | 189 | TEXT ORDER as to John E. Maye. IT HEREBY IS ORDERED THAT, Defendant's 188 Motion to Adjourn the Status Conference scheduled for 1/28/2013 at 9:00 AM before William M. Skretny, Chief Judge is GRANTED. A Status Conference is now scheduled for 2/4/2013 at 9:00 a.m. Time to be excluded pursuant to 3161(h)(7)(A) and this Court finds that the ends of justice in allowing Defendant to use this time to further consult with trial counsel and independent counsel outweighs the best interest of the public and defendant in a speedy trial. SO ORDERED. Issued by William M. Skretny, Chief Judge U.S.D.C. on 1/24/2013. (MEAL) (Entered: 01/25/2013) |
| 02/04/2013 | 190 | Minute Entry for proceedings held before William M. Skretny, Chief Judge: Status Conference as to John E. Maye held on 2/4/2013. Defendant to proceed to trial. Trial proof estimated at 3 weeks. Jury selection and jury trial is scheduled to commence on 9/17/2013 at 9:30 a.m. A Final Pretrial Conference is scheduled for 5/30/2013 at 9:00 a.m. A Final Status Conference before trial is scheduled for 9/16/2013 at 9:00 a.m. Responses to Motions in Limine are due 3/18/2013. Replies are due 3/28/2013. Time to be excluded pursuant to 3161(h)(7)(A). Court relieves Timothy Hoover as Independent counsel. Defendant present and to remain on same terms and conditions of release. For the govt. - Joseph Guerra, III. For the deft. - Daniel Oliverio. Independent Counsel -Timothy Hoover. (Court Reporter Michelle McLaughlin.) (MEAL) Modified on 2/6/2013 to correct. (MEAL). Modified on 2/7/2013 (MEAL). (Entered: 02/06/2013) |
| 02/06/2013 | | E-Filing Notification: 190 Minute Entry for proceedings held before William M. Skretny, Chief Judge: Status Conference as to John E. Maye held on 2/4/2013. Defendant to proceed to trial. Trial proof estimated at 3 weeks. Jury selection and jury trial is scheduled to commence on 9/17/2013 at 9:30 a.m. A Final Pretrial Conference is scheduled for 5/30/2013 at 9:00 a.m. A Final Status Conference before trial is scheduled for 9/16/2013 at 9:00 a.m. Responses to Motions in Limine are due 3/18/2013. Replies are due 3/28/2013. A Status Conference is scheduled for 1/28/2013 at 9:00 AM before William M. |

**Docket Entries.**

| | | |
|---|---|---|
| | | Skretny, Chief Judge. Time to be excluded pursuant to 3161(h)(7)(A). Court relieves Timothy Hoover as Independent counsel. Defendant present and to remain on same terms and conditions of release. For the govt. - Joseph Guerra, III. For the deft. - Daniel Oliverio. Independent Counsel -Timothy Hoover. (Court Reporter Michelle McLaughlin.) (MEAL) Modified on 2/6/2013 to correct. (MEAL). (Entered: 02/06/2013) |
| 02/25/2013 | 191 | MOTION by John E. Maye to File Defendant's Ex Parte Motion for Additional CJA Funds Under Seal (Dutta, Reetuparna) eVENT Modified on 2/26/2013 (DZ). (Entered: 02/25/2013) |
| 02/26/2013 | | E-Filing Notification: 191 **EVENT modified to indicate document is a MOTION (DZ) (Entered: 02/26/2013) |
| 03/06/2013 | 192 | Sealed Document as to John E. Maye. (DZ) (Entered: 03/07/2013) |
| 03/06/2013 | 193 | Sealed Document as to John E. Maye. (DZ) (Entered: 03/07/2013) |
| 03/06/2013 | 194 | Sealed Document as to John E. Maye. (DZ) (Entered: 03/07/2013) |
| 03/06/2013 | 195 | Sealed Document as to John E. Maye. (DZ) (Entered: 03/07/2013) |
| 03/18/2013 | 196 | RESPONSE in Opposition by John E. Maye re 177 MOTION in Limine (Attachments: # 1 Certificate of Service)(Dutta, Reetuparna) (Entered: 03/18/2013) |
| 03/18/2013 | 197 | RESPONSE to Motion by USA as to John E. Maye re 179 MOTION in Limine (Attachments: # 1 Exhibit)(Guerra, Joseph) (Entered: 03/18/2013) |
| 03/28/2013 | 198 | MEMORANDUM/BRIEF *Response to Defendant's Proposed Jury Instructions (Docket Item 175)* by USA as to John E. Maye (Guerra, Joseph) (Entered: 03/28/2013) |
| 03/28/2013 | 199 | RESPONSE in Support by John E. Maye re 179 MOTION in Limine (Attachments: # 1 Certificate of Service)(Dutta, Reetuparna) (Entered: 03/28/2013) |
| 03/28/2013 | 200 | MEMORANDUM/BRIEF *Response to Defendant's Memorandum of Law in Opposition to the Government's Motions in Limine (Docket Item 196)* by USA as to John E. Maye (Guerra, Joseph) (Entered: 03/28/2013) |
| 04/01/2013 | 201 | MOTION in Limine *to Respond to Government's Objections to the Defense's Proposed Jury Charges* by John E. Maye. (Attachments: # 1 Declaration of Reetuparna Dutta, # 2 Certificate of Service)(Dutta, Reetuparna) (Entered: 04/01/2013) |
| 04/09/2013 | 202 | TEXT ORDER as to John E. Maye. IT HEREBY IS ORDERED THAT, Defendant's 201 Motion for Leave to Respond to the Government's 198 Response to Defendant's Proposed Jury Instructions is GRANTED. Defendant shall file his response by April 19, 2013. SO ORDERED. Issued by William M. Skretny, Chief Judge U.S.D.C. on 4/8/2013. (CMD) (Entered: 04/09/2013) |
| 04/19/2013 | 203 | MEMORANDUM IN SUPPORT re 175 Proposed Jury Instructions by John E. Maye (Attachments: # 1 Certificate of Service)(Dutta, Reetuparna) (Entered: 04/19/2013) |

Case 14-2450, Document 39, 10/13/2015, 1618001, Page47 of 296

| | | |
|---|---|---|
| 05/21/2013 | 204 | ADJOURNMENT NOTICE as to John E. Maye. The Final Pretrial Conference scheduled for 5/30/2013 at 9:00 AM before William M. Skretny, Chief Judge is ADJOURNED to 6/5/2013 at 10:00 AM. (MEAL) (Entered: 05/21/2013) |
| 05/23/2013 | 205 | TEXT ORDER as to John E. Maye<br><br>This Court previously authorized one (1) interim CJA 20 voucher payment for Attorneys' Dutta, Olvierio and Merola. This Court is now in receipt of six additional (6) interim CJA 20 vouchers in this case.This case was referred to Magistrate Judge McCarthy on 1/7/2009. That referral order remains in full force and effect. IT HEREBY IS ORDERED that to avoid any anticipated or appearance of trial conflicts or related issues, at/after trial. Judge McCarthy shall review the submitted interim vouchers. He shall consider the pre-approved budget, the circumstances associated with the interim vouchers herein and submit a recommendation to this Court.<br><br>This Court notes that defense counsel in this case was initially fully retained, denied in its motion to withdraw and assigned as CJA counsel.<br><br>Issued by William M. Skretny, Chief Judge on 5/23/2013.<br><br>(MEAL) (Entered: 05/23/2013) |
| 06/05/2013 | 206 | NOTICE OF ATTORNEY APPEARANCE Frank T. Pimentel appearing for USA. (Pimentel, Frank) (Entered: 06/05/2013) |
| 06/05/2013 | 207 | Minute Entry for proceedings held before William M. Skretny, Chief Judge: Final Pretrial Conference as to John E. Maye held on 6/5/2013. No plea discussions ongoing. Hearing for decisions on motions in limine is set for 7/24/2013 at 9:00 AM before William M. Skretny, Chief Judge. Final Status conference previously set is scheduled for 9/16/2013 at 9:00 AM. Time continues to be excluded. Defendant not present. For the govt. - Mary C. Baumgarten. For the deft. - Daniel Oliverio, Reetuparna Dutta. (Court Reporter Michelle McLaughlin.) (CMD) (Entered: 06/06/2013) |
| 06/05/2013 | | Set/Reset Hearings as to John E. Maye: Final Status Conference set for 9/16/2013 at 9:00 AM before William M. Skretny, Chief Judge. (CMD) (Entered: 06/12/2013) |
| 06/06/2013 | | Attorney update in case as to John E. Maye. Attorney Joseph M. Guerra, III terminated. (DLC) (Entered: 06/06/2013) |
| 07/24/2013 | 208 | Minute Entry for proceedings held before William M. Skretny, Chief Judge: Decision on Motions in Limine as to defendant John Maye held on 7/24/2013. Court issued Statement from Bench resolving Defendant's 179 and Government's 177 Motions in Limine, all reasons stated on the record. Case has been reassigned to AUSAs Robert Moscati and Frank Pimintel. Jury Selection has been rescheduled to 9/18/2013 at 9:30 AM. Joint Statement and any additional filings or motions are due by 8/16/2013. A Court Technology Conference to be scheduled with CRD. A Status Conference is scheduled for 8/21/2013 at 9:00 AM before William M. Skretny, Chief Judge. Time to be excluded through trial date pursuant to 3161(H)(7)(A) and 3161(H)(7)(B)(iv). |

Case 14-2450, Document 39, 10/13/2015, 1618001, Page48 of 296

**Docket Entries.**

| | | |
|---|---|---|
| | | Defendant to remain released on same terms and conditions. For the pltf. - Mary C. Baumgarten, Robert Moscati and Frank Pimintel. For the deft. - Reetuparna Dutta. (Court Reporter - Michelle McLaughlin) (CSS - SS) (Entered: 07/25/2013) |
| 07/24/2013 | | Terminate Deadlines and Hearings as to John E. Maye: (CSS - SS) (Entered: 07/25/2013) |
| 07/24/2013 | | Set/Reset Hearings as to John E. Maye: Status Conference set for 8/21/2013 09:00 AM before Hon. William M. Skretny. (CSS - SS) (Entered: 07/29/2013) |
| 07/26/2013 | 209 | NOTICE OF ATTORNEY APPEARANCE Mary C. Baumgarten appearing for USA. (Baumgarten, Mary) (Entered: 07/26/2013) |
| 07/31/2013 | 210 | NOTICE OF ATTORNEY APPEARANCE Robert C. Moscati appearing for USA. (Moscati, Robert) (Entered: 07/31/2013) |
| 08/01/2013 | 211 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to John E. Maye held on 7/24/13 before Judge William M. Skretny. Court Reporter/Transcriber Michelle L. McLaughlin, Telephone number (716) 332-3560. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 8/22/2013. Redacted Transcript Deadline set for 9/3/2013. Release of Transcript Restriction set for 10/30/2013. (DZ) (Entered: 08/01/2013) |
| 08/02/2013 | 212 | SCHEDULING NOTICE as to John E. Maye. A Courtroom Technology Conference is scheduled for 8/13/2013 at 10:00 AM in the Buffalo Courtroom, U.S. Courthouse, 2 Niagara Square, Buffalo, NY 14202. (MEAL) (Entered: 08/02/2013) |
| 08/05/2013 | 213 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to John E. Maye held on July 24, 2013 before Judge William M. Skretny. Court Reporter/Transcriber Michelle McLaughlin, Telephone number 716-332-3560. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 8/26/2013. Redacted Transcript Deadline set for 9/5/2013. Release of Transcript Restriction set for 11/4/2013. (DLC) (Entered: 08/05/2013) |
| 08/08/2013 | 214 | MOTION for Extension of Time to File *(Joint Statement of the Case and any Supplemental Trial Submissions)* by USA as to John E. Maye. (Moscati, Robert) (Entered: 08/08/2013) |
| 08/09/2013 | 215 | TEXT ORDER as to John E. Maye. Before this Court is the government's 214 Motion to Adjourn the deadline for the Joint Statement of the Case and any Supplemental Trial Submissions, from August 16, 2013, to August 23, 2013. A status conference is currently scheduled before this Court on August 21, 2013, at 9:00 a.m. The government's motion is GRANTED to the extent it seeks an extension of the August 16 deadline, but the extension will be only until August 20, 2013, at Noon, so that the parties and this Court have the benefit of the filings for purposes of discussion at the August 21, 2013 status conference. |

Case 14-2450, Document 39, 10/13/2015, 1618001, Page49 of 296

| | | |
|---|---|---|
| | | SO ORDERED. Issued by William M. Skretny, Chief Judge U.S.D.C. on 8/8/2013. (CMD) (Entered: 08/09/2013) |
| 08/14/2013 | 216 | MOTION in Limine *for Briefing Schedule* by John E. Maye. (Attachments: # 1 Declaration of Reetuparna Dutta, # 2 Certificate of Service)(Dutta, Reetuparna) (Entered: 08/14/2013) |
| 08/16/2013 | 217 | TEXT ORDER |
| | | Before this Court is Defendant's 216 Motion for a Briefing Schedule to determine whether the government will be permitted to introduce evidence relating to the "life circumstances" of Defendant's patients. The motion is DENIED AS MOOT. The government has repeatedly represented that it will not introduce this "life circumstances" evidence in its case-in-chief. And this Court has twice ruled, based on the government's representations, that such evidence would be permitted only on cross-examination or rebuttal if Defendant opened the door. Those rulings stand. Any change in the government's position at this late date is unfairly prejudicial to Defendant and the government is PRECLUDED from introducing "life circumstances" evidence in its direct case. |
| | | Moreover, the government has advised that one of its prosecutors is scheduled to leave for military duty during the course of the trial. To the extent the government seeks to go down during that time or to adjourn the trial, that request is DENIED. While this Court is sympathetic to the government's conflict, the prosecutor at issue was recently assigned to this case with full knowledge of the trial date. |
| | | Issued by William M. Skretny, Chief Judge on 8/16/2013.(MEAL) (Entered: 08/16/2013) |
| 08/20/2013 | 218 | Trial Document by USA as to John E. Maye *Proposed Joint Statement of the Case* (Pimentel, Frank) (Entered: 08/20/2013) |
| 08/20/2013 | 219 | WITNESS LIST by USA as to John E. Maye (Moscati, Robert) (Entered: 08/20/2013) |
| 08/20/2013 | 220 | Trial Document by USA as to John E. Maye *Revised Proposed Joint Statement of the Case* (Pimentel, Frank) (Entered: 08/20/2013) |
| 08/20/2013 | 221 | EXHIBIT LIST by USA as to John E. Maye (Moscati, Robert) (Entered: 08/20/2013) |
| 08/20/2013 | 222 | Trial Document by USA as to John E. Maye *Revised Proposed Joint Statement of the Case* (Pimentel, Frank) (Entered: 08/20/2013) |
| 08/20/2013 | 223 | WITNESS LIST by John E. Maye (Attachments: # 1 Certificate of Service) (Dutta, Reetuparna) (Entered: 08/20/2013) |
| 08/20/2013 | 224 | EXHIBIT LIST by John E. Maye (Attachments: # 1 Certificate of Service) (Dutta, Reetuparna) (Entered: 08/20/2013) |
| 08/21/2013 | 225 | Minute Entry for proceedings held before William M. Skretny, Chief Judge: Status Conference as to John Maye held on 8/21/2013. No plea discussions |

have occurred. Parties are preparing for jury selection and trial scheduled to commence on 9/18/2013 at 9:30 AM. AUSA Moscati confirms that his military duty will not effect his position as lead prosecutor. Joint Statement of the Case has been filed. Counsel to work on stipulations. Counsel will be permitted to voir dire witness Andrew Wirfel outside the presence of the jury to ascertain whether his testimony will be considered expert. Court advises that jurors will be permitted to take notes and ask questions of the expert witnesses should they elect to do so. A Final Status Conference is set for 9/16/2013 at 9:00 AM before William M. Skretny, Chief Judge. Time has been excluded through trial date. Defendant to remain released on same terms and conditions. For the govt. - Robert Moscati and Frank Pimintel. For the deft. - Daniel Oliverio and Reetuparna Dutta. (Court Reporter Michelle McLaughlin.)(JDK) (Entered: 08/21/2013)

| | | |
|---|---|---|
| 09/11/2013 | 226 | EXHIBIT LIST by John E. Maye (Attachments: # 1 Certificate of Service) (Dutta, Reetuparna) (Entered: 09/11/2013) |
| 09/11/2013 | 227 | EXHIBIT LIST by John E. Maye (Attachments: # 1 Certificate of Service) (Dutta, Reetuparna) (Entered: 09/11/2013) |
| 09/16/2013 | 228 | TEXT ORDER as to John E. Maye<br><br>At the final status conference held before this Court on September 16, 2013, Defendant moved for further clarification of this Court's pretrial rulings as it pertains to the admissibility of (1) Defendant's previous arson conviction and (2) Defendant's previous suspension from the practice of medicine. Defendant also seeks permission to redact defense Exhibits A and B to remove what he argues are unfairly prejudicial references to his suspension.<br><br>In April 2012, this Court addressed the admissibility of Defendant's arson conviction and suspension. First, the government explicitly agreed not to introduce evidence of either in its direct case, and based on that representation, this Court precluded evidence of both the conviction and suspension from the government's direct case. As to the suspension, this Court ruled that it could not assess the relevancy or prejudicial nature of that evidence until hearing the trial testimony. As to the conviction, this Court precluded use of the conviction for impeachment purposes (if Defendant testified) under Rule 609, but it noted that it would revisit its ruling if the Defendant's testimony specifically opened the door to making evidence of his arson conviction probative. These rulings are as definitive as this Court can make them at this time. Even with a proffer, this Court's rulings would be contingent on Defendant's trial testimony and whether he opens the door. Consequently, to the extent Defendant requests reconsideration or further elaboration of the previous rulings, that request is DENIED.<br><br>SO ORDERED.<br><br>Issued by William M. Skretny, Chief Judge U.S.D.C. on 9/16/2013.<br><br>(MEAL) (Entered: 09/16/2013) |

**35**

**Docket Entries.**

| | | |
|---|---|---|
| 09/16/2013 | 229 | CORRECTED TEXT ORDER as to John E. Maye |

At the final status conference held before this Court on September 16, 2013, Defendant moved for further clarification of this Court's pretrial rulings as it pertains to the admissibility of (1) Defendant's previous arson conviction and (2) Defendant's previous suspension from the practice of medicine. Defendant also seeks permission to redact defense Exhibits A and B to remove what he argues are unfairly prejudicial references to his suspension.

In April 2012, this Court addressed the admissibility of Defendant's arson conviction and suspension. First, the government explicitly agreed not to introduce evidence of either in its direct case, and based on that representation, this Court precluded evidence of both the conviction and suspension from the governments direct case. As to the suspension, this Court ruled that it could not assess the relevancy or prejudicial nature of that evidence until hearing the trial testimony. As to the conviction, this Court precluded use of the conviction for impeachment purposes (if Defendant testified) under Rule 609, but it noted that it would revisit its ruling if the Defendant's testimony specifically opened the door to making evidence of his arson conviction probative. These rulings are as definitive as this Court can make them at this time. Even with a proffer, this Court's rulings would be contingent on Defendant's trial testimony and whether he opens the door. Consequently, to the extent Defendant requests reconsideration or further elaboration of the previous rulings, that request is DENIED.

This Court also has before it Defendant's request to redact defense Exhibits A and B, which are letters exchanged between Defendant and the NY State Department of Health. Defendant maintains that these letters should be redacted to eliminate what Defendant argues are unfairly prejudicial references to his suspension. This Court has reviewed both the unredacted and redacted versions of Exhibits A and B and finds no cause to redact either exhibit. The letters do not specifically reference Defendant's suspension; they reference only Defendant's resumption of the active practice of medicine. This is not unfairly prejudicial to Defendant and there is no further cause to redact the documents. Defendant's request to redact these two exhibits is therefore DENIED. Should Defendant introduce these unredacted letters into evidence, it will NOT constitute "opening the door," such that the government could introduce evidence of Defendant's suspension, as discussed above.

SO ORDERED.

Issued by William M. Skretny, Chief Judge U.S.D.C. on 9/16/2013.

(MEAL) (Entered: 09/16/2013)

| | | |
|---|---|---|
| 09/16/2013 | 230 | TEXT ORDER as to John E. Maye |

Due to Naturalization proceedings that conflict with the scheduled jury selection in this case,

Case 14-2450, Document 39, 10/13/2015, 1618001, Page52 of 296

IT HEREBY IS ORDERED THAT, jury selection in this case will now take place on Friday, September 20, 2013 at 9:30 a.m. before William M. Skretny, Chief Judge. Counsel for the parties and the defendant shall appear at 9:15 a.m.

SO ORDERED.

Issued by William M. Skretny, Chief Judge U.S.D.C. on 9/16/2013.

(MEAL) (Entered: 09/16/2013)

| | | |
|---|---|---|
| 09/16/2013 | 231 | WITNESS LIST by USA as to John E. Maye (Moscati, Robert) (Entered: 09/16/2013) |
| 09/16/2013 | 232 | Minute Entry for proceedings held before William M. Skretny, Chief Judge: Final Status Conference as to John Maye held on 9/16/2013. Jury selection re-scheduled to 9/18/2013 at 9:30 AM with opening statements and proof on 9/19/2013 at 9:30 AM. (Jury Selection was thereafter re-scheduled to Friday, 9/19/2013 at 9:30 AM with counsel and the defendant to report at 9:15 AM.) Parties are preparing for Jury Selection and Jury Trial scheduled to commence on 9/18/2013 at 9:30 AM. Defense counsel has concerns regarding evidentiary issues with respect to defendants previous arson conviction and previous suspension from practice and requests clarification of the Court's prior ruling. The government objects, and states that this issue has already been briefed and argued. The Court will take the issue under advisement. The Government sets forth previous plea offer vs. defendant's sentencing guideline exposure in the event of a conviction. The defendant to reconsider pre-trial resolution. The Court sets forth the following abbreviated trial days: Monday 9/23/2013, 1/2 day until approximately 1:00 PM; Tuesday 9/24/2013, down day; Wednesday 9/25/2013, 1/2 day approximately 1:00 PM until 5:00 PM; Monday 9/30/2013, down day; Wednesday 10/9/2013, trial proceedings until approximately 3:00 PM; Monday 10/14/2013, Federal Holiday; Wednesday 10/16/2013, 1/2 day; Thursday 10/17/2013 down day. For the Govt. - Robert Moscati, Frank Pimentel. For the Deft. - Daniel Oliverio, Reetuparna Dutta. (Court Reporter Michelle McLaughlin) (JDK) (Entered: 09/17/2013) |
| 09/19/2013 | 233 | EXHIBIT LIST by USA as to John E. Maye (Pimentel, Frank) (Entered: 09/19/2013) |
| 09/20/2013 | 235 | Minute Entry for proceedings held before William M. Skretny, Chief Judge: Jury Selection as to John Maye held on 9/20/2013. Government dismissing communication facilities charge as an object of the conspiracy from Count 1 of the Indictment. Redacted indictment to be emailed to the Court. Preliminary oath given to jury. 12 jurors and 4 alternates selected. Jury Trial is scheduled to commence on 9/23/2013 at 9:00 a.m. Defendant present and to remain on release on same conditions. For the govt. - Robert Moscati, Frank Pimental. For the deft. - Daniel Oliverio, Reetuparna Dutta. (Court Reporter Michelle McLaughlin).(MEAL) (Entered: 09/23/2013) |
| 09/23/2013 | 234 | Sealed Document as to John E. Maye. (DZ) (Entered: 09/23/2013) |
| 09/23/2013 | 236 | Minute Entry for proceedings held before William M. Skretny, Chief Judge: Jury Trial as to John Maye held on 9/23/2013. Jurors sworn. Preliminary |

Case 14-2450, Document 39, 10/13/2015, 1618001, Page53 of 296

| | | |
|---|---|---|
| | | Instructions given. Opening Statements given. Government Witness: Joseph Cowell. Government Exhibits entered into evidence: 153A, 46, 47, 48. Jury Trial is scheduled to continue on at 9/25/2013 at 1:00 p.m. Defendant present and to remain on release on same conditions. For the govt. - Robert Moscati, Frank Pimental. For the deft. - Daniel Oliverio, Reetuparna Dutta. (Court Reporter Michelle McLaughlin.) (MEAL) (Entered: 09/23/2013) |
| 09/24/2013 | 237 | MOTION in Limine *to Preclude Evidence Regarding State Licensure Requirements* by John E. Maye. (Attachments: # 1 Memorandum in Support, # 2 Declaration of Reetuparna Dutta, # 3 Exhibit A, # 4 Certificate of Service) (Dutta, Reetuparna) (Entered: 09/24/2013) |
| 09/25/2013 | 238 | Minute Entry for proceedings held before William M. Skretny, Chief Judge: Jury Trial as to John E. Maye held on 9/25/2013. Government Witnesses: Joseph Cowell. Government Exhibits entered into evidence: 5A, 18A, 82A, 89A. Jury Trial is scheduled to continue on 9/26/2013 at 9:30 a.m. Defendant present and to remain on release on same conditions. For the govt. - Robert Moscati, Frank Pimental. For the deft. - Daniel Oliverio, Reetuparna Dutta. (Court Reporter Michelle McLaughlin.) (MEAL) (Entered: 10/01/2013) |
| 09/26/2013 | 239 | Minute Entry for proceedings held before William M. Skretny, Chief Judge: Jury Trial as to John E. Maye held on 9/26/2013. Government Witnesses: Mitchell Frank, Carrie Dooley, Terry McGrath, Amanda Kobornick, Aimee Carroll, Deborah Warne, Norma Nicosia, James Husted.. Government Exhibits entered into evidence: 26A, 73A, 80A, 80B, 115, 120, 126, 145, 144, 156, 401F. Jury Trial is scheduled to continue on 9/27/2013 at 9:30 a.m. Defendant present and to remain on release on same conditions. For the govt. - Robert Moscati, Frank Pimental. For the deft. - Daniel Oliverio, Reetuparna Dutta. (Court Reporter Michelle McLaughlin.) (MEAL) (Entered: 10/01/2013) |
| 09/27/2013 | 240 | Minute Entry for proceedings held before William M. Skretny, Chief Judge: Jury Trial as to John E. Maye held on 9/27/2013. Government Witnesses: James Husted, Joseph Nacca. Government Exhibits entered into evidence: 194, 195 and 196. Jury Trial is scheduled to continue on 10/1/2013 at 9:30 a.m. Defendant present and to remain on release on same conditions. For the govt. - Frank Pimental. For the deft. - Daniel Oliverio, Reetuparna Dutta. (Court Reporter Michelle McLaughlin.) (MEAL) (Entered: 10/01/2013) |
| 10/01/2013 | 242 | Minute Entry for proceedings held before William M. Skretny, Chief Judge: Jury Trial as to John E. Maye held on 10/1/2013. Government Witnesses: Sandra Rennick, Missy Jasinski. Government Exhibits entered into evidence: 284, 286, 288. Jury Trial is scheduled to continue on 10/2/2013 at 1:00 p.m. Defendant present and to remain on release on same conditions. For the govt. - Frank Pimental, Robert Moscati. For the deft. - Daniel Oliverio, Reetuparna Dutta. (Court Reporter Michelle McLaughlin.) (MEAL) Modified on 10/4/2013 to correct. (MEAL). (Entered: 10/04/2013) |
| 10/02/2013 | 241 | MOTION in Limine *To Preclude Expert Testimony* by John E. Maye. (Attachments: # 1 Memorandum in Support, # 2 Declaration of Daniel C. Oliverio, # 3 Exhibit A, # 4 Exhibit B, # 5 Exhibit C, # 6 Exhibit D, # 7 Exhibit E, # 8 Certificate of Service)(Oliverio, Daniel) (Entered: 10/02/2013) |

**Docket Entries.**

| | | |
|---|---|---|
| 10/02/2013 | 243 | Minute Entry for proceedings held before William M. Skretny, Chief Judge: Jury Trial as to John E. Maye held on 10/2/2013. Court resolves Defendant's 241 Motion in Limine to Preclude. Stipulation (Court Exhibit 1) read to the jury. Government Witnesses: Andrew Wirfel, Theodore Parran. Government Exhibits entered into evidence: 113, 114, 116-119, 121-125, 127-143, 295, 296, 297, 298, 300. Jury Trial is scheduled to continue on 10/3/2013 at 1:00 p.m. Defendant present and to remain on release on same conditions. For the govt. - Frank Pimental, Robert Moscati. For the deft. - Daniel Oliverio, Reetuparna Dutta. (Court Reporter Michelle McLaughlin.) (MEAL) (Entered: 10/04/2013) |
| 10/02/2013 | 244 | Trial Document as to John E. Maye: Court Exhibit 1. (MEAL) (Entered: 10/04/2013) |
| 10/03/2013 | 245 | Minute Entry for proceedings held before William M. Skretny, Chief Judge: Jury Trial as to John E. Maye held on 10/3/2013. Government Witness: Theodore Parran. Government Exhibits entered into evidence: 308. Government rests. Defendant moves pursuant to Rule 29 as to all counts of the indictment. Court grants motion as to Count 1 (conspiracy) and denies as to all other counts. All for the reasons stated on the record. Jury Trial is scheduled to continue on 10/4/2013 at 10:00 a.m. Defendant present and to remain on release on same conditions. For the govt. - Frank Pimental, Robert Moscati. For the deft. - Daniel Oliverio, Reetuparna Dutta. (Court Reporter Michelle McLaughlin.) (MEAL) (Entered: 10/04/2013) |
| 10/04/2013 | | E-Filing Notification: 242 Minute Entry for proceedings held before William M. Skretny, Chief Judge: Jury Trial as to John E. Maye held on 10/1/2013. Government Witnesses: Sandra Rennick, Missy Jasinski. Government Exhibits entered into evidence: 284, 286, 288. Jury Trial is scheduled to continue on 10/2/2013 at 1:00 p.m. Defendant present and to remain on release on same conditions. For the govt. - Frank Pimental, Robert Moscati. For the deft. - Daniel Oliverio, Reetuparna Dutta. (Court Reporter Michelle McLaughlin.) (MEAL) Modified on 10/4/2013 to correct. (MEAL). (Entered: 10/04/2013) |
| 10/04/2013 | 246 | Minute Entry for proceedings held before William M. Skretny, Chief Judge: Jury Trial as to John E. Maye held on 10/4/2013. Defendant rests. Charge Conference held. Closing arguments given. Jury charge given. If necessary, Court to decide forfeiture. Jury Trial is scheduled to continue on 10/7/2013 at 8:45 a.m. Defendant present and to remain on release on same conditions. For the govt. - Frank Pimental, Robert Moscati. For the deft. - Daniel Oliverio, Reetuparna Dutta. (Court Reporter Michelle McLaughlin.) (MEAL) (Entered: 10/07/2013) |
| 10/07/2013 | 248 | Minute Entry for proceedings held before William M. Skretny, Chief Judge: Jury Trial as to John E. Maye held on 10/7/2013. Alternates released but not discharged from service. CSO sworn. Deliberations commence. Notes received. Lunch ordered. Exhibit 80B played for jury. Exhibits 5A, 73A, 82A, 89A and 153A given to jury. (Later returned to the government.) Jurors #9 and #5 queried in open Court and thereafter discharged from service. Courtroom deputy to contact alternate 4 jurors for return on 10/8/2013 at 9:30 a.m. Jury Trial is scheduled to continue on 10/8/2013 at 9:30 a.m. Defendant present and |

# 39

## Docket Entries.

| | | |
|---|---|---|
| | | to remain on release on same conditions. For the govt. - Frank Pimental, Robert Moscati. For the deft. - Daniel Oliverio, Reetuparna Dutta. (Court Reporter Michelle McLaughlin.) (Entered: 10/09/2013) |
| 10/08/2013 | 247 | MOTION for Declaration of Mistrial by John E. Maye. (Attachments: # 1 Memorandum in Support, # 2 Declaration of Reetuparna Dutta, # 3 Certificate of Service)(Dutta, Reetuparna) (Entered: 10/08/2013) |
| 10/08/2013 | 249 | Minute Entry for proceedings held before William M. Skretny, Chief Judge: Jury Trial as to John E. Maye held on 10/8/2013. Oral Argument held Defendant's 247 Motion for a Mistrial. Court denies 247 Motion with leave to renew. Alternate jurors return. Court queries them. Alternate #1 becomes Juror #9. Alternate #2 becomes Juror #5. Alternate Jurors #3 and #4 again released but not discharged from service. Each original juror queried individually and out of the presence of all other jurors. Court instructs jurors that deliberations must start anew. Defendant renews Motion for Mistrial. Court denies motion. Additional charge given to jury. Lunch ordered. Deliberations commence and conclude. Notes received. Verdict rendered. Defendant found guilty on Counts 2 - 34 of the redacted indictment. Jury polled at the request of the defendant. Court discharges jury. (Alternate jurors #3 and #4 were contacted by Courtroom Deputy and advised that they were discharged from service.) Government moves for detention pending sentencing. Defendant opposes. Court to resolve issue of the Defendant's continued release/detention on 10/9/2013 at 8:45 a.m. Defendant present and to remain on release on same conditions until that time. For the govt. - Frank Pimental, Robert Moscati. For the deft. - Daniel Oliverio, Reetuparna Dutta. (Court Reporter Michelle McLaughlin.) (Entered: 10/09/2013) |
| 10/08/2013 | 251 | Redacted Indictment as to John E. Maye (1): Former count 2ss-34ss is now count 2rss-34rss.. (SG) (Entered: 10/09/2013) |
| 10/08/2013 | 252 | JURY VERDICT as to John E. Maye (1) Guilty on Count 2rss-34rss. Unredacted verdict maintained in sealed area. (SG) (Entered: 10/09/2013) |
| 10/08/2013 | 253 | Sealed Document as to John E. Maye. (SG) (Entered: 10/09/2013) |
| 10/08/2013 | 254 | Sealed Document-Jury Notes as to John E. Maye. (SG) (Entered: 10/09/2013) |
| 10/08/2013 | 255 | Sealed Document-Juror Notes as to John E. Maye. (SG) (Entered: 10/09/2013) |
| 10/08/2013 | 256 | Sealed Document-Juror Notes Alternates #3 and #4; Discharged Jurors #5 and #9 as to John E. Maye. (SG) (Entered: 10/09/2013) |
| 10/09/2013 | 250 | FINAL EXHIBIT LIST by USA as to John E. Maye. (MEAL) (Entered: 10/09/2013) |
| 10/09/2013 | 257 | Minute Entry for proceedings held before William M. Skretny, Chief Judge: Status Conference as to John E. Maye held on 10/9/2013. Trial exhibits returned to Government. Exhibit binders returned to both parties. Government to make its forfeiture submission by 10/23/2013. Defendant to respond by 11/6/2013. A Status Conference is scheduled for 11/22/2013 at 9:00 a.m. before William M. Skretny, Chief Judge. Government renews motion for detention pending sentencing. Defendant opposes. Court denies motion, all for |

Case 14-2450, Document 39, 10/13/2015, 1618001, Page56 of 296

| | | |
|---|---|---|
| | | the reasons stated on the record. Court to allow defendant to remain on release pending sentencing on all previously imposed conditions of release and the following additional conditions: Defendant to surrender his passport to the Rochester Clerk's Office no later than noon on 10/10/2013; Requested access to home/work to be provided to Probation; Defendant is not to practice medicine or hold himself out as a practicing physician. Probation to review conditions with defendant prior to his leaving the courthouse today. Sentencing is scheduled for 1/30/2014 at 9:00 AM before William M. Skretny, Chief Judge. Presentence Report to Parties due by 12/26/2013. Sentencing Factors Statements/Sentencing Motions due by 1/9/2014. Objections/Responses to Sentencing Factors/Motions due by 1/16/2014. Motions to Adjourn due by 1/21/2014. Character Letters due by 1/23/2014. Presentence Report to the Court due by 1/23/2014. Defendant present. For the govt. - Frank Pimental, Robert Moscati. For the deft. - Daniel Oliverio, Reetuparna Dutta. (Court Reporter Michelle McLaughlin.) (Entered: 10/09/2013) |
| 10/11/2013 | 258 | ORDER Setting Conditions of Release. (DLC) (Entered: 10/11/2013) |
| 10/16/2013 | 259 | MOTION for Extension of Time to File *Forfeiture Submissions* by USA as to John E. Maye. (Moscati, Robert) (Entered: 10/16/2013) |
| 10/18/2013 | 260 | TEXT ORDER as to John E. Maye. IT HEREBY IS ORDERED THAT, the Government's 259 Motion for Extension of Time to File its Forfeiture Submissions is GRANTED. Government's forfeiture submissions are now due by 11/7/2013. Defendant's response is due by 11/21/2013. The Status Conference set for 11/22/2013 is ADJOURNED to 12/5/2013 at 9:00 AM before William M. Skretny, Chief Judge. SO ORDERED. Issued by William M. Skretny, Chief Judge U.S.D.C. on 10/17/2013. (CMD) (Entered: 10/18/2013) |
| 10/21/2013 | 261 | MOTION for Acquittal *or New trial* by John E. Maye. (Attachments: # 1 Memorandum in Support, # 2 Notice of Motion, # 3 Certificate of Service) (Dutta, Reetuparna) (Entered: 10/21/2013) |
| 10/22/2013 | 262 | SCHEDULING NOTICE as to John E. Maye on Defendant's 261 Motion for Acquittal or New Trial. Response due by 11/7/2013. Reply due by 11/18/2013. Oral Argument will be scheduled by the Court as necessary. (MEAL) (Entered: 10/22/2013) |
| 10/25/2013 | 263 | MOTION for Extension of Time to File Response/Reply as to 259 MOTION for Extension of Time to File *Forfeiture Submissions* by John E. Maye. (Attachments: # 1 Declaration of Reetuparna Dutta in Support of the Defense's Unopposed Motion for an Extension of Time to Respond to the Government's Forfeiture Submissions, # 2 Certificate of Service)(Dutta, Reetuparna) (Entered: 10/25/2013) |
| 10/29/2013 | 264 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to John E. Maye held on 9/23/13 before Judge William M. Skretny. Court Reporter/Transcriber Michelle L. McLaughlin, Telephone number (716) 332-3560. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. |

Case 14-2450, Document 39, 10/13/2015, 1618001, Page57 of 296

| | | |
|---|---|---|
| | | Redaction Request due 11/19/2013. Redacted Transcript Deadline set for 11/29/2013. Release of Transcript Restriction set for 1/27/2014. (DZ) (Entered: 10/29/2013) |
| 10/29/2013 | 265 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to John E. Maye held on 9/25/13 before Judge William M. Skretny. Court Reporter/Transcriber Michelle L. McLaughlin, Telephone number (716) 332-3560. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 11/19/2013. Redacted Transcript Deadline set for 11/29/2013. Release of Transcript Restriction set for 1/27/2014. (DZ) (Entered: 10/29/2013) |
| 10/29/2013 | 266 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to John E. Maye held on 10/1/13 before Judge William M. Skretny. Court Reporter/Transcriber Michelle L. McLaughlin, Telephone number (716) 332-3560. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 11/19/2013. Redacted Transcript Deadline set for 11/29/2013. Release of Transcript Restriction set for 1/27/2014. (DZ) (Entered: 10/29/2013) |
| 11/05/2013 | 267 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to John E. Maye held on 09/27/13 before Judge Skretny. Court Reporter/Transcriber Michelle L. McLaughlin, RPR, Telephone number 716-332-3560. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 11/26/2013. Redacted Transcript Deadline set for 12/6/2013. Release of Transcript Restriction set for 2/3/2014. (SG) (Entered: 11/05/2013) |
| 11/07/2013 | 268 | MOTION UNITED STATES' MOTION FOR ENTRY OF PRELIMINARY ORDER OF FORFEITURE AND MEMORANDUM OF LAW IN SUPPORT THEREOF by USA as to John E. Maye. (Attachments: # 1 Affidavit In Support of Preliminary Order of Forfeiture)(Kaufman, Richard) (Entered: 11/07/2013) |
| 11/07/2013 | 269 | RESPONSE in Opposition by USA as to John E. Maye re 261 MOTION for Acquittal *or New trial Government's Response to Defendant's Motion for a Judgment of Acquittal or for a New Trial* (Moscati, Robert) (Entered: 11/07/2013) |
| 11/08/2013 | 270 | TEXT ORDER as to John E. Maye. IT HEREBY IS ORDERED THAT, the Defense's 263 Unopposed Motion for an Extension of Time to Respond to the Government's Forfeiture Submissions is GRANTED. FURTHER, the Defendant's response is now due 12/12/2013. FURTHER, the Status Conference scheduled for 12/5/2013 before William M. Skretny, Chief Judge is ADJOURNED to 12/23/2013 at 9:00 AM. SO ORDERED. Issued by William M. Skretny, Chief Judge U.S.D.C. on 11/8/2013. (Entered: 11/08/2013) |

**Docket Entries.**

| | | |
|---|---|---|
| 11/15/2013 | 271 | RESPONSE in Support by John E. Maye re 261 MOTION for Acquittal *or New trial* (Attachments: # 1 Certificate of Service)(Dutta, Reetuparna) (Entered: 11/15/2013) |
| 12/10/2013 | 272 | MOTION to Extend the Scheduling Order for Sentencing by John E. Maye. (Attachments: # 1 Declaration of Daniel C. Oliverio, # 2 Certificate of Service) (Oliverio, Daniel) (Entered: 12/10/2013) |
| 12/12/2013 | 273 | RESPONSE in Opposition by John E. Maye re 268 MOTION UNITED STATES' MOTION FOR ENTRY OF PRELIMINARY ORDER OF FORFEITURE AND MEMORANDUM OF LAW IN SUPPORT THEREOF (Attachments: # 1 Declaration of Reetuparna Dutta, # 2 Certificate of Service) (Dutta, Reetuparna) (Entered: 12/12/2013) |
| 12/17/2013 | 274 | TEXT ORDER as to John E. Maye. IT HEREBY IS ORDERED that Defendant's 272 Motion to Adjourn Sentencing is GRANTED. The sentencing scheduled for January 30, 2014, at 9:00 a.m. is ADJOURNED to March 26, 2014, at 10:00 a.m. The Presentence Report is now due by February 6, 2014; Sentencing Factor Statements and Sentencing submissions and motions are due by February 20, 2014; Responses thereto are due by February 27, 2014. Issued by Chief Judge William M. Skretny on 12/17/2013.(JCD) (Entered: 12/17/2013) |
| 12/23/2013 | 275 | Minute Entry for proceedings held before William M. Skretny, Chief Judge: Status Conference as to John E. Maye held on 12/23/2013. Government reply to 268 Motion for Entry of Preliminary Order of Forfeiture shall be due in two weeks. Defendant may seek a hearing if the Government includes acquitted conduct as part of it's calculation with respect to the Government's 268 Motion for Entry of Preliminary Order of Forfeiture. Upon receipt of the Government's papers, 261 and 268 motions will be taken under advisement. Defendant present and to remain on release on same terms and conditions. For the govt. - Robert Moscati. For the deft. - Reetuparna Dutta. (Court Reporter Michelle McLaughlin.)(JDK) Modified on 1/8/2014.(MEAL). (Entered: 12/23/2013) |
| 01/06/2014 | 276 | MOTION REPLY TO DEFENDANT'S OPPOSITION TO GOVERNMENT'S MOTION FOR A PRELIMINARY ORDER OF FORFEITURE by USA as to John E. Maye. (Attachments: # 1 Certificate of Service)(Kaufman, Richard) (Entered: 01/06/2014) |
| 01/08/2014 | | E-Filing Notification: 275 Minute Entry for proceedings held before William M. Skretny, Chief Judge: Status Conference as to John E. Maye held on 12/23/2013. Government reply to 268 Motion for Entry of Preliminary Order of Forfeiture shall be due in two weeks. Defendant may seek a hearing if the Government includes acquitted conduct as part of it's calculation with respect to the Government's 268 Motion for Entry of Preliminary Order of Forfeiture. Upon receipt of the Government's papers, 261 and 268 motions will be taken under advisement. Defendant present and to remain on release on same terms and conditions. For the govt. - Robert Moscati. For the deft. - Reetuparna Dutta. (Court Reporter Michelle McLaughlin.)(JDK) Modified on 1/8/2014. (MEAL). (Entered: 01/08/2014) |
| 02/10/2014 | 277 | SENTENCING LETTER as to John E. Maye (DZ) (Entered: 02/10/2014) |

Case 14-2450, Document 39, 10/13/2015, 1618001, Page59 of 296

**Docket Entries.**

| | | |
|---|---|---|
| 02/14/2014 | 278 | MOTION to Adjourn Stipulated Motion to Briefly Adjourn Sentencing by John E. Maye. (Attachments: # 1 Declaration of Daniel C Oliverio in Support of Stipulated Motion to Briefly Adjourn Sentencing, # 2 Certificate of Service) (Oliverio, Daniel) (Entered: 02/14/2014) |
| 02/20/2014 | 279 | MOTION for Downward Departure *a Non-Guidelines Sentence*, MOTION for Hearing by John E. Maye. (Attachments: # 1 Declaration of Reetuparna Dutta in Support of the Defense's Motions for a Non-Guidelines Sentence, Downward Departure, and a Sentencing Hearing, # 2 Exhibit Exhibit A, # 3 Exhibit Exhibit B, # 4 Exhibit Exhibit C, # 5 Defendant's Statement of Sentencing Factors and Objections to the Pre-Sentence Report and Memorandum of Law in Support of the Defense's Motions for a Non-Guidelines Sentence, Downward Departures, and a Sentencing Hearing, # 6 Certificate of Service)(Dutta, Reetuparna) (Entered: 02/20/2014) |
| 02/20/2014 | 280 | STATEMENT WITH RESPECT TO SENTENCING FACTORS by USA as to John E. Maye (Moscati, Robert) (Entered: 02/20/2014) |
| 02/20/2014 | 281 | SENTENCING MEMORANDUM by USA as to John E. Maye (Moscati, Robert) (Entered: 02/20/2014) |
| 02/20/2014 | 282 | SENTENCING MEMORANDUM by USA as to John E. Maye (Attachments: # 1 Exhibit)(Moscati, Robert) (Entered: 02/20/2014) |
| 02/21/2014 | 283 | TEXT ORDER as to John E. Maye. IT HEREBY IS ORDERED that the Defendant's Motion to Adjourn Sentencing 278 is GRANTED. Sentencing currently scheduled 3/26/2014 is ADJOURNED to 4/9/2014 at 3:00 PM, before the Hon. William M. Skretny. Issued by Chief Judge William M. Skretny on 2/20/2014.(JCD) (Entered: 02/21/2014) |
| 02/27/2014 | 284 | MOTION Additional Objections to the Pre-Sentence Report by John E. Maye. (Attachments: # 1 Declaration of Reetuparna Dutta, # 2 Certificate of Service) (Dutta, Reetuparna) (Entered: 02/27/2014) |
| 02/27/2014 | 285 | RESPONSE by USA as to John E. Maye re: Defendant's Statement of Sentencing Factors and Objections to the Presentence Report and Memorandum of Law in Support of the Defense's Motions for a Non-Guidelines Sentence, Downward Departures, and a Sentencing Hearing (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Pimentel, Frank) Text modified on 2/28/2014 to (DZ). (Entered: 02/27/2014) |
| 02/27/2014 | 286 | MEMORANDUM IN OPPOSITION re 282 Sentencing Memorandum by John E. Maye (Attachments: # 1 Certificate of Service)(Dutta, Reetuparna) (Entered: 02/27/2014) |
| 02/27/2014 | | E-Filing Notification: 285 *text modified to indicate entry is a RESPONSE by USA as to John E. Maye re: Defendant's Statement of Sentencing Factors and Objections to the Presentence Report and Memorandum of Law in Support of the Defense's Motions for a Non-Guidelines Sentence, Downward Departures, and a Sentencing Hearing* (no further action required) (DZ) (Entered: 02/28/2014) |
| 03/10/2014 | 287 | |

| | | |
|---|---|---|
| | | TEXT ORDER as to John E. Maye - IT HEREBY IS ORDERED that the Defendant's 284 Motion to File Additional Objections to the Presentence Report on or before March 10, 2014 is GRANTED. The Government shall file a response to the objections, if necessary, on or before March 19, 2014. Sentencing remains scheduled for April 9, 2014 at 3:00 PM. Issued by Chief Judge William M. Skretny on 3/7/2014.(JCD) (Entered: 03/10/2014) |
| 03/12/2014 | 288 | RESPONSE in Support by John E. Maye re 284 MOTION Additional Objections to the Pre-Sentence Report (Attachments: # 1 Memorandum in Support, # 2 Declaration of Reetuparna Dutta, # 3 Certificate of Service)(Dutta, Reetuparna) (Entered: 03/12/2014) |
| 03/18/2014 | 289 | SENTENCING MEMORANDUM by USA as to John E. Maye (Pimentel, Frank) (Entered: 03/18/2014) |
| 04/04/2014 | 290 | TEXT ORDER as to John E. Maye. IT HEREBY IS ORDERED THAT, the Sentencing scheduled for 4/9/2014 at 3:00 PM before William M. Skretny, Chief Judge is ADJOURNED to 4/24/2014 at 11:00 AM. SO ORDERED. Issued by William M. Skretny, Chief Judge on 4/4/2014. (MEAL) (Entered: 04/04/2014) |
| 04/08/2014 | 291 | DECISION AND ORDER as to John E. Maye DENYING Defendant's 261 Motion for a Judgment of Acquittal, or in the alternative, for a New Trial. Signed by William M. Skretny, Chief Judge on 4/8/2014. (MEAL) (Entered: 04/08/2014) |
| 04/16/2014 | 292 | TEXT ORDER as to John E. Maye. IT HEREBY IS ORDERED THAT, the Sentencing scheduled for 4/24/2014 at 11:00 AM before William M. Skretny, Chief Judge is CONVERTED to a Status Conference. At the 4/24/2014 Status Conference, the Court will render a Decision on the outstanding issue of forfeiture and set a new date for Sentencing. SO ORDERED. Issued by William M. Skretny, Chief Judge on 4/16/2014. (MEAL) (Entered: 04/16/2014) |
| 04/23/2014 | 293 | DECISION AND ORDER GRANTING in part and DENYING in part the Government's 268 Request for Entry of a Preliminary Order of Forfeiture; DIRECTING the government to submit a proposed preliminary order of forfeiture consistent with this decision within 10 days of its filing date. Signed by William M. Skretny, Chief Judge on 4/23/2014. (MEAL)<br><br>- Clerk to Follow Up - (Entered: 04/23/2014) |
| 04/24/2014 | 294 | Minute Entry for proceedings held before William M. Skretny, Chief Judge: Status Conference as to John E. Maye held on 4/24/2014. Forfeiture resolved by Decision and Order yesterday. Sentencing is now scheduled for 6/25/2014 at 2:00 PM before William M. Skretny, Chief Judge. Defendant present and to remain on same terms and conditions. For the govt. - Frank Pimental, Richard Kaufman. For the deft. - Reetuparna Dutta. For prob. - Shirley Pandolfe. (Court Reporter Michelle McLaughlin.) (MEAL) (Entered: 04/25/2014) |
| 05/05/2014 | 295 | PRELIMINARY ORDER OF FORFEITURE as to John E. Maye. Signed by Chief Judge William M. Skretny on 5/4/2014.(JCD) (Entered: 05/05/2014) |

**45**

**Docket Entries.**

| | | |
|---|---|---|
| 06/13/2014 | 296 | DECLARATION by USA as to John E. Maye *DECLARATION OF PUBLICATION* (Kaufman, Richard) (Entered: 06/13/2014) |
| 06/25/2014 | 297 | BENCH STATEMENT as to John E. Maye resolving Defedant's objections to the PSR and Motions for Downward Departure. Issued by Chief Judge William M. Skretny on 6/25/2014.(JCD) (Entered: 06/25/2014) |
| 06/25/2014 | 298 | Minute Entry for proceedings held before William M. Skretny, Chief Judge: Sentencing held on 6/25/2014 for John E. Maye on Counts 2-34 of the Redacted Indictment. The Defendant is sentenced to the custody of the BOP for a term of 1 year and 1 day on each of Counts 2-34 to run concurrent and 2 years Supervised Release on Counts 2-15 and 1 year Supervised Release on Counts 16-34 to run concurrent. Conditions of Supervised Release are as detailed in attached Sentencing Minute Sheet. $100.00 Special Assessment on each Count for a total of $3,300.00 imposed. Court imposes sentence as stated. Court directs preparation of a judgment of conviction. Defendant continued on release on same terms and conditions pending designation. For the govt. - Frank Pimentel. For the deft. - Daniel Oliverio, Reetuparna Dutta. For prob. - David Ball. (Court Reporter FTR Gold.)(JDK) (Entered: 06/26/2014) |
| 07/02/2014 | 302 | JUDGMENT as to John E. Maye (1)Additional certified copies forwarded to USPO, USM, US Attorney, Debt Collection, Financial Department. Signed by Hon. William M. Skretny on 7/2/2014.(JMM) (Entered: 07/07/2014) |
| 07/02/2014 | | DISMISSAL OF COUNTS as to John E. Maye. (DZ) (Entered: 07/08/2014) |
| 07/03/2014 | 299 | PRESENTENCE INVESTIGATION REPORT (Sealed) as to John E. Maye (DZ) (Entered: 07/03/2014) |
| 07/03/2014 | 300 | Sealed Document as to John E. Maye. (DZ) (Entered: 07/03/2014) |
| 07/03/2014 | 301 | NOTICE OF APPEAL. Filing fee $ 505, receipt number 0209-2063239. (Dutta, Reetuparna) (Entered: 07/03/2014) |
| 07/10/2014 | 303 | FINAL ORDER OF FORFEITURE as to John E. Maye. Signed by Chief Judge William M. Skretny on 7/10/2014.(JCD) (Entered: 07/10/2014) |
| 07/16/2014 | 304 | Certified and Transmitted Index to Record on Appeal to US Court of Appeals re 301 Notice of Appeal. (DLC) (Entered: 07/16/2014) |
| 07/17/2014 | 305 | MOTION to Seal Document *Notice of Motion for Defense's Motion to File Government Exhibits Under Seal* by John E. Maye. (Dutta, Reetuparna) (Entered: 07/17/2014) |
| 07/17/2014 | 306 | DECLARATION by John E. Maye *Declaration of Reetuparna Dutta in Support of Defense's Motion for a Stay of Imprisonment Pending Appeal* (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Dutta, Reetuparna) (Entered: 07/17/2014) |
| 07/17/2014 | 307 | MOTION re 306 Declaration *Notice of Motion of Defense's Motion for a Stay of Imprisonment Pending Appeal* by John E. Maye. (Attachments: # 1 Memorandum in Support Memorandum of Law in Support of the Defense's Motion for a Stay of Imprisonment Pending Appeal, # 2 Affidavit Declaration of John E. Maye in Support of the Defense's Motion for a Stay of |

**Docket Entries.**

CM/ECF LIVE - U.S. District Court:nywd                                    Page 46 of 49

| | | Imprisonment Pending Appeal, # 3 Exhibit A, # 4 Exhibit B)(Dutta, Reetuparna) (Entered: 07/17/2014) |
|---|---|---|
| 07/21/2014 | 308 | SCHEDULING NOTICE as to John E. Maye on Defendant's 307 Motion for Stay of Imprisonment Pending Appeal. Response due by 7/30/2014. Reply due by 8/4/2014. Oral Argument will be scheduled by the Court as necessary. (MEAL) (Entered: 07/21/2014) |
| 07/21/2014 | 309 | Sealed Document as to John E. Maye - Declaration of Reetuparna Dutta in Support of Defense's Motion to File Government Exhibits Under Seal. (CMD) (Entered: 07/21/2014) |
| 07/21/2014 | 310 | ORDER GRANTING 305 MOTION TO FILE GOVERNMENT EXHIBITS UNDER SEAL as to John E. Maye. Signed by William M. Skretny, Chief Judge U.S.D.C. (CMD) (Entered: 07/21/2014) |
| 07/22/2014 | 311 | Sealed Documents as to John E. Maye - Government Exhibits 120, (Attachments: # 1 Exhibit 126, # 2 Exhibit 145, # 3 Exhibit 146). (CMD) (Entered: 07/22/2014) |
| 08/01/2014 | 312 | NOTICE OF ATTORNEY APPEARANCE Joseph J. Karaszewski appearing for USA. (Karaszewski, Joseph) (Entered: 08/01/2014) |
| 08/01/2014 | 313 | MOTION for Extension of Time to File Response/Reply *[Motion to File Late Response]* by USA as to John E. Maye. (Karaszewski, Joseph) (Entered: 08/01/2014) |
| 08/01/2014 | 314 | RESPONSE in Opposition by USA as to John E. Maye re 307 MOTION re 306 Declaration *Notice of Motion of Defense's Motion for a Stay of Imprisonment Pending Appeal [Government's Response to Defendant's Motion to Stay Sentence Pending Appeal]* (Karaszewski, Joseph) (Entered: 08/01/2014) |
| 08/06/2014 | 315 | TEXT ORDER as to John E. Maye. IT HEREBY IS ORDERED THAT, the Government's 313 Motion to File/Accept a Late Response to the Defendant's 307 Motion for Stay of imprisonment pending appeal is GRANTED. Defendant's reply is now due on 8/6/2014. SO ORDERED. Issued by William M. Skretny, Chief Judge on 8/6/2014. (MEAL) (Entered: 08/06/2014) |
| 08/06/2014 | 316 | REPLY TO RESPONSE to Motion by John E. Maye re 307 MOTION re 306 Declaration *Notice of Motion of Defense's Motion for a Stay of Imprisonment Pending Appeal - Reply in Further Support of Motion* (Dutta, Reetuparna) (Entered: 08/06/2014) |
| 08/11/2014 | 317 | DECISION AND ORDER as to John E. Maye: RESERVING decision on Defendant's 307 Motion for Release Pending Appeal and Stay of Sentence; STAYING Defendant's surrender through October 10, 2014, regardless of the outcome of this Court's decision on the 307 motion. Signed by William M. Skretny, Chief Judge on 8/11/2014. (MEAL) (Entered: 08/11/2014) |
| 10/03/2014 | 318 | DECISION AND ORDER as to John E. Maye GRANTING Defendant's 307 Motion for Release Pending Appeal and Stay of Sentence; STAYING Defendant's sentence of imprisonment; CONTINUING Defendant on release |

| | | under his current conditions. Signed by William M. Skretny, Chief Judge on 10/3/2014. (MEAL) <br><br> - CLERK TO FOLLOW UP - (Entered: 10/03/2014) |
|---|---|---|
| 05/14/2015 | 319 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to John E. Maye held on 9/23/13 before Judge William M. Skretny. Court Reporter/Transcriber Michelle L. McLaughlin, Telephone number (716) 332-3560. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 6/4/2015. Redacted Transcript Deadline set for 6/15/2015. Release of Transcript Restriction set for 8/12/2015. (DZ) (Entered: 05/14/2015) |
| 05/14/2015 | 320 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to John E. Maye held on 9/25/13 before Judge William M. Skretny. Court Reporter/Transcriber Michelle L. McLaughlin, Telephone number (716) 332-3560. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 6/4/2015. Redacted Transcript Deadline set for 6/15/2015. Release of Transcript Restriction set for 8/12/2015. (DZ) (Entered: 05/14/2015) |
| 05/14/2015 | 321 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to John E. Maye held on 9/26/13 before Judge William M. Skretny. Court Reporter/Transcriber Michelle L. McLaughlin, Telephone number (716) 332-3560. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 6/4/2015. Redacted Transcript Deadline set for 6/15/2015. Release of Transcript Restriction set for 8/12/2015. (DZ) (Entered: 05/14/2015) |
| 05/14/2015 | 322 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to John E. Maye held on 9/27/13 before Judge William M. Skretny. Court Reporter/Transcriber Michelle L. McLaughlin, Telephone number (716) 332-3560. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 6/4/2015. Redacted Transcript Deadline set for 6/15/2015. Release of Transcript Restriction set for 8/12/2015. (DZ) (Entered: 05/14/2015) |
| 05/14/2015 | 323 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to John E. Maye held on 10/1/13 before Judge William M. Skretny. Court Reporter/Transcriber Michelle L. McLaughlin, Telephone number (716) 332-3560. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. |

**Docket Entries.**

| | | |
|---|---|---|
| | | Redaction Request due 6/4/2015. Redacted Transcript Deadline set for 6/15/2015. Release of Transcript Restriction set for 8/12/2015. (DZ) (Entered: 05/14/2015) |
| 05/14/2015 | 324 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to John E. Maye held on 10/2/13 before Judge William M. Skretny. Court Reporter/Transcriber Michelle L. McLaughlin, Telephone number (716) 332-3560. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 6/4/2015. Redacted Transcript Deadline set for 6/15/2015. Release of Transcript Restriction set for 8/12/2015. (DZ) (Entered: 05/14/2015) |
| 05/14/2015 | 325 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to John E. Maye held on 10/3/13 before Judge William M. Skretny. Court Reporter/Transcriber Michelle L. McLaughlin, Telephone number (716) 332-3560. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 6/4/2015. Redacted Transcript Deadline set for 6/15/2015. Release of Transcript Restriction set for 8/12/2015. (DZ) (Entered: 05/14/2015) |
| 05/14/2015 | 326 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to John E. Maye held on 10/4/13 before Judge William M. Skretny. Court Reporter/Transcriber Michelle L. McLaughlin, Telephone number (716) 332-3560. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 6/4/2015. Redacted Transcript Deadline set for 6/15/2015. Release of Transcript Restriction set for 8/12/2015. (DZ) (Entered: 05/14/2015) |
| 05/14/2015 | 327 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to John E. Maye held on 10/7/13 before Judge William M. Skretny. Court Reporter/Transcriber Michelle L. McLaughlin, Telephone number (716) 332-3560. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 6/4/2015. Redacted Transcript Deadline set for 6/15/2015. Release of Transcript Restriction set for 8/12/2015. (DZ) (Entered: 05/14/2015) |
| 05/14/2015 | 328 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to John E. Maye held on 10/8/13 before Judge William M. Skretny. Court Reporter/Transcriber Michelle L. McLaughlin, Telephone number (716) 332-3560. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 6/4/2015. Redacted Transcript Deadline set for |

Case 14-2450, Document 39, 10/13/2015, 1618001, Page65 of 296

**Docket Entries.**

| | | |
|---|---|---|
| | | 6/15/2015. Release of Transcript Restriction set for 8/12/2015. (DZ) (Entered: 05/14/2015) |
| 05/14/2015 | 329 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to John E. Maye held on 6/25/14 before Judge William M. Skretny. Court Reporter/Transcriber Michelle L. McLaughlin, Telephone number (716) 332-3560. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 6/4/2015. Redacted Transcript Deadline set for 6/15/2015. Release of Transcript Restriction set for 8/12/2015. (DZ) (Entered: 05/14/2015) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 09/28/2015 09:34:19 | | | |
| **PACER Login:** | hr0373:2730375:0 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:08-cr-00194-WMS-JJM |
| **Billable Pages:** | 30 | **Cost:** | 3.00 |

50

**Second Superseding Indictment, Filed April 29, 2010.**
Case 1:08-cr-00194-WMS-JJM   Document 82   Filed 04/29/10   Page 1 of 10

# IN THE DISTRICT COURT OF THE UNITED STATES
## for the Western District of New York

MAY 2008 GRAND JURY
(Impaneled 5/02/08)

**THE UNITED STATES OF AMERICA**

**v.**

**JOHN E. MAYE**

**SECOND SUPERSEDING
INDICTMENT
08-CR-194-S**

**Violations:**
Title 21, United States Code,
Sections 841(a)(1) & 846
[34 Counts]

COUNT 1

The Grand Jury Charges that:

Between in or about January 2004, and in or about September 2006, in the Western District of New York, and elsewhere, the defendant, **JOHN E. MAYE**, did knowingly, willfully and unlawfully combine, conspire and agree with others, known and unknown, to commit offenses against the United States, that is:

a) to knowingly and intentionally distribute and dispense, and cause to be distributed and dispensed, Schedule III controlled substances, including quantities of hydrocodone and codeine, other than for a legitimate medical purpose and not in the usual course of professional practice, in violation of Title 21, United States Code, Section 841(a)(1);

51

Second Superseding Indictment, Filed April 29, 2010.
Case 1:08-cr-00194-WMS-JJM   Document 82   Filed 04/29/10   Page 2 of 10

b) to knowingly and intentionally distribute and dispense, and cause to be distributed and dispensed, Schedule IV controlled substances, including quantities of diazepam, alprazolam, lorazepam, zolpidem and phentermine, other than for a legitimate medical purpose and not in the usual course of professional practice, in violation of Title 21, United States Code, Section 841(a)(1); and

c) to knowingly and intentionally use communication facilities, that is, a telephone and the internet, in committing, causing and facilitating the commission of acts constituting felony violations of Title 21, United States Code, Section 841(a)(1), that is, the knowing and intentional distribution and dispensing of quantities of Schedule III and Schedule IV controlled substances, other than for a legitimate medical purpose and not in the usual course of professional practice, in violation of Title 21, United States Code, Section 843(b).

All in violation of Title 21, United States Code, Section 846.

### COUNTS 2-13

**The Grand Jury Further Charges that:**

On or about the dates set forth below, in the Western District of New York, and elsewhere, the defendant, **JOHN E. MAYE**, did

-2-

52

**Second Superseding Indictment, Filed April 29, 2010.**
Case 1:08-cr-00194-WMS-JJM   Document 82   Filed 04/29/10   Page 3 of 10

knowingly, intentionally and unlawfully distribute and dispense, and cause to be distributed and dispensed, to persons known to the Grand Jury, quantities of hydrocodone, a Schedule III controlled substance, other than for a legitimate medical purpose and not in the usual course of professional practice; all in violation of Title 21, United States Code, Section 841(a)(1).

| COUNT | DATE | PERSON |
|-------|------|--------|
| 2 | 7/12/04 | D.H. |
| 3 | 7/12/04 | J.S. |
| 4 | 7/12/04 | M.F. |
| 5 | 7/12/04 | J.F. |
| 6 | 7/12/04 | T.S. |
| 7 | 7/12/04 | J.M. |
| 8 | 7/13/04 | K.F. |
| 9 | 7/13/04 | T.M. |
| 10 | 7/13/04 | N.B. |
| 11 | 7/15/04 | D.S. |
| 12 | 8/5/04 | N.K. |
| 13 | 8/6/04 | M.R. |

## COUNTS 14-15

**The Grand Jury Further Charges that:**

On or about the dates set forth below, in the Western District of New York, and elsewhere, the defendant, **JOHN E. MAYE**, did knowingly, intentionally and unlawfully distribute and dispense,

-3-

**53**

Second Superseding Indictment, Filed April 29, 2010.
Case 1:08-cr-00194-WMS-JJM   Document 82   Filed 04/29/10   Page 4 of 10

and cause to be distributed and dispensed, to persons known to the Grand Jury, quantities of codeine, a Schedule III controlled substance, other than for a legitimate medical purpose and not in the usual course of professional practice; all in violation of Title 21, United States Code, Section 841(a)(1).

| COUNT | DATE | PERSON |
|-------|------|--------|
| 14 | 7/9/04 | R.B. |
| 15 | 8/3/04 | A.K. |

## COUNT 16

**The Grand Jury Further Charges that:**

On or about the date set forth below, in the Western District of New York, and elsewhere, the defendant, **JOHN E. MAYE**, did knowingly, intentionally and unlawfully distribute and dispense, and cause to be distributed and dispensed, to a person known to the Grand Jury, a quantity of diazepam, a Schedule IV controlled substance, other than for a legitimate medical purpose and not in the usual course of professional practice; all in violation of Title 21, United States Code, Section 841(a)(1).

| COUNT | DATE | PERSON |
|-------|------|--------|
| 16 | 7/29/04 | G.T. |

-4-

54

**Second Superseding Indictment, Filed April 29, 2010.**
Case 1:08-cr-00194-WMS-JJM   Document 82   Filed 04/29/10   Page 5 of 10

## COUNTS 17-22

### The Grand Jury Further Charges that:

On or about the dates set forth below, in the Western District of New York, and elsewhere, the defendant, **JOHN E. MAYE**, did knowingly, intentionally and unlawfully distribute and dispense, and cause to be distributed and dispensed, to persons known to the Grand Jury, quantities of alprazolam, a Schedule IV controlled substance, other than for a legitimate medical purpose and not in the usual course of professional practice; all in violation of Title 21, United States Code, Section 841(a)(1).

| COUNT | DATE | PERSON |
|:-----:|:----:|:------:|
| 17 | 7/12/04 | A.M. |
| 18 | 7/12/04 | J.H. |
| 19 | 7/13/04 | P.Z. |
| 20 | 7/13/04 | M.C. |
| 21 | 7/14/04 | B.W. |
| 22 | 11/28/05 | A.S. |

## COUNTS 23-25

### The Grand Jury Further Charges that:

On or about the dates set forth below, in the Western District of New York, and elsewhere, the defendant, **JOHN E. MAYE**, did

-5-

**Second Superseding Indictment, Filed April 29, 2010.**
Case 1:08-cr-00194-WMS-JJM   Document 82   Filed 04/29/10   Page 6 of 10

knowingly, intentionally and unlawfully distribute and dispense, and cause to be distributed and dispensed, to persons known to the Grand Jury, quantities of lorazepam, a Schedule IV controlled substance, other than for a legitimate medical purpose and not in the usual course of professional practice; all in violation of Title 21, United States Code, Section 841(a)(1).

| COUNT | DATE | PERSON |
|-------|------|--------|
| 23 | 8/4/04 | G.B. |
| 24 | 8/5/04 | N.K. |
| 25 | 1/27/06 | N.H. |

### COUNTS 26-29

**The Grand Jury Further Charges that:**

On or about the dates set forth below, in the Western District of New York, and elsewhere, the defendant, **JOHN E. MAYE**, did knowingly, intentionally and unlawfully distribute and dispense, and cause to be distributed and dispensed, to persons known to the Grand Jury, quantities of zolpidem, a Schedule IV controlled substance, other than for a legitimate medical purpose and not in the usual course of professional practice; all in violation of Title 21, United States Code, Section 841(a)(1).

-6-

56

**Second Superseding Indictment, Filed April 29, 2010.**
Case 1:08-cr-00194-WMS-JJM   Document 82   Filed 04/29/10   Page 7 of 10

| COUNT | DATE | PERSON |
|-------|------|--------|
| 26 | 7/13/04 | J.L. |
| 27 | 7/22/04 | D.A. |
| 28 | 8/2/04 | J.P. |
| 29 | 8/3/04 | N.L. |

### COUNTS 30-34

**The Grand Jury Further Charges that:**

On or about the dates set forth below, in the Western District of New York, and elsewhere, the defendant, **JOHN E. MAYE**, did knowingly, intentionally and unlawfully distribute and dispense, and cause to be distributed and dispensed, to persons known to the Grand Jury, quantities of phentermine, a Schedule IV controlled substance, other than for a legitimate medical purpose and not in the usual course of professional practice; all in violation of Title 21, United States Code, Section 841(a)(1).

| COUNT | DATE | PERSON |
|-------|------|--------|
| 30 | 7/13/04 | B.Y. |
| 31 | 7/14/04 | R.G. |
| 32 | 7/14/04 | M.M. |
| 33 | 7/28/04 | L.M. |
| 34 | 7/28/04 | C.D. |

**Second Superseding Indictment, Filed April 29, 2010.**
Case 1:08-cr-00194-WMS-JJM   Document 82   Filed 04/29/10   Page 8 of 10


<u>**FORFEITURE ALLEGATION**</u>

**The Grand Jury Further Alleges that:**


As a result of a conviction on any Count of this Indictment, the defendant, **JOHN E. MAYE**, shall forfeit to the United States any and all property constituting and derived from any proceeds obtained, directly and indirectly, as a result of such violation and any and all property used, and intended to be used, in any manner and part, to commit and to facilitate the commission of such violation, including, but not limited to:

**CURRENCY:**

    a.    The sum of FIFTY TWO THOUSAND, ONE HUNDRED NINETY DOLLARS AND NINETY-SEVEN CENTS ($52,190.97) seized from Canandaigua National Bank, financial account number ████████;

    b.    The sum of approximately EIGHT HUNDRED FIFTEEN THOUSAND SEVEN HUNDRED EIGHTY ONE DOLLARS($815,781.00) in United States currency.

**VEHICLES:**

    a.    One (1) 2001 Porsche Carrera 4 Cabrio, VIN WP0AA29971S623412;

    b.    One (1) 2002 Lexus RX300, VIN JTJHF10U720256825;

**COMPUTERS AND COMPONENTS:**

    a.    Dell Inspiration 600m Laptop computer, serial number CN-0D2125-48643-4CI-4176;

-8-

58

**Second Superseding Indictment, Filed April 29, 2010.**
Case 1:08-cr-00194-WMS-JJM   Document 82   Filed 04/29/10   Page 9 of 10

      b.    Compaq Presario X-1000 Laptop computer,
              serial number CND34605QC;

      c.    Dell computer tower, serial number FBLBR51;

      d.    Dell computer tower, serial number 4LBR081;

      e.    Dell computer tower, serial number DS9PM41; and

**REAL PROPERTY:**

      a.    All legal and equitable interest in the premises
              and property located at ▮ Northview Terrace,
              Rochester, New York, as found in the Monroe County
              Clerk's Office in the Book of Deeds, Book No.
              10133, Page 243, titled to Zebbie D. Maye.

All pursuant to Title 21, United States Code, Section 853.

      If any of the property described above as being subject to

forfeiture, as a result of any act or omission of the defendant:

      a.    cannot be located upon the exercise of due
              diligence;

      b.    has been transferred or sold to, or deposited with
              a third party;

      c.    has been paced beyond the jurisdiction of the
              court;

      d.    has been substantially diminished in value; or

      e.    has been commingled with other property which
              cannot be subdivided without difficulty;

it is the intention of the United States of America to substitute

and seek the forfeiture of any other property of the defendant,

-9-

59

**Second Superseding Indictment, Filed April 29, 2010.**
Case 1:08-cr-00194-WMS-JJM   Document 82   Filed 04/29/10   Page 10 of 10

**JOHN E. MAYE**, up to the value of the forfeitable property, pursuant

to Title 21, United States Code, Section 853(p).

    DATED:  Buffalo, New York, April 29, 2010.

                       WILLIAM J. HOCHUL, JR.
                       United States Attorney

                BY:   S/JOSEPH M. GUERRA III
                       JOSEPH M. GUERRA III
                       Assistant United States Attorney
                       United States Attorney's Office
                       Western District of New York
                       138 Delaware Avenue
                       Buffalo, New York  14202
                       716/843-5824
                       Joseph.M.Guerra@usdoj.gov

A TRUE BILL:

S/FOREPERSON
FOREPERSON

60

**Defendant's Notice of Motions in Limine, Filed November 21, 2011.**

Case 1:08-cr-00194-WMS-JJM   Document 125   Filed 11/21/11   Page 1 of 3

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                         Plaintiff,

         v.                                      CR No.: 08-CR-194(S)

JOHN E. MAYE,

                         Defendant.

## DEFENDANT'S NOTICE OF MOTIONS *IN LIMINE*

**PLEASE TAKE NOTICE** that, pursuant to the Memorandum of Law in Support of Defendant's Motions *in Limine* and the accompanying Declaration of Reetuparna Dutta, Esq., attorney for defendant John E. Maye, M.D., dated November 21, 2011, with exhibits, together with all prior pleadings and proceedings in this action, the defendant will move this Court, at a date and time to be set by this Court, for an Order, based on Federal Rules of Evidence 401, 403, and 609, excluding evidence of or reference to: Dr. Maye's prior conviction; Dr. Maye's suspension from medical practice; alleged acts of malpractice involving Dr. Maye unrelated to the prescribing of controlled substances; evidence of the tragic life-events of patients treated by Dr. Maye; evidence of a DEA proceeding against Dr. Maye and the voluntary surrender of his DEA registration; and evidence or reference to any tax violations allegedly committed by Dr. Maye.

Defendant intends to file and serve reply papers and, thus, pursuant to Local Rule 49.1(c), answering papers, if any, must be served and filed at least seven (7) business days prior

**61**

**Defendant's Notice of Motions in Limine, Filed November 21, 2011.**

Case 1:08-cr-00194-WMS-JJM   Document 125   Filed 11/21/11   Page 2 of 3

to the return date of this motion.  Reply papers must be served and filed at least three (3)

business days before the return date.


Dated:        Buffalo, New York
              November 21, 2011


                                      **HODGSON RUSS LLP**
                                      *Attorneys for John E. Maye, M.D.*

                                      By:    s/Reetuparna Dutta
                                             Daniel C. Oliverio
                                             Michelle L. Merola
                                             Reetuparna Dutta
                                      The Guaranty Building
                                      140 Pearl Street, Suite 100
                                      Buffalo, New York  14202
                                      Telephone: 716.856.4000
                                      *doliveri@hodgsonruss.com*
                                      *mmerola@hodgsonruss.com*
                                      *rdutta@hodgsonruss.com*

- 2 -

62

**Defendant's Notice of Motions in Limine, Filed November 21, 2011.**

Case 1:08-cr-00194-WMS-JJM   Document 125   Filed 11/21/11   Page 3 of 3

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on November 21, 2011, I filed the foregoing Notice of

Motion with the Clerk of the U.S. District Court, Western of New York, using the Court's

CM/ECF system, which sent notification of such filing to the following:

> Joseph Guerra, Esq.
> Assistant United States Attorney
> United States Attorneys' Office
> Western District of New York
> 138 Delaware Avenue
> Buffalo, New York 14202
> *joseph.m.guerra@usdoj.gov*

> Mary C. Baumgarten
> Assistant United States Attorney
> United States Attorney's Office
> 138 Delaware Avenue
> Buffalo, NY 14202
> 716-843-5864
> *mary.catherine.baumgarten@usdoj.gov*

> Richard D. Kaufman, Esq.
> Assistant United States Attorney
> United States Attorneys' Office
> Western District of New York
> 138 Delaware Avenue
> Buffalo, New York 14202
> *richard.kaufman@usdoj.gov*

> s/Reetuparna Dutta
> Reetuparna Dutta

056350/00000 Litigation 7959866v1

63

**Memorandum of Law in Support of Defendant's Motions**
**in Limine (Dated November 21, 2011, Filed November 30, 2011)**
**(Filed Under Seal in the District Court) [Docket No. 131].**

Memorandum of Law in Support of Defendant's Motions in Limine (Dated November 21, 2011, Filed November 30, 2011) [Docket No. 131] is Filed Under Seal, Printed in Volume VI at Pages 1505-1519.

**Declaration of Reetuparna Dutta, Esq., In Support of Defendant's**
**Motions in Limine, Dated November 21, 2011, Filed November 30, 2011,**
**with Exhibits A-I (Filed Under Seal in the District Court) [Docket No. 132].**

Declaration of Reetuparna Dutta, Esq., In Support of Defendant's Motions in Limine, Dated November 21, 2011, Filed November 30, 2011, with Exhibits A-I [Docket No. 132] is Filed Under Seal, Printed in Volume VI at Pages 1520 - 1572.

64

**Government's Notice of Motion and Motions in Limine, Filed November 21, 2011.**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

```
UNITED STATES OF AMERICA,                    :

                v.                           :

                                             :        08-CR-194-S
JOHN E. MAYE,                                :

                Defendant.                   :
_____      :
```

### NOTICE OF MOTION AND MOTION IN LIMINE

**PLEASE TAKE NOTICE** that, upon the Memorandum in Support of the Government's Motions In Limine filed herewith, the undersigned will move this Court for the granting of the relief specified in said memorandum.

DATED:  Buffalo, New York, November 21, 2011.

                    WILLIAM J. HOCHUL, JR.
                    United States Attorney

            BY:    s/JOSEPH M. GUERRA, III
                    Assistant U.S. Attorney
                    Western District of New York
                    138 Delaware Avenue
                    Buffalo, New York 14202
                    (716) 843-5824
                    Joseph.M.Guerra@usdoj.gov

            BY:    s/MARY C. BAUMGARTEN
                    Assistant U.S. Attorney
                    Western District of New York
                    138 Delaware Avenue
                    Buffalo, New York 14202
                    (716) 843-5864
                    Mary.Catherine.Baumgarten@usdoj.gov

TO:   Daniel C. Oliverio, Esq.
      Reetuparna Dutta, Esq.

**Government's Notice of Motion and Motions in Limine, Filed November 21, 2011.**

Case 1:08-cr-00194-WMS-JJM   Document 126   Filed 11/21/11   Page 2 of 2

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,                    :

                    -v-                       :           08-CR-194-S

                                              :

JOHN E. MAYE,                                 :

                    Defendant.                :

## CERTIFICATE OF SERVICE

I hereby certify that on November 21, 2011, I electronically
filed the foregoing **NOTICE OF MOTION AND MOTION IN LIMINE** with the
Clerk of the District Court using its CM/ECF system, which would
then electronically notify the following CM/ECF participant on this
case.

Daniel C. Oliverio, Esq.
Guaranty Building
140 Pearl Street, Suite 100
Buffalo, New York  14202

Reetuparna Dutta, Esq.
Guaranty Building
140 Pearl Street, Suite 100
Buffalo, New York 14202

                              s/KAREN S. BARONE

66

**Memorandum of Law In Support of Government's Motions in Limine, Filed November 21, 2011.**

Case 1:08-cr-00194-WMS-JJM   Document 127   Filed 11/21/11   Page 1 of 35

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

        v.                                    08-CR-194-S

JOHN E. MAYE,

                 Defendant.
_____


## MEMORANDUM IN SUPPORT OF GOVERNMENT'S MOTIONS IN LIMINE

### Preliminary Statement

In an effort to expedite the resolution of issues which may arise during the trial of this action, with the Court's permission, the parties requested an opportunity to submit motions in limine prior to the scheduling of a trial date for this Indictment. The following is the government's memorandum in support of its motions in limine.


### Indictment and Charges

The defendant is charged in a 34-count Second Superseding Indictment with various violations of Title 21 of the United States Codes relating to his unlawful distribution and dispensing of Schedule III and IV controlled substances. Specifically, Count 1 of the Indictment charges that the defendant conspired with others between January 2004 and September 2006 to unlawfully distribute and dispense quantities of hydrocodone and codeine, Schedule III

67

**Memorandum of Law In Support of Government's Motions in Limine, Filed November 21, 2011.**

controlled substances, in violation of 21 U.S.C. § 841(a)(1); to unlawfully distribute and dispense quantities of diazepam, alprazolam, lorazepam, zolpidem and phentermine, Schedule IV controlled substances, also in violation of 21 U.S.C. § 841(a)(1); and to knowingly use communication facilities, that is, a telephone and the Internet, to unlawfully distribute and dispense Schedule III and IV controlled substances, in violation of 21 U.S.C. § 843(b); all of which is in violation of 21 U.S.C. § 846. The Indictment alleges that the defendant's distribution and dispensing of controlled substances was "other than for a legitimate medical purpose and not in the usual course of professional practice."

The charges in the Indictment arise out of the defendant's purportedly acting as a physician in approving orders for controlled substances placed over the Internet by customers who the defendant never met, much less physically examined, and with whom he engaged in a short telephone conversation prior to authorizing a prescription for the controlled substance requested by the customer. In the overwhelming majority of the instances charged in the substantive counts of the Indictment, the defendant never even attempted to verify the identity of the customers with whom he spoke and for whom he authorized the distribution of controlled substances.

-2-

68

**Memorandum of Law In Support of Government's Motions in Limine, Filed November 21, 2011.**

Case 1:08-cr-00194-WMS-JJM   Document 127   Filed 11/21/11   Page 3 of 35

Each of the substantive counts of the Indictment, Counts 2-34, charge that the defendant distributed and dispensed controlled substances "other than for a legitimate medical purpose and not in the usual course of professional practice", in violation of 21 U.S.C. § 841(a)(1). Specifically, Counts 2-13 involve hydrocodone, a Schedule III controlled substance; Counts 14 and 15 involve codeine, a Schedule III controlled substance; Count 16 involves diazepam, a Schedule IV controlled substance; Counts 17-22 concern alprazolam, a Schedule IV controlled substance; Counts 23-25 concern lorazepam, a Schedule IV controlled substance; Counts 26-29 concern zolpidem, a Schedule IV controlled substance; and Counts 30-34 concern phentermine, a Schedule IV controlled substance.

The evidence at trial will show that during the time period of the Indictment, the defendant was a physician employed by various Internet websites which advertised controlled substances for sale. Individuals who wished to purchase the controlled substances placed an order over the website by completing a questionnaire/order form. The order forms were then routed to doctors, such as the defendant. After the defendant accessed the order form completed by the customer, the defendant engaged the customer in a telephone conversation with respect to the order. Initially, the only documentation received by the defendant from customers was the online questionnaire/order form completed by the customer. As the

-3-

**Memorandum of Law In Support of Government's Motions in Limine, Filed November 21, 2011.**

scheme progressed, the defendant started receiving copies of documentation from the customers with respect to their claimed medical conditions and copies of identification documents of the customers. Upon a purported review by the defendant of whatever material was submitted to him by the customer, the defendant either authorized or refused to authorize the distribution of controlled substances to the customer. If the order was approved (which the overwhelming majority were), the defendant sent a "prescription" to a pharmacy also associated with the web site who shipped the drugs to the customer.[1]

As will be made clear throughout the trial of this Indictment, it is the government's position that the above actions by the defendant fell far short of establishing a legitimate physician-patient relationship with any of the customers and, as a result, the defendant's purported prescriptions authorizing the distribution of drugs to the customers were unlawful drug dealing in violation of 21 U.S.C. § 841(a)(1).

---

[1] The law is clear that the authorizing of a prescription by the defendant, whether or not the prescription was ever filled or whether the customer ever took possession of the drugs completed the act of distribution or dispensing by the defendant. The controlled substances themselves do not actually have to be distributed. United States v. Flowers, 818 F.2d 464, 467 (6th Cir. 1987); United States v. Stump, 735 F.2d 273, 276 (7th Cir. 1984); United States v. Davis, 564 F.2d 840, 845 (9th Cir. 1977); United States v. Tighe, 551 F.2d 18, 20-21 (3d Cir. 1997); United States v. Bartee, 479 F.2d 484, 488 (10th Cir. 1973).

70

**Memorandum of Law In Support of Government's Motions in Limine, Filed November 21, 2011.**

Case 1:08-cr-00194-WMS-JJM   Document 127   Filed 11/21/11   Page 5 of 35

## Motions In Limine

In this memorandum, the government sets forth its arguments in support of the following motions:

1. Limitation of the cross-examination of Theodore V. Parran, Jr., M.D.;

2. Requiring advance notice from the defendant regarding defenses based on reliance on advice of counsel and/or on approval from the New York State Office of Professional Medical Conduct;

3. Use of a national standard of medical care to resolve the determination of the defendant's good faith basis to believe his distribution of controlled substances was in accord with generally accepted medical practice;

4. Precluding argument at trial based on the Online Pharmacy Act/Ryan Haight Act; and

5. Admission into evidence of Drug Enforcement Administration guidance notice entitled "Dispensing and Purchasing Controlled Substances Over the Internet."

## 71

**Memorandum of Law In Support of Government's Motions in Limine, Filed November 21, 2011.**

Case 1:08-cr-00194-WMS-JJM   Document 127   Filed 11/21/11   Page 6 of 35

1.   <u>**Cross-Examination of Theodore V. Parran, Jr., M.D.**</u>

   a.   <u>**Dr. Parran**</u>

The government has secured the services of a medical expert who has reviewed numerous patient files and records pertaining to the defendant and the charges pending in the Second Superseding Indictment. That expert medical is Theodore V. Parran, Jr., M.D., a board-certified internist who practices general internal medicine and addiction medicine, and who also is an addiction consultant to several pain management programs. Dr. Parran will be called at trial as an expert concerning the prescription, distribution, and dispensing of controlled substances by the defendant.[2] In summary, Dr. Parran will testify that, after reviewing the defendant's patient records and pharmacy prescription records, to a reasonable degree of medical certainty, the prescribing of controlled drugs by the defendant to his patients does not meet the standards of medical care, are outside the normal course of professional

_____

[2] Dr. Parran has been qualified as an expert in addiction medicine, pain management, and prescribing of controlled substances in several cases, including numerous state and federal cases. Federal courts have discussed Dr. Parran's expertise, and his expert testimony, in <u>United States v. Webb</u>, 655 F.3d 1238, 1241-42 (11th Cir. 2011), <u>United States v. Martinez</u>, 588 F.3d 301, 323-24 (6th Cir. 2009), <u>United States v. Chube II</u>, 538 F.3d 693, 607-701 (7th Cir. 2008), <u>United States v. Maynard</u>, 2008 WL 2059635, *2-3 (3rd Cir. 2008), <u>United States v. Williams</u>, 445 F.3d 1302, 1305 (11th Cir. 2006), <u>United States v. Merrill</u>, 513 F. 3d 1293, 1297-1298, 1302-1303 (11th Cir. 2008), <u>Hicks v. Collins</u>, 384 F.3d 204, 214 (6th Cir. 2004), and <u>Katz v. United States</u>, 2009 WL 4730649, *3-4 (E.D. Mo. 2009).

**Memorandum of Law In Support of Government's Motions in Limine, Filed November 21, 2011.**

practice, and appear to be for other than legitimate medical purposes.

    **b.**   <u>Unfounded Investigation</u>

    In December, 2008, a newspaper in the Cleveland area, where Dr. Parran practices medicine, reported that Dr. Parran was under investigation by the United States Attorney's Office in the Northern District of Ohio and the Office of Inspector General (OIG) for the Veteran's Administration (VA), arising from allegations that during his employment with the VA, individuals from the VA fellowship program may have been used by Dr. Parran in his private practice, or that Dr. Parran billed the VA for their work as his own, from 2001 through 2006. On or about March 2, 2009, the United States Attorney's Office for the Northern District of Ohio concluded the investigation and, based upon the findings of that investigation, the case was declined for prosecution. Further, no administrative or civil sanctions resulted from the investigation or were pursued against Dr. Parran. Information concerning Dr. Parran, and the circumstances set forth above, have been disclosed by the government to defense counsel in this case.

    It is possible that at the trial of this case, the defense may improperly attempt to raise this issue - the unfounded allegation of fraud against Dr. Parran and the closed investigation of him -

73

**Memorandum of Law In Support of Government's Motions in Limine, Filed November 21, 2011.**

Case 1:08-cr-00194-WMS-JJM   Document 127   Filed 11/21/11   Page 8 of 35

either in opening or closing statements, or in the cross-examination of the government's expert or other witnesses, or even in direct examination of possible defense witnesses. Limitation of the cross-examination of Dr. Parran as to the unfounded, and unproven fraud allegation against him is appropriate, since information concerning the investigation is irrelevant to the issues here. Even if evidence of the unfounded allegation and investigation was relevant, the probative value of the allegation of fraud and the unfounded investigation is outweighed by the danger of unfair prejudice.

    c.   **Such Impeachment of Dr. Parran is Improper and Should be Excluded**

The government believes that the defense may attempt to cross-examine its expert, Dr. Parran, concerning the unfounded VA OIG investigation and related information, e.g., news articles, reports, etc., in an attempt to impeach Dr. Parran, whose testimony will be harmful to the defendant at trial. Such an unproven and unfounded allegation of an alleged fraud that is wholly unrelated to Dr. Parran's expert opinion and testimony concerning the prescribing of controlled substances by the defendant, as outside the normal course of professional practice, simply is irrelevant to the issues of this case. If, in the alternative, the Court finds that this evidence is relevant, the government asserts that any probative value of the evidence is substantially outweighed by the

74

**Memorandum of Law In Support of Government's Motions in Limine, Filed November 21, 2011.**

Case 1:08-cr-00194-WMS-JJM   Document 127   Filed 11/21/11   Page 9 of 35

danger of unfair prejudice to the government, confusion of the issues before the jury, and the misleading of the jury, and that cross-examination or raising these matters at trial should be excluded pursuant to Fed. R. Evid. 403.

The test for relevance is a two step process. United States v. Miller, 626 F.3d 682, 688 (2d Cir. 2010) (court did not abuse discretion in excluding evidence of defendant's appeal of family court order in international parental kidnaping trial), cert. denied, ___ U.S. ___, 2011 WL 4536591 (October 3, 2011); United States v. Hall, 653 F.2d 1002, 1005 (5th Cir. 1981). To be relevant, evidence must have some tendency to make a fact that is of consequence to the outcome of the trial more or less probable. Fed. R. Evid. 401[3]; see, e.g. Miller, 626 F.3d at 688. In determining relevancy of evidence, two requirements must be met: (1) that the evidence must be probative of the proposition it is offered to prove, and (2) that the proposition it is offered to prove must be one that is of consequence to the determination of the criminal charges in this case. See Miller, 626 F.3d at 688; United States v. Kelley, 551 F.3d 171, 175 (2d Cir. 2009), cert. denied, ___ U.S.___, 129 S.Ct. 2756, (June 1, 2009). Simply put,

_____

[3] According to Fed. R. Evid. 401, "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

**Memorandum of Law In Support of Government's Motions in Limine, Filed November 21, 2011.**

"[e]vidence which is not relevant is not admissible." Miller, 626 F.3d at 688, citing Fed. R. Evid. 402.

Applying this analysis to the evidence that the defense may attempt to introduce here, it quickly is seen that a generalized allegation of fraud against Dr. Parran is not relevant to the issues at trial: whether or not the defendant is guilty of the charges in the Second Superseding Indictment that while licensed as a physician, the defendant dispensed, or caused to be dispensed, controlled substances outside the normal course of professional practice, or conspired to do so. An unfounded allegation of fraud in an unrelated matter does not make the lack of truthfulness of the witness more or less probable, and that alleged "fact" is not "of consequence" to the charges in this Second Superseding Indictment. Thus, this information is irrelevant under Fed. R. Evid. 401.

Aside from its lack of relevance, were questioning or information concerning an unproven allegation of misconduct on the part of Dr. Parran allowed to be introduced, it would be unduly prejudicial, confusing, and misleading to the jury. As such, this evidence should be excluded under Fed. R. Evid. 403, because the prejudice, confusion, and misleading of the jury engendered by the evidence would outweigh any probative value it would have on the

76

**Memorandum of Law In Support of Government's Motions in Limine, Filed November 21, 2011.**

Case 1:08-cr-00194-WMS-JJM   Document 127   Filed 11/21/11   Page 11 of 35

central issue of this trial.  Impeachment of witnesses is governed by Fed. R. Evid. 608 and 609, and the questioning of a witness concerning an unfounded allegation of fraud is not consistent with these rules, and is not appropriate.

The Supreme Court has stated that "the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination". <u>Davis v. Alaska</u>, 415 U.S. 308, 316-317 (1974).  However, a defendant's right to cross-examination is not without limitation; he is entitled only to an opportunity for effective cross-examination, not cross-examination that is effective in "in whatever way, and to whatever extent, the defense might wish." <u>Kentucky v. Stincer</u>, 482 U.S. 730, 739 (1987); <u>see also</u>, <u>Delaware v. Van Arsdall</u>, 475 U.S. 673, 680 (1986).  The Second Circuit has recognized that:

> trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on . . . cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.

<u>United States v. Figueroa</u>, 548 F.3d 222, 229 (2d Cir. 2008), <u>citing</u> <u>Delaware v. Van Arsdall</u>, 475 U.S. at 679; <u>United States v. Crowley</u>, 318 F.3d 401, 417 (2d Cir.), <u>cert. denied</u>, 540 U.S. 894 (2003).  It is well-recognized that the discretion of a trial court is

-11-

77

**Memorandum of Law In Support of Government's Motions in Limine, Filed November 21, 2011.**

"especially broad when it comes to controlling cross-examination for impeachment purposes." United States v. Van Dorn, 925 F.2d 1331, 1335 (11th Cir. 1991); see also, United States v. Abel, 469 U.S. 45, 54 (1984); United States v. Miller, 626 F.3d at 687-88. A trial judge has wide latitude to impose reasonable limitations on cross-examination based upon concerns such as relevancy, and those restrictions are reviewed for abuse of discretion. United States v. Miller, 626 F.3d at 687-88; United States v. Crowley, 318 F.3d at 417; accord, United States v. Rossomando, 144 F.3d 197, 203 n.6 (2d Cir. 1998).

In circumstances similar to this case, courts have imposed appropriate limits to preclude irrelevant, prejudicial, and confusing testimony. In United States v. Novaton, 271 F.3d 968, 1004 (11th Cir. 2001), the trial court granted a government motion in limine precluding defendants from cross-examining police officers about unrelated investigations of the testifying officers. There, the defendants sought to cross-examine one officer about the "Miami River Cops Scandal," arguing that the cross-examination of the officers on this scandal, for which no criminal charges were ever filed, would show bias or motive to lie on the parts of these officers. As to a separate officer, the defendants also sought to cross-examine him concerning an investigation that was pending against him at the time of the trial, involving allegations that

78

**Memorandum of Law In Support of Government's Motions in Limine, Filed November 21, 2011.**

Case 1:08-cr-00194-WMS-JJM   Document 127   Filed 11/21/11   Page 13 of 35

the officer had stolen 23 kilograms of cocaine during a cocaine seizure. The trial court granted the motion in limine concluding that the investigations were irrelevant, and even if they were relevant, their probative value was outweighed by the prejudice they would cause. Id. at 1005. The Eleventh Circuit Court of Appeals upheld the trial court's determination, concluding that the information that the defendants sought to introduce was inadmissible under Rules 608 and 403 of the Federal Rules of Evidence. Id. at 1006-1007.

Similarly, in United States v. Taylor, 417 F.3d 1176 (11th Cir. 2005), the Eleventh Circuit upheld a district court's refusal to allow the cross-examination of government witnesses concerning unfounded police complaints of harassment, planting evidence, and brutality. There, in a prosecution on drug and firearm charges, a defendant sought to impeach a police officer with 13 complaints of specific misconduct, arguing that these complaints of police misconduct were relevant to prove that the officer was biased, had a tendency for untruthfulness, and may have planted the drugs during the arrest of the defendant. Id. at 1179. Relying upon the decision in Novaton, supra, the Court held that the district court did not abuse its discretion in denying the defendant's request to reference or impeach the government witness with the thirteen

**Memorandum of Law In Support of Government's Motions in Limine, Filed November 21, 2011.**

complaints of police misconduct.  The Court stated, at page 1179, that:

> Taylor's attempt to offer or reference these 'unfounded' complaints into evidence at trial is similar to the failed defendants' efforts in United States v. Novaton, 271 F.3d 968 (11th Cir. 2001).  The Novaton defendants attempted to cross-examine one government agent on his potential involvement in the 'Miami River Cops Scandal,' where the officer had been suspended with pay for four months but was later re-instated and no criminal charges were ever brought against that agent 'although he was formally reprimanded for failing to document a conversation with an informant.' 271 F. 3d at 1004.  Like Taylor here, the defendants had argued to the district court that cross-examination of the officer regarding this matter should be permitted because it would show the agent's bias or motive to lie.  The defendants also sought to cross-examine another government agent concerning one  pending investigation and one completed investigation where the same source had sent to the Drug Enforcement Agency a letter alleging that the agent had stolen cocaine during a drug seizure.  271 F.3d at 1004-05.

The Court in Taylor noted that the Court in Novaton upheld the district court's exclusion of the "investigations" as irrelevant and, even if arguably they were relevant, their probative value was outweighed by their prejudice.  Additionally, the "unproven allegations" would inject into the trial the "obvious potential to cause serious and unfair prejudice to the Government," and since the officer was cleared during the first investigation, and the second investigation involved the same allegations, information

80

**Memorandum of Law In Support of Government's Motions in Limine, Filed November 21, 2011.**

concerning those investigations elicited during cross-examination would not have had much, if any, probative value.  Id. at 1179-1180.

Similar analysis has been adopted by the Second Circuit in summary unreported decisions which are educative.  For example, United States v. Price, 374 Fed. Appx. 189, 2010 WL 1628789 (2d Cir. 2010), the Court upheld the District Court's decision to preclude the defendant from cross-examining a government witness about a civil complaint filed against him in 2003.  374 Fed. Appx. at 192.  In doing so, the Second Circuit recognized that while the Fifth and Sixth Amendments to the Constitution:

> guarantee every defendant the right to present a meaningful defense, which includes cross-examining witnesses, United States v. Stewart, 433 F.3d 273, 310 (2d Cir. 2006), these rights do not trump the trials court's discretion to place proper restrictions on the introduction of evidence, id. at 311.  In light of the fact that the civil case against [the witness] settled without any finding by a court that he had committed wrongdoing, the district court did not abuse its discretion in concluding that cross-examination on this point risked unduly prejudicing and confusing the jury. . . .

374 Fed. Appx. at 192.  Likewise, in United States v. Nelson, 193 Fed. Appx. 47, 2006 WL 2335222 (2d Cir. 2006), the Second Circuit held that trial court did not abuse its discretion in restricting the defendant's cross-examination of a police officer witness

81

**Memorandum of Law In Support of Government's Motions in Limine, Filed November 21, 2011.**

Case 1:08-cr-00194-WMS-JJM   Document 127   Filed 11/21/11   Page 16 of 35

concerning his disciplinary record.  In <u>United States v. Jeffers</u>, 402 Fed. Appx. 601, 2010 WL 4903957, at *1 (2d Cir. 2010), the Second Circuit upheld the trial court's exercise of its discretion to preclude cross-examination of purported prior acts of violence against defendant by her ex-boyfriend, a cooperating government witness, after finding those alleged acts were not probative of the witness' credibility.  See also <u>United States v. Dhafir</u>, 342 Fed. Appx. 702, 2009 WL 2501927 (2d Cir. 2009) (trial court did not abuse discretion by limiting defense cross-examination of alleged bias of government's witnesses).

Concerning specific impeachment of the government's medical expert, Fed. R. Evid. 608(a) limits the manner in which his credibility can be attacked.  That rule provides that a witness' credibility may be attacked only by opinion or reputation as to character for truthfulness or untruthfulness, and prohibits impeaching a witness based upon extrinsic evidence of specific instances of conduct of the witness, other than proof of conviction for a crime.  While the defendant may, in the discretion of the court, inquire on cross-examination of the witness as to specific instances of conduct concerning the witness' character for truthfulness or untruthfulness, the case law is quite clear that the defense must "take the answer" and cannot introduce other evidence or testimony to refute the response given by the witness.

-16-

82

**Memorandum of Law In Support of Government's Motions in Limine, Filed November 21, 2011.**

Case 1:08-cr-00194-WMS-JJM   Document 127   Filed 11/21/11   Page 17 of 35

See e.g., United States v. Shoreline Motors, 413 Fed. Appx. 322, 2011 WL 117049 (2d Cir. 2011), citing United States v. Masino, 275 F.2d 129, 133 (2d Cir. 1960) ("When a witness is cross-examined for the purpose of destroying his credibility by proof of specific acts of misconduct not the subject of a conviction, the examiner must be content with the answer.  The examiner may not, over objection, produce independent proof to show the falsity of such an answer."); see also United States v. Castillo, 181 F.3d 1129, 1133 (9th Cir. 1999); United States v. Herzberg, 558 F.2d 1219, 1223 (5th Cir. 1977).  Importantly, there is no right to impeach a witness with respect to collateral or irrelevant matters. Id.; see also United States v. Hawkins, 661 F.2d 436, 444 (5th Cir. 1981); United States v. Terebecki, 692 F.2d 1345, 1351 (11th Cir. 1982).

In the instant case, there are no specific instances of conduct of Dr. Parran concerning untruthfulness.  The allegation of fraud made against Dr. Parran was unfounded and declined for prosecution.  Indeed, allowing any impeachment of Dr. Parran concerning an unfounded and vague allegation of fraud would be contrary to the holdings of the Second Circuit in the unreported summary decisions, and of other Circuit Courts, including Novaton, Taylor, and Sweeting cases discussed above.

**Memorandum of Law In Support of Government's Motions in Limine, Filed November 21, 2011.**

Case 1:08-cr-00194-WMS-JJM   Document 127   Filed 11/21/11   Page 18 of 35

Clearly, since the allegation of fraud in VA billings made against Dr. Parran did not result in the prosecution of Dr. Parran, let alone any civil or administrative sanctions, it is hard to imagine any relevancy of the information in that there is no probative value to this case, in which the defendant, while licensed as a physician, dispensed, or caused to be dispensed, controlled substances outside the normal course of professional practice.

Finally, it cannot be argued that the unfounded investigation of the allegation against Dr. Parran in some way demonstrates bias on his part as to his expert testimony. This same argument of impeaching a witness with unfounded and unproven allegations of misconduct to demonstrate bias was clearly rejected by the Second Circuit in the unreported summary orders cited above, and by the Eleventh Circuit in <u>Novaton</u>, 271 F.3d at 1004-5, 1007, and <u>Taylor</u>, 417 F.3d at 1179-1180. Additionally, this is not a situation where the witness is a confederate of the defendant in the charged criminal conduct and hopes for some later consideration by the government as to being charged or in sentencing, expects favorable treatment from the government, or where a witness has a charge or investigation pending against him that involves the prosecuting entity in the case at the time of his testimony. There is no pending investigation of Dr. Parran, and the previous unfounded

**Memorandum of Law In Support of Government's Motions in Limine, Filed November 21, 2011.**

investigation of him was conducted by the VA OIG and the United States Attorney's Office for the Northern District of Ohio, and not this office.  This office did not participate in, nor make any recommendations concerning, the decision by the United States Attorney's Office for the Northern District of Ohio to decline any prosecution of Dr. Parran and to close the investigation.

In this case, an unfounded and unproven allegation of some unrelated fraud cannot demonstrate any bias on the part of Dr. Parran since his testimony concerns his evaluation of the patient files of the defendant, the prescribing practices of the defendant, and the defendant's failure to comply with the standards for prescribing controlled substances.  Dr. Parran will be presenting his expert opinion as to whether the defendant's conduct in the charged counts was outside the normal course of professional medical practice, and will not be a witness concerning the occurrence of specific facts concerning the charges in the Second Superseding Indictment.

Based upon the foregoing, the United States respectfully requests that this Court exclude from cross-examination, direct examination, opening statement, and argument, any reference to the unfounded allegation of fraud against Dr. Parran, the investigation of that allegation, or any information related thereto, absent an

**Memorandum of Law In Support of Government's Motions in Limine, Filed November 21, 2011.**

advance showing, outside of the hearing of the jury, that such evidence is admissible under the Rules of Evidence and applicable case law.

**2.   Reliance on Advice from Others**

    **a.   Advice of Counsel**

It is unclear whether the defendant will seek to assert a defense that he was relying in good faith upon advice of counsel in the manner in which he prescribed, distributed, and dispensed controlled substances to the individuals via the telephone and Internet, as charged in the Second Superseding Indictment.  To the extent that the defendant will assert such a defense, the government moves to have the defendant provide immediate notice that he will rely upon an advice of counsel defense at trial, so the issue can be fully assessed by the government to determine whether it provides a valid legal defense to the charges, and to adequately prepare for trial.

Reliance upon legal advice, as a defense, "presupposes the defendant's solicitation of advice in good faith." United States v. Evangelista, 122 F.3d 112, 117 (2d Cir. 1997), citing, United States v. Beech-Nut Nutrition Corp., 871 F.2d 1181, 1194 (2d Cir. 1989) ("advice of counsel defense"); Williamson v. United States, 207 U.S. 425, 453 (1908).  The most favorable jury instruction to

86

**Memorandum of Law In Support of Government's Motions in Limine, Filed November 21, 2011.**

Case 1:08-cr-00194-WMS-JJM   Document 127   Filed 11/21/11   Page 21 of 35

the defendant concerning an advice of counsel defense, as recognized by the Supreme Court is:

> [I]f a man honestly and in good faith seeks advice of a lawyer as to what he may lawfully do . . ., and fully and honestly lays all the facts before his counsel, and in good faith and honestly follows such advice, relying upon it and believing it to be correct, and only intends that his acts shall be lawful, he could not be convicted of crime [sic] which involves willful and unlawful intent. . . .

Beech-Nut Nutrition, 871 F.2d at 1194-95, quoting Williamson, 207 U.S. at 453). However, a defendant is not entitled to such an instruction unless there are sufficient facts in the trial record to support such a defense. See Evangelista, 122 F.3d at 117-18; United States v. Quinones, 2011 WL 1150864, at *1 (2d Cir. March 29, 2011) (not selected for publication).

If the defendant raises an advice-of-counsel defense for the first time at trial, thus waiving defendant's attorney-client privilege,[4] the government will be placed in the difficult and unfair position of being forced to respond in the middle of the

---

[4] Raising an advice of counsel defense waives the attorney-client privilege. See, e.g., United States v. Bilzerian, 926 F.2d 1285, 1292 (2d Cir. 1991) (a defendant cannot use attorney-client privilege as both a shield and a sword); In re Von Bulow, 828 F.2d 94, 101 (2d Cir. 1987); United States v. Arnoff, 466 F. Supp. 855, 862 (S.D.N.Y. 1979); see also United States v. Jacobs, 117 F.3d 82, 87-88 (2d Cir. 1997) (inaccurate summary of letters from counsel waived attorney-client privilege).

-21-

**Memorandum of Law In Support of Government's Motions in Limine, Filed November 21, 2011.**

trial to a large quantity of new information.  To adequately respond to an advice-of-counsel defense would require interviews of the counsel identified by the defense, as well as the review by the United States of documentary evidence, including those containing the opinions or advice, all preliminary drafts of documents, attorney notes containing material necessary to the preparation of documents, and copies of other documents, the contents of which were necessary to the preparation of the published document.  See United States v. (Under Seal), 748 F.2d 871, 875 n.7 (4th Cir. 1984).  This necessarily would result in a substantial delay in the trial, and effectively preclude the government from fully investigating this defense and responding appropriately.  As the Aronoff court opined:

> Where a privilege-holder has made assertions about privileged communications, but has attempted to bar other evidence of those communications, there is a serious danger that his assertions are false or misleading. Thus, where his assertions have been offered on a material issue in a judicial proceeding, his privilege should be revoked at least with respect to any communications whose disclosure might affect the fact finder's judgment as to that issue.

See United States v. Aronoff, 466 F. Supp. at 862.


The government cannot interview or otherwise obtain discovery from the attorneys as to privileged information until the privilege is waived, but the waiver may not occur until the middle of trial

88

**Memorandum of Law In Support of Government's Motions in Limine, Filed November 21, 2011.**

testimony. The government thus moves for advance notice as to whether the defendant intends to raise advice-of-counsel during trial.[5] Accordingly, the government urges this Court to exercise its authority in managing its docket and in conserving public resources to avoid a substantial delay during the middle of trial by requiring disclosure of the intent to rely on advice of counsel.

In the event the defendant intends to rely on the advice-of-counsel defense at trial, the government must be permitted the requested discovery under Rule 16(b)(1)(A). Immediate production of this information is necessary to allow the government sufficient time prior to trial to review documents and interview witnesses.

---

[5] While not specifically requiring that a defendant provide pretrial notice of reliance on the advice-of-counsel, the Federal Rules of Criminal Procedure do provide for pretrial notice of three other types of defenses: alibi (Rule 12.1), insanity (Rule 12.2), and public authority (Rule 12.3). According to the Advisory Committee Notes, advance notice as to those defenses is required to permit the government to prepare for trial and to avoid the necessity of continuances during a trial. See, e.g., Advisory Committee Note to Rules 12.1 and 12.2. The three enumerated defenses as to which notice must be given under the rules share a basic characteristic with advice-of-counsel: they are ordinarily fact-intensive defenses that are likely to create substantial problems of fairness and efficiency if raised for the first time during the trial. Further, the requirement as to the insanity defense involves, under ordinary circumstances, pretrial disclosure by the defense of otherwise arguably privileged information.

-23-

**Memorandum of Law In Support of Government's Motions in Limine, Filed November 21, 2011.**

### b.   Advice from Office of Professional Medical Conduct

Prior to 1997, the defendant was licensed to practice medicine in the State of New York.  As a result of an arson conviction in federal court, the defendant's license to practice medicine in the State of New York was suspended and he was placed on probation for 3 years following the suspension.  As understood by the government, the period of suspension commenced upon the defendant's re-engaging in the practice of medicine.  Upon his release from prison, the defendant engaged in various non-medical related occupations.  By way of a letter received by the New York State Office of Professional Medical Conduct (OPMC), the defendant advised that, effective March 16, 2004, he would resume the practice of medicine "as a telemedicine [c]onsultant."  As was further stated in the defendant's letter, "I will establish a bona-fide patient/physician relationship as required by state licensure."

As a result of the defendant's letter and a follow-up telephone conversation with a representative of OPMC, it was recorded by way of a memorandum in the defendant's file with OPMC that:

> Dr. Maye states in his letter that he is working for North American Pharmaceutical Solutions, LLC as a Telemedicine Consultant providing online/telephonic consultations to customers seeking to obtain prescription medications through their on-line website. He advised me on the phone that it is a legitimate operation and a part of his role is to advise patients they need to visit

**Memorandum of Law In Support of Government's Motions in Limine, Filed November 21, 2011.**

Case 1:08-cr-00194-WMS-JJM   Document 127   Filed 11/21/11   Page 25 of 35

their physician when appropriate to be examined for a new or renewal script. He cannot order or renew scripts unless they are in compliance with their follow-up visits. He says he has access to their medical history/records and will keep appropriate records in this practice.[6]

As a result of the defendant's letter and telephone conversation, the defendant was sent a letter by OPMC, dated March 31, 2004, advising him of his "personal obligation to adhere to acceptable standards of medical practice."

The defendant's employment, as set forth above, was the beginning of his involvement in the conspiracy charged in Count 1 of the Indictment and led to the unlawful dispensing of controlled substances as charged in the substantive counts of the Indictment. The government believes that the defendant may attempt to argue that he relied in good faith on OPMC's failure to prohibit his employment as establishing his good faith belief in legitimacy of this employment. The fact that the defendant, during the events charged in the Indictment, never adhered "to acceptable standards of medical practice" and otherwise failed to establish "a bona-fide patient/physician relationship" with any of the customers to whom he distributed drugs, precludes him from raising a defense of

_____

[6] The memorandum goes on to state "[OPMC] is uncomfortable with this arrangement and does not want to give any appearance of 'OPMC approval.'"

## 91

**Memorandum of Law In Support of Government's Motions in Limine, Filed November 21, 2011.**

reliance on any authorization by OPMC of his employment as an Internet distributor of controlled substances.  Cf., United States v. Seminerio, 680 F. Supp. 2d 523, 541-43 (S.D.N.Y. 2010) (failure of state legislator to fully disclose nature of consulting activities precludes reliance on ethics opinion authorizing such activities).

Accordingly, it is submitted that any defense based on purported approval by OPMC of the defendant's employment as a "telemedicine consultant" be resolved in accordance with the above.

### 3.   National Standard of Medical Care

It is anticipated that the defendant may seek to introduce evidence at trial that he had a "good faith basis" to believe, based on a standard of objective reasonableness, that his prescription of controlled substances in each instance, was for a legitimate medical purpose and in accord with the "generally accepted medical practice."  In doing so, the defendant may even concede that he simply was mistaken, or even negligent, as to how he treated the individuals identified in the Second Superseding Indictment, but that he was legitimately attempting to treat the medical issues as reported to him.  If that indeed is the case, an examination of the governing principles should establish the parameters of admissible evidence at trial.

92

**Memorandum of Law In Support of Government's Motions in Limine, Filed November 21, 2011.**

Case 1:08-cr-00194-WMS-JJM   Document 127   Filed 11/21/11   Page 27 of 35

It is a federal offense to "knowingly or intentionally . . . distribute, or dispense, or possess with intent to . . . distribute, or dispense, a controlled substance." Title 21, United States Code, Section 841(a)(1). Although not explicitly stated in Section 841(a)(1), an exception exists for physicians issuing prescriptions for such substances when "issued for a legitimate medical purpose by an individualized practitioner acting in the usual course of his professional practice." See, e.g., 21 C.F.R. § 1306.04. A physician may be prosecuted for the unlawful distribution of controlled substances under Title 21, United States Code, Section 841(a)(1), when, for example, he or she issues a prescription beyond that exception. See United States v. Moore, 423 U.S. 122, 138-39 (1908); United States v. Vamos, 797 f.2d 1146, 1152 (2d Cir. 1986) ("physician has no special license to divert the flow of drugs from legitimate medical distribution to illicit commercial trade"). In order to sustain its burden of proof under Counts 2 through 34 of the Second Superseding Indictment, the government must prove beyond a reasonable doubt that the defendant knowingly and deliberately distributed and dispensed a controlled substance and did so other than in good faith in the usual course of a professional practice and in accordance with a standard of medical practice generally recognized and accepted in the United States. See United States v. Wexler, 522 F.3d 194, 204-205 (2d Cir. 2008), citing, United States v. Moore, 423 U.S. at 124 and

93

**Memorandum of Law In Support of Government's Motions in Limine, Filed November 21, 2011.**

Case 1:08-cr-00194-WMS-JJM   Document 127   Filed 11/21/11   Page 28 of 35

United States v. Vamos, 797 F.2d at 1153.[7]  A defendant may not be convicted if he or she merely made an honest effort to treat his or her patients in compliance with an accepted standard of medical practice.  In this context, a controlled substance is distributed or dispensed by a physician in the usual course of his or her professional practice and, therefore, lawfully, if the substance is distributed or dispensed in good faith in medically treating a patient.  Id.

While a defendant's failure to meet the standard of care applicable to the area of that physician's medical specialty is not, alone, determinative of whether the physician's conduct falls outside the standard of professional practice, it is relevant to the jury's determination of whether the defendant's conduct deviated so far from the "usual course of professional practice" that his actions became criminal.  See United States v. Wexler, 522 F.3d at 204.  Accordingly, the government will offer expert testimony of a physician concerning the applicable standard of medical care to a physician in the United States distributing and dispensing controlled substances to individuals over the Internet,

---

[7] "To permit a practitioner to substitute his or her views of what is good medical practice for standards generally recognized and accepted in the United States would be to weaken the enforcement of our drug laws in a critical area."  United States v. Vamos, 797 F.2d at 1153.

-28-

## 94

**Memorandum of Law In Support of Government's Motions in Limine, Filed November 21, 2011.**

Case 1:08-cr-00194-WMS-JJM   Document 127   Filed 11/21/11   Page 29 of 35

and the defendant's deviation from that standard.  Id., citing, United States v. Feingold, 454 F.3d 1001, 1007 (9th Cir. 2006).

A physician, such as the defendant, charged with the unlawful distribution and dispensing of controlled substances, and thereby with deviating from the usual course of medical practice, may raise a good-faith defense to the charges, which the government must disprove beyond a reasonable doubt.  United States v. Wexler, 522 F.3d at 205.  In that context, the jury is to be instructed:

> that the drug has been legally dispensed if the physician had a good faith belief, based on a standard of objective reasonableness, that his prescription 'was for a legitimate medical purpose and in accord with the usual course of generally accepted medical practice'.

Id., citing, United States v. Vamos, 797 F.2d at 1153.

In United States v. Wexler, the Second Circuit cited, with approval, the following jury instruction concerning the good faith defense asserted by Wexler, a physician-defendant charged with violations of Title 21, United States Code, Section 841(a)(1):

> [T]he Government must prove beyond a reasonable doubt that the defendant dispensed the drugs, or caused them to be dispensed, other than for a legitimate medical purpose, other than in good faith, and not in the usual course of medical practice.
>
> Good faith in this context means the honest exercise of best professional judgment as to a patient's medical

-29-

**Memorandum of Law In Support of Government's Motions in Limine, Filed November 21, 2011.**

needs. It means that the doctor acted in accord with what he should have reasonably believed to be proper medical practice.

522 F.3d at 205.  Likewise, in <u>Vamos</u>, 797 F.2d at 1152, the Second Circuit upheld a similar instruction that required the government showing that the drugs were dispensed "other than for a legitimate medical purpose and not in the course of medical practice."

Accordingly, it is submitted that issues at trial with respect to the appropriate standard of medical care and the defendant's good faith basis to believe that his distribution of controlled substances was lawful be resolved in accordance with the above.

4.   <u>**Ryan Haight Act**</u>

The Online Pharmacy Act, or so-called Ryan Haight Act, was effective as of April 13, 2009 and set forth a specific set of statutory requirements with respect to the distribution of controlled substances by way of the Internet.  Among its provisions, is a definition of "valid prescription" which requires "at least 1 in-person medical evaluation of the patient."  21 U.S.C. § 829(e)(2)(A)(i).  As will be made clear during the trial of this action, and as set forth herein, it is the government's position that the lack of any physical examination by the defendant of the customers for whom he authorized the distribution of

96

**Memorandum of Law In Support of Government's Motions in Limine, Filed November 21, 2011.**

Case 1:08-cr-00194-WMS-JJM   Document 127   Filed 11/21/11   Page 31 of 35

controlled substances, among other things, establishes the unlawfulness of the defendant's actions.  While the government is not sure, the defendant may attempt to argue that the Ryan Haight Act, specifically through its definition of "valid prescription", established a new legal standard such that the government cannot rely on the lack of a physical examination by the defendant of any of his customers as a basis to establish criminal liability. To the extent it has been raised in cases subsequent to the passage of the Ryan Haight Act, this defense has been uniformly rejected.

> "[I]t may well be that Congress intended the [Online Pharmacy Act] to proscribe, by a clear-cut, per se rule, the distribution of controlled substances over the Internet without a face-to-face meeting between patient and doctor; it does not follow that the same conduct is not within the embrace of the current prohibition of distribution outside the usual scope of professional practice."  [citation omitted]

United States v. Birbragher, 603 F.3d 478, 490 (8th Cir. 2010).

See also, United States v. Hazelwood, 2011 WL 2565294 at *5-7 (N.D.OH. 2011).


Accordingly, any attempt by the defendant to raise a defense to the charges in the Indictment on the basis of the Ryan Haight Act should be precluded by the Court.  Indeed, to avoid confusion of the issues and to prevent a misapprehension of the law on the

**Memorandum of Law In Support of Government's Motions in Limine, Filed November 21, 2011.**

part of the jury, the Court should prohibit any mention of the Ryan Haight Act, or its provisions, at trial.

**5.    Admissibility of Drug Enforcement Administration, April 27, 2001 Notice**

On April 27, 2001, the Drug Enforcement Administration (DEA) issued a guidance notice entitled "Dispensing and Purchasing Controlled Substances over the Internet", 66 F.R. 21181-01, 2001 WL 424546.[8]  The purpose for issuing this notice was set forth as follows:

> This notice is intended to provide guidance to prescribers, pharmacists, law enforcement authorities, regulatory authorities, and the public concerning the application of current laws and regulations as they relate to the use of the Internet for dispensing, purchasing or importing controlled substances.

66 F.R. at *21181.  The notice, in detailing the requirements for the lawful distribution of controlled substances by way of the Internet dealt with issues which will arise during the trial of this Indictment:

> Completing a questionnaire that is then reviewed by a doctor hired by the Internet pharmacy could not be considered the basis for a doctor/patient relationship. A consumer can more easily provide false information in a questionnaire than in a face-to-face meeting with a doctor.  It is illegal to receive a prescription for a controlled substance without the establishment of a

---

[8] A copy of the notice is attached hereto as Exhibit A.

**Memorandum of Law In Support of Government's Motions in Limine, Filed November 21, 2011.**

> legitimate doctor/patient relationship, and it is unlikely for such a relationship to be formed through Internet correspondence alone.
>
> ***
>
> Some sites recommend to the patient that they not take a new drug before they have a complete physical performed by a doctor. These sites then ask the patient to waive the requirement for a physical and to agree to have a physical before taking the drug they purchased via the Internet. An after-the-fact physical does not take the place of establishing a doctor/patient relationship. The physical exam should take place before the prescription is written. These types of activities by Internet pharmacies can subject the operators of the Internet site and any pharmacies or doctors who participate in the activity to criminal, civil, or administrative actions.

66 F.R. at *21183.

The government submits that this notice is highly probative to the issues at trial as it sets forth the administrative opinion of the DEA regarding the requirements for the lawful dispensing of controlled substances by way of the Internet. While, in and of itself, not determinative of any issues at trial, and given the need of the government to establish the national standard for medical practice (see, Point 3, above), this notice is but one piece of evidence the jury may consider in determining the standard of medical practice to which the defendant should be held. United States v. Lovern, 590 F.3d 1095, 1101 and n.1 (10th Cir. 2009). See also, Medipharm-Rx, Inc. v. Gonzales, 2006 W.L. 3842205 at *2 (M.D.Fl. 2006) (notice entitled to judicial deference); PCA, LLC v.

99

**Memorandum of Law In Support of Government's Motions in Limine, Filed November 21, 2011.**

<u>Gonzalez</u>, 461 F.Supp. 2d 351, 355 (E.D.Pa. 2006) (same).  <u>But see</u>,

<u>United States v. Quinones</u>, 536 F. Supp. 267, 273-74 (E.D.N.Y. 2008)

(notice not entitled to deference).


DATED:  Buffalo, New York, November 21, 2011.

Respectfully submitted,

WILLIAM J. HOCHUL, JR.
United States Attorney


BY:  s/JOSEPH M. GUERRA III
     Assistant United States Attorney
     United States Attorney's Office
     Western District of New York
     138 Delaware Avenue
     Buffalo, New York  14202
     716/843-5824
     Joseph.M.Guerra@usdoj.gov


BY:  s/MARY C. BAUMGARTEN
     Assistant United States Attorney
     United States Attorney's Office
     Western District of New York
     138 Delaware Avenue
     Buffalo, New York  14202
     716/843-5864
     Mary.Catherine.Baumgarten@usdoj.gov

## 100

**Memorandum of Law In Support of Government's Motions in Limine, Filed November 21, 2011.**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

        v.                                    08-CR-194-S

JOHN E. MAYE,

                Defendant.

---

### CERTIFICATE OF SERVICE


    I hereby certify that on November 21, 2011, I electronically filed the foregoing **MEMORANDUM IN SUPPORT OF GOVERNMENT'S MOTIONS IN LIMINE** with the Clerk of the District Court using its CM/ECF system, which would then electronically notify the following CM/ECF participants on this case:

Daniel C. Oliverio, Esq.
Guaranty Building
140 Pearl Street, Suite 100
Buffalo, New York 14202

Reetuparna Dutta, Esq.
Guaranty Building
140 Pearl Street, Suite 100
Buffalo, New York 14202


                        s/KAREN S. BARONE

101

## Exhibit "A" Annexed to Memorandum In Support.

Westlaw.

66 FR 21181-01, 2001 WL 424546 (F.R.)                                                                  Page 1

NOTICES

DEPARTMENT OF JUSTICE

Drug Enforcement Administration

[DEA-191N]

Dispensing and Purchasing Controlled Substances over the Internet

Friday, April 27, 2001

**\*21181 AGENCY: Drug Enforcement Administration (DEA), Justice.**

ACTION: Guidance.

SUMMARY: This notice is intended to provide guidance to prescribers, pharmacists, law enforcement authorities, regulatory authorities, and the public concerning the application of current laws and regulations as they relate to the use of the Internet for dispensing, purchasing, or importing controlled substances. This guidance document explains when controlled substances can be legally purchased from U.S.-based Internet sites. This notice clarifies that consumers must have valid prescriptions to obtain controlled substances legally and that consumers cannot legally purchase controlled substances from foreign supplier Internet sites and have them shipped to the U.S, unless the consumers are registered with DEA as controlled substances importers and are in compliance with all DEA requirements.

FOR FURTHER INFORMATION CONTACT: Patricia M. Good, Chief, Liaison and Policy Section, Office of Diversion Control, Drug Enforcement Administration, Washington, DC 20537. Telephone (202) 307-7297.

SUPPLEMENTARY INFORMATION:

*Why is This Notice Necessary?*

With the advent of Internet pharmacies, DEA registrants and the public have asked how these Internet pharmacies fit into the requirements that currently exist for the prescribing and dispensing of controlled substances. DEA is issuing this notice to provide guidance to prescribers, pharmacists, law enforcement authorities, regulatory authorities, and the public about the application of current laws and regulations to the use of the Internet for prescribing, dispensing, purchasing, or importing controlled substances.

This document is in the format of questions and answers. The first section provides the context for this notice. The next two sections address issues that apply to DEA registrants and consumers.

General Questions

*What are Controlled Substances?*

Most drugs that require a prescription from a doctor are not controlled substances. The Controlled Substances Act and its implementing regulations, however, assign certain substances to one of five "schedules." These substances are placed in

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

**EXHIBIT A**

102

## Exhibit "A" Annexed to Memorandum In Support.

66 FR 21181-01, 2001 WL 424546 (F.R.)                                                                              Page 2

a schedule based on their potential for abuse, which may lead to physical or psychological dependency. Schedule I substances have no accepted medical use for treatment in the United States and are not available by prescription. Schedule II through V substances have accepted medical use and varying potentials for abuse and dependency. Practitioners (e.g., doctors, dentists, veterinarians, physician assistants, advance practice nurses) who are licensed by a State and registered with DEA may prescribe controlled substances. Controlled substances include narcotics (pain relievers), stimulants, depressants, hallucinogens, and anabolic steroids. A complete list of controlled substances can be found in Title 21 of the Code of Federal Regulations (CFR) part 1308. Examples of controlled substances are shown below.

| Schedule | Example of controlled substances |
|---|---|
| Schedule I | Heroin, marijuana, mescaline, methcathinone, |
| Schedule II | Amphetamine, codeine, fentanyl, Hydromorphone, meperidine, methadone, Methylphenidate (Ritalin), morphine, oxycodone, pentobarbital, phencyclidine (PCP), secobarbital |
| Schedule III | Anabolic steroids, phendimetrazine, and products that contain small quantities of certain schedule II controlled substances, such as codeine, in combination with noncontrolled ingredients, such as aspirin. |
| Schedule IV | Alprazolam (Xanax), chlordiazepoxide (Librium), diazepam (Valium), lorazepam (Ativan), phenobarbital, phentermine |
| Schedule V | Buprenorphine and many cough Preparations that contain a limited amount of codeine |

*What are the Basic Requirements for Prescribing, Dispensing, and Importing Controlled Substances?*

Only practitioners acting in the usual course of their professional practice may prescribe controlled substances. These practitioners must be registered with DEA and licensed to prescribe controlled substances by the State(s) in which they operate. Pharmacies filling prescriptions for controlled substances must also be registered with DEA and licensed to dispense controlled substances by the State(s) in which they operate. A prescription not issued in the usual course of professional practice or not for legitimate and authorized research is not considered valid. Both the practitioner and the pharmacy have a responsibility to ensure that only legitimate prescriptions are written and filled.

Pharmacists must receive written and manually signed prescriptions for Schedule II substances. They may receive oral or faxed prescriptions for Schedules III-V substances provided they confirm the legitimacy of the prescription and the practitioner. Prescriptions for Schedule II substances may not be refilled. Prescriptions for Schedules III-V controlled substances may be refilled five times, but no prescription may be filled or refilled more than six months after the date on which the prescription was issued. Only those people who are registered with DEA as importers and who are in compliance with DEA requirements may have controlled substances shipped into the customs territory or jurisdiction of the U.S. from a foreign country.

DEA regulations covering prescriptions can be found in Title 21 of the Code of Federal Regulations, part 1306; rules on importation are found in 21 CFR 1312.*21182

*Why are Internet Sales an Issue?*

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

103

**Exhibit "A" Annexed to Memorandum In Support.**

66 FR 21181-01, 2001 WL 424546 (F.R.)                                      Page 3

The Internet is primarily a communications tool that can be used to facilitate any type of business. On-line pharmacies are currently providing access to a full range of pharmaceuticals, including prescription drugs and controlled substances. Many people view the Internet as changing the way in which business is conducted. For controlled substances, however, the Controlled Substances Act and DEA's regulations continue to determine when and how these substances may be obtained. Internet sales must be in accordance with these requirements.

DEA rules affect how controlled substances may be ordered from an Internet pharmacy and the conditions under which such orders are legal. DEA is currently working on a revision to its regulations that will define the conditions under which prescribers may electronically sign and transmit to any pharmacy (retail, mail order, or Internet) prescriptions for controlled substances. Until these revisions are complete, however, use of the Internet for dispensing controlled substances is governed by existing DEA rules, described above.

DEA is issuing this notice to answer questions that legitimate pharmacies and practitioners have about using the Internet as part of their business. DEA is also aware that some Internet sites are engaged in the illegal sale of controlled substances. Consumers may be illegally purchasing controlled substances from these Internet sites without realizing that they are committing a crime. This notice provides information for consumers to help them understand when they may legally purchase controlled substances.

DEA Registrant Questions About Internet Pharmacies

*Must my Internet Pharmacy be Registered with DEA?*

The actual physical location of the pharmacy which purchases, stores and dispenses controlled substances pursuant to prescription orders processed by the Internet site must be registered with DEA. The web site itself would not require a separate registration unless it is the same physical location, since the web site does not store or dispense controlled substances. For example, some Internet pharmacies maintain a central pharmacy warehouse site and offices where prescriptions are verified and substances shipped; this location must be registered with DEA as a retail pharmacy. Other Internet sites allow patients to pick up their prescriptions for controlled substances from a local pharmacy; these local pharmacies must be registered with DEA. In this case, the Internet "pharmacy" has no obligations under DEA regulations because the responsibility for assuring compliance with DEA regulations rests with the actual pharmacy where the controlled substances are dispensed.

Your pharmacy must have a license from the State in which the controlled substances are stored and dispensed and, in most instances, from any state in which you plan to conduct business with customers. You should also be aware that many States require licenses for the web site itself since these sites often provide services like patient counseling.

*Does the Label on a Prescription I Fill Indicate the Internet Pharmacy or the Registered Location that Filled the Prescription?*

The label must list the registered location that dispensed the controlled substance.

*Does Being an Internet Pharmacy Change my Responsibilities Under DEA Regulations?*

No, you are still authorized to sell controlled substances only when there is a valid prescription from a DEA-registered practitioner who issued the prescription in the usual course of his or her professional practice.

*Is it Possible for my Internet Pharmacy to Fill Prescriptions for Schedule II Substances?*

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

104

## Exhibit "A" Annexed to Memorandum In Support.

66 FR 21181-01, 2001 WL 424546 (F.R.)                                                 Page 4

You may fill valid prescriptions for Schedule II substances if the patient or prescriber provides you with the signed original prescriptions prior to dispensing. Practically, it is unlikely that most patients will want to wait the time required for such a transaction.

*Is it Possible for my Internet Pharmacy to Fill Prescriptions for Schedule III-V Substances?*

You may receive an original signed prescription or a facsimile of the original signed prescription, or an oral prescription, where allowed, which you verify and immediately reduce to writing. You have the responsibility to ensure the legitimacy of the prescription and the prescriber. At this time, DEA does not permit a prescription received via the Internet to be filled. If you receive prescription information transmitted via the Internet, you must contact the prescriber via telephone and receive an oral prescription for the controlled substance, including the full name and address of the patient, the drug name, strength, dosage form, quantity prescribed, directions for use and the name, address and registration number of the practitioner (21 CFR 1306.05(a)). You must immediately reduce this oral prescription to writing (21 CFR 1306.21(a)).

*Does DEA Intend to Allow Electronic Transmission of Prescriptions in the Future?*

DEA is currently engaged in a project to determine the requirements for secure electronic transmission of all controlled substance prescriptions between the practitioner and the pharmacy. When completed, these requirements will automatically certify the authenticity of the prescriber, protect the content of the prescription from alteration, and bind the digital signature on the prescription to the actual prescriber and no one else. These requirements will be subject to rulemaking, and you will have an opportunity to comment on them before they are finalized. You can find more information on this project on the DEA web site at http://www.deadiversion.usdoj.gov/ecomm/index.html.

*Can Patients Request a Refill of a Controlled Substance Prescription From my Pharmacy by Sending me an email Instead of Calling me on the Telephone?*

Yes, the Internet can be used to facilitate communication between you and your patient when your patient is requesting a permissible refill of an existing Schedule III-V controlled substance prescription.

*Some Internet Pharmacies have Doctors who Prescribe Substances Based on an on-line Questionnaire. Is this Legal?*

Federal law requires that "A prescription for a controlled substance to be effective must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice" (21 CFR 1306.04(a)). Every state separately imposes the same requirement under its laws. Under Federal and state law, for a doctor to be acting in the usual course of professional practice, there must be a bona fide doctor/patient relationship.

For purposes of state law, many state authorities, with the endorsement of medical societies, consider the existence of the following four elements as an indication that a legitimate doctor/patient relationship has been established:

- A patient has a medical complaint;

- A medical history has been taken;

- A physical examination has been performed; and *21183

- Some logical connection exists between the medical complaint, the medical history, the physical examination, and the drug prescribed.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

## 105

### Exhibit "A" Annexed to Memorandum In Support.

66 FR 21181-01, 2001 WL 424546 (F.R.)                                                      Page 5

Completing a questionnaire that is then reviewed by a doctor hired by the Internet pharmacy could not be considered the basis for a doctor/patient relationship. A consumer can more easily provide false information in a questionnaire than in a face-to-face meeting with a doctor. It is illegal to receive a prescription for a controlled substance without the establishment of a legitimate doctor/patient relationship, and it is unlikely for such a relationship to be formed through Internet correspondence alone. However, as discussed later in this document, this circumstance is not intended to limit the ability of practitioners to engage in telemedicine. For purposes of this guidance document, telemedicine refers to the provision of health care using telecommunication networks to transmit and receive information including voice communications, images, and patient records.

Some sites recommend to the patient that they not take a new drug before they have a complete physical performed by a doctor. These sites then ask the patient to waive the requirement for a physical and to agree to have a physical before taking the drug they purchase via the Internet. An after-the-fact physical does not take the place of establishing a doctor/patient relationship. The physical exam should take place before the prescription is written. These types of activities by Internet pharmacies can subject the operators of the Internet site and any pharmacies or doctors who participate in the activity to criminal, civil, or administrative actions. For DEA registrants administrative action may include the loss of their DEA registration. Additionally, providing false material information to obtain controlled substances could be considered obtaining a controlled substance by fraud and deceit, which is subject to Federal and State penalties.

*I am a Practitioner who is Considering Starting an Internet Practice. Can I use the Internet to Facilitate the Prescribing of Controlled Substances?*

You may use the Internet to provide information and to communicate with the patient, but it cannot be the sole basis for authorizing prescriptions. If a doctor/patient relationship exists, you can use the Internet to communicate with patients. Where a doctor/patient relationship exists, you may use the Internet to receive requests for treatment. DEA cautions, however, that such requests for treatment should be logical based on your knowledge of the patient's medical history and the medical complaint. You may also use the Internet to receive requests for refills of prescriptions from patients.

*I am a Physician. Does the need for a Physical Exam Mean that I Cannot Engage in Telemedicine and Prescribe Controlled Substances?*

No, DEA does not intend to limit the ability of doctors to engage in telemedicine. If the patient cannot travel to your office, but you supervise an exam given by a nurse or other professional, you can then prescribe the needed medications based on the results, to the extent that State law allows. In this case, your decision on the appropriateness of the medication is based on facts (symptoms, blood pressure, etc.) that have been verified by a qualified third party and observed by you electronically.

*I have Read in the Controlled Substances Act (CSA) that it is a Violation of the law to use a Communications Facility to Facilitate the Illegal sale of a Controlled Substance. Does this Apply to the use of the Internet to Obtain Pharmaceutical Controlled Substances?*

Yes, Title 21, United States Code, section 843(b) defines a communication facility as "any and all public and private instrumentalities used or useful in the transmission of writing, signs, signals, pictures or sounds of all kinds and includes mail, telephone, wire, radio, and all other means of communication."Anyone who uses the Internet to facilitate the illegal sale of a controlled substance would be in violation of 21 U.S.C. 843(b), which is punishable by a term of imprisonment of not more than four years and a fine of not more than $30,000. This provision could apply to owners of Internet sites, prescribers, pharmacists, and patients.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

## 106

## Exhibit "A" Annexed to Memorandum In Support.

66 FR 21181-01, 2001 WL 424546 (F.R.)                                                          Page 6

Questions for Consumers

*Are Internet Pharmacy Sites Legitimate?*

Many Internet pharmacy sites are legitimate. These Internet pharmacy sites may vary in the services they provide, but they may fill a prescription for a controlled substance which was issued to you by an authorized practitioner for a legitimate medical purpose. They should confirm the legitimacy of the prescription for a Schedule III-V controlled substance before filling it by contacting the prescriber. They are not authorized to fill a prescription for a Schedule II controlled substance unless they have first received the original signed prescription.

Some Internet sites for pharmacies advertise local pharmacies and usually list the name, address, and telephone number of the local pharmacy closest to you. Many of these sites provide a great deal of information concerning specific diseases or medical conditions, and drug information. Many Internet sites operated by local pharmacies or mail order pharmacies serve as a communication link so that you can request refills of prescriptions, check the status of your prescription, or ask the pharmacist a question. These are appropriate uses of the Internet by pharmacies.

Some sites simply provide information about specific drugs and medical conditions. After obtaining some general information from you, this type of "Internet Pharmacy" will refer you to a specific local pharmacy or a mail order pharmacy to have the prescription that you obtained from your physician filled. These are appropriate uses of the Internet by pharmacies.

*Are There Internet Pharmacy Sites That are Not Legitimate?*

Some Internet pharmacy sites do not require that you have a prescription from your doctor. These "Internet Pharmacies" require the customer to complete a medical questionnaire. This type of site advises that the information will be reviewed by a doctor, and the drug will be prescribed and sent to you, if appropriate. The medical questionnaire often has most of the questions set so that if the default answers are not changed, the questions are answered in an appropriate manner to obtain the desired drug. Questionnaire sites often require that the customer waive certain rights. This type of pharmacy usually does not name the doctor who will be reviewing the medical questionnaire or provide any information about the qualifications of the doctor. These sites operate in a manner that is not consistent with state laws regarding standards of medical practice and may be engaging in illegal sales of controlled substances (see discussion above).

Some Internet Pharmacy sites are operating in a foreign country and often do not require any prescription before sending controlled substances to you. These sites often advise that there have been changes to the U.S. law that authorize the customer to import a controlled substance into the United States without benefit of a prescription. These types of sites may be engaging in *21184 illegal sales of controlled substances (see discussion below).

*Is it Legal to Buy Controlled Substances From Foreign Internet Sites and Have Them Shipped to the U.S.?*

No, having controlled substances shipped to the U.S. is illegal unless you are registered with DEA as an importer and you are in compliance with 21 U.S.C. 952, 953, and 954 and 21 CFR part 1312. Some foreign Internet sites claim they can legally sell these controlled substances; other sites, knowing that such shipments are illegal, advise consumers of ways to avoid having the packages seized by U.S. Customs. The Controlled Substances Act prohibits any person from importing into the customs territory of the U.S. any controlled substance or List I chemical (21 U.S.C. 971 and 21 CFR part 1313) unless that person maintains a valid, current authorization to import such substances or chemicals (21 U.S.C. 957(a)). DEA regulations further state:

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

107

## Exhibit "A" Annexed to Memorandum In Support.

66 FR 21181-01, 2001 WL 424546 (F.R.)                                                                 Page 7

"No person shall import or cause to be imported any controlled substance * * * unless and until such person is properly registered under the Act (or exempt from registration) and the Administrator has issued him a permit to do so pursuant to § 1312.13. * * *"(21 CFR 1312.11(a))

Illegal importation of controlled substances is a felony that may result in imprisonment and fines (21 U.S.C. 960).

*The CSA Provides a Personal Use Exemption for Controlled Substances Purchased Abroad. Does the Exemption Apply to Controlled Substances Bought from a Foreign Internet Site?*

The Controlled Substances Act and DEA regulations allow you a personal use exemption to bring a limited quantity of controlled substances into the U.S. for your use only when you bring the controlled substances across the U.S. border in your possession (21 U.S.C. 956, 21 CFR 1301.26). It does not apply to controlled substances being shipped into the U.S. Purchasing controlled substances on the Internet and having them shipped to you in the U.S. is not permitted by the personal use exemption. Such purchases and shipments would be considered "imports" of the controlled substance even if the substance is for your personal use. Unless you are registered as an importer and in compliance with the requirements, such shipments are illegal and subject to seizure.

*Does it Make a Difference if I Have a Prescription from a U.S. Doctor for Controlled Substances That I Buy From a Foreign Internet Site?*

No, the law remains the same. Unless you are registered with DEA as an importer and are in compliance with DEA's requirements, you may not have controlled substances shipped to you in the U.S. from another country.

*What are the Things to Consider in Selecting an Internet Pharmacy?*

An "Internet Pharmacy" site should provide a physical address for the pharmacy, in addition to the Internet address, and a telephone number for the pharmacy.

Some indicators that the "Internet Pharmacy" may not be legitimate and should not be used as a source for controlled substances are the following:

- The site is not a participant in any insurance plan and requires that all payments be made with a credit card.

- The site requires that you waive some rights before they send you the drugs.

- The site advises you about the law and why it is permissible for you to obtain pharmaceutical controlled substances from foreign countries via the Internet.

- The site does not ask the name, address, or phone number of your current physician.

- The site advises you to have the drugs sent to post office boxes or other locations to avoid detection by U.S. authorities.

*I Have Seen a VIPPS Seal on Some Internet Pharmacy Sites. What Does This Mean?*

The National Association of Boards of Pharmacy (NABP) has developed a voluntary program called the Verified Internet Pharmacy Practice Sites (VIPPS). The NABP has begun issuing a "seal of approval" to Internet pharmacies that meet standards regarding State licensing and DEA registration. To be VIPPS certified, a pharmacy must comply with the licensing and inspection requirements of their State and each State to which they dispense pharmaceuticals. In addition, pharmacies displaying the VIPPS seal have demonstrated to NABP compliance with VIPPS criteria including patient

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

108

**Exhibit "A" Annexed to Memorandum In Support.**

66 FR 21181-01, 2001 WL 424546 (F.R.)                                            Page 8

rights to privacy, authentication and security of prescription orders, adherence to a recognized quality assurance policy, and provision of meaningful consultation between patients and pharmacists. The NABP also provides information on whether a pharmacy is licensed and in good standing (see http://www.nabp.net).

*Are the Rules Different for "Life Style" Drugs?*

Some people have applied the phrase "life style drugs" to certain medications, such as Viagra, weight control medications, and tranquilizers. Many of the so-called life style drugs are not controlled substances. If a "life style" drug is a controlled substance, however, it is still subject to all regulations for controlled substances. You must obtain a prescription from a DEA registered prescriber and have it filled by a DEA registered pharmacy.

*I Have a Complaint About an "Internet Pharmacy" Site on the Internet That Appears to be Illegally Selling Drugs. Where Should I Send the Complaint?*

If the complaint involves a pharmaceutical controlled substance, contact the DEA, Office of Diversion Control, Drug Operations Section, Washington, DC 20537, telephone (202) 307-7194 or your local DEA office (for a list of contacts, see http://www.dea.gov/agency/domestic.htm.)

If the complaint involves any pharmaceutical drug other than a controlled substance, contact the U.S. Food and Drug Administration, HFC-230, 5600 Fishers Lane, Rockville, MD 20857, or file a report on the FDA's web site at http://www.fda.gov/oc/buyonline/buyonlineform.htm.

If the complaint involves a pharmacist or a physician, you may contact the State Board of Pharmacy or the State Board of Medicine where the doctor or pharmacist is located.

Additionally, you may wish to view other sites on the Internet that are for registering complaints such as the NABP (http://www.nabp.net).

Dated: March 19, 2001.

Laura M. Nagel,

Deputy Assistant Administrator, Office of Diversion Control.

[FR Doc. 01-10255 Filed 4-26-01; 8:45 am]

BILLING CODE 4410-09-P

66 FR 21181-01, 2001 WL 424546 (F.R.)
END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

109

**Government's Response to Defendant's Motions in Limine, Filed December 30, 2011.**

Case 1:08-cr-00194-WMS-JJM   Document 137   Filed 12/30/11   Page 1 of 14

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

                                              :
UNITED STATES OF AMERICA,
                                              :
                  v.
                                              :        08-CR-194-S
JOHN E. MAYE,
                                              :
                  Defendant.
                                              :
_____

**RESPONSE TO DEFENDANT'S MOTIONS IN LIMINE**
(Docket Items 125, 131, 132)

The government, for its response to the motions in limine filed by the defendant, states as follows:

**Preliminary Statement**

The defendant has filed motions to preclude any use whatsoever by the government of the defendant's prior conviction for arson;  the defendant's suspension from the practice of medicine for the years 1997 through 2004;  malpractice actions commenced against the defendant;  the tragic life events of certain patients/customers of the defendant;  the defendant's surrender of his DEA registration;  and a pending federal civil tax case against the defendant.

110

**Government's Response to Defendant's Motions in Limine, Filed December 30, 2011.**

Case 1:08-cr-00194-WMS-JJM   Document 137   Filed 12/30/11   Page 2 of 14

The government agrees that it will not use the federal civil tax case against the defendant for any foreseeable purpose during the trial of this action.

The government also agrees that evidence of the defendant's prior conviction; his suspension from the practice of medicine; the malpractice actions; and the tragic life events of his customers will not be brought out during the government's case-in-chief.  The government also agrees that the defendant's arson conviction will not be used by the government pursuant to Federal Rules of Evidence 609 "[f]or the purpose of attacking [his] character for truthfulness."

The government, however, reserves the right to use the defendant's prior conviction;  his suspension from the practice of medicine;  the malpractice actions;  and his customers' tragic life events during cross-examination of the defendant should he choose to testify at trial.

Lastly, the government intends to use the defendant's surrender of his DEA registration as evidence in its case-in-chief.

2

111

**Government's Response to Defendant's Motions in Limine, Filed December 30, 2011.**

Case 1:08-cr-00194-WMS-JJM   Document 137   Filed 12/30/11   Page 3 of 14

Prior to addressing the merits of the defendant's motions, the government believes that a little factual background will put the defendant's motions in context for the Court.

The defendant was licensed to practice medicine in the State of New York in 1986. In 1996, the defendant was indicted in the United States District Court for the Northern District of New York for arson, in violation of 18 U.S.C. §844(i). It is the government's information that the arson had to do with the burning of the defendant's then-medical office. The defendant pled guilty and was sentenced to a term of imprisonment of 18 months to followed by 3 years supervised release. As a result of the defendant's conviction, he was suspended from the practice of medicine by the New York State Office of Professional Medical Conduct for a period of 6 months, or for the term of his federal imprisonment, to be followed by a 3 year period of probation commencing upon the defendant's re-engaging in the practice of medicine.

Upon the defendant's release from imprisonment, it does not appear that he re-engaged in the practice of medicine until 2004. Pursuant to the defendant's federal tax returns for the years 2000 through 2003, it appears he was employed in the food service industry, upon information and belief, as a waiter at a local country club.

3

**Government's Response to Defendant's Motions in Limine, Filed December 30, 2011.**

The defendant became involved in the selling of drugs over the internet in early 2004 which activities led to his indictment in this action.  In March 2004, he informed the New York State Office of Professional Medical Conduct that he had re-engaged in the practice of medicine, thereby commencing his 3 year period of probation.  Accordingly, while referred to in the defendant's motion as a suspension from the practice of medicine from 1997 to 2004, in actuality, it was the defendant's inability to find employment as a medical doctor during that period of time.

I.   **The government cannot be precluded from cross-examining the defendant with respect to his arson conviction;  suspension from the practice of medicine;  prior malpractice actions;  and tragic life events of his customers in this point in these proceedings.**

Somewhat in a vacuum, at least at this point in these proceedings, the defendant has sought to preclude any use by the government of his prior arson conviction;  his suspension from the practice of medicine;  malpractice actions filed against him; and the tragic life events of his customers for all purposes during the trial of this action.  As set forth above, the government agrees that evidence of these matters will not be brought out in its case-in-chief.  There is simply no basis, at this point, however, for the government to be precluded from inquiring with respect to any of these matters during cross-examination of the defendant should he choose to testify at trial

4

**Government's Response to Defendant's Motions in Limine, Filed December 30, 2011.**

or in rebuttal depending on the nature of the evidence presented by the defendant during his case.

As the Court is aware, the indictment in this action alleges that the defendant unlawfully distributed quantities of various controlled substances other than for a legitimate medical purpose and not in the usual course of professional practice. Should the defendant testify at trial with respect to his medical background, it is submitted that all of these matters will be relevant for impeachment purposes. Should the defendant testify with respect to his good faith belief in the validity of the prescriptions he authorized for his various customers, these matters again would be relevant on cross-examination. Should the defendant testify that he believed each of his customers lawfully acquired controlled substances for the treatment of various medical conditions, the tragic life events of various of his customers, including their abuse of controlled substances, would be relevant impeachment material.

The government does not intend to suggest that the above recitation exhausts the universe of possible testimony by the defendant which would make inquiry into some or all of the contested matters relevant. Quite simply, as the government has no idea if the defendant is going to testify, and if he does, what he is going to say, it can only guess as to areas of

**Government's Response to Defendant's Motions in Limine, Filed December 30, 2011.**

potential testimony by the defendant which would ensure the relevancy of these matters.

As set forth above, it is unclear whether the defendant will testify at trial in his defense, and if he does, whether he will assert a defense, for example, that he prescribed, distributed, and dispensed the controlled substances to the individuals via the telephone and internet while exercising appropriate medical judgment and in conformance with the applicable medical standard of care.  The defendant also may assert his general innocence by testifying concerning his training, practices, and abilities as a physician, and that while his actions, as charged in the second superseding indictment, might in hindsight constitute malpractice, they are not criminal in nature.  In the event the defendant takes the stand and asserts his innocence or such a defense, thereby "opening the door" to cross-examination, the government will seek to vigorously cross-examine the defendant to rebut that testimony.

Under Federal Rule of Evidence 403, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice."  Fed.R.Evid. 403.  District courts have broad discretion in balancing the probative value of evidence against the possible prejudice of that evidence, within the specific context of the case presented.  See <u>United States v.</u>

**Government's Response to Defendant's Motions in Limine, Filed December 30, 2011.**

Case 1:08-cr-00194-WMS-JJM   Document 137   Filed 12/30/11   Page 7 of 14

Bermudez, 529 F.3d 158, 161-162 (2d Cir. 2008), citing United
States v. Ansaldi, 372 F.3d 118, 131 (2d Cir. 2004).

Well-established Second Circuit authority provides for wide
ranging cross-examination by the government of a testifying
defendant.  For example, in United States v. Spinelli, 551 F.3d
159, 166-167 (2d Cir. 2008), the Second Circuit held:

> By taking the witness stand in his defense, a defendant
> does not give up his right under the Fifth Amendment to
> refuse to answer *all* questions.  See Rogers v. United
> States, 340 U.S. 367, 371, 71 S.Ct. 438, 95 L.Ed. 344
> (1951).  By choosing to testify, however, the defendant
> gives up his right to refuse to answer questions that
> fall within the proper scope of cross examination.  Id.
> at 373, 71 S.Ct. 438.  As the Supreme Court explained,
> a witness may not pick and choose what aspects of a
> subject to discuss; if allowed to draw the boundaries
> of his testimony anyplace he chooses, the defendant
> would be able to distort the facts.  Mitchell v. United
> States, 526 U.S. 314, 321-22, 119 S.Ct. 1307, 143
> L.Ed.2d 424 (1999).  Thus, when a defendant takes the
> stand in his defense, he surrenders his Fifth Amendment
> privilege for proper cross-examination but not for
> questions which go outside the bounds of proper
> cross-examination.

See e.g., United States v. Payton, 159 F.3d 49, 58-59 (2d
Cir.1998); Brown v. United States, 356 U.S. 148, 154-55 (1958);
United States v. Conte, 99 F.3d 60, 66 (2d Cir.1996); Bagby v.
Kuhlman, 932 F.2d 131, 135 (2d Cir.), cert. denied, 502 U.S. 926
(1991); United States v. Ramirez, 609 F.3d 495, 499 (2d Cir.
2010) (extrinsic evidence permitted for the purpose of
"impeachment by contradiction" to rebut defendant's testimony on
direct examination); United States v. Lewis, 2004 WL 2242588 (2d

**Government's Response to Defendant's Motions in Limine, Filed December 30, 2011.**
Case 1:08-cr-00194-WMS-JJM   Document 137   Filed 12/30/11   Page 8 of 14

Cir. 2004) (testimony of witnesses refuted specific misstatements by defendant on direct examination), <u>cert</u>. <u>denied</u>, 543 U.S. 1170 (2005); <u>United States v. Beverly</u>, 5 F.3d 633, 639 (2d Cir. 1993) ("once a defendant has put certain activity in issue by offering innocent explanations for or denying wrongdoing, the government is entitled to rebut by showing [through extrinsic evidence] that the defendant has lied."). Further, a defendant who elects to testify at trial is not permitted to "frustrate the truth-seeking function of a trial by presenting tailored defenses insulated from effective challenge," and the government is therefore given "great leeway" in its cross-examination of a defendant." <u>United States v. Scarpa</u>, 2001 WL 194350, at * 3 (2d Cir.), <u>cert</u>. <u>denied</u>, 533 U.S. 961 (2001), <u>citing</u> <u>United States v. Vega</u>, 589 F.2d 1147, 1151 n. 3 (2d Cir.1978) (internal quotation marks omitted); <u>McGautha v. California</u>, 402 U.S. 183, 215 (1971) ("cross-examination [of a defendant is permitted] on matters reasonably related to the subject matter of his direct examination"), <u>vacated in part on other grounds sub nom.</u>, <u>Crampton v. Ohio</u>, 408 U.S. 941 (1972).

Here, the government has not been advised whether the defendant will elect to testify at trial, so the issues concerning the appropriate parameters of cross-examination are argued in a vacuum. Assuming that the defendant testifies at trial, the parameters of his testimony will define the areas of

**Government's Response to Defendant's Motions in Limine, Filed December 30, 2011.**

cross-examination.   However, the government will seek to
extensively cross-examine the defendant, should he choose to
testify, for impeachment purposes, including concerning his
circumstances behind his limited practice as a physician, the
suspension of his medical license, his arson conviction, his
employment as a waiter post-release from the Bureau of Prisons
until the conduct charged in the second superseding indictment,
and the claims of malpractice.   Because the government will have
a "good faith basis" for the cross-examination of the defendant,
and is entitled to impeach the defendant after he "opens the
door" by proclaiming his innocence, the cross-examination should
be permitted.   See United States v. Dominguez, 2008 WL 2235371
(2d Cir. 2001), citing United States v. Concepcion, 983 F.2d 369,
391 (2d Cir. 2008), and United States v. Garcia, 936 F.2d 648,
653-54 (2d Cir.1991).

   In conclusion, the government believes that the Court need
not make a final determination of the admissibility of the above
matters should the defendant testify at trial.   Such a
determination the government submits, should await the
defendant's decision as to whether he will put on a case and/or
testify at trial.   Upon hearing the defendant's case and/or
testimony, the Court will be in a position to determine whether
evidence of the above matters may be inquired into by the

**Government's Response to Defendant's Motions in Limine, Filed December 30, 2011.**

government on cross-examination of the defendant or be proven by extensive evidence in a rebuttal case.

II.   <u>Evidence of the defendant's surrender of his DEA registration is admissible in the government's case in chief.</u>

As will be brought out at trial, as a matter of federal law, in order for a physician to be authorized to dispense controlled substances by way of prescriptions, the physician must be registered with the Drug Enforcement Administration.  As brought out in the defendant's motions, in September 2008, the defendant surrendered his DEA registration thereby losing his ability to lawfully prescribe controlled substances (Docket Item 132, Exhibit G).  The defendant, however, did not surrender his DEA registration in a vacuum.

Prior to the defendant's surrender of his DEA registration, the DEA initiated an administrative proceeding to revoke his registration by way of an order to show cause dated October 31, 2007.  A copy of the order to show cause is attached hereto as Exhibit A.  The order to show cause sets forth two bases upon which the defendant's registration was to be revoked by DEA.  The first ground is that his authorizing of prescriptions for controlled substances over the internet was "without a legitimate medical purpose and outside the course of professional practice,

**119**

**Government's Response to Defendant's Motions in Limine, Filed December 30, 2011.**

Case 1:08-cr-00194-WMS-JJM   Document 137   Filed 12/30/11   Page 11 of 14

in violation of 21 C.F.R. § 1306.04(a) and 21 U.S.C. §
841(a)(1)."  The second ground for revocation is that the
defendant violated the laws of various states by dispensing
controlled substances to persons located outside the State of New
York and that the defendant "also violated New York state laws
prohibiting licensed physicians from issuing controlled substance
prescriptions prior to an examination of the patient."[1]

The conduct alleged in the order to show cause for
revocation of the defendant's DEA registration is also that which
underlies the charges in the second superseding indictment in
this action.  The defendant's surrender of his DEA registration
in the face of the above allegations, therefore, operates as an
at least an implicit, if not explicit, admission by the defendant
of the validity of the grounds for revocation.  At a minimum, the
defendant's failure to challenge these allegations operates as
evidence of his consciousness of his guilt of the conduct set
forth in the order to show cause.  The relatedness of the conduct

_____

[1] The regulation cited in the order to show cause, N.Y.
Comp. Codes R. & Reg. tit. 10, §80.63 provides at subsection
(c)(1):

> No controlled substance prescription shall be
> issued prior to examination of the patient by
> the practitioner except as otherwise
> permitted by this subdivision.

No exception in the regulation applies to the conduct of the
defendant in this action.

11

**Government's Response to Defendant's Motions in Limine, Filed December 30, 2011.**

set forth in the order to show cause to that in this indictment establishes the relevance of the defendant's agreement to surrender his registration.

As set forth above, the government opposes the defense motion in limine to preclude any evidence at trial concerning the defendant's voluntary surrender of his DEA registration. In its case-in-chief, the government will seek to introduce evidence concerning the defendant's surrender of his DEA registration, as an admission by a party opponent, pursuant to F.R.Evid. 801(d)(2). The conduct charged in the second superseding indictment, among other things, constituted the basis for the DEA administrative action to revoke the defendant's DEA registration, thereby precluding the defendant from prescribing controlled substances. The defendant concedes that "[r]ather than contest the DEA proceeding in the face of the then-pending indictment, Dr. Maye voluntarily surrendered his DEA registration," thus obviating the need for an administrative hearing. See, Docket Item 132, ¶¶ 20, 21 and Exhibit G.

Should the Court determine that evidence of the defendant's surrender of his DEA registration is not admissible in the government's case-in-chief, the government submits that, for the reasons set forth in Point I above, evidence of the registration

121

**Government's Response to Defendant's Motions in Limine, Filed December 30, 2011.**

surrender is admissible upon cross-examination of the defendant and in the government's rebuttal case.

### Conclusion

For all the foregoing, it is submitted that the defendant's motion to preclude evidence of his surrender of his DEA registration should be denied and his other motions granted only to the extent conceded by the government and otherwise held in abeyance pending the trial of this action.

DATED:   Buffalo, New York, December 30, 2011.

WILLIAM J. HOCHUL, JR.
United States Attorney

BY:   s/JOSEPH M. GUERRA, III
Assistant U.S. Attorney
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
(716) 843-5824
Joseph.M.Guerra@usdoj.gov

BY:   s/MARY C. BAUMGARTEN
Assistant U.S. Attorney
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
(716) 843-5864
Mary.Catherine.Baumgarten@usdoj.gov

TO:   Daniel C. Oliverio, Esq.
Reetuparna Dutta, Esq.

13

**Government's Response to Defendant's Motions in Limine, Filed December 30, 2011.**

Case 1:08-cr-00194-WMS-JJM   Document 137   Filed 12/30/11   Page 14 of 14

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

—————————————————————

UNITED STATES OF AMERICA,                    :

             -v-                    :            08-CR-194-S

                         :

JOHN E. MAYE,                                :

                 Defendant.        :

—————————————————————


### CERTIFICATE OF SERVICE


    I hereby certify that on December 30, 2011, I electronically filed the foregoing **RESPONSE TO DEFENDANT'S MOTIONS IN LIMINE** (Docket Items 125, 131, 132) with the Clerk of the District Court using its CM/ECF system, which would then electronically notify the following CM/ECF participant on this case.


Daniel C. Oliverio, Esq.
Guaranty Building
140 Pearl Street, Suite 100
Buffalo, New York  14202

Reetuparna Dutta, Esq.
Guaranty Building
140 Pearl Street, Suite 100
Buffalo, New York 14202


                                s/KAREN S. BARONE

123

**Exhibit "A" Annexed to Government's Response.**

**U. S. Department of Justice**

Drug Enforcement Administration

---

*www.dea.gov*                               Washington, D.C. 20537

**OCT 3 1 2007**

IN THE MATTER OF

John E. Maye, M.D.
57 Northview Terrace
Rochester, New York 14621

**ORDER TO SHOW CAUSE**

     **PURSUANT** to Sections 303 and 304 of the Controlled Substances Act, Title 21, United States Code, Sections 823 and 824,

     **NOTICE** is hereby given to afford you, John E. Maye, M.D. ("Respondent"), an opportunity to show cause before the DEA, at a location and on a date to be determined, (if you request such a hearing), as to why DEA should not revoke your DEA Certificate of Registration BM8714025 pursuant to 21 U.S.C. § 824(a)(4), deny the pending application for renewal, and deny any other pending applications for modification of such registration pursuant to 21 U.S.C. § 823(f), because your continued registration is inconsistent with the public interest, as that term is defined in 21 U.S.C. §§ 823(f), 824(a)(4).  The basis for this Order to Show Cause is set forth in the following non-exhaustive summary of facts and law.

1.  You are registered with DEA as a practitioner in Schedules II through V pursuant to DEA registration number BM8714025, with a registered location of 57 Northview Terrace, Rochester, New York 14621.  DEA registration number BM8714025 expired on January 31, 2007; however, you submitted a renewal application on December 18, 2006.  Therefore, DEA registration number BM8714025 is automatically extended and continues in effect until the Deputy Administrator issues a final order in this matter.  *See* 21 C.F.R. § 1301.36(i).

2.  You have been authorizing controlled substance prescriptions for Internet customers throughout the United States since approximately 2004 on the basis of online questionnaires, and/or questionable medical records, and/or telephone consultations.  You issued these prescriptions based on customer requests generated and placed over the following Internet websites: www.prescriptionamerica.com; www.fortunepharmacy.com; and www.fortunetelemed.com.  You issued these prescriptions without a legitimate medical purpose and outside the usual course of professional practice, in violation of 21 C.F.R. § 1306.04(a) and 21 U.S.C. § 841(a)(1).  Your actions render your continued registration inconsistent with the public interest.  *See William R. Lockridge, M.D.*, 71 Fed. Reg. 77,791 (DEA Dec. 27, 2006); *Dale L. Taylor, M.D.*, 72 Fed. Reg. 30,855 (DEA Jun. 4, 2007); *Andrew Desonia, M.D.*, 72 Fed. Reg. 54,293 (DEA Sept. 24, 2007); *Kamir Garces-Mejias, M.D.*, 72 Fed. Reg. 54,931 (DEA Sept. 27, 2007).

**Exhibit A**

124

**Exhibit "A" Annexed to Government's Response.**

2

3.   Although you have authorized controlled substance drug orders for online customers throughout the United States, you are only licensed to practice medicine in the State of New York.  You violated state laws that prohibit the unauthorized practice of medicine, including unlicensed, out-of-state physicians issuing controlled substance prescriptions to state residents.  *See* Miss. Code Ann. § 73-25-34; La. Rev. Stat. Ann. § 37:1271; Cal. Bus. & Prof. Code § 2052; Ala. Code § 34-24-51.  You also violated New York state laws prohibiting licensed physicians from issuing controlled substance prescriptions prior to an examination of the patient.  *See* N.Y. Comp. Codes R. & Regs. tit. 10, § 80.63.

THE following procedures are available to you, Dr. John E. Maye, in this matter:

1.   Within 30 days after the date of receipt of this Order to Show Cause, you may file with the Deputy Administrator of the DEA a written request for a hearing in the form set forth in 21 C.F.R. § 1316.47.  (*See* 21 C.F.R. § 1310.43(a)).

2.   Within 30 days after the date of receipt of this Order to Show Cause, you may file with the Deputy Administrator a waiver of hearing together with a written statement regarding your position on the matters of fact and law involved.  (*See* 21 C.F.R. §1301.43(c)).

3.   Should you decline to file a request for a hearing or, should you request a hearing and then fail to appear at the designated hearing, you shall be deemed to have waived the hearing and the Deputy Administrator may cancel such hearing, and may enter her final order in this matter without a hearing and based upon the investigative file and the record of this proceeding as it may then appear.  (*See* 21 C.F.R. §§ 1301.43(d), 1301.43(e)).

Correspondence concerning this matter, including that referenced in paragraphs A and B above, should be addressed to the Hearing Clerk, Office of Administrative Law Judges, Drug Enforcement Administration, Washington, D.C. 20537.  Matters are deemed filed upon receipt by the Hearing Clerk.  (*See* 21 C.F.R. § 1316.45).

Joseph T. Rannazzisi
Deputy Assistant Administrator
Drug Enforcement Administration

cc: Hearing Clerk
    Office of Administrative Law Judges

    John F. Speranza, Esq.
    28 E. Main Street
    Rochester, New York 14614

125

**Defendant's Memorandum of Law In Opposition to**
**Government's Motions in Limine, Filed December 30, 2011.**

Case 1:08-cr-00194-WMS-JJM   Document 138   Filed 12/30/11   Page 1 of 17

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

     v.                                CR No.: 08-CR-194(S)

JOHN E. MAYE, M.D.

                       Defendant.

## MEMORANDUM OF LAW IN OPPOSITION TO THE GOVERNMENT'S MOTIONS *IN LIMINE*

**HODGSON RUSS LLP**
*Attorneys for John E. Maye, M.D.*
Daniel C. Oliverio
Michelle L. Merola
Reetuparna Dutta
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, New York 14202
Telephone: 716.856.4000
doliveri@hodgsonruss.com
mmerola@hodgsonruss.com
rdutta@hodgsonruss.com

126

**Defendant's Memorandum of Law In Opposition to
Government's Motions in Limine, Filed December 30, 2011.**

## TABLE OF CONTENTS

PAGE

INTRODUCTION ................................................................................................1

I.    The Court Should Not Preclude Dr. Maye from Presenting Evidence Regarding
      his Good Faith in Issuing the Challenged Prescriptions ...................................2

II.   The 2008 Passage of the Ryan Haight Act is Relevant Evidence of the Applicable
      Standard of Care Governing Physicians .......................................................6

III.  The Government is Not Entitled to Pre-Trial Notice of a Possible Advice-of-Counsel
      Defense ...................................................................................9

IV.   The DEA "Guidance" Document is Inadmissible ...........................................12

CONCLUSION...................................................................................13

127

**Defendant's Memorandum of Law In Opposition to
Government's Motions in Limine, Filed December 30, 2011.**

Case 1:08-cr-00194-WMS-JJM   Document 138   Filed 12/30/11   Page 3 of 17

## TABLE OF AUTHORITIES

PAGE(s)

FEDERAL CASES

*Chambers v. Mississippi,* 410 U.S. 284 (1973)..................................................................1, 2

*Crane v. Kentucky,* 476 U.S. 683 (1986) ...............................................................1

*Cunningham v. Gans,* 507 F.2d 496 (2d Cir. 1974)................................................7

*Gonzales v. Oregon,*
    546 U.S. 243 (2006)..........................................................................13

*People v. Carroll,* 95 N.Y.2d 375, 740 N.E.2d 1094 (2000) ..............................1

*United States v. (Under Seal),*
    748 F.2d 871 (4th Cir. 1984) .......................................................12

*United States v. Allen,*
    127 F.3d 260 (2d Cir. 1997)..........................................................10

*United States v. Bilzerian,*
    926 F.2d 1285 (2d Cir. 1991)....................................................10, 11

*United States v. Birbragher,*
    603 F.3d 478 (8th Cir. 2010) .....................................................8, 9

*United States v. DiMaria,*
    727 F.2d 265 (2d Cir. 1984)...........................................................5

*United States v. Doe,*
    219 F.3d 175 (2d Cir. 2000)....................................................10, 11

*United States v. Espy,* 1996 WL 560354, (E.D. La. Oct. 2, 1996) ...................9

*United States v. Feingold,*
    454 F.3d 1001 (9th Cir. 2006) .......................................................4

*United States v. Harris,*
    331 F.2d 600 (6th Cir. 1964) .........................................................8

*United States v. Hazelwood,*
    2011 WL 2565294 (N.D. Ohio June 27, 2011)............................8, 9

*United States v. Hurwitz,*
    459 F.3d 463 (4th Cir. 2006) ......................................................4, 7

*United States v. Moore,*
    423 U.S. 122 (1975).......................................................................3, 6

i

128

**Defendant's Memorandum of Law In Opposition to
Government's Motions in Limine, Filed December 30, 2011.**

Case 1:08-cr-00194-WMS-JJM   Document 138   Filed 12/30/11   Page 4 of 17

<u>**TABLE OF AUTHORITIES**</u>

<u>PAGE</u>

*United States v. Newell,*
   315 F.3d 510 (5th Cir. 2002) ...................................................................5

*United States v. Partyka,*
   561 F.2d 118 (8th Cir. 1977) ...................................................................5

*United States v. Pettigrew,*
   77 F.3d 1500 (5th Cir. 1996) .................................................................10

*United States v. Quinones,*
   536 F. Supp. 2d 267 (E.D.N.Y. 2008) ...................................................12

*United States v. Seminerio,*
   680 F. Supp. 2d 523 (S.D.N.Y. 2010)......................................................5

*United States v. Wexler,*
   522 F.3d 194 (2008).............................................................................4, 7

*United States v. White,*
   887 F.2d 267 (D.C. Cir. 1989) ...............................................................10

*Washington v. Texas,* 388 U.S. 14 (1967)...................................................1

*Wipf v. Kowalski*, 519 F.3d 380 (7th Cir. 2008) ..........................................7

**FEDERAL STATUTE**

21 U.S.C. § 829(e)(1)....................................................................................6

**RULES**

Federal Rule of Criminal Procedure 16 ..............................................11, 12

Federal Rule of Evidence 201 ......................................................................8

Federal Rule of Evidence 403 ....................................................................12

Federal Rule of Evidence 803(3) .................................................................5

**OTHER AUTHORITIES**

1 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence*, § 201.52
   (Joseph M. McLaughlin, ed., Matthew Bender 2d ed. 2011) ...................8

129

**Defendant's Memorandum of Law In Opposition to
Government's Motions in Limine, Filed December 30, 2011.**

Case 1:08-cr-00194-WMS-JJM   Document 138   Filed 12/30/11   Page 5 of 17

## INTRODUCTION

The Constitution guarantees criminal defendants like Dr. Maye "a meaningful opportunity to present a complete defense."[1] This fundamental right does not automatically yield to the rules of evidence. Indeed, case law establishes that a court's discretion in evidentiary rulings is circumscribed by the rules of evidence *and* the defendant's constitutional right to present a defense.[2] The government, however, seeks to curtail this right by asking the Court to broadly exclude highly critical and relevant evidence that Dr. Maye could present to the jury. This would leave Dr. Maye with only limited options to defend himself – a clear abridgment of his Fifth Amendment due process right to a fair trial and his Sixth Amendment right to present a defense.[3]

Specifically, the government argues that this Court should refuse to allow Dr. Maye to defend himself by introducing into evidence statements made to him by the New York State Office of Professional Medical Conduct that communicated implicit approval of his conduct and by prohibiting him from raising a defense based on the passage of Ryan Haight Act, a law passed *after* the time period at issue that strictly and clearly prohibited, for the first time, the issuance of controlled substance prescriptions without a face-to-face examination. The government also claims that Dr. Maye must provide advance notice of his intent to rely on an advice-of-counsel defense so that the government (almost four years after indicting Dr. Maye)

---

[1]     *Crane v. Kentucky,* 476 U.S. 683, 690 (1986) (quotation omitted),

[2]     *People v. Carroll*, 95 N.Y.2d 375, 385, 740 N.E.2d 1084, 1089 (2000) (citation omitted).

[3]     *See Chambers v. Mississippi,* 410 U.S. 284, 294 (1973); *Washington v. Texas,* 388 U.S. 14, 18-19 (1967).

1

130

**Defendant's Memorandum of Law In Opposition to
Government's Motions in Limine, Filed December 30, 2011.**

Case 1:08-cr-00194-WMS-JJM   Document 138   Filed 12/30/11   Page 6 of 17

can engage in wide-ranging discovery of privileged materials.[4]  Last, the government seeks to

affirmatively admit a DEA federal register publication that will improperly suggest to the jury

that, because Dr. Maye may not have complied with the strictures of the DEA guidance, he must

be guilty of the charged crimes.

      Each of these requests is calculated to provide the government with the maximum

opportunity to convict Dr. Maye, while precluding him from presenting the jury with his side of

the story and his basis for his belief in the propriety of his conduct.  Because the "minimum

essentials of a fair trial" include a "fair opportunity to defend against the State's accusations,"[5]

the government's attempts to limit evidence offered by Dr. Maye necessary to defend against

these serious charges are improper and should be rejected.

I.     **The Court Should Not Preclude Dr. Maye from Presenting
       Evidence Regarding his Good Faith in Issuing the Challenged Prescriptions**

      The government accurately states that Dr. Maye advised the New York State

Office of Professional Medical Conduct ("OPMC") that he would be working as a "telemedicine

consultant," and, in response, Dr. Maye received a letter from the OPMC on March 31, 2004,

evidencing what appears to be implicit approval of his conduct.[6]  The government, however,

claims that "[t]he fact that the defendant, during the events charged in the Indictment, never

adhered 'to acceptable standards of medical practice'" and otherwise "failed to establish a 'bona-

---

[4]     The defense does not contest the government's request to limit the cross-examination of
its expert, Theodore V. Parran, Jr., M.D., or the government's use of a national standard
of medical care to evaluate Dr. Maye's good-faith belief in the propriety of the
prescriptions he issued.  *See* Declaration of Reetuparna Dutta, dated December 30, 2011
("Dutta Decl.") at ¶ 3.

[5]     *Chambers,* 410 U.S. at 294 (quotation omitted).

[6]     Dutta Decl. ¶¶ 6, 7 & Exhs. A, B.

- 2 -

131

**Defendant's Memorandum of Law In Opposition to Government's Motions in Limine, Filed December 30, 2011.**

Case 1:08-cr-00194-WMS-JJM    Document 138    Filed 12/30/11    Page 7 of 17

fide patient/physician relationship' with any of the customers to whom he distributed drugs, precludes him from raising a defense of reliance on any authorization by OPMC of his employment."[7]

First, and most problematically, the government seeks to impose its own conclusion on the trier of fact — that Dr. Maye never adhered to acceptable standards of medical practice and failed to establish a bona-fide relationship with his patients. Whether Dr. Maye adhered to acceptable standards of practice is an issue of fact. Specifically, each count of the indictment (aside from the forfeiture allegation) *alleges* that Dr. Maye distributed controlled substances "other than for a legitimate medical purpose and not in the usual course of professional practice."[8] These are questions to be determined by the jury, not the government. And the jury is entitled to evidence on both sides of that debate.

Second, the government's argument precludes Dr. Maye from presenting evidence regarding his good faith in issuing the challenged prescriptions. In passing the Controlled Substances Act ("CSA"), Congress intended to "confine authorized medical practice within accepted limits" such that physicians who went beyond "the bounds of professional practice" were subject to criminal penalties.[9] But, a criminal prosecution against a doctor for a violation of the CSA is distinct from a civil malpractice claim, as a doctor charged with illegally distributing a controlled substance can raise a good-faith defense that the government must

---

[7]    Memorandum in Support of Government's Motions in Limine ("Gov't. Mem."), dated November 21, 2011, at 25-26.

[8]    *See* Second Superseding Indictment, Docket No. 82.

[9]    *United States v. Moore*, 423 U.S. 122, 141-42 (1975).

- 3 -

132

**Defendant's Memorandum of Law In Opposition to**
**Government's Motions in Limine, Filed December 30, 2011.**

Case 1:08-cr-00194-WMS-JJM   Document 138   Filed 12/30/11   Page 8 of 17

disprove beyond a reasonable doubt.[10]  This defense requires that a jury be informed that a drug

has been legally dispensed *if the doctor had an objectively reasonable good-faith belief that the*

*prescription was for a legitimate medical purpose and consistent with the usual course of*

*generally accepted medical practice.*[11]  Additionally, at least one appellate court has held that, to

convict a doctor of violating the CSA, the doctor must have had the intent to distribute the

controlled substances outside the course of professional practice.[12]  In other words, the doctor

must have *intended to act as a pusher*, as opposed to a medical professional.[13]

       Evidence that Dr. Maye was told by anyone, including OPMC personnel, that his

conduct in prescribing controlled substances was legal and medically proper is relevant to show

his good faith and to show that his good faith was objectively reasonable.  Specifically, these

types of statements show that, by seeking out and following advice, particularly from the OPMC,

Dr. Maye did not intend to act as a "pusher" of drugs.  Instead, he acted responsibly and

conservatively by consulting with and receiving advice from the proper authorities regarding the

appropriate scope of his conduct.[14]

       In addition to being relevant, the statements are also admissible under the state of

mind exception to the hearsay rule.  Specifically, this evidence is being offered for two purposes:

---

[10]    *United States v. Wexler*, 522 F.3d 194, 205-06 (2008).

[11]    *Id.* at 205 (quotation omitted); *United States v. Hurwitz*, 459 F.3d 463, 475 (4th Cir.
2006) (vacating conviction where district court did not allow jury to consider good faith
as a defense to section 841 charges against a physician).

[12]    *United States v. Feingold*, 454 F.3d 1001, 1008 (9th Cir. 2006).

[13]    *Id.*

[14]    *See Wexler*, 522 F.3d at 206 (noting that, it is only when a doctor acts outside the proper
realm of medical practice that he becomes a "drug pusher" rather than a medical
professional) (citation omitted).

- 4 -

**Defendant's Memorandum of Law In Opposition to
Government's Motions in Limine, Filed December 30, 2011.**

Case 1:08-cr-00194-WMS-JJM   Document 138   Filed 12/30/11   Page 9 of 17

to show that Dr. Maye actually believed that his conduct was within the legitimate scope of

medical purpose and to show that that this belief was reasonable. For both of these purposes, the

statements are admissible under Rule 803(3) of the Federal Rules of Evidence, which provides

an exception from the hearsay prohibition for "[a] statement of the declarant's then existing state

of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental

feeling, pain, and bodily health . . . .". Courts have admitted statements under this exception to

show the declarant's (or the hearer's) belief as to the propriety of specific conduct,[15] and, thus,

any such statements fall squarely within the exception and should be admitted for these

purposes.[16]

---

[15]   *See United States v. Newell*, 315 F.3d 510, 522 (5th Cir. 2002) (finding that notes of
defendant's accountant, after meeting with defendant, expressing accountant's concern
about improper billing were admissible under Rule 803(3) because they proved the
accountant's state of mind when she confronted defendant about the billings); *United
States v. DiMaria*, 727 F.2d 265, 271 (2d Cir. 1984) (holding, in the context of a
prosecution for possessing stolen or contraband cigarettes, that defendant said, when
confronted by FBI Agents, that he was only there to buy cheap cigarettes was admissible
because statement was not offered to prove that the cigarettes weren't stolen, but only to
show that defendant did not think they were); *United States v. Partyka*, 561 F.2d 118,
125 (8th Cir. 1977) (finding that defendant's wife's testimony as to conversation
between defendant and informant regarding defendant's unwillingness to engage in
illegal transaction was improperly excluded and should have been admitted under Rule
803(3)).

[16]   The government cites only one case in support of its argument – *United States v.
Seminerio*, 680 F. Supp. 2d 523 (S.D.N.Y. 2010). The defendant in that case had already
plead guilty, and the decision addressed the issue of an appropriate sentence. With
respect to the appropriate sentence, the defendant argued that an Advisory Opinion
shielded him from criminal liability, and the court rejected his argument, finding that he
failed to provide full disclosure to the ethics committee and failed to comply with the
terms of the opinion. *Id.* at 540-44. This scenario is far removed from the instant
context and relies on facts and evidence that have yet to be developed here.

134

**Defendant's Memorandum of Law In Opposition to
Government's Motions in Limine, Filed December 30, 2011.**

Case 1:08-cr-00194-WMS-JJM    Document 138    Filed 12/30/11    Page 10 of 17

II.    The 2008 Passage of the Ryan Haight Act is Relevant
       Evidence of the Applicable Standard of Care Governing Physicians

   The government's requested limitation, that the Court preclude any mention of the

Ryan Haight Act at trial, is improper, as the passage of this Act is *some evidence* that prescribing

controlled substances over the internet was not outside the bounds of legitimate medical practice

prior to the Act's passage, and, instead, was within the appropriate standard of care governing

physicians.

   Congress passed the Ryan Haight Act in 2008, and, with the passage of the Act,

the prescribing of controlled substances over the internet became *per se* illegal under the CSA.[17]

There was no clear-cut prohibition on prescribing controlled substances without a physical

examination before 2008, and prosecutions of physicians under the CSA for conduct occurring

before this time (such as this prosecution) are strictly based on a multi-factorial analysis pursuant

to which the jury must decide whether the challenged course of conduct exceeded the bounds of

appropriate medical practice.[18]

---

[17] Specifically, on October 15, 2008, Congress passed the Ryan Haight Online Pharmacy
Consumer Protection Act of 2008.  The Act provides that, "[n]o controlled substance
that is a prescription drug . . . may be delivered, distributed, or dispensed by means of
the Internet without a valid prescription." 21 U.S.C. § 829(e)(1).  A "valid prescription"
is defined as a prescription issued for a legitimate medical purpose in the usual course of
professional practice by a practitioner who has conducted at least one in-person medical
evaluation. *Id.* at § 829(e)(2)(A).

[18] *See Moore*, 423 U.S. at 142-43 (holding that evidence was sufficient for jury to find that
physician's conduct exceeded the bounds of professional practice as physician gave
inadequate physical examinations, ignored test results, took no precautions against
misuse and diversion of controlled substances, did not regulate dosages, and did not
charge for medical services, but based his fee on the number of pills desired by the
patient).

135

**Defendant's Memorandum of Law In Opposition to**
**Government's Motions in Limine, Filed December 30, 2011.**

Case 1:08-cr-00194-WMS-JJM   Document 138   Filed 12/30/11   Page 11 of 17

But physicians must be given "some latitude" when trying to determine the "current boundaries of acceptable medical practice,"[19] and the government has the burden to show that Dr. Maye's actions were not for a legitimate medical purpose in the usual course of professional practice or were beyond the bounds of medical practice.[20] As the government has conceded, evidence of the standard of care is relevant to this inquiry,[21] and the Second Circuit has held that, only after assessing the standards to which medical professionals hold themselves is it possible to determine whether a physician's conduct has deviated from those practices as to become criminal.[22]

The government will offer the testimony of an expert witness, Dr. Parran, to opine that Dr. Maye was not adhering to generally accepted medical practices,[23] and evidence of the passage of this Act is appropriate cross-examination material to test Dr. Parran's credibility and conclusions.[24] And, because the passage of this Act and its substance are not subject to

---

[19]   *Hurwitz*, 459 F.3d at 477.

[20]   *Id.* at 475 (quotation omitted).

[21]   See Gov't. Mem. at 28.

[22]   *Wexler*, 522 F.3d at 200 (quotation omitted).

[23]   *See* Gov't. Mem. at 6.

[24]   *See Wipf v. Kowalski*, 519 F.3d 380, 386 (7th Cir. 2008) (holding that defense appropriately cross-examined plaintiff's expert by asking about an article discussing appropriate medical techniques written *after* plaintiff's surgical injury and reflecting the updated views of an author of a previously published article relied on by the plaintiff; "[a]s a general rule, there is certainly nothing problematic about asking an expert about materials he has read that relate to an issue at trial . . . . That the article postdated [plaintiff's] operation does not necessarily made it inadmissible."); *Cunningham v. Gans*, 507 F.2d 496, 501 (2d Cir. 1974) (suggesting that "defense counsel should attack the expert's testimony by showing his conclusion would be different if certain facts were also assumed or if certain assumed facts were changed rather than by voicing picky objections to complicated hypothetical questions").

- 7 -

136

## Defendant's Memorandum of Law In Opposition to Government's Motions in Limine, Filed December 30, 2011.

Case 1:08-cr-00194-WMS-JJM   Document 138   Filed 12/30/11   Page 12 of 17

reasonable dispute, the Court can take judicial notice of these facts, allowing the jury to consider this information as substantive evidence.[25]

The government cites two cases in favor of preclusion, both of which involved the issuance of prescriptions through the internet, but neither of which address the precise arguments presented here. In *United States v. Birbragher*,[26] the defendant appealed the denial of his motion to dismiss the indictment on the basis that the CSA was unconstitutionally vague as applied.[27] The court held that the fact that Congress passed the Ryan Haight Act did not mean that defendant's conduct while acting as the principal of a company using the internet to distribute controlled substances was not prohibited under the prior version of the statute.[28] Similarly, in *United States v. Hazelwood*,[29] the court held that defendants, who were alleged to be involved in an internet organization that improperly marketed and sold controlled substances, could properly be prosecuted under the CSA before the Ryan Haight Act became effective.[30]

---

[25]   *See e.g.*, *United States v. Harris*, 331 F.2d 600, 601 (6th Cir. 1964) ("The District Court will also take judicial notice of the statutes of the United States.") (citations omitted). Indeed, because the Ryan Haight Act is a "legislative fact," the requirements of Federal Rule of Evidence 201 do not apply. *See* Rule 201(a) (stating that the rule does not apply to legislative facts); *see also* 1 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence*, § 201.52 (Joseph M. McLaughlin, ed., Matthew Bender 2d ed. 2011) ("As a matter of constitutional law, not regulated by Rule 201, federal courts must take judicial notice of the Constitution of the United states and of federal statutes and regulations.") (citations omitted).

[26]   603 F.3d 478 (8th Cir. 2010).

[27]   *Id.* at 480.

[28]   *Id.* at 489-90.

[29]   2011 WL 2565294 (N.D. Ohio June 27, 2011).

[30]   *Id.* at *4-*5.

- 8 -

137

**Defendant's Memorandum of Law In Opposition to
Government's Motions in Limine, Filed December 30, 2011.**

Case 1:08-cr-00194-WMS-JJM   Document 138   Filed 12/30/11   Page 13 of 17

Here, unlike *Birbragher* and *Hazelwood*, the defense isn't claiming that the

passage of the Ryan Haight Act means that Dr. Maye's conduct was *per se* legal, requiring

dismissal of the indictment as a matter of law. The defense is merely arguing that the Act's

passage is one factor a jury could consider in assessing whether Dr. Maye's failure to conduct a

face-to-face examination was outside the standard of care during the time of the challenged

conduct. Excluding reference to the Act's subsequent passage will deprive Dr. Maye of his right

to present a defense, specifically, his argument that there was an ambiguity with respect to the

face-to-face requirement at that time. The government will likely rely upon the lack of a

physical examination to prove its charges, and the defense should be permitted to offer its

evidence, as well.

**III.    The Government is Not Entitled
        to Pre-Trial Notice of a Possible Advice-of-Counsel Defense**

The government claims that the defendant should provide "immediate notice that

he will rely upon an advice of counsel defense at trial, so the issue can be fully assessed by the

government to determine whether it provides a valid legal defense to the charges, and to

adequately prepare for trial."[31]

Interestingly, the government does not cite one case supporting its contention that

it is entitled to pre-trial notice of an advice-of-counsel defense. This is because the authority is

to the contrary.[32] And, as the government acknowledges, the Federal Rules of Criminal

---

[31]   Gov't. Mem. at 20.

[32]   *See e.g., United States v. Espy*, 1996 WL 560354, at *1 (E.D. La. Oct. 2, 1996) ("[T]his
Court finds that there is no caselaw to support [the government's] position that a
defendant must notify the government if he intends to rely on the advice of counsel
defense.").

- 9 -

138

**Defendant's Memorandum of Law In Opposition to
Government's Motions in Limine, Filed December 30, 2011.**

Case 1:08-cr-00194-WMS-JJM   Document 138   Filed 12/30/11   Page 14 of 17

Procedure expressly list defenses that are subject to pre-trial notice requirements.  Advice-of-counsel is not among them.[33]

The government's argument suffers from additional problems.  First, the government's request for pre-trial notification should be rejected because this particular defense requires a specific, factual context to evaluate – a factual context that will not be available until trial.  Reliance on the advice-of-counsel is "not really a defense to an allegation . . . but it is the basis for a jury instruction" regarding a defendant's intent.[34]  Whether such a jury instruction is appropriate is based on the evidence in the record.[35]  And, with respect to waiver of the privilege, the Second Circuit conducts a "fairness" inquiry on a case-by-case basis.[36]  There are circumstances in which Dr. Maye could reference or invoke information received by his (or his employer's) attorneys without invoking an advice-of-counsel defense or waiving the privilege.[37]  A determination of waiver, therefore, should not be made on a sterile record, a position

---

[33]   Gov't. Mem. at 23 n.5.

[34]   *United States v. Pettigrew*, 77 F.3d 1500, 1520 (5th Cir. 1996) (quotation omitted).

[35]   *See United States v. Allen*, 127 F.3d 260 (2d Cir. 1997) (holding that jury charge improperly failed to present defense theory that had support in the record; "[a] criminal defendant is entitled to a jury charge that reflects any defense theory for which there is a foundation in the evidence.") (alteration in original) (quotation omitted).

[36]   *United States v. Doe*, 219 F.3d 175, 192-93 (2d Cir. 2000) (noting that whether fairness requires disclosure of privileged advice is decided on a case-by-case basis and depends primarily on the context in which the privilege is raised).

[37]   *United States v. White*, 887 F.2d 267, 270 (D.C. Cir. 1989) (Ginsberg, J.) ("A general assertion lacking substantive content that one's attorney has examined a certain matter is not sufficient to waive the attorney-client privilege."); *see also United States v. Bilzerian*, 926 F.2d 1285, 1293 (2d Cir. 1991) (noting that "the district judge merely said that Bilzerian's own testimony as to his good faith would open the door to cross-examination, possibly including inquiry into otherwise privileged communications with his attorney.  Defendant was free to deny criminal intent either without asserting good faith or to argue his good faith defense by means of defense counsel's opening and closing statements and by his examination of witnesses.").

**Defendant's Memorandum of Law In Opposition to
Government's Motions in Limine, Filed December 30, 2011.**

Case 1:08-cr-00194-WMS-JJM   Document 138   Filed 12/30/11   Page 15 of 17

recognized by the Second Circuit.  Specifically, in *United States v. Bilzerian*,[38] a case on which

the government relies, the Second Circuit affirmed the lower court's denial of defendant's

motion *in limine* seeking a ruling allowing him to testify as to his belief in the lawfulness of his

actions without waiving the privilege.[39]  The district court in that case refused to offer the

defendant "blanket protection" from a waiver, but "took great pains to point out that application

of the privilege would hinge on the testimony elicited on direct examination."[40]  On appeal, the

Second Circuit noted that its review was hampered due to the lack of an adequate record for the

privilege determination and noted that decisions regarding waiver are better made in a specific,

factual context, as opposed to a pre-trial, hypothetical posture.[41]  Moreover, it is unclear at this

point, to the extent that Dr. Maye relies on advice received from counsel for his former

employer, whether he can even waive the entity's privilege.[42]

        Second, even if Dr. Maye were to reveal his reliance on the advice-of-counsel

defense and consequently waive privilege, the government is not entitled to the wide-ranging

pre-trial discovery it seeks.[43]  The government states that Federal Rule of Criminal Procedure

16(b)(1)(A) allows such discovery.  This is not the case.  This rule requires the defendant to

---

[38]    926 F.2d 1285 (2d Cir. 1991).

[39]    *Id.* at 1291.

[40]    *Id.* at 1293.

[41]    *Id.*

[42]    *See Doe*, 219 F.3d at 184 (holding that a corporate officer testifying in his individual
capacity does not necessarily waive the corporate privilege without the entity's consent).

[43]    Gov't. Mem. at 22 (stating that it will require interviews of the counsel identified by the
defense, as well as the review of documentary evidence, including those containing the
opinions or advice, all preliminary drafts of documents, attorney notes containing
material necessary to the preparation of documents, and copies of other documents, the
contents of which were necessary to the preparation of the published document).

**Defendant's Memorandum of Law In Opposition to**
**Government's Motions in Limine, Filed December 30, 2011.**

Case 1:08-cr-00194-WMS-JJM   Document 138   Filed 12/30/11   Page 16 of 17

allow the government access to documents if they are within the defendant's possession,

custody, or control and the defendant intends to use them in the defendant's case-in-chief.[44] The

rule allows for nothing further, and the government's request for additional discovery is

problematic, as this Court ordered that the parties complete their remaining discovery by July 5,

2011.[45] It is worth noting that the government indicted Dr. Maye in 2008. Almost four years

later, it should not be heard to complain that it does not have sufficient discovery to proceed with

trial.

**IV.    The DEA "Guidance" Document is Inadmissible**

The government claims that the DEA publication, "Dispensing and Purchasing

Controlled Substances over the Internet," is "highly probative of the issues at trial as it sets forth

the administrative opinion of the DEA regarding the requirements for the lawful dispensing of

controlled substances by way of the Internet."[46] The admission of this statement, however, is

improper under Rule 403, as it would suggest to the jury (and cause it considerable confusion, as

well as significant prejudice to Dr. Maye) that Dr. Maye is guilty simply because he may not

have followed the dictates of the DEA guidance – an agency opinion not entitled to such

potentially dispositive weight.[47]

---

[44]   Federal Rule of Criminal Procedure 16(b)(1).   The case relied on by the government,
*United States v. (Under Seal)*, 748 F.2d 871, 875 n.7 (4th Cir. 1984) is also inapposite,
as it involves an analysis of privileged documents responsive to a grand jury subpoena.

[45]   *See* Docket No. 97 (McCarthy, Magistrate Judge).  The Court later granted defendant
additional time to obtain discovery from the government.  *See* Docket Nos. 112, 113.

[46]   Gov't. Mem. at 33.

[47]   *See United States v. Quinones*, 536 F. Supp. 2d 267, 273 (E.D.N.Y. 2008) (rejecting the
argument that the DEA's interpretation of the CSA was sufficient to give defendants fair
notice that their conduct was illegal; "what the DEA believes the statute proscribes is

- 12 -

141

**Defendant's Memorandum of Law In Opposition to
Government's Motions in Limine, Filed December 30, 2011.**

Case 1:08-cr-00194-WMS-JJM   Document 138   Filed 12/30/11   Page 17 of 17

### CONCLUSION

Dr. Maye seeks only the opportunity to introduce evidence that will present his version of the events in question such that the jury will be able to critically evaluate the government's allegations.  The government's attempts to foreclose this evidence, while allowing itself the maximum opportunity to pursue its quest to convict, should not be allowed.

Dated:        December 30, 2011

HODGSON RUSS LLP
*Attorneys for John E. Maye, M.D.*

By:   s/Reetuparna Dutta
         Daniel C. Oliverio
         Michelle L. Merola
         Reetuparna Dutta
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, New York  14202
(716) 856-4000
*doliveri@hodgsonruss.com*
*mmerola@hodgsonruss.com*
*rdutta@hodgsonruss.com*

---

immaterial") (citation omitted); *see also Gonzales v. Oregon*, 546 U.S. 243, 262 (2006) (holding that Attorney General, through an Interpretive Rule, could not prohibit physicians from issuing prescriptions for controlled substances for the purpose of physician-assisted suicide authorized by state law; "[i]t would be anomalous for Congress to have . . . given [the Attorney General], just by implication, authority to declare an entire class of activity outside the course of professional practice and therefore a criminal violation of the CSA.") (citation omitted).

- 13 -

142

**Declaration of Reetuparna Dutta, Esq., In Support of Defendant's Opposition to Government's Motions in Limine, Filed December 30, 2011.**

Case 1:08-cr-00194-WMS-JJM   Document 139   Filed 12/30/11   Page 1 of 3

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.                                                    CR No.: 08-CR-194(S)

JOHN E. MAYE, M.D.

                                  Defendant.

**DECLARATION IN SUPPORT OF DEFENDANT'S OPPOSITION TO
GOVERNMENT'S MOTIONS *IN LIMINE***

Reetuparna Dutta, under penalty of perjury and pursuant to 28 U.S.C. § 1746, declares the following to be true and correct:

1.      I am an attorney with Hodgson Russ LLP, attorneys for Defendant John E. Maye, M.D. This declaration is submitted in support of Dr. Maye's opposition to the government's motions *in limine*.

2.      The government has moved *in limine* to: (1) exclude evidence of a billing fraud investigation involving their expert witness, Dr. Theodore Parran; (2) require that Dr. Maye provide immediate notice of any intent to rely on an advice-of-counsel defense; (3) preclude Dr. Maye from arguing that he relied in good-faith on the implicit approval of the New York State Office of Professional Medical Conduct ("OPMC") with respect to the conduct for which he was indicted; (4) use a national standard of medical care as a benchmark in determining whether Dr. Maye issued the challenged prescriptions in good faith; (5) preclude the defense from using any evidence regarding the Ryan Haight Act; and (6) admit into evidence a Drug Enforcement

**143**

**Declaration of Reetuparna Dutta, Esq., In Support of Defendant's Opposition to Government's Motions in Limine, Filed December 30, 2011.**

Case 1:08-cr-00194-WMS-JJM   Document 139   Filed 12/30/11   Page 2 of 3

Administration publication providing guidance as to the application of laws and regulations to the dispensing, purchasing, or importing of controlled substances over the internet.

3.      With respect to the preclusion of evidence as to the billing fraud allegations against Dr. Parran, the defense agrees not to attempt to impeach Dr. Parran with this information.  This limitation should not, however, apply if Dr. Parran affirmatively (and not in response to any line of questioning directed to this issue) makes a statement suggesting his lack of involvement in any billing fraud allegations.

4.      The defense also does not contest the use of a national standard of medical care with respect to the inquiry as to Dr. Maye's good faith in issuing the prescriptions.

5.      The defense does, however, object to providing any pre-trial notice of an advice-of-counsel defense, any limitation on the evidence used by Dr. Maye to prove his good faith in issuing the challenged prescriptions, including any limitation regarding evidence of the OPMC's implicit approval of his conduct, any attempt to preclude evidence of the Ryan Haight Act, and the admission of the DEA publication.

6.      With respect to evidence regarding the OPMC's approval of Dr. Maye's medical activities, on March 16, 2004, Dr. Maye affirmatively notified the OPMC that he would be employed by North American Pharmaceutical Solutions, LLC as a telemedicine consultant to "provide online/telephonic consultations to customers seeking to obtain prescription medications through their on-line website."[1]

---

[1]      A copy of Dr. Maye's letter is attached as **Exhibit A.**

- 2 -

**144**

**Declaration of Reetuparna Dutta, Esq., In Support of Defendant's
Opposition to Government's Motions in Limine, Filed December 30, 2011.**

Case 1:08-cr-00194-WMS-JJM   Document 139   Filed 12/30/11   Page 3 of 3

       7.     In response, Sondra Rennick, a Hospital Nursing Services Consultant with the OPMC, wrote Dr. Maye a letter, dated March 31, 2004. Nowhere in this letter does Ms. Rennick seek additional information about Dr. Maye's practice nor does she inform him that it is in any way improper.[2]

       8.     While the defense will seek to introduce these letters as evidence, because Ms. Rennick's letter refers to and encloses a "Compliance Declaration," which references Dr. Maye's "probation period," the defense requests that this information be redacted, in accordance with motions *in limine* filed by the defense under seal on November 21, 2011. *See* Docket No. 125.

Dated: December 30, 2011

                                    s/Reetuparna Dutta
                                      Reetuparna Dutta

---

[2]    A copy of Ms. Rennick's letter, with enclosures, is attached as **Exhibit B.**

Exhibit "A" Annexed to Declaration of Dutta.

3/16/04

Sandra Rennick
NYS DOH
OPMC
433 River Street
Suite 303
Troy, New York, 12180-2299

Regarding: John E Maye, MD

Dear Ms. Rennick,
This letter is to notify you that I will resume the practice of medicine effective March 16, 2004. I will be employed by North American pharmaceutical Solutions, LLC. My primary responsibility as a telemedicine Consultant is to provide online/telephonic consultations to customers seeking to obtain prescription medications through their on-line website. I will establish a bona-fide patient/physician relationship as required by state licensure.

Sincerely,

John E Maye, MD
License # 165650

RECEIVED
Physician Monitoring

MAR 1 9 2004

Office of Professional
Medical Conduct

Exhibit "B" Annexed to Declaration of Dutta.



# STATE OF NEW YORK
## DEPARTMENT OF HEALTH

433 River Street, Suite 303                    Troy, New York 12180-2299

Antonia C. Novello, M.D., M.P.H.,Dr.P.H.                    Dennis P. Whalen
*Commissioner*                                             *Executive Deputy Commissioner*

March 31, 2004

**CERTIFIED MAIL-RETURN RECEIPT**

John E. Maye, M.D.
P.O. Box 16572
Rochester, NY 14616

                              RE:    BPMC NO:. 97-81

Dear Dr. Maye:

    This is in response to your written notification of your returning to the active practice of medicine effective March 16, 2004. Please take the time to review the enclosed January 2003 Special Committee's Statements on Telemedicine by the Board for Professional Medical Conduct along with the State Education Department's Office of the Professions 1999 report regarding Telepractice.

    In the context of telemedicine/practice please be reminded that all the current standards of care regarding the practice of medicine apply along with your personal obligation to adhere to acceptable standards of medical practice.

    I am enclosing our annual Compliance Declaration and Practice Update sheet which you should review, edit your personal contact and practice information as necessary, sign and return to my attention within 15 days. I have enclosed a self-addressed envelope for your convenience.

    Also, New York State Public Health Law requires that you notify the Department within 30 days of any changes in your Physician Profile information. Please refer to the enclosed attachment regarding contact information.

    Please feel free to contact me at (518) 402-0845 if you have any other questions or concerns.

                              Sincerely,

                              *Sondra Rennick*

                              Sondra Rennick
                              Hospital Nursing Services Consultant
                              Physician Monitoring Programs
                              Office of Professional Medical Conduct

Enclosures

Exhibit "B" Annexed to Declaration of Dutta.

# BOARD FOR PROFESSIONAL MEDICAL CONDUCT

# SPECIAL COMMITTEE ON TELEMEDICINE

Roger Oskvig, M.D., Chair
Denise Boian, R.P.A.
Alan Kopman
Randolph Manning, Ph.D.
Sharon Mead, M.D.
Mary Patricia Meagher, R.N.
Peggy Murrain, Ed.D.
Thea Pellman
Winston Price, M.D.
Gary Schwall, R.P.A.

Revised: January 22, 2003

Exhibit "B" Annexed to Declaration of Dutta.

### Statements on Telemedicine
### Board for Professional Medical Conduct

William P. Dillon, M.D., Chair of the Board for Professional Medical Conduct (Board), in October 2000 charged a Special Committee on Telemedicine to draft an ethical statement relevant to the practice of telemedicine. The membership of the committee is listed in Attachment 1. Attachment 2 is a partial compilation of reference materials the committee considered in developing this statement.

The charge to the Special Committee on Telemedicine was:

> *Advances in medicine and technology are rapidly transforming today's medical practice. While these advances offer opportunities to improve the delivery of health care, they also present challenges to practitioners. The development of telemedicine presents particular challenges to the physician in assuring that the integrity and confidentiality of the physician-patient relationship are maintained, that the scope of practice is within the legal statutes set forth by the state where the physician is practicing medicine and that the ethics as recognized by the medical profession are upheld. Acknowledging these challenges, it is the charge of the Board for Professional Medical Conduct Special Committee on Telemedicine to draft an ethics statement which addresses the use of telemedicine by New York physicians. This document should serve as a guide to physicians in assessing whether the tenets of professional conduct and the physician-patient relationship are being upheld when using electronic communication in their practice of medicine. Issues which these ethical statements should address, among others seen appropriate by the committee, should include the physician-patient relationship and communication, record keeping, providing for physical examinations and confidentiality.*

---

In considering their charge, committee members concluded that the statement which follows is intended to provide guidance to the Board and physicians within the current laws governing medical practice. Telemedicine is a very promising force that will increasingly be incorporated into medical practices. The changes that this burgeoning technology will bring in the near future are unprecedented, and laws and regulations will need to accommodate these changes while allowing for public safety. The purpose of this statement is to provide an ethical framework within current laws, statutes and medical standards that will guide physicians, physician assistants, the Office of Professional Medical Conduct and the Board in determining if medical practices uphold the physician-patient contract and public trust.

Telemedicine offers great promise for the practice of medicine. Its potential for addressing access to information, providing expert advice readily, offering standards of quality, and assembling comprehensive patient databases are among the type of innovations yet to be realized. Telemedicine unquestionably has already become part of medical care in New York. The practice of telemedicine can be characterized as follows:

- The geographic separation between two or more participants and/or entities engaged in health care,

- The use of telecommunication and related technology to gather, store and disseminate health-related information, and

**Exhibit "B" Annexed to Declaration of Dutta.**

- **The use of electronic interactive technologies to assess, diagnose and/or treat medical conditions.**

All the current standards of care regarding the practice of medicine apply. The fact that an electronic medium is utilized for contact between parties or as a substitute for face-to-face consultation does not change the standards of care. The American College of Obstetricians and Gynecologists (ACOG) Statement on Telecommunication in Medicine presents it clearly: **"The standards of care for medical practice apply with equal force and vitality to telemedicine if a physician-patient relationship is deemed to exist."** Since the State of New York, in its role of protecting public health and safety, has the authority to ensure the safe practice of medicine, the State therefore, by extension, has the authority and responsibility to require a like level of safe medical care in the practice of telemedicine.

It is the location of the patient that defines where the care has been delivered and the jurisdiction of applicable regulations. Physicians and physician assistants *who practice or hold out to practice or engage in any physician-patient[1] relationship in New York must be licensed and currently registered in New York.* Legal precedents have established that the State has the right to require licensure to engage in medical practice in the State. The establishment of standards for licensure is not an impingement upon a physician's or physician assistant's professional property rights, does not unfairly restrict mobility, nor is it unreasonably costly. Telemedicine makes it easy to practice medicine across state lines. Therefore telemedicine is a practice and licensing issue that every state must consider. In New York, the State performs its public protection role through the enforcement of the licensure laws. *The practice of medicine through telemedicine in New York State by someone not authorized to practice in New York State may constitute the illegal practice of a profession, subject to investigation by the New York State Education Department and prosecution by the New York State Attorney General.*

A critical issue in telemedicine is determining the definition of a physician-patient relationship. The references reviewed by the committee have some degree of variation in their definitions related to the general purpose of each document. Some general statements are self-evident in their identification of a physician-patient relationship, and certain types of telecommunication are easily identifiable as not constituting a physician-patient relationship. Health information sites accessed for general information only, without personal interaction, through electronic media are no different from accessing a reference text in a library, and do not constitute a professional relationship. The fact that most types of telemedicine practice are not reimbursed is irrelevant. The committee concluded that the following statement of ACOG is a clear and practical guiding principal:

> **"If a patient receives professional advice or treatment, even gratuitously, there is prima facie evidence that a physician-patient relationship exists."**

New York State Education Law, Article 131, Section 6526(3) does permit a physician not licensed in New York State to provide occasional consultation to a physician licensed and registered in New York State to assist in the care of a patient (see section of law, Attachment 3). The work of this committee is not intended to restrict or redefine permissible consultations now available to and utilized by New York State physicians.

New York requires that a physician or physician assistant display his or her license and current registration at the practice site, and that patients or potential patients have access to that for their view.

---

[1] For the purposes of this statement, physician-patient relationship refers to the professional relationship between patients and their physician or physician assistant.

### Exhibit "B" Annexed to Declaration of Dutta.

Case 1:08-cr-00194-WMS-JJM    Document 139-1    Filed 12/30/11    Page 8 of 21

Physicians and physician assistants are obliged to be identifiable to their patients and failure to provide verification of identity may be misconduct. A patient must have the ability to identify the physician or physician assistant at the point of access. **Therefore, it follows that in a telemedicine professional relationship there must also be some form of identification/certification that the physician or physician assistant on the professional end is the licensed, currently registered physician or physician assistant he or she purports to be.**

**Having engaged in a professional relationship via telemedicine, the physician or physician assistant must meet the same expectation of quality as in the traditional medical care process.** Other expectations necessarily follow. The first are ethical issues and they include: **The physician or physician assistant, having established a relationship, has a duty to be available for care when it is needed or to see that there is a reliable provision for care and advice.** The fact that the advice or treatment occurred via electronic media does not change the requirement for follow-up care.

**In telemedicine, as in face-to-face encounters, a medical record must be created and maintained according to prevailing medical record standards.** The medical record is the means by which an episode of care is evaluated against the community standard. The standards of the medical record for content and clarity have been well established. The failure to meet the medical record standard is a frequently sustained and punishable charge in medical misconduct cases. The medical record serves to document the analysis and plan of an episode of care for future reference. It must reflect an appropriate evaluation of the patient's presenting symptoms. Relevant components of the electronic professional interaction must be documented as with any other encounter. Personal communications with patients, not part of that medical record, should be archived separately from the medical record. The medical record is the means of transferring information to another practitioner or appropriate individuals and entities. The medical record is also a legal document and is evidentiary material in legal matters. The standards of confidentiality regarding medical records resulting from an electronic encounter are similarly required.

Telemedicine is another technological advance that physicians, physician assistants and patients will embrace in our never ending pursuit of restoring and maintaining optimal health. The field is changing rapidly, but we found that the existing tenets of professional conduct can be comfortably applied to the practice of telemedicine.

Attachments

151

Exhibit "B" Annexed to Declaration of Dutta.

Case 1:08-cr-00194-WMS-JJM    Document 139-1    Filed 12/30/11    Page 9 of 21

## ATTACHMENT 1

### BOARD FOR PROFESSIONAL MEDICAL CONDUCT

### SPECIAL COMMITTEE ON TELEMEDICINE

Roger Oskvig, M.D., Chair

Denise Bolan, R.P.A.

Alan Kopman

Randolph Manning, Ph.D.

Sharon Mead, M.D.

Mary Patricia Meagher, R.N.

Peggy Murrain, Ed.D.

Thea Pellman

Winston Price, M.D.

Garry Schwall, R.P.A.

4

152

Exhibit "B" Annexed to Declaration of Dutta.

Case 1:08-cr-00194-WMS-JJM   Document 139-1   Filed 12/30/11   Page 10 of 21

## ATTACHMENT 2

### NEW YORK STATE BOARD FOR PROFESSIONAL MEDICAL CONDUCT COMMITTEE ON TELEMEDICINE

### REFERENCE MATERIALS

American College of Obstetrics and Gynecology: Committee Opinion on Telecommunication in Medicine

American Counseling Association, Ethical Standards for Internet On-line Counseling

American Journal of Law & Medicine, 26(2000)
  "Regulating Medical Practice in the Cyber Age: Issues and Challenges for State Medical Boards"

American Journal of Law & Medicine, 25(1999)
  "Broadcasting Clinical Guidelines on the Internet: Will Physicians Tune In?"
  "Cyber-Malpractice: Legal Exposure for Cybermedicine"
  "Informed Consent in the Electronic Age"
  "Online Without a Net: Physician-Patient Communication by Electronic Mail"
  "Telemedicine and Integrated Health Care Delivery: Compounding Malpractice Liability"

Annual Reviews in Public Health, 2000, vol. 21
  "Telemedicine: A New Health Care Delivery System"

Canadian Medical Association Journal, 15 November 1997:157(10)
  "When Medicine Moves to the Internet, Its Legal Issues Tag Along"

Commonwealth of Massachusetts Investigative Report on CyberDocs

Department of Health Regulations, Title 10 Section 80.63, Prescribing Controlled Substances and Prohibited Referrals

Drug Benefit Trends, "How Telemedicine Can Help Patient Drug Compliance"

Federation of State Medical Boards Internet Prescribing Overview by State

Federation of State Medical Boards, "Model Act to Regulate the Practice of Medicine Across State Lines"

Federation of State Medical Boards Newsline, "Practicing Medicine Over the Internet"

Federation of State Medical Boards, "Report of the Special Committee on Professional Conduct and Ethics"

Federation of State Medical Boards Telemedicine Overview by State on Current Legislation

Internet Medicine, "Point and Click Prescriptions: Pros and Cons of Online Pharmacies and Guides for Use"

## Exhibit "B" Annexed to Declaration of Dutta.

Journal of the American Medical Association, 21 October 1999, vol. 282, No. 15
"Legal Issues Concerning Electronic Health Information: Privacy, Quality and Liability"

Journal of Psychiatry, "Telepsychiatry: Thirty-Five Years' Experience"

Joint Commission on Accreditation for Hospitals, Comprehensive Accreditation Manual for Hospitals, Medical Staff Chapter

Medical Tribune, "Doctors Find Web Sites Save Them Time"

Memorandum from Massachusetts Director of the Board of Medicine on CyberDocs

Minnesota Board of Medical Practice Update, "Intruders" (preservation of the physician-patient relationship)

New York State Board of Regents Report, December 1999, "Telepractice".

New York State Education Department, Office of the Professions, April 1997, Letter on Telemedicine

New York State Department of Health, November 30, 1999, Opinion Letter on Provision of Services by a Physician Not Licensed in New York

New York State Education Law on the Practice of Medicine, Article 131

Oncology Issues, "On the Internet: A Third Opinion"

People Magazine, "Ship Shape - A Boston Doctor Helps Save a Lone Russian Sailor's Life by Making a High-tech House Call to the High Seas"

Star Tribune, "Medtronic to Start Network Using Internet to Link Patients at Home to Doctors In Office"

The Elizabeth Reporter, "Telemedicine"

The Federal Trade Commission: Statement Prepared on "Consumer Protection in Cyberspace: Combating Fraud on the Internet" for the House Committee on Commerce, United States House of Representatives

The Lancet, "Medical Diagnosis in the Internet Age"

Telemedicine Today Magazine: "An Overview of State Laws and Approaches to Minimize Licensure Barriers"

Times Union, "System Verifies Doctors' Web ID"
"Grant Lets Doctors Make Internet House Calls"

USA Today, "The Prescription: Take 2 Aspirin and e-mail Me at Once"
"On-line Prescription Services Leave Patients Pleased But at Risk"

USA Today, "As Information Flies, Privacy Could be Dead on Arrival"

154

Exhibit "B" Annexed to Declaration of Dutta.

Case 1:08-cr-00194-WMS-JJM   Document 139-1   Filed 12/30/11   Page 12 of 21

ATTACHMENT 3

NEW YORK STATE BOARD FOR PROFESSIONAL MEDICAL CONDUCT

COMMITTEE ON TELEMEDICINE

# NYS Education Law

### Article 131, Medicine

**§6526. Exempt persons.**

The following persons under the following limitations may practice medicine within the state without a license:

1. Any physician who is employed as a resident in a public hospital, provided such practice is limited to such hospital and is under the supervision of a licensed physician;
2. Any physician who is licensed in a bordering state and who resides near a border of this state, provided such practice is limited in this state to the vicinity of such border and provided such physician does not maintain an office or place to meet patients or receive calls within this state;
3. Any physician who is licensed in another state or country and who is meeting a physician licensed in this state, for purposes of consultation, provided such practice is limited to such consultation;
4. Any physician who is licensed in another state or country, who is visiting a medical school or teaching hospital in this state to receive medical instruction for a period not to exceed six months or to conduct medical instruction, provided such practice is limited to such instruction and is under the supervision of a licensed physician;
5. Any physician who is authorized by a foreign government to practice in relation to its diplomatic, consular or maritime staffs, provided such practice is limited to such staffs;
6. Any commissioned medical officer who is serving in the United States armed forces or public health service or any physician who is employed in the United States Veterans Administration, provided such practice is limited to such service or employment;
7. Any intern who is employed by a hospital and who is a graduate of a medical school in the United States or Canada, provided such practice is limited to such hospital and is under the supervision of a licensed physician; or
8. Any medical student who is performing a clinical clerkship or similar function in a hospital and who is matriculated in a medical school which meets standards satisfactory to the department, provided such practice is limited to such clerkship or similar function in such hospital.
9. Any dentist or dental school graduate eligible for licensure in the state who administers anesthesia as part of a hospital residency program established for the purpose of training dentists in anesthesiology.

7.

Case 14-2450, Document 39, 10/13/2015, 1618001, Page171 of 296

**Exhibit "B" Annexed to Declaration of Dutta.**

Case 1:08-cr-00194-WMS-JJM    Document 139-1    Filed 12/30/11    Page 13 of 21

OP Homepage | List of Professions | OP News | Contact Us



# Telepractice

This report was presented at the December 1999 meeting of the New York State Board of Regents.

TO:          The Honorable the Members of the Board of Regents
             Committee on Professional Practice

SUBJECT:     Telepractice

This report provides an overview of the key issues that involve telepractice. The report describes examples of its use nationally and within New York State, and describes New York State's interpretation of how the relevant laws affect telepractice. The benefits of technology in the practice of the professions as well as the legal and social concerns associated with its expanded use are also addressed in this report.

## I. What is Telepractice?

### Background and Definition

Telepractice is defined as the provision of professional service over geographical distances by means of modern telecommunications technology. This generic term includes, for example, teledentistry, telemedicine, telenursing, etc. Telepractice is used by health providers in a growing number of areas, including radiology, dermatology, dentistry, home health care, emergency medical services and the provision of mental health services by psychologists and social workers. The use of technology in professional practice is also growing in the design and business professions. Architectural and engineering designs and plans have been shared across state and national borders for some time. For example, the real-time* transfer of designs and design changes has grown steadily since electronic computer assisted design (CAD) programs were developed in the 1970s. In the accounting field, the proliferation of national and international firms, coupled with the computerization of accounting reports, both require and enable the type of instantaneous interaction that advanced technology is able to provide.

Telepractice is not a new phenomenon, despite the surge of attention it has received in recent years. Telepractice has occurred in various forms for more than 30 years, including its use by the National Aeronautics and Space Administration (NASA) to monitor the physical status of astronauts during missions beginning in the 1960s. Using technology as a tool in the practice of the professions, however, has grown dramatically in the last five years.

Often, technology is used when the need for professional services is geographically mismatched with the supply or when there are only a few sites nationally or internationally where "cutting edge" expertise can be accessed. Architectural, engineering, accounting and health care specialists often

156

Exhibit "B" Annexed to Declaration of Dutta.

practice in large metropolitan areas, in close proximity to major research facilities, design firm headquarters and health centers. Consumers living in rural or underserved urban areas frequently have little access to the specialized cutting edge services available at these sites.

Many professionals have also incorporated certain technologies as tools they regularly use in the course of providing services to patients or clients who are not physically in their office. For many years, physicians, nurses and dentists provided advice over the phone and/or used fax machines to transmit information (prescriptions, medical data, etc.) The increased use of technology in day-to-day practice, highlighted by the explosion of Internet access and use, has thrust the issue of telepractice squarely onto the professional regulatory agenda.

**Telepractice Applications**

Telepractice can take on many forms, including its use for intra- and inter- disciplinary professional research and training. Given the jurisdiction of the Board of Regents, our primary focus is on the use of telecommunications technology to deliver professional services to a patient or client who is located at a distance from the provider. In this context, telepractice has four basic components: data, expertise, distance, and the electronic transmission of one or both of the first two. It includes the delivery of images, sound, text, and graphical data via telephone, facsimile, Internet and/or video conferencing. The technology is primarily applied in two ways:

- One application is through the expanded use of electronic mail, where text information and individual, static images are transmitted to the professional located at a distance for use in consultation, review or diagnosis. For example, radiological images may be transmitted from an associate in a remote location for assessment at a major medical center, or construction details may be e-mailed for faster feedback and reaction from a field project in the Middle East to the headquarters of an architectural firm in Manhattan.

- The other application is more interactive. This approach may include teleconferencing along with a video image that is instantaneously displayed to the professional for consultation, review, and diagnostic purposes. During the transmission, the professional may converse with the client or patient so that multiple tasks can be performed and recorded during the session. These tasks might include taking a medical history and/or reading an X-ray of an injury, much like in a face-to-face session, but without direct physical contact. As a result of the technology, a consultation can involve broad input, be participatory, and can connect those in remote regions with medical, financial or design professional services in centralized urban centers.

## II. What is the Impact of New York State Law on Telepractice?

In accordance with New York State statute, full licensure and current registration are required of any professional who practices in New York State. All New York State licensed professionals are responsible for adhering to the same laws, rules and regulations and for upholding the same standards and competencies when engaging in telepractice as they are when practicing without the use of technology over a distance. This understanding is essential to ensure public protection and the integrity of the professions.

In the practice of medicine and dentistry, Education Law includes specific provisions permitting occasional consultations by physicians and dentists licensed in their home state (Education Law Section 6526(3) for medicine, and Section 6610(5) for dentistry). This consultation exemption statutorily establishes the extent to which these professionals licensed in other jurisdictions may practice in New York State when engaged in consulting arrangements.

This regulatory approach is premised on the prohibition in law against professional practice in New York by anyone who is not licensed in this State. This premise is based on the need to adhere to the requirements for admission to the professions and to the standards for professional practice

Case 14-2450, Document 39, 10/13/2015, 1618001, Page173 of 296

**Exhibit "B" Annexed to Declaration of Dutta.**

developed by the Legislature and the Board of Regents to insure maximum public protection. As the use of technology in professional practice evolves and expands, the Regents and the Department will continue to provide guidance on how to apply current laws and regulations and suggestions for additional or alternate legislation and regulation to maintain the safe and accessible practice of the professions.

Other states that regulate telepractice in medicine include Texas, Oregon, Florida, California and Colorado. The levels of regulation vary greatly by state. For example, Texas, California and Florida, similar to New York, require full licensure to perform any function relating to patient care, with some exceptions for consultation in some instances. Oregon has created a special type of license for telepractitioners. Other states are exploring the issue of telepractice and in general, how to regulate it.

## III. Potential Public Benefits

Technology may increase a professional's ability to deliver a broad range of services in a wide variety of locations. The following are just a few examples of how technology is being used by professionals in our State and nationally:

- Linking physicians doing clinical research together, despite geographical separation, allowing them to share patient records and diagnostic images;

- Enabling a group of teenage epileptic boys in a rural area to meet as a group by teleconferencing. Since the teleconferencing equipment remains in each home, the psychologist can also work with the individual families, who would otherwise not be available;

- Fine-tuning management and allocation of rural health care emergency services via the transmission of images to key medical centers for long distance evaluation and/or triage by appropriate medical specialists;

- Using the Internet to electronically transmit financial statements;

- Improving professional opportunities for rurally-based professionals, made possible by linking several offices or institutions together with the sponsoring professional school;

- Psychologists administering standardized tests by computer, which are transmitted to out-of-state testing companies, incorporating the findings into the evaluation and treatment decisions;

- Allowing homebound patients to receive home health care;

- Engineering and architectural sites using "robot" cameras for inspection purposes and mini-cameras for recording site inspections;

- Linking health care professionals in correctional facilities to medical providers at major medical centers;

- Providing patient advisement via technology in the practice of nursing.

Telepractice may improve the delivery, cost and accessibility of health care and other professional services. The following are examples of potential advantages in health care:

- **Care can be delivered more quickly**
  While it may take, in some instances, a day or so for an X-ray or report to be delivered via the postal service, the same delivery can be done via the Internet or by facsimile in a matter of minutes or seconds. The implications for this are significant, especially when an emergency

158

Exhibit "B" Annexed to Declaration of Dutta.

diagnosis is needed. Using the Internet to send an X-ray of a child's compound fractured wrist from the site of an accident in rural Monroe County to the radiologist in Rochester General Hospital could potentially save that child from losing wrist mobility.

- **Professional services may be delivered less expensively**
  Using telepractice may reduce patient travel expense when treatment is needed from a provider at a distant location. Similarly, a provider's cost for treating a patient through technology usually involves less overhead expense than an actual face-to-face visit. For example, even though there may not be any pediatric dermatologists within miles, a child living in rural Essex County, suffering from bromhidrosis (a rare, severe condition affecting the skin) could be examined by a pediatric dermatologist practicing at Mt. Sinai Hospital in New York City without having to travel to Manhattan. Similarly, in the engineering profession, a multitude of design configurations that previously could only be transmitted via the postal service can now be transmitted instantly, and real-time changes can now be made in consultation with professionals located throughout the country.

- **Telepractice will allow for the delivery of care to previously underserved areas**
  Rural and inner-city areas that are currently underserved by general practitioners, medical specialists and other health care providers will benefit from the technology that will allow their residents greater access to services. A radiologist at Memorial Sloan Kettering Hospital, for example, would be able to assist a member of the Iroquois nation in a rural area, remote from health care centers.

- **The quality of care may be improved with the use of telepractice**
  Both consumers and professionals now have access to resources beyond those available in their immediate area. A patient living in Elmira could have her lab tests immediately analyzed by a specialist in New York City.

Many of these advantages were discussed and demonstrated during the 1997 Regents Conference on the Professions when participants viewed an ultrasound demonstration teleconferenced from Samaritan Medical Center in Watertown to the Bar Association in New York City. Telepractice applications have expanded and are used more frequently since that demonstration. The following examples of health care telepractice projects in the State conform to existing New York State licensure requirements and are indicative of the kinds of services being electronically delivered. Although these examples are drawn only from the health care field, examples in other professions abound.

- *Mary Imogene Bassett Hospital, Cooperstown, New York* – provides community-based care for disabled people in rural areas.

- *CareNet State University of New York (SUNY) Health Science Center at Syracuse* – administers many projects aimed at improving patient care, medical education and research.

- *Department of Correctional Services Telemedicine Program* – operated in conjunction with Albany Medical Center, is used to treat dermatological problems and infectious diseases in inmates, in an effort to reduce the expense and security risk of prisoner transport.

- *Metropolitan Jewish Health System Telemedicine Project* – provides home care services via telemedicine to Kings County in New York City.

- *Telecare at ViaHealth* – based at Rochester General Hospital, focuses on developing emergency room telehealth, including trauma, surgery, stroke, rural to urban triage/transport issues, and ambulance telehealth. The emergency rooms of two city hospitals, including a trauma center and two rural hospitals, are linked, although they are 45 miles apart.

Case 14-2450, Document 39, 10/13/2015, 1618001, Page175 of 296

**Exhibit "B" Annexed to Declaration of Dutta.**

- *Total Dental Access* – a United States military program increases patient access to dental specialty care and treatment. It also promotes the development and application of distance learning for dental continuing education and training.

## IV. What are the Concerns Associated with Telepractice?

While there are many benefits for consumers and practitioners that drive the use of telepractice, there are also concerns and potential dangers associated with its use. Examples include:

### Unauthorized/Negligent practice

The first concern associated with this complex issue is the danger that may occur when an unlicensed person impersonates as a licensed professional over the Internet or during telepractice with another practitioner. The second issue concerns New York State's ability to hold a professional licensed in another jurisdiction, who is not licensed in New York State, accountable for serving a client in New York State through telepractice when those services are provided negligently or incompetently.

### Substandard or "cut-rate" professional services

A related issue is the potential for "cut-rate" care or substandard services to be provided over the Internet to New York citizens. Telepractice should supplement, not replace face-to-face provision of professional services when they are appropriate or desired by consumers. There is a risk that, to reduce costs, unethical or ill-prepared practitioners may cut corners in the delivery of care to New York State consumers through technology. We must ensure that the use of telepractice is not substituted for one-on-one direct service delivery when that is the more appropriate mode of care. We must also ensure that the standards used in telepractice are consistent with those employed in face-to-face professional practice.

### Confidentiality

Medical records and data available on items such as radiology reports, patient histories, or prescription records may contain information that could create the potential for discrimination against the patient. There is a risk that confidentiality might be breached if the electronic transmission of records is not secure. E-mail, like cellular phones and faxes, is susceptible to electronic interception. The potential for compromised privacy often exists because of the presence of technicians and others who may participate in the consultation. There is also the risk of undetected alterations or deletions on electronic records. This is particularly critical with financial and medical records. This concern may be obviated by the adoption of federal standards for the encryption and security of data and by the use of encryption programs, now used voluntarily by many practitioners.

## V. Current Activities and Next Steps

### Notice to Licensees

A memorandum on the interpretation of the law as it relates to telemedicine was mailed to all physicians, physician assistants and specialist assistants in April 1997 . Given the expansion of technology and an increasing number of questions arising concerning practice of the other professions via technology, the Department will provide further information and guidance to all currently registered licensees in a direct mailing early in 2000. This advisory will provide the Department's comprehensive analysis of the law as it relates to telepractice in the professions. Following that advisory, with the continuing advice and input of our State Boards and other stakeholders, SED will identify additional practice issues, policy options and relevant information regarding telepractice for

Exhibit "B" Annexed to Declaration of Dutta.

Case 1:08-cr-00194-WMS-JJM   Document 139-1   Filed 12/30/11   Page 18 of 21

Regents Telepractice Report                                      Page 6 of 6

this Committee's review.

## Consultation with State Boards and Key Stakeholders

In addition to working with our State Boards to more fully assess the role of telepractice in the professions, we are also actively working with other states, jurisdictions, enforcement agencies and professional associations to exchange information about and study approaches to these concerns. At the recent Council on Licensure Enforcement and Regulation (CLEAR) Conference, I met with representatives from throughout the United States and Canada and solicited their cooperation and support in working together to address telepractice issues to ensure consistent implementation and enforcement. Since the possibilities with technology are limitless, it is essential that telepractice is approached in a coordinated way, not by any one state alone.

## Consumer Education

Since the use of technology can never be totally monitored, it is absolutely critical for the general public to understand the limitations of the information received via the Internet, its impact on the services they receive, including confidentiality issues, consent rights and potential dangers. A major part of our planned consumer outreach project will be to ensure that consumers understand their rights regarding the use of technology in the delivery of professional services and know how to access legitimate professional services in New York State.

## VI. Conclusion

It is not expected that telepractice will ever completely replace the one-on-one relationship between the professional and patient or client. History demonstrates that we must proactively address the advance of technology as it is applied to the practice of the professions. This approach is critical to ensure public protection while encouraging the provision of the best possible professional services. We must work with our State Boards and key stakeholders within and beyond the borders of New York State, to make sure that we do not unnecessarily restrict the use of technology while ensuring that responsible, safe professional services continue to be provided. Maintaining a system that holds professionals accountable for the care they provide to the residents of our State must be paramount.

Staff will be available to discuss this information and respond to any questions.

---

\* The video image is transmitted at the same time as it occurs and within the same timeframe.



OP Homepage | List of Professions | OP News | Contact Us

http://www.op.nysed.gov/telepractice.htm
Updated, February 28, 2000

Exhibit "B" Annexed to Declaration of Dutta.

*For matters regarding licensure status, retirement, registration renewal, or questions regarding fees and mandated courses, please contact the following agency:*

> *NYS Education Department*
> *Office of the Professions*
> *Division of Professional Licensing Services*
> *89 Washington Avenue, 2nd Floor*
> *Albany, NY 12234-1000*
>
> *Voice: 518-474-3817*
> *Email: op4info@mail.nysed.gov*
> *Fax: 518-474-1449*
> *TDD/TTY: 518-473-1426*

*All payments regarding civil penalties must be paid to the following agency:*

> *NYS Department of Health*
> *Empire State Plaza - Corning Tower*
> *Revenue Unit - Room 1258*
> *Albany, NY 12237-0016*

*For matters related to the NYS Physician Profile, please contact the Physician Help Desk at:*

> *1-888-338-6998*

162

**Exhibit "B" Annexed to Declaration of Dutta.**

Case 1:08-cr-00194-WMS-JJM   Document 139-1   Filed 12/30/11   Page 20 of 21



**NEW YORK STATE DEPARTMENT OF HEALTH**
Office of Professional Medical Conduct
Physician Monitoring Programs
Hedley Park Place, Suite 303
433 River Street
Troy, NY 12180-2299
Phone: (518) 402-0845
Fax: (518) 402-0790

COMPLIANCE DECLARATION

**LICENSEE NAME:   JOHN E. MAYE, MD**       **LICENSE NO.:   165650**

**ADDRESS/PHONE:** PO Box 16572
Rochester, NY  14616
(585) 663-5015

**AFFILIATIONS:**

MAKE ANY CHANGES TO THE ABOVE INFORMATION ON THIS FORM. INCLUDE ALL HOSPITAL, CLINIC, NURSING HOME, LOCUM TENENS, ETC., AFFILIATIONS. ATTACH ADDITIONAL SHEETS IF NECESSARY.

**BPMC ORDER NO.:** 97-81 ARB       **EFFECTIVE DATE:** 4/16/97

**PROBATION PERIOD:**       03/16/04 – 03/15/07

**DECLARATION PERIOD:**   9/3/03 through present

**RESTRICTION(S) (if applicable):**       N/A

I have read and understand the terms of my Order and/or medical practice restriction(s).

**I HAVE NOT PRACTICED MEDICINE IN NYS PRIOR TO THE PROBATION PERIOD STATED ABOVE.**

During the declaration period stated above, I have been compliant with the legal requirements of my Order and/or any restriction(s) imposed upon me by the New York State Board for Professional Medical Conduct. I have not been arrested, charged, or convicted in any criminal matter. A civil action has not been instituted against me, nor have I settled any potential civil action prior to a lawsuit being filed. To the best of my knowledge, I am not the subject of any investigation by a government agency or facility in which I have been employed since the effective date of this Order.

ANY MISREPRESENTATION OR OMISSION OF INFORMATION MAY BE CONSIDERED A VIOLATION OF PROBATION AND/OR PROFESSIONAL MISCONDUCT.

_____
(Licensee Signature)

Date:   _____

Return Completed Form To:   Sondra Rennick, HNSC
NYS Department of Health
Office of Professional Medical Conduct
433 River St. - Suite 303
Troy, NY 12180-2299

**Exhibit "B" Annexed to Declaration of Dutta.**

Case 1:08-cr-00194-WMS-JJM   Document 139-1   Filed 12/30/11   Page 21 of 21

NYS Department of Health

Office of Professional
Medical Conduct

PHYSICIAN MONITORING PROGRAMS
HEDLEY PARK PLACE, SUITE 303
433 RIVER STREET
TROY, NY 12180-2299
PHONE: (518) 402-0845
FAX: (518) 402-0790

## PRACTICE STATUS UPDATE SHEET

| Licensee: John E. Maye, M.D. | License Number: 16572 |
|---|---|
| Re: BPMC ARB ORDER NO. 97-81 | Effective Date: 4/16/97 |

**EMPLOYMENT/PRACTICE ADDRESS(ES) AND PHONE NUMBER(S): (Attach additional sheets if necessary)**

**AFFILIATIONS: (Include all hospital, clinic, nursing home, locum tenens, etc. Attach additional sheets if necessary)**

**HOME ADDRESS(ES) AND PHONE NUMBER(S):**

TYPE AND NATURE OF CURRENT PRACTICE: _____

SPECIALTY BOARD CERTIFICATION:  ☐ YES   ☐ NO

IF 'YES', INDICATE SPECIALTY: _____   YEAR CERTIFIED: _____

OTHER STATE(S) LICENSURE:  ☐ YES   ☐ NO

IF "YES" LIST STATE(S): _____

SINCE OUR LAST CONTACT WITH YOU, HAS ANY STATE OR FACILITY INITIATED AN INVESTIGATION OR TAKEN ACTION AGAINST YOU?

☐ YES   ☐ NO

IF "YES" PLEASE SUMMARIZE

ANY MISREPRESENTATION OR OMISSION OF INFORMATION MAY BE CONSIDERED A
VIOLATION OF PROBATION AND/OR PROFESSIONAL MISCONDUCT

_____   DATE: _____

**(Licensee Signature - DO NOT PRINT)**

COMPLETE AND RETURN THIS FORM WITHIN 15 DAYS TO:   SONDRA RENNICK, HNSC

**Reply Memorandum of Law In Support of Defendant's
Motions in Limine, Filed January 11, 2012.**

Case 1:08-cr-00194-WMS-JJM   Document 145   Filed 01/11/12   Page 1 of 11

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

      v.                                                    CR No.: 08-CR-194(S)

JOHN E. MAYE, M.D.

                    Defendant.

_____

## REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT JOHN E. MAYE'S MOTIONS *IN LIMINE*

**HODGSON RUSS** LLP
*Attorneys for John E. Maye, M.D.*
Daniel C. Oliverio
Michelle L. Merola
Reetuparna Dutta
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, New York 14202
Telephone: 716.856.4000
*doliveri@hodgsonruss.com*
*mmerola@hodgsonruss.com*
*rdutta@hodgsonruss.com*

165

**Reply Memorandum of Law In Support of Defendant's
Motions in Limine, Filed January 11, 2012.**

<u>**TABLE OF CONTENTS**</u>

<u>PAGE</u>

INTRODUCTION ................................................................................................................1

POINT I.    THE GOVERNMENT'S "FACTUAL" SUMMARY OF DR. MAYE'S
            BACKGROUND IS IMPROPER...........................................................................2

POINT II.   THE GOVERNMENT CANNOT ESTABLISH A SUFFICIENT FACTUAL
            PREDICATE TO SUPPORT THE LINK BETWEEN DR. MAYE'S
            SURRENDER OF HIS DEA REGISTRATION AND HIS ALLEGED
            ADMISSION OF GUILT ......................................................................................3

POINT III.  THE GOVERNMENT'S CONCEPTION OF THE APPROPRIATE
            SCOPE OF CROSS-EXAMINATION IS INAPPROPRIATELY BROAD ..........5

CONCLUSION....................................................................................................................8

i

166

**Reply Memorandum of Law In Support of Defendant's
Motions in Limine, Filed January 11, 2012.**

## TABLE OF AUTHORITIES

PAGE

**FEDERAL CASES**

*United States ex rel. Meers v. Wilkins,*
   326 F.2d 135 (2d Cir. 1964).................................................................2

*United States v. Al-Sadawi,*
   432 F.3d 419 (2d Cir. 2005)...............................................................3, 4

*United States v. Beverly,*
   5 F.3d 633 (2d Cir. 1993) ....................................................................7

*United States v. Gambardella,*
   2011 U.S. Dist. LEXIS 144357 (S.D.N.Y. Dec. 15, 2011) .....................6

*United States v. Pantone,*
   609 F.2d 675 (3d Cir. 1979)..................................................................7

*United States v. Ramirez,*
   609 F.3d 495 (2d Cir. 2010)..................................................................6

**RULES**

Federal Rule of Evidence 403 ..............................................................5, 7

Federal Rule of Evidence 608..................................................................5

i

167

**Reply Memorandum of Law In Support of Defendant's
Motions in Limine, Filed January 11, 2012.**

Case 1:08-cr-00194-WMS-JJM   Document 145   Filed 01/11/12   Page 4 of 11

## INTRODUCTION

The defense asked this Court to preclude evidence of Dr. Maye's prior arson conviction; his suspension from medical practice resulting from his conviction; allegations of malpractice made against Dr. Maye unrelated to the prescribing of controlled substances; tragic life-events of patients to whom Dr. Maye issued prescriptions; a DEA proceeding substantially similar to the instant Indictment and Dr. Maye's voluntary surrender of his registration in response; and a recently filed complaint by the government against Dr. Maye for tax payments.

The government has agreed not to use the tax complaint against Dr. Maye for any purpose. It does, however, claim the right to use Dr. Maye's surrender of his DEA registration in its case-in-chief and the remaining events as potential cross-examination material if Dr. Maye decides to testify.

The following issues, therefore, remain in dispute:

Whether the government is entitled to use Dr. Maye's surrender of his DEA registration (and, by implication, introduce evidence of the DEA proceeding brought against him) as an "admission" by Dr. Maye as to the truthfulness of the allegations in the Indictment?

Whether the government is entitled to impeach Dr. Maye (should he decide to testify) with his conviction, his suspension from medical practice, the unrelated malpractice allegations brought against him, and the tragic-life events of patients to whom he prescribed controlled substances on the basis of the government's subjective conception of what constitutes contradictory testimony meriting impeachment with such prejudicial and inflammatory evidence?

168

**Reply Memorandum of Law In Support of Defendant's
Motions in Limine, Filed January 11, 2012.**

**POINT I.   THE GOVERNMENT'S "FACTUAL" SUMMARY OF DR.
MAYE'S BACKGROUND IS IMPROPER**

Prior to addressing the defense's substantive arguments, the government provides the Court with "a little factual background" to "put the defendant's motions in context."[1] This "factual background" – unsupported by any documentary evidence or even an attorney's declaration – is both improper and irrelevant to the Court's consideration of the defense's motions *in limine*. The government's repeated usurpation of the fact-finder's role[2] in favor of conviction ignores the well-established maxim that "[t]he purpose of a trial is as much the acquittal of an innocent person as it is the conviction of a guilty one."[3] The defense requests that the Court refuse to consider these "facts"[4] when deciding the motions *in limine*.

---

[1]     Government's Response to Defendant's Motions in Limine, dated December 30, 2011 ("Gov't. Resp."), at 3.

[2]     *See* Memorandum in Support of Government's Motions in Limine, dated November 21, 2011, Docket No. 127, at 25-26 ("The fact that the defendant . . . never adhered 'to acceptable standards of medical practice' and otherwise failed to establish a 'bona-fide patient/physician relationship' with any of the customers to whom he distributed drugs, precludes him from raising a defense of reliance on any authorization by OPMC. . . .").

[3]     *United States ex rel. Meers v. Wilkins*, 326 F.2d 135, 139 (2d Cir. 1964) (quotation omitted).

[4]     The defense reserves the right to controvert the government's recitation of "facts." With respect to the government's suggestion that the defense improperly informed the Court that Dr. Maye was suspended from the practice of medicine from 1997 to 2004, *see* Gov't. Resp. at 4, this representation is based on a misreading of the defense's motions. In its motions, the defense claimed only that Dr. Maye was charged with professional misconduct in 1997 and, following an expedited hearing, the New York State Board of Professional Medical Conduct suspended his medical license. *See* Memorandum of Law in Support of Defendant John E. Maye's Motions in Limine, dated November 21, 2011 ("Def. Motions in Limine"), at 6.

2

169

**Reply Memorandum of Law In Support of Defendant's
Motions in Limine, Filed January 11, 2012.**

Case 1:08-cr-00194-WMS-JJM   Document 145   Filed 01/11/12   Page 6 of 11

POINT II.   **THE GOVERNMENT CANNOT ESTABLISH A
SUFFICIENT FACTUAL PREDICATE TO SUPPORT THE
LINK BETWEEN DR. MAYE'S SURRENDER OF HIS DEA
REGISTRATION AND HIS ALLEGED ADMISSION OF
GUILT**

The government states that "[t]he defendant's surrender of his DEA registration in

the face of the [allegations made in the DEA order to show cause], therefore, operates as an [sic]

at least an implicit, if not explicit, admission by the defendant of the validity of the grounds for

revocation."[5]  Because the conduct alleged in the DEA proceeding is the same as that underlying

the Indictment, according to the government, Dr. Maye has already admitted his guilt to the

allegations in this case.[6]

The government cannot, however, show the factual predicate from which a jury

may infer that Dr. Maye's surrender of his registration is relevant and probative as evidence of

his admission (or consciousness) of guilt.[7]  There are many reasons for Dr. Maye to have

---

[5]   Gov't. Resp. at 11.  The defense asked this Court to preclude not only the evidence
regarding Dr. Maye's voluntary surrender of his DEA registration, but also any evidence
regarding the DEA revocation proceedings against him.  *See* Def. Motions in Limine at
9-10.  The government never expressly addresses the admissibility of the DEA
proceeding, but, because it challenges the exclusion of Dr. Maye's surrender of his
registration *in light of* the substantial similarity between the allegations in the DEA
proceeding and those in the Indictment, *see* Gov't. Resp. at 11, the defense assumes that
the government is taking the position that the allegations made by the DEA are
admissible in its case-in-chief.  The government, however, never addresses the defense's
argument that evidence of the proceeding itself would confuse the jury and prejudice Dr.
Maye.  *See* Def. Motions in Limine at 9-10.

[6]   Gov't. Resp. at 11.

[7]   *See United States v. Al-Sadawi*, 432 F.3d 419, 424 (2d Cir. 2005) (holding that, before a
court can instruct a jury that evidence of defendant's flight reflects his consciousness of
guilt, there must be a "satisfactory factual predicate" pursuant to which the jury can infer
consciousness of guilt from flight; evidence of flight as circumstantial evidence of guilt
depends on the degree of confidence with which four inferences can be drawn: (1) from

3

**Reply Memorandum of Law In Support of Defendant's
Motions in Limine, Filed January 11, 2012.**

surrendered his DEA license, none of which involve an admission (implicit or explicit) that the allegations against him were true. For example, Dr. Maye could have been concerned with preserving his Fifth Amendment right against self-incrimination during the trial of this case, or he may have wanted to conserve resources by defending vigorously against the government in this case and then taking on the DEA with a favorable judgment on his side. Any of these explanations is more consistent with his surrender than the government's theory of "consciousness of guilt."

It is worth noting that, when Dr. Maye surrendered his DEA registration, he expressly stated that his reason for doing so was his "desire to terminate handling of controlled substances," as opposed to admitting his "alleged failure to comply with the Federal requirements pertaining to controlled substances," an option provided on the DEA's Voluntary Surrender of Controlled Substances Privileges form.[8] Indeed, if Dr. Maye has already admitted his guilt to the allegations in the Indictment by surrendering his DEA registration, it is hard to understand why he is presenting a defense and anticipating going to trial in this case.[9]

---

the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged) (quotation omitted).

[8]   Declaration of Reetuparna Dutta in Support of Defendant John E. Maye's Motions in Limine, dated November 21, 2011, Docket No. 127 (filed under seal), at Exh. G.

[9]   *See Al-Sadawi*, 432 F.3d at 424-25 (holding that government should not have been allowed to argue that evidence of flight showed consciousness of guilt in part because defendant had known that he was subject to a government investigation for at least six months, but, during this time, he did nothing consistent with an intent to flee).

4

**Reply Memorandum of Law In Support of Defendant's
Motions in Limine, Filed January 11, 2012.**

Case 1:08-cr-00194-WMS-JJM   Document 145   Filed 01/11/12   Page 8 of 11

In addition to this evidence *not* being probative of Dr. Maye's consciousness of guilt, if shown to the jury, it will mislead and confuse the jury by persuading them to convict Dr. Maye on the basis of a highly questionable "admission" of guilt, thereby severely and unfairly prejudicing Dr. Maye.[10]  This evidence should, therefore, be excluded by the Court.

**POINT III.   THE GOVERNMENT'S CONCEPTION OF THE APPROPRIATE SCOPE OF CROSS-EXAMINATION IS INAPPROPRIATELY BROAD**

The government states that it will only seek to elicit evidence of Dr. Maye's prior arson conviction, his suspension from the practice of medicine, malpractice actions against him, and the tragic life-events of his patients if Dr. Maye decides to testify, with the nature of his testimony guiding the use of this evidence.[11]

Besides stating that these matters are "relevant for impeachment," the government never explains how they are relevant or why they are not excludable under Rule 403.

With respect to their relevance, if the government is arguing that it is entitled to use this evidence under the doctrine of impeachment by contradiction,[12] it has an overbroad conception of the breadth of this doctrine.  Impeachment by contradiction is permissible where the defendant testifies on direct examination regarding a specific fact and the prosecution shows

---

[10]   The admission of this evidence would also lead to a mini-trial, as the defense would be forced to present evidence regarding the many circumstances, including financial considerations, surrounding Dr. Maye's decision to surrender his registration.

[11]   Gov't. Resp. at 4.

[12]   The government does not appear to be arguing that these matters will be offered under Federal Rule of Evidence 608, as it does not claim that these specific instances of conduct are relevant to or probative of Dr. Maye's character for truthfulness.

5

**Reply Memorandum of Law In Support of Defendant's
Motions in Limine, Filed January 11, 2012.**

Case 1:08-cr-00194-WMS-JJM   Document 145   Filed 01/11/12   Page 9 of 11

on cross-examination that the defendant lied *as to that fact*.[13]  For example, in *United States v. Ramirez*, a drug distribution prosecution, the defendant testified in his own defense and stated that, from 2000 to 2004, he never saw any drugs.[14]  The government then sought to impeach this testimony by presenting evidence that, in 2005, the defendant was seen by a police officer handling drugs.[15]  The Second Circuit held that the admission of this evidence was improper as the government's testimony did not contradict statements made by the defendant.[16]

Here, the government claims that these matters will be relevant "[s]hould the defendant testify at trial with respect to his medical background," or if the "defendant [] asserts[s] his general innocence by testifying concerning his training, practices, and abilities as a physician," or if "the defendant testif[ies] with respect to his good[-]faith belief in the validity of the prescriptions he authorized for his various customers."[17]  These factual scenarios, while hypothetical at this point, in no way demonstrate why the matters sought to be precluded become

---

[13]  *United States v. Ramirez*, 609 F.3d 495, 499 (2d Cir. 2010) (citation omitted) (quotation omitted) (emphasis added).

[14]  *Id.* at 500.

[15]  *Id.* at 498-99.

[16]  *Id.* at 500-01 (noting that the government inaccurately characterized the trial record by suggesting that defendant "staked his credibility before the jury on any expansive assertion about lifelong avoidance of drugs"); *see also United States v. Gambardella*, 2011 U.S. Dist. LEXIS 144357, at *4-*5 (S.D.N.Y. Dec. 15, 2011) (refusing to allow defendant to cross-examine government's witness regarding witness's domestic altercations on the basis of impeachment by contradiction doctrine; "the Court does not find that evidence of Victim 1's domestic altercations would directly contradict any testimony Victim 1 may give . . . .").

[17]  Gov't. Resp. at 5-6.

**Reply Memorandum of Law In Support of Defendant's
Motions in Limine, Filed January 11, 2012.**

relevant for impeachment by contradiction purposes.  There is simply no contradiction apparent in the government's hypothetical testimony.[18]

Moreover, even if these matters were properly considered impeachment by contradiction evidence, they are still subject to exclusion under Rule 403.[19]  Evidence of Dr. Maye's prior arson conviction, his suspension, malpractice actions, and tragic life-events of his patients are irrelevant to the crux of this prosecution – whether Dr. Maye properly issued prescriptions for controlled substances.  The government makes no attempt to respond to the defense's argument that this evidence would unfairly prejudice the jury against Dr. Maye nor does the government set forth any limits on the extent to which it will use this information to avoid any such prejudice.[20]  This evidence should, therefore, be excluded in its entirety.[21]

---

[18] For these matters to be admissible as impeachment by contradiction, Dr. Maye would have to voluntarily testify that: he had never been convicted of a crime or suspended from the practice of medicine; he had never been sued for malpractice; and his patients had never experienced tragic life-events. *See United States v. Beverly*, 5 F.3d 633, 639-40 (2d Cir. 1993) (allowing government to elicit evidence that defendant had prior experience with guns as impeachment evidence where defendant denied ever possessing a gun).  With respect to the government's claim that it can question Dr. Maye about his alleged post-release employment as a waiter, Dr. Maye would have to affirmatively deny that he had ever been a waiter.  Indeed, the only reason to elicit evidence regarding this issue would be to bring to the jury's attention the fact that Dr. Maye was suspended from medical practice.

[19] *See United States v. Pantone*, 609 F.2d 675, 681 (3d Cir. 1979) (holding that testimony of government witness was improperly admitted as impeachment by contradiction evidence and, even if the evidence tended to indirectly rebut defendants' statements, its probative value was slight and its prejudicial effect was substantial).

[20] *See Beverly*, 5 F.3d at 640 (holding that, while government was entitled to impeach defendant's false testimony, it "overreached" by including gratuitous and highly inflammatory details that unduly prejudiced the defendant).

[21] As to the government's claim that it should be able to use evidence of Dr. Maye's voluntary surrender of his DEA registration for impeachment by contradiction purposes,

7

174

**Reply Memorandum of Law In Support of Defendant's
Motions in Limine, Filed January 11, 2012.**

Case 1:08-cr-00194-WMS-JJM   Document 145   Filed 01/11/12   Page 11 of 11

## CONCLUSION

This Court should exclude irrelevant and unfairly prejudicial matters and require

the government to prove its case with evidence relating only to the charges in the Indictment.

Dated:          January 11, 2012

**HODGSON RUSS** LLP
*Attorneys for John E. Maye, M.D.*

By:   _s/Reetuparna Dutta_
            Daniel C. Oliverio
            Michelle L. Merola
            Reetuparna Dutta
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, New York  14202
(716) 856-4000
*doliveri@hodgsonruss.com*
*mmerola@hodgsonruss.com*
*rdutta@hodgsonruss.com*

---

for such evidence to be admissible, Dr. Maye would have to affirmatively deny the
existence of the DEA proceeding and his subsequent surrender of his registration.
Indeed, even then, such evidence should be precluded as confusing and unfairly
prejudicial. *See* Def. Motions in Limine at 9.

8

175

**[Page 175 is Intentionally Left Blank.]**

**Government's Reply In Support of Motions in Limine, Filed January 11, 2012.**

Case 1:08-cr-00194-WMS-JJM   Document 147   Filed 01/11/12   Page 1 of 13

```
IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
                                      :
UNITED STATES OF AMERICA,
                                      :
            v.                        :        08-CR-194-S
                                      :
JOHN E. MAYE¹,
                                      :
            Defendant.
                                      :
_____:
```

**GOVERNMENT'S REPLY SUBMISSION
IN SUPPORT OF MOTIONS IN LIMINE**
(Docket Items 138, 139)

**Preliminary Statement**

The government has filed various motions in limine requesting a pretrial determination of various issues which the government believes may arise at trial (Docket Items 126, 127). The defendant has filed responding pleadings (Docket Items 138, 139), agreeing to certain of the government's motions and opposing others.  This submission replies to the arguments of the defendant insofar as opposition is made to the government's motions.

Specifically, the defendant opposes the government's motions with respect to (1) a potential defense by the defendant alleging

---

¹ The defense includes, with some regularity, "M.D." after the defendant's name in the caption of the pleadings it files in this action.  In fact, however, the indictment contains no such designation of the defendant.

**Government's Reply In Support of Motions in Limine, Filed January 11, 2012.**

Case 1:08-cr-00194-WMS-JJM   Document 147   Filed 01/11/12   Page 2 of 13

reliance on advice received from the New York State Office of
Professional Medical Conduct; (2) precluding reference to the
Ryan Haight Act at trial; (3) requesting pretrial notice of an
advice of counsel defense; and (4) the admissibility of an April
27, 2001, notice from the Drug Enforcement Administration.  The
government will reply to the defendant's opposition in the order
presented in his responding memorandum.

1.   <u>Reliance on Office of Professional Medical Conduct</u>

     Set forth in the government's memorandum in support of its
motions in limine (Docket Item 127 at 24-26), is a recitation of
the defendant's interaction with the Office of Professional
Medical Conduct (OPMC) upon his re-engaging in the practice of
medicine in March 2004.  At that point, the defendant's medical
practice consisted of his involvement in the internet
prescription scheme which underlies the charges in this
indictment.  It is apparently the defendant's position that the
letter the defendant received from OPMC acknowledging that he had
re-engaged in the practice of medicine constituted implicit
authorization to engage in the activities underlying this
indictment.

     The government's motion was a request for notice from the
defendant as to whether he intended to raise a defense based on

2

**Government's Reply In Support of Motions in Limine, Filed January 11, 2012.**
Case 1:08-cr-00194-WMS-JJM   Document 147   Filed 01/11/12   Page 3 of 13

approval from OPMC, and if so, a resolution of issues with
respect to that defense in accordance with the government's view
of the parameters of such a defense (Docket Item 127 at 5, 26).
As is obvious from the defendant's responding memorandum, the
government takes it that he intends to raise some defense based
upon implicit approval of OPMC for his employment as a "tele-
medicine consultant".  Issues regarding exactly how the defendant
intends to raise this defense, and the exact parameters thereof,
the government believes may be reserved by the Court until trial.
The government, however, also believes that certain arguments
made by the defendant as to the relevance of such a defense to
the facts of this action bear comment.

        As set forth in the government's prior memorandum (Docket
Item 127 at 24), by way of a letter dated March 16, 2004, the
defendant informed OPMC of his employment as a telemedicine
consultant (Docket Item 139, Exhibit A).  According to the
defendant, his receipt of a letter dated March 31, 2004, from
OPMC (Docket Item 139, Exhibit B, p. 1), was at least implicit
approval of OPMC of the defendant's internet prescribing
activities.  What actually transpired between the defendant and
OPMC, however, is a little more involved than a simply exchange
of letters.

3

**Government's Reply In Support of Motions in Limine, Filed January 11, 2012.**

As indicated in the government's memorandum, following the defendant's letter of March 16, 2004, he engaged in a telephone conversation with a representative of OPMC wherein he advised OPMC that:

> a part of his role is to advise patients they need to visit their physician when appropriate to be examined for a new or renewal script.  He cannot order or renew scripts unless they are in compliance with their follow-up visits.  He says he has access to their medical history/records and will keep appropriate records in this practice.

(OPMC Interoffice Memorandum dated March 25, 2004, attached hereto as Exhibit A).

Reflecting the nature of the conversation which took place between the representative of OPMC and the defendant, the letter dated March 31, 2004, which the defendant received from OPMC set forth that:

> In the context of telemedicine/practice please be reminded that all the current standards of care regarding the practice of medicine apply along with your personal obligation to adhere to acceptable standards of medical practice.

(Docket Item 139, Exhibit B, p. 1).

Contrary to the defendant's statements to OPMC preceding the March 31, 2004, letter, however, the evidence at trial will show

4

**Government's Reply In Support of Motions in Limine, Filed January 11, 2012.**

that the defendant never advised a customer to visit their
personal physician for an examination prior to receiving a
prescription for a controlled substance, the defendant never
concerned himself with whether his customers engaged in follow-up
visits with their physicians, and the defendant only had access
to such "medical records", if any, as those which the customers
decided to send him in support of their request for prescriptions
for controlled substances.

The point the government believes bears stressing at this
juncture in these proceedings is that, as with any reliance on
advice defense, such defense is only appropriate when the advice
allegedly relied upon is provided after a full and complete
disclosure of the underlying facts and circumstances by a
criminal defendant.  See, L.Sand, et al., Modern Federal Jury
Instructions - Criminal, §8.04, Instruction 8-4 and comment.
While a final resolution of this issue can await the evidence at
trial, the government submits that the defendant's lack of candor
with OPMC will negate his argument that he relied on implicit
authorization by OPMC of his unlawfully issued prescriptions for
controlled substances.[2]

---

[2] The defendant also seeks to support the admissibility of
the statements made to him by OPMC as statements as to state of
mind under Federal Rule of Evidence 803(3).  This rule, however,
only applies to a "statement of the declarant[]".  These
statements, however, having been made by OPMC, are therefore
inadmissible to establish the defendant's state of mind.

**Government's Reply In Support of Motions in Limine, Filed January 11, 2012.**

2.  **Ryan Haight Act**

As set out in the government's memorandum in support of its motions in limine (Docket Item 127 at 30-32), any mention of the Ryan Haight Act, particularly its definition of "valid prescription" as requiring "at least 1 in-person medical evaluation of the patient." (21 U.S.C. §829(e)(2)(A)(i)) will only cause confusion and raise issues which will divert the jury's attention from a determination as to whether the defendant's distribution of controlled substances was for other than a legitimate medical purpose and not in the usual course of medical practice.  Sensing this potential area for confusion and in fact, turning the Ryan Haight Act on its head, the defendant argues that an exploration of the Act at trial is necessary in order to allow him to present a defense to the charges in the indictment.  Such an argument, however, is misplaced.

As set forth above, the Ryan Haight Act codified the requirement that an internet prescription for a controlled substance be accompanied by a physical examination of the patient for whom the controlled substance is prescribed.  Contrary to the defendant's argument, the requirement of a physical examination prior to the prescribing of controlled substances has been recognized since the enactment of the Controlled Substances Act. Specifically, in United States v. Moore, 423 U.S. 122, 142-43

**Government's Reply In Support of Motions in Limine, Filed January 11, 2012.**

(1975), in defining the contours of criminal liability under the
Controlled Substances Act for a physician who unlawfully
prescribes controlled substances, the Supreme Court looked at,
among others, the fact that the physician "gave inadequate
physical examinations or none at all."

   The necessity for a physical examination prior to a
prescription for controlled substances was also recognized by the
Drug Enforcement Administration in the April 27, 2001, notice
which is also the subject of the government's motions in limine
(Docket Item 127 at 32-34, Exhibit A).  Additionally, as
previously set forth by the government, New York State law also
provides that "[n]o controlled substance prescription shall be
issued prior to examination of the patient by the practitioner .
. ."  N.Y. Comp. Codes R. & Reg. tit 10, §80.63(c)(1) (Docket
Item 137 at 11 n.1).  Lastly, the standard jury instructions
recognize that "evidence that a doctor . . . prescribes drugs
without performing any physical examinations or only very
superficial ones . . . may suggest that the doctor is not acting
for a legitimate medical purpose and is outside the usual course
of medical practice."  L.Sand, et al., Modern Federal Jury
Instructions - Criminal, §56.02, Instruction 56-18.

   Accordingly, it is clear that the Ryan Haight Act, far from
legislating a novel requirement that a prescription for a

**Government's Reply In Support of Motions in Limine, Filed January 11, 2012.**

controlled substance be preceded by a physical examination, merely codified a requirement long existing in legitimate medical practice.  As is obvious from the Act itself, the Act was enacted in order to address a proliferation of internet websites selling controlled substances for other than legitimate medical purposes and without valid prescriptions.  The statutory requirement of a physical examination prior to the issuance of a prescription for a controlled substance was intended to criminalize the distribution of controlled substances following an online application or consultation with a medial practitioner which lacked the basic requirement for the establishment of a physician/patient relationship;  an actual physical examination of the patient.  <u>See</u>, Legislative History at 2009 U.S.C.C.A.N. 2130, 2131;  2008 WL 4381144 at *15.

The cases set forth in the government's memorandum in support of its motions in limine (Docket Item 127 at 30-32) all recognize that the Ryan Haight Act, while codifying a requirement for a physical examination prior to a prescription for a controlled substance, did not affect any change in prior law with respect to a determination of whether a physician's distribution of controlled substances was other than for a legitimate medical purpose and not in the usual course of medical practice.  <u>See also</u>, <u>United States v. Bansal</u>, __ F.3d __, 2011 WL 6188698 at *16-*17 (3rd Cir. 2011) (Ryan Haight Act effected no change in

8

**Government's Reply In Support of Motions in Limine, Filed January 11, 2012.**
Case 1:08-cr-00194-WMS-JJM   Document 147   Filed 01/11/12   Page 9 of 13

law regarding unlawful distribution of controlled substances
prior to its enactment).

Accordingly, the defendant is free to argue at trial that he
was unaware of any requirement that he conduct a physical
examination of any of his customers prior to prescribing
controlled substances to them.  That the Ryan Haight Act
criminalized for the first time the prescribing of controlled
substances without a physical examination, however, is a gross
misstatement of the law and will only encourage litigation before
the jury of the legislative history and purpose of the Ryan
Haight Act thereby diverting the jury from its ultimate role of
determining whether the defendant's prescribing of controlled
substances was for other than a legitimate medical purpose and
not in the usual course of medical practice.

3.   **Advice of counsel defense**

The defendant opposes the giving of any notice to the
government with respect to his intention to rely on an advice of
counsel defense at trial.  As set forth in the government's
memorandum in support of its motions in limine (Docket Item 127
at 20-23), last minute or at trial notice of such a defense may
very well lead to delays as the government attempts to review any

**Government's Reply In Support of Motions in Limine, Filed January 11, 2012.**
Case 1:08-cr-00194-WMS-JJM   Document 147   Filed 01/11/12   Page 10 of 13

documents and records offered by the defendant which purportedly bear on this defense.

The point is made by the defendant (Docket Item 138 at 12) that, notwithstanding the period of time this indictment has been pending, the government should be faulted for not obtaining discovery pertaining to an advice of counsel defense.  The government, however, in August 2009, served a reciprocal discovery demand on the defendant seeking, among other things, any "books, papers, documents, photographs, tangible objects, or copies or portions thereof, which the defendant intends to use in his case in chief at trial" (Docket Item 44).  Notwithstanding the long pendency of this demand, the government has received nothing from the defendant.[3]  Accordingly, should the defendant provide the government for the first time at trial, copies of documents and other records bearing on this defense, a delay in the trial may be necessitated by the government's need to analyze and investigate such documents and records.

---

[3] The government has received copies of documents from the Office of Professional Medical Conduct pursuant to a pretrial subpoena obtained by the defendant pursuant to Rule 17.  These documents, however, have nothing to do with a potential advice of counsel defense.

10

186

**Government's Reply In Support of Motions in Limine, Filed January 11, 2012.**

4.  **Drug Enforcement Administration April 27, 2001 Notice**

        As set forth in the government's memorandum in support of
its motions in limine (Docket Item 127 at 32-34, Exhibit A), in
April 2001, the Drug Enforcement Administration issued a notice
to, among others, prescribers of controlled substances.  The
notice set forth DEA's view that, while the distribution of
controlled substances may be made by way of prescriptions issued
through the use of the internet, the standards of medical care,
including a physical examination of a patient prior to a
prescription for a controlled substance, are unaffected by the
use of the internet as part of the prescribing process.  Far from
causing confusion for the jury, the notice makes clear that
prescribers of controlled substances, such as the defendant, were
on notice for years prior to the events set forth in this
indictment that the prescribing of controlled substances by way
of the internet, in order to be lawful, must be preceded by the
establishment of a legitimate physician/patient relationship
which should include a physical examination of the patient by the
physician.

**Government's Reply In Support of Motions in Limine, Filed January 11, 2012.**

Case 1:08-cr-00194-WMS-JJM   Document 147   Filed 01/11/12   Page 12 of 13

## Conclusion

     **WHEREFORE,** it is submitted that the government's motion in limine should be granted by the Court in accordance with the above.

     DATED:  Buffalo, New York, January 11, 2012.

                     WILLIAM J. HOCHUL, JR.
                     United States Attorney

            BY:  s/JOSEPH M. GUERRA, III
                 Assistant U.S. Attorney
                 Western District of New York
                 138 Delaware Avenue
                 Buffalo, New York 14202
                 (716) 843-5824
                 Joseph.M.Guerra@usdoj.gov

            BY:  s/MARY C. BAUMGARTEN
                 Assistant U.S. Attorney
                 Western District of New York
                 138 Delaware Avenue
                 Buffalo, New York 14202
                 (716) 843-5864
                 Mary.Catherine.Baumgarten@usdoj.gov

TO:  Daniel C. Oliverio, Esq.
     Reetuparna Dutta, Esq.

188

Government's Reply In Support of Motions in Limine, Filed January 11, 2012.

Case 1:08-cr-00194-WMS-JJM   Document 147   Filed 01/11/12   Page 13 of 13

```
IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

                                 :
UNITED STATES OF AMERICA,
                                 :
           -v-                        08-CR-194-S
                                 :
JOHN E. MAYE,
                                 :
               Defendant.        :
```

**CERTIFICATE OF SERVICE**

I hereby certify that on January 11, 2012, I electronically filed the foregoing **GOVERNMENT'S REPLY SUBMISSION IN SUPPORT OF MOTIONS IN LIMINE** (Docket Items 138, 139) with the Clerk of the District Court using its CM/ECF system, which would then electronically notify the following CM/ECF participant on this case.

```
Daniel C. Oliverio, Esq.
Guaranty Building
140 Pearl Street, Suite 100
Buffalo, New York  14202

Reetuparna Dutta, Esq.
Guaranty Building
140 Pearl Street, Suite 100
Buffalo, New York 14202
```

s/KAREN S. BARONE

**Exhibit "A" Annexed to Government's Reply Submission.**

Case 1:08-cr-00194-WMS-JJM   Document 147-1   Filed 01/11/12   Page 1 of 1



*New York State Office of Professional Medical Conduct*
433 River Street, Suite 303 • Troy, New York 12180-2299 • (518) 402-0863

# *Interoffice Memorandum*

**TO:**      Dennis Graziano
              Director OPMC

**FROM:**    Sondra Rennick
              Hospital Nursing Services Consultant

**DATE:**    03/25/04

**SUBJECT:** JOHN E. MAYE, M.D.

John E. Maye, M.D. has recently notified PMP by phone and attached letter that he has resumed the practice of medicine effective March 16, 2004. He did this as obligated under his Order upon return to medical practice. Once he returns to practice his probation is initiated for a three-year period. (See attached Hearing Committee Determination Order (No. BPMC 97-81 and ARB Decision)

Dr. Maye states in his letter that he is working for North American Pharmaceutical Solutions, LLC as a Telemedicine Consultant providing online/telephonic consultations to customers seeking to obtain prescription medications through their on-line website. He advised me on the phone that it is a legitimate operation and a part of his role is to advise patients they need to visit their physician when appropriate to be examined for a new or renewal script. He cannot order or renew scripts unless they are in compliance with their follow-up visits. He says he has access to their medical history/records and will keep appropriate records in this practice.

PMP is uncomfortable with this arrangement and does not want to give any appearance of "OPMC approval". However, as far as his Order, there are no restricting terms of probation as his case was based on a criminal conviction.

Joann Dawson and I had a conference call last evening with Kevin Donovan and he agreed there is not much we can do at this point but recommended we bring this to your attention. We will have the authority to perform performance evaluations on the records he maintains for his three years probation period.

My personal recommendation would be to send him the Board for Professional Medical Conduct's January 2003 Special Committee's Statements on Telemedicine if that is acceptable and remind him of his obligation to adhere to acceptable standards of medical practice.

**Exhibit A**

190

Transcript of Proceedings, Held April 24, 2012, Filed June 6, 2012,
Regarding Decisions on Motions in Limine [pages 1-19].

Case 1:08-cr-00194-WMS-JJM   Document 153   Filed 06/15/12   Page 1 of 19

```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
---------------------------------------
UNITED STATES OF AMERICA

                    -vs-                          08-CR-194

JOHN E. MAYE,

                        Defendant.

---------------------------------------



              Proceedings held before the

         Honorable William M. Skretny, U.S.

         Courthouse, 2 Niagara Square, Buffalo,

         New York on April 24, 2012.


         APPEARANCES:

         JOSEPH M. GUERRA, III,
         Assistant United States Attorney,
         Appearing for the United States.

         REETUPARNA DUTTA, ESQ.,
         Appearing for Defendant.

         Michelle L. McLaughlin, RPR,
         Official Reporter,
         U.S.D.C. W.D.N.Y.
         (716)332-3560
```

191

Transcript of Proceedings, Held April 24, 2012, Filed June 6, 2012,
Regarding Decisions on Motions in Limine [pages 1-19].

2

1           THE CLERK:  Criminal case 08-194, United

2    States of America versus John Maye.

3           THE COURT:  Miss Dutta, how are you?

4           MS. DUTTA:  Good, Judge, how are you?

5           THE COURT:  Okay.  Thank you.  Dr. Maye,

6    how are you?

7           THE DEFENDANT:  Good, your Honor.

8           THE COURT:  Good.  All right.  And Mr.

9    Guerra.

10           MR. GUERRA:  Morning, Judge.

11           THE COURT:  Good morning.  All right.

12    Among other things I guess to discuss I have the

13    decisions with respect to the motions in limine.

14    Why don't you have a seat.  I'm going to work

15    through it on the basis of a bench statement, and

16    then once I resolve these matters, then we can kind

17    of determine where we are.

18       But the defendant, John E. Maye, is charged in

19    a 34-count second superseding indictment with

20    various violations of Title 21 of the United States

21    Code relating to his alleged unlawful distribution

22    and dispensing of Schedule III and IV controlled

23    substances other than for a legitimate medical

24    purpose and not in the usual course of professional

25    practice.

192

Transcript of Proceedings, Held April 24, 2012, Filed June 6, 2012,
Regarding Decisions on Motions in Limine [pages 1-19].

Case 1:08-cr-00194-WMS-JJM   Document 153   Filed 06/15/12   Page 3 of 19

3

1        Presently before me are the various motions of

2    the parties in limine which seek multiple forms of

3    relief.  I am assuming that counsel are familiar

4    with the evidentiary issues, so I will not recount

5    them in detail.  The defendant's motion contains

6    six requests for relief.  The government's motion

7    contains five requests.  All of them have been

8    reviewed.  The motions have been reviewed and I'm

9    prepared to rule on them all.

10        I'm going to start with the defendant's motion.

11    And first it will -- I will address the evidence of

12    defendant's prior conviction.  The defendant moves,

13    through his attorneys, to preclude the government

14    from introducing evidence of his arson conviction

15    on July 8th, 1997.  The defendant pled guilty to

16    committing the crime of arson in violation of

17    Title 18, Section 844(i).  He was sentenced to 18

18    months in prison and was released from confinement

19    on November 25th, 1998.  And the argument is that

20    evidence of that conviction is precluded by

21    Rule 609 of the Federal Rules of Evidence.  The

22    government intends to use the conviction only on

23    cross-examination.

24        Because more than ten years have passed since

25    defendant's release from confinement, his felony

## 193

### Transcript of Proceedings, Held April 24, 2012, Filed June 6, 2012, Regarding Decisions on Motions in Limine [pages 1-19].

1    arson conviction is admissible under Rule 609 only

2    if, one, its probative value supported by specific

3    facts and circumstances substantially outweighs its

4    prejudicial effect and, two, notice is provided.

5    See Rule 609(b).

6         Here, the government has made no showing by

7    specific facts and circumstances that the probative

8    value of this conviction substantially outweighs

9    its prejudicial effect.  Although the government

10   agrees not to introduce evidence of the conviction

11   in its case in chief, I am also going to preclude

12   it, the government, from using that conviction for

13   impeachment purposes.  The conviction is too old,

14   is for unrelated conduct, and does not bear on the

15   capacity for truth telling.  However, I will

16   revisit this ruling should the defendant testify in

17   such a manner, perhaps in the context of the

18   suspension of his medical license, that

19   specifically opens the door to making evidence of

20   his arson conviction probative.  For now, though,

21   defendant's request to preclude is granted.

22        Evidence of defendant's suspension from medical

23   practice is next, and that is one point, the

24   evidence relating to alleged acts of malpractice

25   and, three, the life circumstances of his former

194

**Transcript of Proceedings, Held April 24, 2012, Filed June 6, 2012, Regarding Decisions on Motions in Limine [pages 1-19].**

5

1    patients be -- the request is that that be

2    precluded on the basis that it is irrelevant and

3    unfairly prejudicial.  Now, the government agrees

4    not to introduce that kind of evidence in its case

5    in chief.  But it reserves its right to introduce

6    such evidence as impeachment material or rebuttal

7    if the defendant elects to testify on his own

8    behalf.

9         I have reviewed the arguments of both sides,

10   and I find that at least at this time I cannot make

11   a ruling.  It is unknown what testimony the

12   defendant will provide or whether he will testify

13   at all.  It is, therefore, impossible for me to

14   assess whether these three categories of evidence

15   will be relevant.  At this time I'm not prepared to

16   rule that, even if relevant, this evidence is

17   subject to preclusion under Rule 403.  I simply

18   cannot make such rulings out of context and without

19   hearing the testimony.  Defendant's request as to

20   those three categories of evidence are, therefore,

21   denied without prejudice to renewal at trial.

22        Next, evidence of DEA proceeding against

23   defendant and the voluntary surrender of his DEA

24   registration.  The defendant next requests that I

25   preclude evidence of that DEA proceeding against

Case 14-2450, Document 39, 10/13/2015, 1618001, Page211 of 296

**Transcript of Proceedings, Held April 24, 2012, Filed June 6, 2012,**
**Regarding Decisions on Motions in Limine [pages 1-19].**

```
 1    him and his voluntary surrender of his DEA

 2    registration to prescribe controlled substances.

 3    He argues that the evidence will confuse the jury.

 4    The government on the other hand argues that

 5    defendant's surrender of his license is an

 6    admission by a party opponent under Rule 801(d)(2)

 7    or evidence of his consciousness of guilt, and,

 8    thus, is admissible in its case in chief and as

 9    impeachment evidence.  Defendant maintains that

10    there are a number of reasons why he did not

11    contest the administrative DEA proceedings, instead

12    electing to defend himself in the criminal action.

13        I concur with the defendant, and I find that

14    this evidence does not fit under Rule 801(d)(2) or

15    as consciousness of guilt.  The government assumes

16    that the only conclusion that can be reached by

17    defendant's surrender of his license is that he had

18    no defense to the administrative charges which were

19    substantially similar to the charges defendant

20    faces in this case, and therefore was implicitly

21    admitting his guilt.  But defendant may have

22    elected to surrender his license for a number of

23    reasons, to focus on defending criminal charges or

24    to conserve financial resources needed for the

25    criminal case, et cetera.  Admission of this
```

196

**Transcript of Proceedings, Held April 24, 2012, Filed June 6, 2012,**
**Regarding Decisions on Motions in Limine [pages 1-19].**

7

1    evidence during the government's direct case could

2    confuse the jury and lead to somewhat of a trial

3    within a trial about the reasons why he, the

4    defendant, surrendered his license.  I will,

5    therefore, preclude use of the evidence in the

6    government's direct case under Rule 403.

7        But like my earlier ruling concerning the

8    government's leeway on cross-examination or

9    rebuttal, I will permit the government to introduce

10   evidence concerning the DEA proceeding and

11   defendant's surrender of his license on

12   cross-examination or rebuttal if defendant opens

13   the door.  Whether the government can use this

14   testimony on cross-examination or rebuttal would

15   therefore have to be determined at trial.

16       There's also evidence of tax violations

17   allegedly committed by the defendant, and the

18   government agrees it will not introduce evidence of

19   defendant's alleged tax violations for any

20   purposes.  Therefore the request is therefore moot.

21       I'm going to move now to the government's

22   motion in limine, and start with cross-examination

23   of the government's expert Theodore V. Parran, Jr.

24   M.D.  The government seeks an order precluding the

25   defendant from cross-examining the government's

**Transcript of Proceedings, Held April 24, 2012, Filed June 6, 2012,
Regarding Decisions on Motions in Limine [pages 1-19].**

```
 1      expert witness, Theodore V. Parran, Jr., M.D. about
 2      an investigation concerning his employment with the
 3      Veteran's Administration and his billing practices.
 4      The investigation was concluded, and the
 5      allegations were not pursued for prosecution.
 6      There is an agreement by the defendant not to
 7      inquire into these allegations or the investigation
 8      on cross-examination, so therefore, the request is
 9      moot.
10          There's notice of defenses relying on advice of
11      counsel or approval of New York Office of
12      Professional Medical Misconduct.  That matter I
13      will address now.
14          The government seeks an order requiring the
15      defendant to provide notice if he will present an
16      advice-of-counsel defense or contend that his
17      conduct was approved by the New York Office of
18      Professional Medical Conduct.  It contends that
19      immediate notice is required to avoid unfair
20      surprise at trial and to avoid a lengthy delay for
21      the government to seek discovery and investigate
22      the merits of defendant's defenses.
23          Defendant argues on the other hand that notice
24      of an advice-of-counsel defense is not required,
25      and that he should not be precluded from offering a
```

198

**Transcript of Proceedings, Held April 24, 2012, Filed June 6, 2012,**
**Regarding Decisions on Motions in Limine [pages 1-19].**

9

1    defense based on a letter from the Office of

2    Professional Medical Conduct.

3         I concur with the defendant here.  The

4    government has not provided any authority requiring

5    that a defendant provide pretrial notice of an

6    advice-of-counsel defense, particularly where a

7    trial date has not yet been set.  The Federal Rules

8    of Criminal Procedure require that a defendant

9    provide notice of only an alibi defense, insanity

10   defense, and public authority defense.  Rules 12.1,

11   12.2, and 12.3.  If defendant asserts an

12   advice-of-counsel defense at trial, I will

13   entertain any relevant requests made by the

14   government at that time, including discovery

15   requests.  The government's request for an

16   immediate notice of an advice-of-counsel defense is

17   denied.

18        As for the government's request to preclude

19   defendant from raising a defense that he relied on

20   advice from the Office of Professional Medical

21   Conduct in good faith, that request is also denied.

22   The government's argument is premised on its

23   contention that the defendant did not comport with

24   accepted standards of medical practice, and,

25   therefore, the advice he received is irrelevant.

199

Transcript of Proceedings, Held April 24, 2012, Filed June 6, 2012,
Regarding Decisions on Motions in Limine [pages 1-19].

10

1    But whether the defendant complied with those

2    standards is a factual issue.  Nothing before me at

3    this time suggests that defendant should be

4    precluded from raising the letters he received from

5    the Office of Professional Medical Conduct in his

6    defense if he so chooses.  The government will then

7    be free to rebut or cross-examine as to the

8    assumptions made by the Office of Professional

9    Medical Conduct when it sent defendant the letters

10   in question.  The government's request therefore to

11   preclude this defense is denied.

12       I'm going to move on to the national standard

13   of medical care, because the government seeks an

14   order imposing a national standard of medical care

15   to determine whether the defendant's good-faith

16   basis to believe that his distribution of

17   controlled substances complied with generally

18   accepted medical practice.  The defendant agrees

19   that a national standard applies, so the

20   government's request is therefore moot.

21       The argument concerning Online Pharmacy

22   Act/Ryan Haight Act.  The government seeks an order

23   precluding the defendant from making any arguments

24   stemming from the Ryan Haight Act effective

25   April 13th, 2009.  That act sets forth specific

200

**Transcript of Proceedings, Held April 24, 2012, Filed June 6, 2012,**
**Regarding Decisions on Motions in Limine [pages 1-19].**

11

1    statutory requirements for distribution of

2    controlled substances over the Internet.  One such

3    provision is that the prescribing physician conduct

4    at least one in-person medical evaluation of the

5    patient.  The government contends that defendant

6    should be precluded from arguing that the Ryan

7    Haight Act sets a new standard requiring in-person

8    examination for the first time.  Defendant argues

9    that this argument should be permitted, because the

10   passage of the act is at least some evidence that

11   prescribing controlled substances without an

12   in-person examination was within the realm of

13   legitimate medical practice before the act's

14   passage.

15       I'm going to grant the government's request

16   here and preclude arguments based on the Ryan

17   Haight Act under Rule 403.  There is a real danger

18   of jury confusion, and there is further danger that

19   the law could be misconstrued or misstated.

20   Arguments based on the act could lead jurors to the

21   mistaken conclusion that dispensing controlled

22   substances without an in-person examination before

23   the act's passage was legal.  It could not

24   constitute a violation of the statutes that

25   defendant is charged with violating, which is not

201

Transcript of Proceedings, Held April 24, 2012, Filed June 6, 2012,
Regarding Decisions on Motions in Limine [pages 1-19].

12

1    an accurate statement of the law.  I find that the

2    limited probative value of the passage of this act

3    is outweighed by the risk of juror confusion and

4    the risk that the law could be misstated or

5    misunderstood by the jury, despite any final

6    instructions.

7         I will, however, permit defendant to argue that

8    there was no law in place at the time of his

9    conduct that specifically criminalized dispensing

10   controlled substances without an in-person

11   examination, but this must be done without

12   reference to the act.  The government's request is

13   therefore granted.

14        And finally, the government seeks an order

15   permitting the admission of an April 27th, 2001,

16   DEA notice, which details the requirements for the

17   lawful distribution of controlled substances over

18   the Internet.  The government argues that the

19   existence of this administrative guidance is but

20   one piece of evidence that the jury may consider in

21   determining the national standard of practice to

22   which defendant should be held.  Defendant argues

23   that this evidence should be precluded under Rule

24   403, because there is a danger that the jury could

25   wrongly conclude that defendant is guilty simply

Transcript of Proceedings, Held April 24, 2012, Filed June 6, 2012,
Regarding Decisions on Motions in Limine [pages 1-19].

```
 1      because he did not follow the DEA's guidance.

 2           I will grant the government's request and allow

 3      the existence of the DEA's guidance to be admitted

 4      at trial.  I do not think that there is a danger

 5      that a jury would conclude that not following the

 6      DEA guidance necessarily makes defendant guilty,

 7      and I will certainly not permit any argument or

 8      suggestion by the government in that regard.  But I

 9      do find that the DEA guidance is relevant to the

10      initial standard issue and is not unfairly

11      prejudicial.  I will monitor how the government

12      introduces this evidence, however, and I will

13      entertain a request for a limiting instruction, if

14      necessary, to allay any confusion.  The

15      government's request therefore is granted.  And

16      those are my rulings on the outstanding motions in

17      limine.

18           Okay.  Given that, I think that puts to rest

19      pending motion matters.

20           Where are we on discussions on how to proceed

21      forward, Miss Dutta?  Are there ongoing plea

22      discussions, are we about to set a trial date,

23      because I think the government's offer, as I

24      remember the last discussion, is that once we set a

25      trial date, the plea offer is off the table.  So
```

203

**Transcript of Proceedings, Held April 24, 2012, Filed June 6, 2012,
Regarding Decisions on Motions in Limine [pages 1-19].**

14

1    where are we?  Are there ongoing discussions?  Do

2    you need more time?  What do we have to do?

3            MS. DUTTA:  Your Honor, we're ready to set

4    a trial date.

5            THE COURT:  Okay.  Mr. Guerra?

6            MR. GUERRA:  Your Honor, I spoke to Mr.

7    Oliverio yesterday, and we went through our

8    respective schedules.  And it looks like as a

9    result of the unavailability of certain of the

10   government's witnesses and Mr. Oliverio's and my

11   schedules that it looks like a trial date in

12   September would allow Mr. Oliverio and I both to be

13   present and for all the witnesses to be available,

14   and I don't know how that comports with the Court's

15   scheduling or -- or calendar at this point.

16           THE COURT:  What's the state of the Speedy

17   Trial Act?

18           MR. GUERRA:  As of now 70 days still

19   remain.

20           THE COURT:  What's the duration of the

21   trial?

22           MR. GUERRA:  I would say the government's

23   case would take about two weeks, your Honor.

24           MS. DUTTA:  I would say that the defense

25   could take probably an additional one week.

204

Transcript of Proceedings, Held April 24, 2012, Filed June 6, 2012,
Regarding Decisions on Motions in Limine [pages 1-19].

15

1              THE COURT:  One week?  Frankly, just

2    looking at my schedule I have all of September

3    booked, all of October booked.

4              THE CLERK:  And November, Judge, because

5    that's a four to five week trial.

6              THE COURT:  Because what?

7              THE CLERK:  The one you have in October --

8    your October 9th is going to have to be

9    rescheduled, and your 16th is going to be delayed.

10              THE COURT:  What if we set this for

11    January?

12              MS. DUTTA:  Your Honor, the only issue we

13    have with the winter is Dr. Maye's coming in from

14    Rochester.  It might be a little bit difficult for

15    him to do that, but if that's the earliest, we can

16    do it then.

17              THE COURT:  I know that it's a bit of a

18    trek, but we'll try to speak to the weatherman to

19    help things out.  I guess that's all we can do.

20    The other thing I can do is I can put you on in

21    case any of the longer trials that I have collapse,

22    I can do that, and then call you in periodically

23    and let you know where we stand.

24       All right.  I'm going to do this, I'm going to

25    give a first date of --

Case 14-2450, Document 39, 10/13/2015, 1618001, Page221 of 296

205

Transcript of Proceedings, Held April 24, 2012, Filed June 6, 2012,
Regarding Decisions on Motions in Limine [pages 1-19].

1          All right.  October 18th.  You're backup, so,
2     I mean, what I'll do is I'll bring you back on a
3     periodic basis.  I have a four-to-five-week trial
4     starting that date, but if it folds, I'll put you
5     right in there.  If it looks like it's definitely
6     going to go, then I'll back you up into December,
7     and we'll monitor the dates there.  I'll get you on
8     as quickly as I possibly can.  I know you have to
9     prepare your case as well, but I'll bring you back
10    throughout the summer as I get a better handle on
11    the other cases.  And they're all relatively long
12    cases.  My September calendar starts out with a
13    two- to three-week case, and I mean, that -- there
14    goes September.  If anything -- so, I mean, that's
15    kind of the way my calendar is going.
16         So we'll start with October 18th as the
17    first -- you're the first backup to the trial
18    that's now scheduled.  I'll bring you back here in
19    July and I'll give you a further update on what it
20    looks like as far as trial is concerned.  Okay.  I
21    will exclude the time in the interest of justice
22    and continuity of counsel purposes under
23    3161(h)(7)(A) and 3161(h)(7)(B)(iv).  I find that
24    the ends of justice outweigh the interest of
25    defendant and society to a speedy trial.  No

206

Transcript of Proceedings, Held April 24, 2012, Filed June 6, 2012,
Regarding Decisions on Motions in Limine [pages 1-19].

17

1   objection, government?

2           MR. GUERRA:  No objection, your Honor.

3           THE COURT:  Miss Dutta, no objection

4   defense?

5           MS. DUTTA:  No, your Honor.

6           THE COURT:  And if anything else

7   collapses, I'll immediately let you know.  We'll

8   put that on the first priority list.

9           THE CLERK:  What date is the time being

10  excluded to?

11          THE COURT:  The January date.  So that

12  date is?

13          THE CLERK:  The 15th.

14          THE COURT:  January 15th that's the

15  exclusion.

16          THE CLERK:  What's January 15th?

17          THE COURT:  That is --

18          THE CLERK:  That's the actual trial date

19  if the other trial dates don't go?

20          THE COURT:  We start with the 18th.  And

21  those are the backup dates.  The date we're

22  absolutely clear right now is January 15.  Okay.

23          THE CLERK:  July date?

24          THE COURT:  The July date for a status

25  conference with respect to proceeding to trial.

207

**Transcript of Proceedings, Held April 24, 2012, Filed June 6, 2012,
Regarding Decisions on Motions in Limine [pages 1-19].**

18

```
 1              THE CLERK:  July 10th, Judge.

 2              THE COURT:  July 10th at 9:00 o'clock.

 3              MR. GUERRA:  That's fine, Judge.  Judge,

 4     for the record too, since at this point we have a

 5     potential trial date for January but the

 6     possibility it may be October, the government will

 7     hold open the offer until the status of July 10th,

 8     because that would be a firm -- a more firm setting

 9     of the trial date.

10              THE COURT:  Okay.  We will -- the record

11     will so reflect.  And, Miss Dutta, you will note

12     that, please, and discuss it with the doctor.  And

13     we will go from there, okay?

14              MS. DUTTA:  Thank you.

15              MR. GUERRA:  Thank you, Judge.

16              THE COURT:  Thank you very much.

17              *      *      *      *      *      *

18

19

20

21

22

23

24

25
```

208

**Transcript of Proceedings, Held April 24, 2012, Filed June 6, 2012,
Regarding Decisions on Motions in Limine [pages 1-19].**

```
 1                      CERTIFICATION

 2

 3           I certify that the foregoing is a

 4      Correct transcription of the proceedings

 5      Recorded by me in this matter.

 6

 7

 8                      s/Michelle L. McLaughlin
                        Michelle L. McLaughlin, RPR
 9                          Official Reporter
                          U.S.D.C., W.D.N.Y.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

209

**Defendant's Proposed Jury Instructions, Filed November 16, 2012.**

Case 1:08-cr-00194-WMS-JJM   Document 175   Filed 11/16/12   Page 1 of 24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

      v.                                      CR No.: 08-CR-194(S)

JOHN E. MAYE, M.D.

                            Defendant.

_____

### DEFENDANT'S PROPOSED JURY INSTRUCTIONS

**HODGSON RUSS LLP**
*Attorneys for John E. Maye, M.D.*
Daniel C. Oliverio
Michelle L. Merola
Reetuparna Dutta
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, New York  14202
Telephone:  716.856.4000
*doliveri@hodgsonruss.com*
*mmerola@hodgsonruss.com*
*rdutta@hodgsonruss.com*

**Defendant's Proposed Jury Instructions, Filed November 16, 2012.**

Case 1:08-cr-00194-WMS-JJM   Document 175   Filed 11/16/12   Page 2 of 24

### TABLE OF CONTENTS

1.  Request No. 1
    THE INDICTMENT ...................................................................................1

2.  Request No. 2
    THE INDICTMENT AND STATUTE – COUNT 1 ........................................2

3.  Request No. 3
    PURPOSE OF THE STATUTE .....................................................................3

4.  Request No. 4
    ELEMENTS OF CONSPIRACY ....................................................................4

5.  Request No. 5
    CONSPIRACY TO DISTRIBUTE – FIRST ELEMENT – EXISTENCE OF
    AGREEMENT.............................................................................................5

6.  Request No. 6
    CONSPIRACY TO DISTRIBUTE- SECOND ELEMENT – MEMBERSHIP IN THE
    CONSPIRACY ...........................................................................................6

7.  Request No. 7
    NATURE OF THE OFFENSE CHARGED – DISTRIBUTE AND DISPENSE A
    CONTROLLED SUBSTANCE........................................................................8

8.  Request No. 8
    ELEMENTS OF THE OFFENSE ...................................................................9

9.  Request No. 9
    FIRST ELEMENT–DISTRIBUTING OR DISPENSING NARCOTICS .......................10

10. Request No. 10
    SECOND ELEMENT – KNOWINGLY AND INTENTIONALLY ...............................11

11. Request No. 11
    THIRD ELEMENT – NO LEGITIMATE MEDICAL PURPOSE...................................12

12. Request No. 12
    FOURTH ELEMENT – DOCTOR'S GOOD FAITH........................................................13

13. Request No. 13
    STANDARD OF CARE ...................................................................................14

14. Request No. 14
    STANDARD OF CARE; DIFFERENCE BETWEEN CIVIL MALPRACTICE AND
    CRIMINAL CONDUCT ................................................................................15

15. Request No. 15
    STANDARD OF CARE – CONTEMPORANEOUS .............................................16

16. Request No. 16
    BAD RESULTS NOT EVIDENCE OF BREACH OF STANDARD OF CARE............17

17. Request No. 17
    POOR RECORD KEEPING NOT PROOF OF INAPPROPRIATE CARE ...................18

211

**Defendant's Proposed Jury Instructions, Filed November 16, 2012.**

Case 1:08-cr-00194-WMS-JJM   Document 175   Filed 11/16/12   Page 3 of 24

18.   Request No. 18
      OPINION EVIDENCE – EXPERT WITNESS.................................................................19

19.   Request No. 19
      LAW ENFORCEMENT WITNESS.............................................................................20

20.   Request No. 20
      CHARTS AND SUMMARIES – NOT ADMITTED AS EVIDENCE ...........................21

212

**Defendant's Proposed Jury Instructions, Filed November 16, 2012.**

Case 1:08-cr-00194-WMS-JJM   Document 175   Filed 11/16/12   Page 4 of 24

<u>Request No. 1</u>

THE INDICTMENT

The Indictment contains thirty-four (34) counts.  Count 1 charges the Defendant, Dr. John E. Maye, with Conspiracy to Distribute and Dispense a Controlled Substance.

Counts 2 through 13 charge Defendant Dr. John E. Maye with Distribution of Hydrocodone.  Counts 14 through 15 charge Dr. Maye with Distribution of Codeine.  Count 16 charges Dr. Maye with Distribution of Diazepam.  Counts 17 through 22 charge Dr. Maye with Distribution of Alprazolam.  Counts 23 through 25 charge Dr. Maye with Distribution of Lorazepam.  Counts 26 through 29 charge Dr. Maye with Distribution of Zolpidem.  And counts 30 through 34 charge Dr. Maye with Distribution of Phentermine.

I will now read the indictment to you.

**[Read Redacted Indictment]**

The Defendant denies that he is guilty of these charges.

Adapted from:

Sand, *et al.*, *Modern Federal Jury Instructions – Criminal*, § 3.01,  Instruction 3-2 (2011).

213

**Defendant's Proposed Jury Instructions, Filed November 16, 2012.**

<u>**Request No. 2**</u>

THE INDICTMENT AND STATUTE – COUNT 1

In Count 1, Dr. Maye is charged with conspiracy to violate federal law.  I previously read you Count 1 of the Indictment.  The relevant statute on this subject is Title 21, United States Code, Section 846, which provides in part that:

Any person who conspires to distribute or dispense a controlled substance in violation of Section 841(a)(1) of Title 21 of the United States Code is guilty of an offense against the United States.

Adapted from:

Sand, *et al.*, *Modern Federal Jury Instructions – Criminal*, § 19.01,  Instruction 19-1 (2012); and Title 21, United States Code, Section 486.

2

214

**Defendant's Proposed Jury Instructions, Filed November 16, 2012.**

**Request No. 3**

PURPOSE OF THE STATUTE

In this case, Dr. Maye is accused of having been a member of a conspiracy to violate certain federal laws. A conspiracy is a kind of criminal partnership – a combination or agreement of two or more persons to join together to accomplish some unlawful purpose.

The crime of conspiracy to violate a federal law is an independent offense. It is separate and distinct from the actual violation of any specific federal laws, which the law refers to as "substantive crimes."

Indeed, you may find a defendant guilty of the crime of conspiracy to commit an offense against the United States even though the substantive crime which was the object of the conspiracy was not actually committed.

Congress has deemed it appropriate to make conspiracy, standing alone, a separate crime even if the conspiracy is not successful. This is because collective criminal activity poses a greater threat to the public's safety and welfare than individual conduct, and increases the likelihood of success of a particular criminal venture.

Adapted from:

Sand, *et al.*, *Modern Federal Jury Instructions – Criminal*, § 19.01,  Instruction 19-2 (2012).

3

215

**Defendant's Proposed Jury Instructions, Filed November 16, 2012.**

Case 1:08-cr-00194-WMS-JJM   Document 175   Filed 11/16/12   Page 7 of 24

<u>Request No. 4</u>

ELEMENTS OF CONSPIRACY

In order to satisfy its burden of proof, the government must establish each of the following four essential elements beyond a reasonable doubt:

First, that two or more persons entered the unlawful agreement charged in the indictment starting in or about January, 2004; and

Second, that Dr. Maye knowingly and willfully became a member of the conspiracy;

Adapted from:

Sand, *et al.*, *Modern Federal Jury Instructions – Criminal*, § 19.01, Instruction 19-3 (2012); *United States v. Marchese*, 438 F.2d 452 (2d Cir. 1971); *United States v . Wexler*, 522 F.3d 194, 208 (2d Cir. 2008).

4

216

**Defendant's Proposed Jury Instructions, Filed November 16, 2012.**

Case 1:08-cr-00194-WMS-JJM   Document 175   Filed 11/16/12   Page 8 of 24

<u>**Request No. 5**</u>

CONSPIRACY TO DISTRIBUTE – FIRST ELEMENT – EXISTENCE OF AGREEMENT

The first element which the government must prove beyond a reasonable doubt to establish the offense of conspiracy is that two or more persons entered the unlawful agreement charged in the indictment.

In order for the government to satisfy this element, you need not find that the alleged members of the conspiracy met together and entered into any express or formal agreement. Similarly, you need not find that the alleged conspirators stated, in words or writing, what the scheme was, its object or purpose, or every precise detail of the scheme or the means by which its object or purpose was to be accomplished. What the government must prove is that there was a mutual understanding, either spoken or unspoken, between two or more people to cooperate with each other to accomplish an unlawful act.

You may, of course, find that the existence of an agreement to disobey or disregard the law has been established by direct proof. However, since conspiracy is, by its very nature, characterized by secrecy, you may also infer its existence from the circumstances of this case and the conduct of the parties involved.

In a very real sense, then, in the context of conspiracy cases, actions often speak louder than words. In this regard, you may, in determining whether an agreement existed here, consider the actions and statements of all of those you find to be participants as proof that a common design existed on the part of the persons charged to act together to accomplish an unlawful purpose.

Adapted from:

Sand, *et al.*, *Modern Federal Jury Instructions – Criminal*, § 19.01, Instruction 19-4 (2012).

5

**Defendant's Proposed Jury Instructions, Filed November 16, 2012.**

Case 1:08-cr-00194-WMS-JJM   Document 175   Filed 11/16/12   Page 9 of 24

<u>Request No. 6</u>

CONSPIRACY TO DISTRIBUTE- SECOND ELEMENT – MEMBERSHIP IN THE
CONSPIRACY

The second element which the government must prove beyond a reasonable doubt to establish the offense of conspiracy is that Dr. Maye knowingly, willfully, and voluntarily became a member of the conspiracy.

If you are satisfied that the conspiracy charged in the indictment existed, you must next ask yourselves who the members of that conspiracy were. In deciding whether Dr. Maye was, in fact, a member of the conspiracy, you should consider whether he knowingly and willfully joined the conspiracy. Did he participate in it with knowledge of its unlawful purpose and with the specific intention of furthering its business or objective as an associate or worker?

In that regard, it has been said that in order for a defendant to be deemed a participant in a conspiracy, he must have had a stake in the venture or its outcome. You are instructed that, while proof of a financial interest in the outcome of a scheme is not essential, if you find that the defendant had such an interest, that is a factor which you may properly consider in determining whether or not the defendant was a member of the conspiracy charged in the indictment.

As I mentioned a moment ago, before Dr. Maye can be found to have been a conspirator, you must first find that he knowingly joined in the unlawful agreement or plan. The key question, therefore, is whether he joined the conspiracy with an awareness of at least some of the basic aims and purposes of the unlawful agreement.

It is important for you to note that Dr. Maye's participation in the conspiracy must be established by independent evidence of his own acts or statements, as well as those of the other alleged co-conspirators, and the reasonable inferences which may be drawn from them.

The defendant's knowledge is a matter of inference from the facts proved. In that connection, I instruct you that to become a member of the conspiracy, the defendant need not have known the identities of each and every other member, nor need he have been apprised of all of their activities. Moreover, the defendant need not have been fully informed as to all of the details, or the scope, of the conspiracy in order to justify an inference of knowledge on his part. Furthermore, the defendant need not have joined in all of the conspiracy's unlawful objectives.

The extent of a defendant's participation has no bearing on the issue of a defendant's guilt. A conspirator's liability is not measured by the extent or duration of his participation. Indeed, each member may perform separate and distinct acts and may perform them at different times. Some conspirators play major roles, while others play minor parts in the scheme. An equal role is not what the law requires. In fact, even a single act may be sufficient to draw the defendant within the ambit of the conspiracy.

I want to caution you, however, that a defendant's mere presence at the scene of the

218

**Defendant's Proposed Jury Instructions, Filed November 16, 2012.**

Case 1:08-cr-00194-WMS-JJM   Document 175   Filed 11/16/12   Page 10 of 24

alleged crime does not, by itself, make him a member of the conspiracy. Similarly, mere association with one or more members of the conspiracy does not automatically make the defendant a member. A person may know, or be friendly with, a criminal, without being a criminal himself. Mere similarity of conduct or the fact that they may have assembled together and discussed common aims and interests does not necessarily establish membership in the conspiracy.

I also want to caution you that mere knowledge or acquiescence, without participation, in the unlawful plan is not sufficient. Moreover, the fact that the acts of a defendant, without knowledge, merely happen to further the purposes or objectives of the conspiracy, does not make the defendant a member. More is required under the law. What is necessary is that the defendant must have participated with knowledge of at least some of the purposes or objectives of the conspiracy and with the intention of aiding in the accomplishment of those unlawful ends.

In sum, the defendant, with an understanding of the unlawful character of the conspiracy, must have intentionally engaged, advised, or assisted in it for the purpose of furthering the illegal undertaking. He thereby becomes a knowing and willing participant in the unlawful agreement-- that is to say, a conspirator.

Adapted from:

Sand, *et al.*, *Modern Federal Jury Instructions – Criminal*, § 19.01, Instruction 19-6 (2012).

7

219

**Defendant's Proposed Jury Instructions, Filed November 16, 2012.**

Case 1:08-cr-00194-WMS-JJM   Document 175   Filed 11/16/12   Page 11 of 24

<u>Request No. 7</u>

NATURE OF THE OFFENSE CHARGED – DISTRIBUTE AND DISPENSE A
CONTROLLED SUBSTANCE

I will now provide you with a brief overview of the charge in counts 2 through 34.  I remind you again that the Indictment is not evidence and you must not consider it as such.  I previously read you those counts of the Indictment.  The relevant statute on this subject is Title 21, United States Code, Section 841(a)(1), which provides in part that:

It shall be unlawful for any person knowingly or intentionally to . . . distribute, or dispense . . . a controlled substance.

Adapted from:

Sand, *et al.*, *Modern Federal Jury Instructions – Criminal*, § 56.02, Instruction 56-14 (2012).

8

220

**Defendant's Proposed Jury Instructions, Filed November 16, 2012.**

Case 1:08-cr-00194-WMS-JJM   Document 175   Filed 11/16/12   Page 12 of 24

<u>Request No. 8</u>

ELEMENTS OF THE OFFENSE

Under the Controlled Substances Act, someone who is a "practitioner" is authorized to prescribe drugs. A "practitioner" is defined as a physician or other person licensed, registered, or otherwise permitted by the United States or the jurisdiction in which he practices . . . to distribute, dispense, or administer drugs in the course of professional practice or research.

Thus, a doctor who, in good faith, writes prescriptions for or dispenses drugs in the regular course of a legitimate professional practice is protected from prosecution under the statute. But doctors who act outside the usual course of professional practice and prescribe or dispense drugs for no legitimate medical purpose may be guilty of violating the law. The burden is on the government to prove each of these elements.

Specifically, in order to prove the charges against Dr. Maye, the government must establish beyond reasonable doubt each of the following elements of the crime:

First, that Dr. Maye distributed or possessed with the intent to distribute narcotics;

Second, that Dr. Maye did so knowingly and intentionally;

Third, that Dr. Maye dispensed or possessed with the intent to distribute the narcotic other than for a legitimate medical purpose and not in the usual course of medical practice; and

Fourth, that Dr. Maye did not act in good faith when writing the prescriptions; nor did he act in the regular course of a legitimate professional practice.

Adapted from:

Sand, *et al.*, *Modern Federal Jury Instructions – Criminal*, § 56.02, Instruction 56-15 (2012).

9

221

**Defendant's Proposed Jury Instructions, Filed November 16, 2012.**

<u>**Request No. 9**</u>

FIRST ELEMENT—DISTRIBUTING OR DISPENSING NARCOTICS

The first thing you must determine is whether Dr. Maye distributed or possessed with the intent to distribute narcotics.  The government may prove this element by proving beyond a reasonable doubt either that Dr. Maye delivered the narcotics to the ultimate user or that Dr. Maye wrote a prescription for the narcotics.

Authority:

Sand, *et al.*, *Modern Federal Jury Instructions – Criminal*, § 56.02, Instruction 56-16 (2012).

222

**Defendant's Proposed Jury Instructions, Filed November 16, 2012.**

Case 1:08-cr-00194-WMS-JJM   Document 175   Filed 11/16/12   Page 14 of 24

<u>**Request No. 10**</u>

SECOND ELEMENT – KNOWINGLY AND INTENTIONALLY

The second element that the government must prove beyond a reasonable doubt is that when Dr. Maye delivered or prescribed the narcotics, he did so knowingly and intentionally. That is, the government must prove that Dr. Maye knew what he was doing when he prescribed or delivered the drugs, and that he was not acting out of mistake, carelessness, or negligence.

Adapted from:

Sand, *et al.*, *Modern Federal Jury Instructions – Criminal*, § 56.02, Instruction 56-17 (2012).

223

**Defendant's Proposed Jury Instructions, Filed November 16, 2012.**

Case 1:08-cr-00194-WMS-JJM   Document 175   Filed 11/16/12   Page 15 of 24

<u>Request No. 11</u>

THIRD ELEMENT – NO LEGITIMATE MEDICAL PURPOSE

      The third element the government must prove beyond a reasonable doubt is that Dr. Maye prescribed or dispensed the narcotics other than for a legitimate medical purpose and not in the usual course of medical practice.

      In making a medical judgment concerning the right treatment for an individual patient, physicians have discretion to choose among a wide range of available options.  Therefore, in determining whether Dr. Maye acted with or without a legitimate medical purpose, you should examine all of Dr. Maye's actions and the circumstances surrounding them.

      The term "usual course of medical practice" refers to a standard of medical practice generally accepted and recognized in the United States.

Adapted from:

Sand, *et al.*, *Modern Federal Jury Instructions – Criminal*, § 56.02, Instruction 56-18 (2012); *United States v. Wexler*, 522 F.3d 194, 205-06 (2d Cir. 2008).

224

**Defendant's Proposed Jury Instructions, Filed November 16, 2012.**

Case 1:08-cr-00194-WMS-JJM   Document 175   Filed 11/16/12   Page 16 of 24

### Request No. 12

FOURTH ELEMENT – DOCTOR'S GOOD FAITH

Finally, the Government must prove beyond reasonable doubt that Dr. Maye did not act in good faith.

A doctor dispenses a narcotic in good faith in medically treating a patient when he dispenses the narcotic for a legitimate medical purpose in the usual course of medical practice; that is, the doctor has dispensed the narcotic lawfully. Good faith in this context means good intentions and the honest exercise of professional judgment as to a patient's medical needs. It means that the doctor acted in accordance with what he reasonably believed to be the standard of medical practice generally recognized and accepted in the field.

Dr. Maye does not have the burden of proving "good faith." Good faith is a defense because it is inconsistent with the requirements of the offenses charged that Dr. Maye acted knowingly and intentionally to distribute controlled substances not for a legitimate medical purpose and outside the course of legitimate medical practice. As I have told you, it is the government's burden to prove beyond a reasonable doubt each element of the offense, including the mental state element. In deciding whether the government proved that Dr. Maye acted knowingly and intentionally to distribute controlled substances not for a legitimate medical purpose and outside the course of legitimate medical practice or, instead, whether Dr. Maye acted in good faith, you should consider all of the evidence presented in the case that may bear on Dr. Maye's state of mind.

If you find from the evidence that Dr. Maye acted in good faith, as I have defined it, or if you find for any reason that the government has not proved beyond reasonable doubt that Dr. Maye acted knowingly and intentionally to distribute controlled substances not for a legitimate medical purpose and outside the course of legitimate medical practice, you must find Dr. Maye not guilty of the offenses of illegally distributing or dispensing controlled substances.

Adapted from:

Sand, *et al.*, *Modern Federal Jury Instructions – Criminal*, §§ 5.07, 56.02, Instruction 56-19 (2012).

225

**Defendant's Proposed Jury Instructions, Filed November 16, 2012.**

Case 1:08-cr-00194-WMS-JJM   Document 175   Filed 11/16/12   Page 17 of 24

<u>Request No. 13</u>

STANDARD OF CARE

When you go to see a doctor, as a patient, that doctor must treat you in a way so as to meet the standard of care that physicians of similar training would have given you under the same or similar circumstances.  And if the treatment falls below that line of what a reasonable physician should have done, then the physician has not exercised the standard of care.

Evidence that Dr. Maye violated the standard of care is relevant to the inquiry as to whether Dr. Maye illegally distributed or dispensed controlled substances.  It is only after assessing the standards to which medical professionals generally hold themselves is it possible to evaluate whether a practitioner's conduct has deviated so far from the usual course of professional practice such that his actions become criminal.

In this case, I have taken judicial notice of various materials that are relevant to your consideration of the standard of care.  Specifically, I have taken notice of a DEA publication, a New York statute, and various New York judicial decisions.  None of this evidence, alone, determines the standard of care.  But they are factors for you to consider in assessing whether Dr. Maye's actions were not for a legitimate medical purpose in the usual course of professional practice or were beyond the bounds of medical practice.

Authority:

*United States v. Wexler*, 522 F.3d 194, 206 (2d Cir. 2008)*; United States v. Feingold*, 454 F.3d 1001, 1007-11 (9th Cir. 2006).

14

226

**Defendant's Proposed Jury Instructions, Filed November 16, 2012.**

Case 1:08-cr-00194-WMS-JJM   Document 175   Filed 11/16/12   Page 18 of 24

<u>Request No. 14</u>

STANDARD OF CARE; DIFFERENCE BETWEEN CIVIL MALPRACTICE AND
CRIMINAL CONDUCT

While "the standard of care" is relevant to your inquiry as to whether Dr. Maye's actions were not for a legitimate medical purpose or were beyond the bounds of medical practice, a violation of the standard of care does not, in and of itself, establish a violation of the criminal law.

In a criminal case, we are not talking about a physician acting better or worse than other physicians.  We are talking about whether or not Dr. Maye's conduct was so far outside the bounds of professional medical practice that he was no longer prescribing controlled substances to treat the patient's illness or condition or relieving the patient of pain, but was acting for the purpose of assisting the patient in maintaining a drug habit or making a personal profit – that is, whether Dr. Maye was not acting as a doctor, or even as a bad doctor, but as a drug pusher.

It is immaterial whether Dr. Maye was correct in his diagnosis, imprudent in his administration of controlled substances, or varied from the practice of other physicians, unless he varied so much as to be unreasonable in quantity or length of time, and the evidence so convinces you, the jury, beyond a reasonable doubt, that he did not act in good faith.  The law does not require a doctor to be right.  It requires a doctor to act in good faith in issuing the prescription.

Authority:

*United States v. Wexler*, 522 F.3d 194, 206 (2d Cir. 2008) (finding that a physician is guilty of distribution when he acts outside the proper realm of medical practice such that he acts as a "drug pusher"); *United States v. McIver*, 470 F.3d 550, 559-61 (4th Cir. 2006) (holding that the district court properly defined the scope of criminal conduct "by explaining that the government had to prove that Appellant used 'his authority to prescribe controlled substances . . . not for treatment of a patient, but for the purpose of assisting another in the maintenance of a drug habit or' some other illegitimate purposes, such as his own 'personal profit'" and recognizing that "it is the extent and severity of departures from the professional norms that underpin a jury's finding of criminal violations"); *United States v. Feingold*, 454 F.3d 1001, 1007-11 (9th Cir. 2006) (holding that the "essential [issue] for a jury to determine" is "whether a practitioner has acted not as a doctor, or even as a *bad* doctor, but as a 'pusher' whose conduct is without legitimate justification" and that "[a] practitioner becomes a criminal not when he is a *bad* or *negligent* physician, but when he ceases to be a physician *at all*") (emphasis original); *United States v. Alerre*, 430 F.3d 681, 690 (4th Cir. 2005) (criminal standard means that the "physician's authority to prescribe drugs is being used 'not for treatment of a patient, but for the purpose of assisting another in the maintenance of a drug habit or of dispensing controlled substances for other than a legitimate medical purpose, i.e. the personal profit of the physician'"); *United States v. Moore*, 423 U.S. 122, 143 (1975) (emphasizing that the defendant doctor had so wantonly ignored the basic protocols of the medical profession that "he acted as a large-scale 'pusher' not as a physician").

227

**Defendant's Proposed Jury Instructions, Filed November 16, 2012.**

Case 1:08-cr-00194-WMS-JJM   Document 175   Filed 11/16/12   Page 19 of 24

<u>**Request No. 15**</u>

STANDARD OF CARE – CONTEMPORANEOUS

Reasonable care is based on the knowledge, circumstances, and standard of care that was recognized as acceptable and appropriate at the time the physician acted.  The conduct of a physician must not be judged on the basis of knowledge that has been acquired after that conduct and not on the basis of changes in acceptable standards of treatment that may have occurred after that conduct.

Authority:

*See Brown v. Speaker*, 66 A.D.3d 422, 423 (1st Dep't 2009); *Derusha v. Sellig*, 92 A.D.3d 1193, 1194 (3d Dep't 2012).

228

**Defendant's Proposed Jury Instructions, Filed November 16, 2012.**

Case 1:08-cr-00194-WMS-JJM   Document 175 · Filed 11/16/12   Page 20 of 24

<u>Request No. 16</u>

BAD RESULTS NOT EVIDENCE OF BREACH OF STANDARD OF CARE

The mere fact that bad results follow the treatment rendered by a physician does not, in itself, mean that the physician fell below the standard of care for civil liability, let alone the standard for criminal liability.  To be relevant to the criminal case, the government must prove beyond reasonable doubt that the bad result was caused by the physician's criminal conduct – conduct so far outside the bound of professional medical practice that the physician was no longer prescribing controlled substances to treat the patient's illness or condition or relieving the patient of pain, but for the purpose of assisting his patient to sell the narcotics or for making a personal profit in the sale of prescriptions.

Authority:

*United States v. Wexler*, 522 F.3d 194, 206 (2d Cir. 2008) (finding that a physician is guilty of distribution when he acts outside the proper realm of medical practice such that he acts as a "drug pusher"); *United States v. McIver*, 470 F.3d 550, 559-61 (4th Cir. 2006) (holding that the district court properly defined the scope of criminal conduct "by explaining that the government had to prove that Appellant used 'his authority to prescribe controlled substances . . . not for treatment of a patient, but for the purpose of assisting another in the maintenance of a drug habit or' some other illegitimate purposes, such as his own 'personal profit'" and recognizing that "it is the extent and severity of departures from the professional norms that underpin a jury's finding of criminal violations"); *United States v. Feingold*, 454 F.3d 1001, 1007-11 (9th Cir. 2006) (holding that the "essential [issue] for a jury to determine" is "whether a practitioner has acted not as a doctor, or even as a *bad* doctor, but as a 'pusher' whose conduct is without legitimate justification" and that "[a] practitioner becomes a criminal not when he is a *bad* or *negligent* physician, but when he ceases to be a physician *at all*") (emphasis original); *United States v. Alerre*, 430 F.3d 681, 690 (4th Cir. 2005) (criminal standard means that the "physician's authority to prescribe drugs is being used 'not for treatment of a patient, but for the purpose of assisting another in the maintenance of a drug habit or of dispensing controlled substances for other than a legitimate medical purpose, i.e. the personal profit of the physician'"); *United States v. Moore*, 423 U.S. 122, 143 (1975) (emphasizing that the defendant doctor had so wantonly ignored the basic protocols of the medical profession that "he acted as a large-scale 'pusher' not as a physician").

229

**Defendant's Proposed Jury Instructions, Filed November 16, 2012.**

Case 1:08-cr-00194-WMS-JJM   Document 175   Filed 11/16/12   Page 21 of 24

<u>**Request No. 17**</u>

POOR RECORD KEEPING NOT PROOF OF INAPPROPRIATE CARE

A physician's record keeping deficiencies are analyzed, treated and, where appropriate, punished separately from questions about whether the use of controlled substances to treat a patient's condition was excessive or inappropriate and not in the course of the physician's practice. Thus, evidence of poor record keeping alone is not sufficient to establish that Dr. Maye prescribed controlled substances outside "the course of professional practice."

Adapted from:

*See, e.g., United States v. Bek,* 493 F.3d 790, 799 (7th Cir. 2007); Sand *et al., Modern Federal Jury Instructions – Criminal,* § 56.02, Instruction 56-18 (2012).

18

230

**Defendant's Proposed Jury Instructions, Filed November 16, 2012.**

Case 1:08-cr-00194-WMS-JJM   Document 175   Filed 11/16/12   Page 22 of 24

<u>Request No. 18</u>

OPINION EVIDENCE – EXPERT WITNESS

The rules of evidence ordinarily do not permit witnesses to state their own opinions about important questions in a trial, but there are exceptions to these rules.

In this case, you heard testimony from Dr. Theodore Parran.  Because of his knowledge, skill, experience, training, or education in the field of medicine and pain management, Dr. Parran was permitted to offer an opinion in that field and the reasons for that opinion.

The opinion of this witness should receive whatever weight you think appropriate, given all the other evidence in the case.  In weighing this opinion testimony you may consider the witness' qualifications, the reasons for the witness' opinions, and the reliability of the information supporting the witness' opinions, as well as the other factors discussed in these instructions for weighing the testimony of witnesses.  You may disregard the opinion entirely if you decide that Dr. Parran's opinion is not based on sufficient knowledge, skill, experience, training, or education.  You may also disregard the opinion if you conclude that the reasons given in support of the opinion are not sound, or if you conclude that the opinion is not supported by the facts shown by the evidence, or if you think that the opinion is outweighed by other evidence.

How much you choose to believe Dr. Parran may also be influenced by the witness's bias.  Does Dr. Parran have a relationship with the Government or the defendant that may affect how he or she testified?  Does he have some incentive, loyalty, or motive that might cause him to shade the truth?  Does he have some bias, prejudice, or hostility that may cause the witness to give you something other than a completely accurate account of the facts he testified to?

In other words, what you must try to do in deciding credibility is to size up a person just as you would in any important matter when you are trying to decide if a person is truthful, straightforward, and accurate in his or her recollection.

Adapted from:

Sand *et al.*, *Modern Federal Jury Instructions – Criminal*, § 7.01, Instructions 7-1 & 7-21 (2012).

19

231

**Defendant's Proposed Jury Instructions, Filed November 16, 2012.**

Case 1:08-cr-00194-WMS-JJM   Document 175   Filed 11/16/12   Page 23 of 24

<u>Request No. 19</u>

LAW ENFORCEMENT WITNESS

You have heard the testimony of a law enforcement official(s).  The fact that a witness may be employed by the federal government as a law enforcement official does not mean that his testimony is necessarily deserving of more or less consideration or greater or lesser weight than that of an ordinary witness.

At the same time, it is quite legitimate for defense counsel to try to attack the credibility of a law enforcement witness on the grounds that his testimony may be colored by a personal or professional interest in the outcome of the case.

It is your decision, after reviewing all the evidence, whether to accept the testimony of the law enforcement witness and to give to that testimony whatever weight, if any, you find it deserves.

Adapted from:

Sand *et al.*, *Modern Federal Jury Instructions – Criminal*, § 7.01, Instruction 7-16 (2012).

232

**Defendant's Proposed Jury Instructions, Filed November 16, 2012.**

Case 1:08-cr-00194-WMS-JJM   Document 175   Filed 11/16/12   Page 24 of 24

<u>Request No. 20</u>

CHARTS AND SUMMARIES – NOT ADMITTED AS EVIDENCE

The government has presented exhibits in the form of charts and summaries. These charts and summaries were shown to you in order to make the other evidence more meaningful and to aid you in considering the evidence. They are no better than the testimony or the documents upon which they are based, and are not themselves independent evidence. Therefore, you are to give no greater consideration to these schedules or summaries than you would give to the evidence upon which they are based.

It is for you to decide whether the charts, schedules or summaries correctly present the information contained in the testimony and in the exhibits on which they were based. You are entitled to consider the charts, schedules and summaries if you find that they are of assistance to you in analyzing and understanding the evidence.

Adapted from:

Sand *et al.*, *Modern Federal Jury Instructions – Criminal*, § 5.05, Instruction 5-13 (2012).

233

Government's Notice of Supplemental Motions and Supplemental
Motions in Limine, Filed November 16, 2012.

Case 1:08-cr-00194-WMS-JJM   Document 177   Filed 11/16/12   Page 1 of 2

```
IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
                                       :
UNITED STATES OF AMERICA,
                                       :
            v.
                                       :     08-CR-194-S
JOHN E. MAYE,
                                       :
            Defendant.
                                       :
```

NOTICE OF SUPPLEMENTAL MOTIONS AND
SUPPLEMENTAL MOTIONS IN LIMINE

PLEASE TAKE NOTICE that, upon the Memorandum in Support of
the Government's Supplemental Motions In Limine filed herewith,
the undersigned will move this Court for the granting of the
relief specified in said memorandum.

DATED:  Buffalo, New York, November 16, 2012.

```
                         WILLIAM J. HOCHUL, JR.
                         United States Attorney


                BY:  s/JOSEPH M. GUERRA, III
                     Assistant U.S. Attorney
                     Western District of New York
                     138 Delaware Avenue
                     Buffalo, New York 14202
                     (716) 843-5824
                     Joseph.M.Guerra@usdoj.gov


                BY:  s/MARY C. BAUMGARTEN
                     Assistant U.S. Attorney
                     Western District of New York
                     138 Delaware Avenue
                     Buffalo, New York 14202
                     (716) 843-5864
                     Mary.Catherine.Baumgarten@usdoj.gov
TO:  Daniel C. Oliverio, Esq.
     Reetuparna Dutta, Esq.
```

234

## Government's Notice of Supplemental Motions and Supplemental Motions in Limine, Filed November 16, 2012.

Case 1:08-cr-00194-WMS-JJM   Document 177   Filed 11/16/12   Page 2 of 2

```
IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
_____
                                        :
UNITED STATES OF AMERICA,               :
                                        :
              -v-                       :     08-CR-194-S
                                        :
JOHN E. MAYE,                           :
                                        :
                   Defendant.           :
_____
```

### CERTIFICATE OF SERVICE


        I hereby certify that on November 16, 2012, I electronically

filed the foregoing **NOTICE OF SUPPLEMENTAL MOTIONS AND SUPPLEMENTAL**

**MOTIONS IN LIMINE** with the Clerk of the District Court using its

CM/ECF system, which would then electronically notify the following

CM/ECF participant on this case.


        Daniel C. Oliverio, Esq.
        Guaranty Building
        140 Pearl Street, Suite 100
        Buffalo, New York  14202

        Reetuparna Dutta, Esq.
        Guaranty Building
        140 Pearl Street, Suite 100
        Buffalo, New York 14202


                              s/KAREN S. BARONE

235

**Memorandum of Law In Support of Government's
Supplemental Motions in Limine, Filed November 16, 2012.**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

            v.                     08-CR-194-S

JOHN E. MAYE,

                   Defendant.

**MEMORANDUM IN SUPPORT OF GOVERNMENT'S
SUPPLEMENTAL MOTIONS IN LIMINE**

**Preliminary Statement**

At the request of the parties, the Court agreed to hear and determine motions in limine prior to the setting of a date for the trial of this action.  Those motions were subsequently filed by the parties, and determined by the Court on April 24, 2012 (Docket Item 153).  It is the government's understanding that there is no need to further brief those motions as the Court's determination of those motions will apply to the trial of this action.

This memorandum is submitted in support of the government's supplemental motions in limine pursuant to the Court's pretrial

236

## Memorandum of Law In Support of Government's Supplemental Motions in Limine, Filed November 16, 2012.

order (Docket Item 158).  Specifically, the government's supplemental motions in limine concern the following:

1. Charging the trial jury with respect to attempt to commit the substantive charges in Counts 2 through 34 of the Second Superseding Indictment.

2. Immunity for defense witnesses.

3. Assertion of the attorney client privilege by defense witnesses.

4. Defense based on the defendant's purported good faith in distributing controlled substances as charged in the Second Superseding Indictment.

## 1.  <u>Attempt to Commit Substantive Crimes</u>

Counts 2 through 34 of the Second Superseding Indictment charge the defendant with unlawfully distributing and dispensing controlled substances in violation of 21 U.S.C. §841(a)(1).  Each of the substantive counts charge the commission of a completed offense by the defendant.  21 U.S.C. §846 provides in pertinent part:

> Any person who attempts . . . to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the subject of the attempt . . .[1]

---

[1]  Both Section 841(a)(1) and Section 846 are contained in subchapter I of Chapter 13 of Title 21 of the United States Code.

237

**Memorandum of Law In Support of Government's
Supplemental Motions in Limine, Filed November 16, 2012.**

Case 1:08-cr-00194-WMS-JJM   Document 178   Filed 11/16/12   Page 3 of 25

Rule 31(c)(2) of the Federal Rules of Criminal Procedure provides in pertinent part, that at trial:

> A defendant may be found guilty of any of the following:
>
> . . .
>
> an attempt to commit the offense charged [.]

As stated by the Second Circuit,

> In order to establish that a defendant is guilty of an attempt to commit a crime, the government must prove that the defendant had the intent to commit the crime and engaged in conduct amounting to a "'substantial step'" towards the commission of the crime. * * * For a defendant to have taken a "substantial step", he must have engaged in more than "mere preparation", but may have stopped short of "the last act necessary" for the actual commission of the substantive crime. [citations omitted].

United States v. Yousef, 327 F.3d 56, 134 (2d Cir. 2003). See also, United States v. Crowley, 318 F.3d 401, 407 (2d Cir. 2003).

As it may be argued at trial that the defendant's actions underlying Counts 2 through 34 did not result in the commission of the completed offense charged in each count, the government submits that the jury may be properly charged, and the defendant

-3-

238

**Memorandum of Law In Support of Government's
Supplemental Motions in Limine, Filed November 16, 2012.**

Case 1:08-cr-00194-WMS-JJM   Document 178   Filed 11/16/12   Page 4 of 25

properly convicted, of attempting to commit each of the
substantive crimes.   Attached hereto as Exhibit A are proposed
requests to charge regarding the attempted commission of the
substantive charges in Counts 2 through 34.

2. **Defense Witness Immunity**

     In its trial brief (Docket Item 169, at 8), the defense
articulated a concern that some defense witnesses may invoke
their right against self-incrimination, under the Fifth
Amendment, during their testimony, and forecasts a requirement
that the government immunize those witnesses in order to afford
the defendant a fair trial.   The defendant simply raises the
specter of required immunity without identifying a defense
witness or witnesses who will present that challenge.

     The contention that immunity ought to be available for
defense witnesses as a means of "equalizing the powers of the
prosecution and the defense" has been soundly rejected by the
Second Circuit as "entirely unpersuasive."   United States v.
Turkish, 623 F.2d 769, 774 (2d Cir. 1980), cert. denied, 449 U.S.
1077 (1981).   In Turkish, the Court rejected a due process claim
that such immunity "must be ordered whenever it seems fair to
grant it," and established that trial judges should "summarily

-4-

239

**Memorandum of Law In Support of Government's
Supplemental Motions in Limine, Filed November 16, 2012.**

Case 1:08-cr-00194-WMS-JJM   Document 178   Filed 11/16/12   Page 5 of 25

reject" immunity requests for witnesses who are actual or
potential targets of prosecution.  <u>Turkish</u>, 623 F.2d at 777-778.
"A criminal prosecution, unlike a civil trial, is in no sense a
symmetrical proceeding." <u>Turkish</u>, 623 F.2d at 774.  The
prosecution has the obligations, restrictions and a burden of
proof, all of which do not apply to a criminal defendant, and
likewise enjoys investigative powers that are not and should not
be available to an individual accused of committing crimes.  <u>Id.</u>;
<u>see also</u> <u>United States v. Praetorious</u>, 622 F.2d 1054, 1064 (2d
Cir. 1979) (refusing to require the government to confer use
immunity absent "extraordinary circumstances"), <u>cert. denied</u>, 449
U.S. 860 (1980).  Moreover, while the goal of pursuing the truth
in criminal cases arguably weighs in favor of allowing defendants
to immunize witnesses who might exculpate them, the Second
Circuit has recognized that:

> there is considerable force to the Government's
> apprehension that defense witness immunity could create
> opportunities for undermining the administration of
> justice by inviting cooperative perjury among law
> violators.  Co-defendants could secure use immunity for
> each other, and each immunized witness could exonerate
> his co-defendant at a separate trial by falsely
> accepting sole responsibility for the crime, secure in
> the knowledge that his admission could not be used at
> his own trial for the substantive offense.  The threat
> of a perjury conviction, with penalties frequently far
> below substantive offenses, could not be relied upon to
> prevent such tactics.  Moreover, this maneuver would
> substantially undermine the opportunity for joint
> trials, with consequent expense, delay, and burden upon
> disinterested witnesses and the judicial system.

-5-

240

**Memorandum of Law In Support of Government's
Supplemental Motions in Limine, Filed November 16, 2012.**

Case 1:08-cr-00194-WMS-JJM   Document 178   Filed 11/16/12   Page 6 of 25

Turkish, 623 F.2d at 775-776.

Absent extraordinary circumstances, "the Due Process Clause imposes no requirement that defense witness immunity be ordered 'whenever it seems fair to grant it.'" United States v. Diaz, 176 F.3d 52, 115 (2d Cir. 1999) (upholding trial court's denial of request for order requiring government to immunize defense witness, incarcerated for his role in a homicide, as neither resulting in an unfair trial or depriving defendant of his due process rights), cert. denied, 528 U.S. 875 (1999), citing Blissett v. Lefevre, 924 F.2d 434, 441 (2d Cir. 1991), quoting Turkish, 623 F.2d at 777.  Thus, while the Second Circuit has not held that immunity of defense witnesses is never available, it delineated the following three-part test for a trial court to apply in determining whether extraordinary circumstances exist to warrant that unprecedented relief:

1. The trial court must find that the government has, through its own overreaching and discriminatory grants of immunity, essentially coerced the defense witness into asserting the Fifth Amendment privilege;

2. The witness's testimony must be material, exculpatory and not cumulative; and

3. The testimony must be unobtainable from any other source.

-6-

241

**Memorandum of Law In Support of Government's
Supplemental Motions in Limine, Filed November 16, 2012.**

Case 1:08-cr-00194-WMS-JJM   Document 178   Filed 11/16/12   Page 7 of 25

See United States v. Ebbers, 458 F.3d 110, 119 (2d Cir. 2006),
cert. denied, 549 U.S. 1274 (2007); United States v. Diaz, 176
F.3d at 115; United States v. Burns, 684 F.2d 1066, 1077 (2d Cir.
1982).  The defendant bears the burden of showing that each of
these elements is present.  Diaz, 176 F.3d at 115, citing United
States v. Pinto, 850 F.2d 927, 935 (2d Cir.1988).  This three-
part test "recognizes the essential unfairness of permitting the
Government to manipulate its immunity power to elicit testimony
from prosecution witnesses who invoke their right not to testify,
while declining to use that power to elicit from recalcitrant
defense witnesses testimony that meets [the Second Circuit's]
three-part test."  United States v. Dolah, 245 F.3d 98, 106 (2d
Cir. 2001), abrogated on other grounds, Crawford v. Washington,
541 U.S. 36 (2004).

     The government is not aware of any witness it contemplates
will be afforded immunity to overcome that witness's invocation
of his or her Fifth Amendment rights, and the defense has not
provided any basis for the assertion that a defense witness would
seek to invoke the protection of the Fifth Amendment.  There is
no basis in the record to support a finding that the government
has, through its own overreaching and discriminatory grants of
immunity, essentially coerced a defense witness into asserting
the Fifth Amendment privilege (prong 1).  Likewise, the defendant

-7-

242

**Memorandum of Law In Support of Government's
Supplemental Motions in Limine, Filed November 16, 2012.**

Case 1:08-cr-00194-WMS-JJM   Document 178   Filed 11/16/12   Page 8 of 25

has failed to establish testimony must be material, exculpatory and not cumulative (prong 2), and that the witness's testimony must be unobtainable from any other source (prong 3). Accordingly, this Court should deny the defendant's request for an order requiring the government to grant immunity to defense witnesses. See United States v. Burns, 684 F.2d 1066, 1077-1078 (2d Cir. 1982), cert. denied, 459 U.S. 1174 (1983).

**3.  Defense Witness Attorney-Client Privilege**

In its trial brief (Docket Item 169 at 6-10), the defense contemplates another evidentiary issue related to unidentified witnesses who may assert the attorney-client privilege concerning communications between "company lawyers" and the defendant.  In forecasting this issue to the Court, it appears the defense is seeking a Court order requiring those defense witnesses to waive a properly invoked attorney-client privilege.

Federal Rule of Evidence 501 provides that privileges in criminal trials are "governed by common law of U.S. Courts." Fed. R. Evid. 501.  While "[t]estimonial exclusionary rules and privileges contravene the fundamental principle that 'the public . . . has a right to every man's evidence, . . . [t]he attorney-client privilege rests on the need for the advocate and counselor

-8-

243
**Memorandum of Law In Support of Government's
Supplemental Motions in Limine, Filed November 16, 2012.**

Case 1:08-cr-00194-WMS-JJM   Document 178   Filed 11/16/12   Page 9 of 25

to know all that relates to the client's reasons for seeking
representation if the professional mission is to be carried out."
Trammel v. United States, 445 U.S. 40, 50-51 (1980).  The
attorney-client privilege is "one of the oldest recognized
privileges for confidential communications."  In re Grand Jury
Investigation, 399 F.2d 527, 530-531 (2d Cir. 2005), citing,
Swidler & Berlin v. United States, 524 U.S. 399, 403 (1998)
(holding that the attorney-client privilege survives the death of
the client), and like other such privileges, is "rooted in the
imperative need for confidence and trust."  Trammel, 445 U.S. at
51.  As the Supreme Court has explained, the purpose of the
attorney-client privilege:

> is to encourage full and frank communication between
> attorneys and their clients and thereby promote broader
> public interests in the observance of law and the
> administration of justice.  The privilege recognizes
> that sound legal advice or advocacy serves public ends
> and that such advice or advocacy depends upon the
> lawyer's being fully informed by the client.

Upjohn Co. v. United States, 449 U.S. 383, 389 (1981).  The
attorney-client privilege applies when the client is a
corporation, "which in theory is an artificial creature of the
law and not an individual."  Id. at 389-390.

The issue of the refusal by a witness to waive the attorney-
client privilege has been presented by the defense in a vacuum,

-9-

244

**Memorandum of Law In Support of Government's
Supplemental Motions in Limine, Filed November 16, 2012.**

Case 1:08-cr-00194-WMS-JJM   Document 178   Filed 11/16/12   Page 10 of 25

thereby resisting a more pointed legal analysis.  However, as a
general matter, "[t]he burden of establishing the existence of an
attorney-client privilege rests with the party asserting it."  In
re Grand Jury Proceedings, 219 F.3d 175, 182 (2d Cir. 2000).
Once that threshold is met, a witness's assertion of the
attorney-client privilege has been upheld, even when the court
has determined that the testimony or information is needed.  See
In re Grand Jury Investigation, 399 F.3d 527, 530 (2d Cir. 2005).
Moreover, the Second Circuit has declined to adopt a balancing
test, such as the approach advanced by the defense here, "or
otherwise establish a rule whereby a generalized assertion of
privilege must yield to the demonstrated, specific need for
evidence. . ."  Id. at 535, citing United States v. Nixon, 418
U.S. 683, 713 (1974) (establishing balancing test as to executive
privilege).  Thus, there is no basis for overcoming the attorney-
client privilege properly asserted by a defense witness,
particularly one called despite being aware of the likely
assertion of that privilege by the witness, and the basis
therefor.

4.  **Defendant's "Good Faith"**

    It is anticipated that the defendant will assert a defense
of good faith to the charges in the Second Superseding

-10-

245

**Memorandum of Law In Support of Government's
Supplemental Motions in Limine, Filed November 16, 2012.**

Case 1:08-cr-00194-WMS-JJM   Document 178   Filed 11/16/12   Page 11 of 25

Indictment.  In the event he does, it is submitted that this
defense should be dealt with at trial in accordance with the
following.

In its trial brief, the defense has previewed its defense to
the charges in the Second Superseding Second Superseding
Indictment that the defendant, based upon advice he received from
attorneys and employees of the entities for whom he authorized
prescriptions for controlled substances, believed that his
actions were lawful.  The defendant further posits that:

> His conduct cannot be viewed in light of
> knowledge that has been acquired in the
> medical community subsequent to the conduct
> at issue, nor on the basis of changes in
> acceptable standards of treatment that may
> have occurred.

Defendant's Trial Brief (Docket Item 169 at p. 3).

Thus, as his "good faith" defense, the defendant apparently
will be relying on what he was told by other people, apparently
not medical professionals, about the legality of his prescribing
highly addictive controlled substances for persons who provided
information over the internet and who were engaged by the
defendant in a short telephone conversation as to why they
desired controlled substances.

-11-

246
**Memorandum of Law In Support of Government's
Supplemental Motions in Limine, Filed November 16, 2012.**

Case 1:08-cr-00194-WMS-JJM   Document 178   Filed 11/16/12   Page 12 of 25

The defense has not provided disclosure with respect to the
testimony of an expert witness regarding the appropriate
standards of care applicable to a physician who prescribes
controlled substances.  Accordingly, the government is somewhat
at a loss to determine how the defendant intends to present
evidence of how standards of medical care have changed.  What the
government believes will transpire is a defense attempt to insert
the internet, with its ability to facilitate the dissemination of
information, as something the use of which excuses a doctor from
exercising the appropriate standard of medical care before
prescribing controlled substances.  In fact, however, the
testimony at trial will show that over the course of the time
period set forth in the Second Superseding Indictment, people
continued to be people, the effect of controlled substances on
people did not change, and the standard of care to be exercised
by a physician before prescribing controlled substances,
something taught to first year medical students, did not change.

As will be made clear at trial, the most elementary
prerequisite to prescribing controlled substances to an
individual is that a physician perform an actual, physical
examination of the person.  This requirement is in addition to
all the other requirements of legitimate medical practice such
as, among other things, determining whether an alternative course

-12-

247

**Memorandum of Law In Support of Government's**
**Supplemental Motions in Limine, Filed November 16, 2012.**

Case 1:08-cr-00194-WMS-JJM   Document 178   Filed 11/16/12   Page 13 of 25

of treatment is appropriate, following up with the person in
order to monitor their course of treatment, and referring the
person for additional testing and evaluation as necessary.  The
defendant, however, did none of these things.  Indeed, the
evidence at trial will show that the defendant could not even be
sure that the persons to whom he spoke over the telephone were in
fact the persons they purported to be.

A further obstacle for the defendant to overcome is that,
well prior to the events underlying the charges in the Second
Superseding Indictment, and as previously pointed out by the
government, both the State of New York and the Drug Enforcement
Administration promulgated the position that a legitimate doctor-
patient relationship, to be established prior to the prescribing
of controlled substances, required, among other things, an
actual, physical examination of the patient by the doctor prior
to the prescribing of controlled substances (Docket Item 161 at
p. 16).

As anticipated in the government's initial motions in
limine, the defendant will apparently be testifying that he
relied upon information he received from others, including his
employers, as to the legality of his distributing controlled
substances in the manner he did (Docket Item 127 at 20-26).  Even

-13-

248

**Memorandum of Law In Support of Government's
Supplemental Motions in Limine, Filed November 16, 2012.**

Case 1:08-cr-00194-WMS-JJM   Document 178   Filed 11/16/12   Page 14 of 25

if these individuals told the defendant his activities were
lawful, that would not establish a defense to the charges in the
Second Superseding Indictment.  As set forth in the government's
proposed jury charges (Docket Item 165 at 17), pursuant to 21 CFR
§1306.04(a), "[t]he responsibility for the proper prescribing and
dispensing of controlled substances is upon the prescribing
practitioner[.]" In other words, nothing the defendant was told
by his employers can excuse his failure to exercise the
appropriate standard of medical care before prescribing
controlled substances.

    With respect to the defendant's purported reliance on what
he told the New York State Office of Professional Medical Conduct
("OPMC") again, the inability of the defendant to rely on such
disclosure was dealt with in the government's initial motions in
limine (Docket Item 127 at 24-26).  As indicated in the
government's initial motions in limine, by way of a letter to the
OPMC, the defendant advised OPMC that "I will establish a bona-
fide patient/physician relationship as required by state
licensure."  Further, in a telephone conversation with a
representative of OPMC the defendant explained his employment in
the internet drug operation:

            He advised me on the phone that it is a
            legitimate operation and a part of his role

-14-

249

**Memorandum of Law In Support of Government's
Supplemental Motions in Limine, Filed November 16, 2012.**

Case 1:08-cr-00194-WMS-JJM   Document 178   Filed 11/16/12   Page 15 of 25

is to advise patients they need to visit
their physician when appropriate to be
examined for a new or renewal script.  He
cannot order or renew scripts unless they are
in compliance with their follow-up visits.
He says he has access to their medical
history/records and will keep appropriate
records in this practice.

Docket Item 127 at 24-25).  The only problem is that, as the

evidence at trial will show, the defendant did not live up to the

statements he made to OPMC.[2]

As set forth above, the specifics of the defendant's

evidence regarding his "good faith" remain unclear.  His belief

concerning the legality of his prescribing behavior, however,

still must be objectively reasonable.

This fundamental tenet established by the Supreme Court in

United States v. Moore, 423 U.S. 122 (1975), was reiterated in

United States v. Norris, 780 F.2d 1207 (5th Cir. 1986).  In

Norris, it was held that while the test to determine if the

defendant physician prescribed a controlled substance for a

_____

[2] The defendant also appears to be arguing that the government must
prove an unlawful motive of the defendant to engage in the unlawful
prescribing of controlled substances, "such as making a personal
profit or maintaining a patient's drug habit." (Docket Item 169 at
p. 3).  As the defendant himself recognizes in his trial brief,
however, motive is not an element of the offenses with which he is
charged (Docket Item 169 at p. 3).  See also, Government's Proposed
Jury Charges (Docket Item 165 at pp. 11-17).

-15-

250

**Memorandum of Law In Support of Government's
Supplemental Motions in Limine, Filed November 16, 2012.**

medical purpose has a subjective element, the test to determine
if the defendant's act of prescribing met the standard of
professional, medical practice in the United States is an
objective one.  Norris, 780 F.2d at 1209 (rejecting defense
theory that a standard medical practice may be based on an
entirely subjective standard in reviewing conviction under 21
U.S.C. §841(a)(1), citing Moore, 423 U.S. at 139); see also,
United States v. Smith, 573 F.3d 639, 647-48 (8th Cir. 1999)
(objective standard applied when determining whether physician
defendant acted in "usual course of professional practice");
United States v. Johnston, 322 Fed. Appx. 660, 665, 2009 WL
806740, at *4 (11th Cir. 2009) (national as opposed to state
objective standard of professional care applied).  While the
defendant, a physician charged with the unlawful distribution of
controlled substances, and thus with deviating from the usual
course of medical practice, may raise a good-faith defense,

> [the] jury must be informed that the drug has been
> legally dispensed if the physician had a good faith
> belief, based on a standard of objective
> reasonableness, that his prescription "was for a
> legitimate medical purpose and in accord with the usual
> course of generally accepted medical practice."

-16-

251

**Memorandum of Law In Support of Government's
Supplemental Motions in Limine, Filed November 16, 2012.**

Case 1:08-cr-00194-WMS-JJM   Document 178   Filed 11/16/12   Page 17 of 25

United States v. Wexler, 522 F.3d 194, 205 (2d Cir. 2008), citing

Vamos, 797 F.2d at 1153; see also United States v. Singh, 390

F.3d 168, 185-186 (2d Cir. 2004).


Further, the "term 'professional practice' refers to

generally accepted medical practice; a practitioner is not free

deliberately to disregard prevailing standards of treatment."

United States v. Vamos, 797 F.2d 1146, 1151 (2d Cir. 1986),

citing Norris, 780 F.2d at 1209.   The Second Circuit has

recognized that the appropriate inquiry is:


> In short, the doctor must act in the good faith belief
> that his distribution of the controlled substances is
> for a legitimate medical purpose and in accordance with
> the usual course of generally accepted medical
> practice.


Vamos, 797 F.2d at 1151.   Moreover, evidence of the subjective

belief of prescribing physician defendants has been excluded as

"irrelevant" to the jury's inquiry, and jury instructions

consistent with that statement of law correctly are rejected by a

trial court.   United States v. Tobin, 676 F.3d 1264, 1283 (11th

Cir. 2012), rehearing denied, ___ F.3d ___ (5th Cir. July 13,

2012) (physician's good faith belief is not a defense to an

unlawful dispensing charge under 21 U.S.C. §841(a)(1)); see also,

United States v. Orta, 469 Fed. Appx 140, 145-146, 2012 WL

-17-

252

**Memorandum of Law In Support of Government's
Supplemental Motions in Limine, Filed November 16, 2012.**

Case 1:08-cr-00194-WMS-JJM   Document 178   Filed 11/16/12   Page 18 of 25

812352, at *3-4 (4th Cir. March 13, 2012) (rejecting claims that
court should have employed subjective good faith belief of
physician, rather than objective good faith belief standard, in
conducting a trial). Thus, while the objective good faith
defense may apply to a charge under 21 U.S.C. §841(a)(1), the
second prong, namely whether the prescribing behavior is in
"accordance with the usual course of generally accepted medical
practice," is completely objective, and the defendant's
subjective belief is of no consequence.

To the extent that the defendant intends to advance a
defense of good faith, to do so he must testify as to what he was
told by others that caused him to believe that his actions were
lawful and that he relied upon that information. Assuming the
defendant testifies, and raises a good faith defense, the jury
still is required to evaluate his conduct, and to determine
whether the prescribing was done for a valid medical purpose and
was within an objectively reasonable standard of care. See
Wexler, 522 F.3d at 205 (good faith defense to be disproved by
the government beyond a reasonable doubt). Simply stated, the
defendant's claim of "good faith" is not a defense to the charges
in and of itself. Id. To the extent that the defendant intends
to offer testimony of other physicians concerning communications
they may have had with the defendant's employer, and their

-18-

253

**Memorandum of Law In Support of Government's
Supplemental Motions in Limine, Filed November 16, 2012.**

Case 1:08-cr-00194-WMS-JJM   Document 178   Filed 11/16/12   Page 19 of 25

impression of the legality of the defendant's conduct, or similar

prescribing practices, that testimony is objectionable as

hearsay, and inadmissible as to the defendant.

DATED:  Buffalo, New York, November 16, 2012.

           Respectfully submitted,

           WILLIAM J. HOCHUL, JR.
           United States Attorney

BY:  s/JOSEPH M. GUERRA III
     Assistant United States Attorney
     United States Attorney's Office
     Western District of New York
     138 Delaware Avenue
     Buffalo, New York  14202
     716/843-5824
     Joseph.M.Guerra@usdoj.gov

BY:  s/MARY C. BAUMGARTEN
     Assistant United States Attorney
     United States Attorney's Office
     Western District of New York
     138 Delaware Avenue
     Buffalo, New York  14202
     716/843-5864
     Mary.Catherine.Baumgarten@usdoj.gov

-19-

Exhibit "A" Annexed to Memorandum In Support.

**REQUEST NO. 22**       **ATTEMPT TO COMMIT A CRIME -**
**PRELIMINARY INSTRUCTION**

As I have instructed you, Counts 2 through 34 of the Second Superseding

Indictment charge the defendant with the unlawful distribution and dispensing of

controlled substances.  In the event that you find the defendant not guilty of any or all of

these counts, or are unable to agree on a verdict for any or all of these counts, you may

consider whether the defendant is guilty of attempting to commit the crime charged in

that count or those counts.


Section 846 of Title 21 of the United States Code provides in pertinent part that:


Any person who attempts . . . to [distribute or dispense a
controlled substance in violation of Section 841(a)(1) of Title
21 of the United States Code is guilty of an offense against
the United States.]


Federal Rule of Criminal Procedure 31(c); Title 21, United States Code, Section 846.

–1–

**Exhibit "A" Annexed to Memorandum In Support.**

**REQUEST NO. 23**        **ATTEMPT TO COMMIT A CRIME - GENERAL INSTRUCTIONS**

In order to prove the charge of attempting to commit the crime of distributing or dispensing a controlled substance, the government must prove the following two elements beyond a reasonable doubt:

First, that the defendant intended to commit the crime of distributing or dispensing a controlled substance; and

Second, that the defendant did some act that was a substantial step in an effort to bring about or accomplish the crime.

Mere intention to commit a specific crime does not amount to an attempt. In order to convict the defendant of an attempt, you must find beyond a reasonable doubt that the defendant intended to commit the crime charged, and that he took some action which was a substantial step toward the commission of that crime.

In determining whether the defendant's actions amounted to a substantial step toward the commission of the crime, it is necessary to distinguish between mere preparation on the one hand, and the actual doing of the criminal deed on the other. Mere preparation, which may consist of planning the offense, or of devising, obtaining or arranging a means for its commission, is not an attempt, although some preparations

-2-

**Exhibit "A" Annexed to Memorandum In Support.**

may amount to an attempt. The acts of a person who intends to commit a crime will

constitute an attempt when the acts themselves clearly indicate an intent to commit the

crime, and the acts are a substantial step in a course of conduct planned to culminate

in the commission of the crime.

L. Sand, et al, Modern Federal Jury Instructions, No. 10-1, ¶10.01.

**Exhibit "A" Annexed to Memorandum In Support.**

**REQUEST NO. 24        LEGAL OR FACTUAL IMPOSSIBILITY**

It is no defense to the crime of attempt that it was factually or legally impossible for the defendant to commit the crime as long as the crime could have been committed if the facts and law had been as the defendant believed them to be. In other words, a person is guilty of an attempt to commit a crime if he satisfies the elements previously described to you and he intentionally engaged in conduct which would constitute the crime if the relevant factual and legal circumstances were as he believed them to be.

L. Sand, et al, Modern Federal Jury Instructions, No. 10-2, ¶10.01.

–4–

Memorandum In Support of Government's Supplemental
Motions in Limine, Filed November 16, 2012.

```
IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
```

```
UNITED STATES OF AMERICA,

                    v.                          08-CR-194-S

JOHN E. MAYE,

                    Defendant.
```

### CERTIFICATE OF SERVICE

I hereby certify that on November 16, 2012, I electronically filed the foregoing **MEMORANDUM IN SUPPORT OF GOVERNMENT'S SUPPLEMENTAL MOTIONS IN LIMINE** with the Clerk of the District Court using its CM/ECF system, which would then electronically notify the following CM/ECF participants on this case:

```
Daniel C. Oliverio, Esq.
Guaranty Building
140 Pearl Street, Suite 100
Buffalo, New York 14202

Reetuparna Dutta, Esq.
Guaranty Building
140 Pearl Street, Suite 100
Buffalo, New York 14202
```

                              s/KAREN S. BARONE

Defendant's Notice of Motions in Limine, Filed November 16, 2012.

Case 1:08-cr-00194-WMS-JJM   Document 179   Filed 11/16/12   Page 1 of 2

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

                Plaintiff,

     v.                                         CR No.: 08-CR-194(S)

JOHN E. MAYE,

                Defendant.

---

## DEFENDANT'S NOTICE OF MOTIONS *IN LIMINE*

    **PLEASE TAKE NOTICE** that, pursuant to the Memorandum of Law in Support of Defendant's Motions in Limine and the accompanying Declaration of Reetuparna Dutta, Esq., with exhibits, both dated November 16, 2012, the defense will move this Court for the following relief:

- The exclusion of all evidence relating to patients or prescriptions not expressly referenced in the indictment;

- The exclusion of testimony and evidence regarding "summary charts" prepared by government agents purporting to summarize Dr. Maye's patient records and orders (or, in the alternative, the requirement that all agents who participated in the creation of the charts testify);

- The exclusion of Dr. Maye's tax returns and any evidence relating to his use of money received pursuant to his employment during the time period of the indictment (including the purchase of any "luxury" items);

**Defendant's Notice of Motions in Limine, Filed November 16, 2012.**
Case 1:08-cr-00194-WMS-JJM   Document 179   Filed 11/16/12   Page 2 of 2

- The admission of statements *made by* Dr. Maye, notifying or seeking advice from individuals or entities about his medical practice, as well as statements *made to* Dr. Maye regarding the same; and

- Judicial notice of New York State judicial decisions holding that a physician-patient relationship can be established *via* a telephone call.

The defense's requests for relief are based on Federal Rules of Evidence 201, 402, 403, 701, and 803.

Pursuant to the Court's scheduling order, the Government must file its opposition to this motion on November 30, 2012. The defense must file its reply on December 7, 2012.

Dated:        Buffalo, New York
              November 16, 2012

                          **HODGSON RUSS LLP**
                          *Attorneys for John E. Maye, M.D.*

                          By:    s/Reetuparna Dutta
                                 Daniel C. Oliverio
                                 Michelle L. Merola
                                 Reetuparna Dutta
                          The Guaranty Building
                          140 Pearl Street, Suite 100
                          Buffalo, New York  14202
                          Telephone: 716.856.4000
                          *doliveri@hodgsonruss.com*
                          *mmerola@hodgsonruss.com*
                          *rdutta@hodgsonruss.com*

**Memorandum of Law In Support of Defendant's
Motions in Limine, Filed November 16, 2012.**

Case 1:08-cr-00194-WMS-JJM   Document 179-1   Filed 11/16/12   Page 1 of 20

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.                                              CR No.: 08-CR-194(S)

JOHN E. MAYE,

                              Defendant.

# MEMORANDUM OF LAW IN SUPPORT
# OF DEFENDANT'S MOTIONS *IN LIMINE*

**HODGSON RUSS LLP**
*Attorneys for John E. Maye, M.D.*
Daniel C. Oliverio,
Michelle L. Merola, and
Reetuparna Dutta, of counsel
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, NY 14202-4040
716.856.4000

262

**Memorandum of Law In Support of Defendant's**
**Motions in Limine, Filed November 16, 2012.**

Case 1:08-cr-00194-WMS-JJM   Document 179-1   Filed 11/16/12   Page 2 of 20

**Table of Contents**

**Page**

INTRODUCTION ..................................................................................................................1

POINT I.     UNCHARGED CONDUCT RELATING TO ADDITIONAL
             PRESCRIPTIONS ISSUED BY DR. MAYE SHOULD BE EXCLUDED............2

POINT II.    THE GOVERNMENT'S SUMMARY CHARTS SHOULD BE
             EXCLUDED AS EXPERT TESTIMONY OR, ALL AGENTS WHO
             PERFORMED THE ANALYSIS SHOULD BE CALLED AS
             WITNESSES..................................................................................................5

POINT III.   EVIDENCE REGARDING DR. MAYE'S TAX RETURNS AND THE
             PROCEEDS OF HIS SALARY SHOULD BE EXCLUDED................................9

POINT IV.    STATEMENTS MADE BY AND TO DR. MAYE CONCERNING THE
             LEGAL AND MEDICAL PROPRIETY OF HIS MEDICAL PRACTICE
             ARE ADMISSIBLE..........................................................................................11

POINT V.     THIS COURT SHOULD TAKE JUDICIAL NOTICE OF NEW YORK
             DECISIONS FINDING THAT A PHYSICIAN-PATIENT
             RELATIONSHIP CAN BE ESTABLISHED BY A PHONE CALL ...................13

POINT VI.    THE DEFENSE REITERATES ITS MOTION TO EXCLUDE
             EVIDENCE OF THE TRAGIC LIFE EVENTS OF DR. MAYE'S
             FORMER PATIENTS ......................................................................................14

CONCLUSION......................................................................................................................15

i

**Memorandum of Law In Support of Defendant's
Motions in Limine, Filed November 16, 2012.**

Case 1:08-cr-00194-WMS-JJM   Document 179-1   Filed 11/16/12   Page 3 of 20

**Table of Authorities**

**Page (s)**

FEDERAL CASES

Bodeans Cone Co., LLC v. Norse Dairy Sys., LLC,
    678 F. Supp. 2d 883 (N.D. Iowa 2009)...................................................................10

Bullcoming v. New Mexico,
    -- U.S. --, 131 S. Ct. 2705 (2011) ...........................................................................8

Kramer v. Time Warner Inc.,
    937 F.2d 767 (2d Cir. 1991)....................................................................................13

Liberty Mutual Ins. Co. v. Rotches Pork Packers, Inc.,
    969 F.2d 1384 (2d Cir. 1992)..................................................................................13

Melendez-Diaz v. Massachusetts,
    557 U.S. 305 (2009)...................................................................................................8

United States v. Aboumoussallem,
    726 F.2d 906 (2d Cir. 1984).....................................................................................4

United States v. Al-Moayad,
    545 F.3d 139 (2d Cir. 2008)..............................................................................5, 10

United States v. Barret,
    2012 WL 171321 (E.D.N.Y. Jan. 20, 2012) ........................................................2, 3

United States v. Boyd,
    686 F. Supp. 2d 382 aff'd 401 Fed. Appx. 565 (2d Cir. 2010)................................9

United States v. Colon,
    880 F.2d 650 (2d Cir. 1989).....................................................................................2

United States v. Cooper,
    591 F.3d 582 (7th Cir. 2010) ...................................................................................5

United States v. DiMaria,
    727 F.2d 265 (2d Cir. 1984)....................................................................................13

United States v. Fasciana,
    226 F. Supp. 2d 445 (S.D.N.Y. 2002)..................................................................2, 3

ii

264

## Memorandum of Law In Support of Defendant's
## Motions in Limine, Filed November 16, 2012.

Case 1:08-cr-00194-WMS-JJM   Document 179-1   Filed 11/16/12   Page 4 of 20

**Table of Authorities (cont.)**

Page (s)

*United States v. Figueroa,*
    618 F.2d 934 (2d Cir. 1980)..................................................................3

*United States v. Forcelle,*
    86 F.3d 838 (8th Cir. 1996) ..................................................................3

*United States v. Garcia,*
    413 F.3d 201 (2d Cir. 2005)...............................................................6, 7

*United States v. Hurwitz,*
    459 F.3d 463 (4th Cir. 2006) ...............................................................12

*United States v. Jones,*
    29 F.3d 1549 (11th Cir. 1994) .............................................................13

*United States v. McIver,*
    470 F.3d 550 (4th Cir. 2006) ................................................................4

*United States v. Moore,*
    423 U.S. 122 (1975)............................................................................11

*United States v. Newell,*
    315 F.3d 510 (5th Cir. 2002) ...............................................................13

*United States v. Partyka,*
    561 F.2d 118 (8th Cir. 1977) ...............................................................13

*United States v. Trala,*
    386 F.3d 536 (3d Cir. 2004), *vacated on other grounds,* 546 U.S. 1086 (2006)....................10

*United States v. Wexler,*
    522 F.3d 194 (2008)......................................................................11, 12

*United States v. White,*
    492 F.3d 380 (6th Cir. 2007) ................................................................7

STATE CASES

*Bienz v. Central Suffolk Hosp.,*
    163 A.D.2d 269, 557 N.Y.S.2d 139 (2d Dep't 1990)............................................14

265

**Memorandum of Law In Support of Defendant's
Motions in Limine, Filed November 16, 2012.**

Case 1:08-cr-00194-WMS-JJM   Document 179-1   Filed 11/16/12   Page 5 of 20

**Table of Authorities (cont.)**

**Page (s)**

*Cogswell v. Chapman,*
249 A.D.2d 865, 672 N.Y.S.2d 460 (3d Dep't 1998) ............................................................14

*Comm'w. v. Barton-Martin,*
2010 PA Super 163, 5 A.3d 363, 365 (2010) ..............................................................................9

*Miller v. Sullivan,*
214 A.D.2d 822, 625 N.Y.S.2d 102 (3d Dep't 1995) ...........................................................14

**RULES**

Federal Rule of Criminal Procedure 16 ....................................................................................6

Rule 803(3) of the Federal Rules of Evidence ......................................................................12

Rule 403 .................................................................................................................................2, 4, 5

Rule 404(b) ............................................................................................................................2, 3, 4

Rule 701 ........................................................................................................................................6

Rule 702 ....................................................................................................................................6, 7

Federal Rule of Evidence 803 ...........................................................................................12, 13

Federal Rule of Criminal Procedure 32.2 ............................................................................11

**Memorandum of Law In Support of Defendant's
Motions in Limine, Filed November 16, 2012.**

Case 1:08-cr-00194-WMS-JJM   Document 179-1   Filed 11/16/12   Page 6 of 20

## INTRODUCTION

The government seeks to go well beyond the charges in the indictment and paint Dr. Maye as a "bad man" deserving of conviction.  It seeks to do this through the presentation of prescriptions that are *not* part of the indictment, cannot be presented to the jury in a coherent manner, and involve conduct that is more inflammatory than that actually charged in the indictment.  Moreover, the government intends to offer irrelevant and unfairly prejudicial evidence as to Dr. Maye's tax returns, as well as the way in which Dr. Maye used the money he earned from his employment during the time period of the indictment.   Such evidence can only be relevant to excite the prejudices of the jury against a "rich man" and persuade it that Dr. Maye is deserving of punishment.  These attempts to subvert Dr. Maye's right to a fair trial should be rejected.

And, to ensure that the jury has before it all of the evidence surrounding the conduct alleged in the indictment and relevant to Dr. Maye's good-faith defense, the Court should admit statements *made by* Dr. Maye to various entities and individuals about the legal and medical propriety of his medical practice, as well as statements *made to* Dr. Maye regarding the same.

Last, because the government seeks to have this Court take judicial notice of a New York statute and a DEA guidance document that support *its version* of the law during the time period of the indictment, the defense requests that the Court also take judicial notice of New York State judicial decisions holding that a legitimate physician-patient relationship can be established through a telephone call.  These decisions – which were decided prior to the time

**Memorandum of Law In Support of Defendant's**
**Motions in Limine, Filed November 16, 2012.**

period in the indictment -- are simply additional factors a jury can consider in determining

whether Dr. Maye issued prescriptions outside the course of legitimate medical practice.

**POINT I.     UNCHARGED CONDUCT RELATING TO ADDITIONAL**
**PRESCRIPTIONS ISSUED BY DR. MAYE SHOULD BE EXCLUDED**

The government has listed (on both its witness and exhibits lists) patients and

records relating to prescriptions *not* charged in the indictment and has expressly stated that it

intends to introduce a "summary chart" summarizing the various patient records and orders

found in Dr. Maye's six, four-drawer filing cabinets.[1]  Thus, the government intends to rely on

uncharged acts to support conviction.  This is improper.

Evidence of uncharged criminal conduct can be admitted under two doctrines.

First, it is admissible if it "arose out of the same transaction or series of transactions as the

charged offense, if it is inextricably intertwined with the evidence regarding the charged offense,

or if it is necessary to complete the story of the crime on trial."[2]  Alternatively, the conduct can

be admissible under Rule 404(b) if it is "proof of motive, opportunity, intent, preparation, plan,

knowledge, identity, or absence of mistake or accident."  But, under either doctrine, the

balancing test of Rule 403 applies, and the Second Circuit has expressed particular "concern

about the danger of unfair prejudice associated with the use of similar acts evidence."[3]  Evidence

---

[1]     *See e.g.,* Government's Witness List, Docket No. 162 ("Gov't Witness List), Nos. 22 to
28; Government's Exhibit List, Docket No. 164 ("Gov't Exhibit List"), Exhibit Nos. 175,
176, 182, 184; *see also* Government's Trial Memorandum, Docket No. 161 ("Gov't Trial
Mem.") at 7-8.

[2]     *United States v. Barret,* 2012 WL 171321 (E.D.N.Y. Jan. 20, 2012) (citations omitted);
*United States v. Fasciana,* 226 F. Supp. 2d 445, 455 (S.D.N.Y. 2002).

[3]     *See United States v. Colon,* 880 F.2d 650, 656 (2d Cir. 1989).

- 2 -

**Memorandum of Law In Support of Defendant's
Motions in Limine, Filed November 16, 2012.**

Case 1:08-cr-00194-WMS-JJM   Document 179-1   Filed 11/16/12   Page 8 of 20

is unfairly prejudicial "when it tends to have some adverse effect upon a defendant beyond

tending to prove the fact or issue that justified its admission into evidence," and unfair prejudice

may exist where the evidence sought to be admitted "unfairly excite[s] emotions against the

defendant."[4]

Both doctrines require a level of similarity between the uncharged and charged

acts for them to be admissible and, thus, neither apply here.[5]  The government has previously

requested that Dr. Maye's conduct be evaluated in the context of a national standard of care and,

as has been extensively briefed, during the time period referenced in the indictment, *there was no*

*federal law prohibiting the issuing of prescriptions for controlled substances in the absence of a*

*physical examination.*[6]  Thus, the government will have to prove that each prescription –

concededly issued without a physical examination– was improper.  This inquiry will involve a

---

[4]    *United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980).

[5]    *United States v. Forcelle*, 86 F.3d 838, 842 (8th Cir. 1996) (finding admission of
evidence regarding defendant's stealing of platinum entirely distinct from charges of mail
fraud based on his purchase of a house and a drag race challis and could not, therefore,
fall under "inextricably intertwined" exception); *Barret*, 2012 WL 171321, at *5
(admitting text messages under Rule 404(b) between defendant and coconspirator
evidencing marijuana trafficking activity after the charged conspiracy because they
showed defendant's intent and knowledge regarding the charged conspiracy; "the
incidents involved the same source of supply; used the same method of procurement; and
used the same method of payment for the marijuana."); *Fasciana*, 226 F. Supp. 2d at 458
(refusing to admit evidence that defendant defrauded another client under Rule 404(b)
where "the two incidents appear related only in the most general sense – alleged handling
of client funds in a manner inconsistent with the rights, instructions and/or expectations
of the client.  The details of the alleged mishandling are quite different, however. . . .").

[6]    *See* Transcript of Proceedings Held before Hon. William M. Skretny, April 24, 2012,
Docket No. 153 ("April 24 Transcript"), at 12 ("I will, however, permit defendant to
argue that there was no law in place at the time of his conduct that specifically
criminalized dispensing controlled substances without an in-person examination . . . .").

- 3 -

**Memorandum of Law In Support of Defendant's
Motions in Limine, Filed November 16, 2012.**

Case 1:08-cr-00194-WMS-JJM   Document 179-1   Filed 11/16/12   Page 9 of 20

consideration of multiple factors based on the individual circumstances of the patient, his or her interaction with Dr. Maye, and the type of prescription issued.[7] Thus, it cannot be said that the mere fact that the uncharged conduct may have involved prescriptions issued without a physical examination makes them "inextricably intertwined" with the charged prescriptions or probative of any of the permissible purposes under Rule 404(b). Simply, whether Dr. Maye improperly issued the uncharged prescriptions has nothing to do whether he improperly issued the charged prescriptions.[8]

Moreover, evidence of these uncharged acts is significantly prejudicial to Dr. Maye under Rule 403. First, because of the sheer number of prescriptions the government is attempting to present *via* its summary chart, the jury will be unable to evaluate each individual patient interaction to determine whether the prescription was appropriately issued. As a result, the jury may believe that the lack of a physical examination equates to *per se* illegality – a

---

[7] *See United States v. McIver*, 470 F.3d 550, 564 (4th Cir. 2006) (finding evidence sufficient to show that doctor prescribed substances outside the usual course of professional practice where evidence showed that doctor distributed large amounts of highly-addictive controlled substances, prescribed drugs to patients that he either knew or had reason to believe would not take them as directed, knew or suspected his patients of drug abuse, exercised minimal medical oversight of his patients' dosing practices, and ignored the drug-seeking behavior of patients); *see also* Gov't Response to PreTrial Motions, Docket No. 61, at 5 (stating, in context of defense's motion to dismiss the first indictment against Dr. Maye, that "the government intends to argue that beyond the lack of a physical examination in all cases, and the lack of medical records in some cases, the failure of the defendant to follow-up with patients to whom he distributed controlled substances, the failure to take a complete medical history, the unverified nature of the information entered by a customer into the online questionnaire, the fact that customers requested particular controlled substances, and perhaps other facts, all demonstrate the unlawfulness of the defendant's distribution of the controlled substances at issue.").

[8] *See United States v. Aboumoussallem*, 726 F.2d 906, 912 (2d Cir. 1984) (noting that whether co-conspirator duped a stranger into transporting drugs several months earlier does not have much probative force to show that he duped the defendant).

- 4 -

**Memorandum of Law In Support of Defendant's
Motions in Limine, Filed November 16, 2012.**

Case 1:08-cr-00194-WMS-JJM    Document 179-1    Filed 11/16/12    Page 10 of 20

legally incorrect determination.  And, with respect to the individual patients and related

documents the government is intending to present, at least some of the uncharged conduct

involves inflammatory circumstances – circumstances that are not, to the best of the defense's

belief, involved in the charged transactions.[9]  For example, a number of the government's

proposed witnesses have admitted to drug abuse and at least two had run-ins with law

enforcement in incidents involving drugs.[10]  The jury, upon hearing the testimony of these

witnesses and their tragic stories, may improperly conclude that Dr. Maye was responsible, or

should be punished, for these patients' unfortunate circumstances.[11]

**POINT II.    THE GOVERNMENT'S SUMMARY CHARTS SHOULD BE EXCLUDED
AS EXPERT TESTIMONY OR, ALL AGENTS WHO PERFORMED THE
ANALYSIS SHOULD BE CALLED AS WITNESSES**

The government notes that, during a search warrant executed at Dr. Maye's

house, six, four-drawer filing cabinets were seized.[12]  These cabinets contained patient records

and orders and were sent to the National Drug Intelligence Center ("NDIC") in Pennsylvania for

analysis.[13]  According to the government, "the records were analyzed by *a team of analysts and*

---

[9]    *See United States v. Al-Moayad*, 545 F.3d 139 (2d Cir. 2008) (noting that evidence
regarding a violent, destructive, and fatal suicide bombing was unfairly prejudicial in part
because it involved conduct more inflammatory than the charged crimes).

[10]    Declaration of Reetuparna Dutta, Esq., dated November 16, 2012 ("Dutta Decl.") at ¶¶ 6-
7.

[11]    *See United States v. Cooper*, 591 F.3d 582, 589 (7th Cir. 2010) (finding that evidence that
defendant's customers died after using heroin that they purchased from him should have
been excluded under Rule 403; "[e]vidence of what happened to [defendant's] customers
after they bought heroin from him had nothing to do with the charges in this case").

[12]    Gov't Trial Mem., at 7.

[13]    *Id.* at 7-8.

- 5 -

**Memorandum of Law In Support of Defendant's**
**Motions in Limine, Filed November 16, 2012.**

*research specialists*" and, as a result of this analysis, "charts were prepared summarizing the data obtained from the review of the order records."[14]  The government intends to introduce these charts through the testimony of Andrew Wirtel, the leader of the team that analyzed the records.[15]

As discussed above, the charts contain prescriptions outside of those referenced in the indictment and, thus, they constitute uncharged conduct, as well as unfairly prejudicial evidence.  But the charts (and the testimony of Wirtel) suffer from additional problems.  Specifically, Wirtel's testimony is impermissible expert testimony and, even if it is not considered to be such, Dr. Maye's Confrontation Clause rights require that the government call as witnesses *all agents* who participated in analyzing the data upon which the charts are based, not merely Wirtel.

Rule 701 provides that admissible lay testimony cannot include opinions based on scientific, technical, or other specialized knowledge within the scope of Rule 702.   The purpose of this rule is to ensure that expert testimony is subject to the reliability scrutiny under Rule 702 and to prevent against parties evading the pretrial disclosure requirements of Federal Rule of Criminal Procedure 16.[16]  Here, according to the government's own statements, the analysis of the records seized from Dr. Maye involved a "team of analysts and research specialists" and,

---

[14]     *Id.* at 8 (emphasis added).

[15]     *Id.*

[16]     *United States v. Garcia*, 413 F.3d 201, 215 (2d Cir. 2005) (citation omitted).

- 6 -

272

**Memorandum of Law In Support of Defendant's**
**Motions in Limine, Filed November 16, 2012.**

Case 1:08-cr-00194-WMS-JJM   Document 179-1   Filed 11/16/12   Page 12 of 20

thus, part of the foundation for Wirtel's testimony will involve the skill, education, training, or experience that he (and his team) brought to bear in this analysis.

The NDIC report itself demonstrates the specialized knowledge and skill, as well as the judgment and discretion, involved in this process. It describes the analysis as going beyond evidence of denials of orders to determine that patients obtained generic medications after initially being denied the brand name.[17] It notes that the agents analyzed information in a particular section of a prescription order to cull prior order data and add that to their findings.[18] It even contains an analysis of allegedly "questionable records" provided by patients to Dr. Maye.[19] In other words, Wirtel's testimony will "mak[e] sense" of the patient records by "clarify[ing] and link[ing] them together" through his reasoning process.[20] This constitutes expert testimony and is, therefore, barred for lack of compliance with the pre-trial notification procedures and, in any event, is subject to the Rule 702 reliability screening – an analysis that the government has failed to undertake.

Moreover, the summary charts were prepared by the government's investigatory agents in anticipation of trial and, thus, are testimonial such that Dr. Maye is entitled to be

---

[17]    Dutta Decl. ¶ 10.

[18]    *Id.* ¶ 11.

[19]    *Id.* ¶ 12.

[20]    *United States v. White*, 492 F.3d 380, 401-06 (6th Cir. 2007) ("An average lay person would be incapable of making sense of the various exhibits which the Fiscal Intermediary witnesses helped to clarify and link together on the basis of the 'reasoning process' employed daily in their highly specialized jobs."); *see also Garcia*, 413 F.3d at 215-17 (finding that DEA agent's testimony that, based on results of investigation, defendant was a "partner" in charged cocaine distribution conspiracy was expert opinion).

**Memorandum of Law In Support of Defendant's**
**Motions in Limine, Filed November 16, 2012.**

confronted with the agents who "made" the chart.[21]  While the government claims that summary

charts do not raise Confrontation Clause issues,[22] this argument is in conflict with Supreme

Court authority.[23]

More problematically, the government only intends to call the "supervising"

agent, Wirtel, to testify about the analysis of the records.  This is insufficient to protect Dr.

Maye's right to confrontation.  The summary charts purport to categorize six, four-drawer filing

cabinets worth of materials – a process fraught with human error.[24]  This process was also one

that involved judgment and analysis – as evidenced above – which Dr. Maye is entitled to probe.

Indeed, as the Supreme Court has noted, the Confrontation Clause is designed to "weed out not

only the fraudulent analyst, but the incompetent one as well."[25]  Thus, to properly safeguard Dr.

---

[21]  *See Bullcoming v. New Mexico,* -- U.S. --, 131 S. Ct. 2705 (2011).

[22]  Gov't Trial Mem., at 10.

[23]  *Bullcoming,* 131 S. Ct. at 2707 (2011) (holding that forensic laboratory report certifying that defendant's blood alcohol level was above the threshold for aggravated DWI was testimonial and testimony of scientist who did not sign the certification or perform or observe the test was insufficient; "[t]he accused's right is to be confronted with the analyst who made the certification"); *Melendez-Diaz v. Massachusetts,* 557 U.S. 305 (2009) (holding that admission into evidence of affidavits reporting the results of forensic analysis showing that material seized by the police and connected to the defendant was cocaine was improper; affidavits were testimonial).

[24]  *Bullcoming,* 131 S. Ct. at 2711 (noting that gas chromatograph process involves several steps and "human error can occur at each step").

[25]  *Melendez-Diaz,* 557 U.S. at 319.

- 8 -

**Memorandum of Law In Support of Defendant's**
**Motions in Limine, Filed November 16, 2012.**

Case 1:08-cr-00194-WMS-JJM   Document 179-1   Filed 11/16/12   Page 14 of 20

Maye's rights, the government must call each of the agents who participated in the creation of
the chart.[26]

**POINT III.    EVIDENCE REGARDING DR. MAYE'S TAX RETURNS AND THE**
**PROCEEDS OF HIS SALARY SHOULD BE EXCLUDED**

The government intends to introduce evidence as to the amount of money Dr.

Maye made through the practice of telemedicine, as well as the way in which he spent that

money.  Specifically, the government claims that Dr. Maye's federal tax returns are admissible

as evidence of his "motive" for engaging in the challenged conduct and that his characterization

of his employment as "Medical Product Sales" in his returns shows that he knew he was not

acting as a physician.[27]  Moreover, on its exhibit list, the government has included exhibits

showing that Dr. Maye had a Porsche and a Lexus.[28]  Both types of evidence are improper and

should be excluded.

First, with respect to the tax returns, the defense does not dispute that Dr. Maye

made money from working with telemedicine companies pursuant to which he issued the

prescriptions referenced in the indictment.  And, in fact, the defense will stipulate to the exact

sum that Dr. Maye made *via* the practice of telemedicine from 2004 to 2006, the time period of

---

[26]    *See United States v. Boyd*, 686 F. Supp. 2d 382, 384 *aff'd* 401 Fed. Appx. 565 (2d Cir.
2010) ("If . . . a technician's role at any stage involves a material exercise of judgment or
analysis, then a defendant's inability to cross-examine the witness on the results obtained
from that exercise may rise to an injury of constitutional magnitude."); *see also Comm'w.
v. Barton-Martin*, 2010 PA Super 163, 5 A.3d 363, 365 (2010) (finding that testimony of
lab supervisor who supervised, but did not participate, in testing of blood sample, was
insufficient to admit the test result).

[27]    Gov't Trial Mem., at 18.

[28]    Gov't Exhibit List, Exhibits 20, 21.

**Memorandum of Law In Support of Defendant's
Motions in Limine, Filed November 16, 2012.**

Case 1:08-cr-00194-WMS-JJM   Document 179-1   Filed 11/16/12   Page 15 of 20

the indictment, thus allowing the government to argue that the money was his motive.  But the

fact that Dr. Maye's tax returns categorized his employment in a specific manner is simply

irrelevant.  Dr. Maye is not an accountant and has no special knowledge regarding the tax code

or appropriate categorizations for different types of employment.  Nor is there any basis to

suggest that he even considered the specific categorization in any detail.[29]  In fact, as the

government recognizes, Dr. Maye used an accountant – Joe Nacca – for the purpose of helping

him with his returns.[30]  Thus, the characterization of his employment has no probative value as to

Dr. Maye's "consciousness of guilt" and should be excluded as irrelevant and unfairly

prejudicial, particularly in light of the defense's offer to stipulate.[31]

       Second, as to evidence relating to the manner in which Dr. Maye spent his money,

this evidence can only be used by the government to prejudice the jury against Dr. Maye because

he was a "rich man."[32]  In light of the defense's stipulation, any evidence as to how Dr. Maye

---

[29]    *See United States v. Trala,* 386 F.3d 536 (3d Cir. 2004) (finding that statements of
accomplice were not reliable evidence of "consciousness of guilt" based on defendant's
failure to correct the statement because there was no evidence that the defendant heard
the statements in the first instance), *vacated on other grounds,* 546 U.S. 1086 (2006).

[30]    Gov't Witness List, No. 14.

[31]    *Al-Moayad,* 545 F.3d at 161 (finding, in prosecution of defendants for conspiring and
attempting to provide support to terrorist organizations, that testimony about specific
bombing by Hamas was improper as defendants never denied knowing about Hamas's
involvement in violent acts and both offered to stipulate as to that knowledge; decrying
evidence as a "blatant appeal to the jury's emotions and prejudices").

[32]    *Bodeans Cone Co., LLC v. Norse Dairy Sys., LLC,* 678 F. Supp. 2d 883, 899 (N.D. Iowa
2009) (refusing to admit evidence that plaintiff's principal received disbursements from
the company enabling him to buy a $2.5 million vacation home; probative value of
evidence was substantially outweighed "by the potential prejudice arising from the
possibility that jurors will decide this case on the improper basis that they do not like

- 10 -

**Memorandum of Law In Support of Defendant's
Motions in Limine, Filed November 16, 2012.**

Case 1:08-cr-00194-WMS-JJM   Document 179-1   Filed 11/16/12   Page 16 of 20

spent his money (including the purchase of a Porsche, Lexus, or any other "luxury items")

should be excluded.[33]

**POINT IV.   STATEMENTS MADE BY AND TO DR. MAYE CONCERNING THE
LEGAL AND MEDICAL PROPRIETY OF HIS MEDICAL PRACTICE
ARE ADMISSIBLE[34]**

In passing the Controlled Substances Act ("CSA"), Congress intended to "confine

authorized medical practice within accepted limits" such that physicians who went beyond "the

bounds of professional practice" were subject to criminal penalties.[35] But, a criminal prosecution

against a doctor for a violation of the CSA is distinct from a civil malpractice claim, as a doctor

charged with illegally distributing a controlled substance can raise a good-faith defense that the

government must disprove beyond a reasonable doubt.[36] This defense requires that a jury be

informed that a drug has been legally dispensed *if the doctor had an objectively reasonable*

---

what [plaintiff's principal] does with his money or do not like apparently 'rich' people,
with vacation homes, complaining about losing money.") (citation omitted).

[33]   In connection with this request, the defense would like the jury to receive a redacted
indictment, with references to the Porsche and Lexus redacted. If the jury returns a guilty
verdict, the issue of forfeiture can then be reached. *See* Fed. Rul. Crim. Proc. 32.2.

[34]   The defense made a similar argument in response to the Government's request for pre-
trial notice of the defense's reliance on "authorization by the OPMC" or an advice-of-
counsel defense. *See* Memorandum of Law in Opposition to the Government's Motion in
Limine, Docket No. 138, at 3-5. This Court denied the Government's request for pre-
trial notice and indicated that it would allow the defense to argue that Dr. Maye's conduct
was authorized by the OPMC. *See* April 24 Transcript, at 8-10. In the interests of
clarity, the defense seeks a ruling on statements regarding the propriety of Dr. Maye's
conduct in general.

[35]   *United States v. Moore*, 423 U.S. 122, 141-42 (1975).

[36]   *United States v. Wexler*, 522 F.3d 194, 205-06 (2008).

**Memorandum of Law In Support of Defendant's**
**Motions in Limine, Filed November 16, 2012.**

*good-faith belief that the prescription was for a legitimate medical purpose and consistent with the usual course of generally accepted medical practice.*[37]

Evidence that Dr. Maye notified various individuals or regulatory entities about his medical conduct, sought advice relating to its legal and medical propriety, or was given indications that his conduct was appropriate is relevant to show his good faith and to show that his good faith was objectively reasonable. Specifically, these types of statements show that, by seeking out and following advice, Dr. Maye did not intend to act as a "pusher" of drugs. Instead, he acted responsibly and conservatively by consulting with and receiving advice from the proper authorities regarding the appropriate scope of his conduct.[38]

In addition to being relevant, the statements are also admissible under the state of mind exception to the hearsay rule. Specifically, these statements are being offered for two purposes: to show that Dr. Maye actually believed that his conduct was within the legitimate scope of medical practice and to show that that this belief was reasonable. For both of these purposes, the statements are admissible under Rule 803(3) of the Federal Rules of Evidence, which provides an exception from the hearsay prohibition for "[a] statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health . . . .". Courts have admitted statements

---

[37]   *Id.* at 205 (quotation omitted); *United States v. Hurwitz*, 459 F.3d 463, 475 (4th Cir. 2006) (vacating conviction where district court did not allow jury to consider good faith as a defense to section 841 charges against a physician).

[38]   *See Wexler*, 522 F.3d at 206 (noting that, it is only when a doctor acts outside the proper realm of medical practice that he becomes a "drug pusher" rather than a medical professional) (citation omitted).

- 12 -

**Memorandum of Law In Support of Defendant's
Motions in Limine, Filed November 16, 2012.**

under this exception to show the declarant's (or the hearer's) belief as to the propriety of specific conduct[39] and, thus, any such statements fall squarely within the exception and should be admitted for these purposes.

**POINT V.    THIS COURT SHOULD TAKE JUDICIAL NOTICE OF NEW YORK
DECISIONS FINDING THAT A PHYSICIAN-PATIENT RELATIONSHIP
CAN BE ESTABLISHED BY A PHONE CALL**

The Second Circuit has held that "[a] court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings."[40] Thus, a court can take judicial notice of another court's order for the limited purpose of recognizing the "judicial act" that the order represents.[41]

---

[39]    *See United States v. Newell*, 315 F.3d 510, 522 (5th Cir. 2002) (finding that notes of defendant's accountant, after meeting with defendant, expressing accountant's concern about improper billing were admissible under Rule 803(3) because they proved the accountant's state of mind when she confronted defendant about the billings); *United States v. DiMaria*, 727 F.2d 265, 271 (2d Cir. 1984) (holding, in the context of a prosecution for possessing stolen or contraband cigarettes, that defendant said, when confronted by FBI Agents, that he was only there to buy cheap cigarettes was admissible because statement was not offered to prove that the cigarettes weren't stolen, but only to show that defendant did not think they were); *United States v. Partyka*, 561 F.2d 118, 125 (8th Cir. 1977) (finding that defendant's wife's testimony as to conversation between defendant and informant regarding defendant's unwillingness to engage in illegal transaction was improperly excluded and should have been admitted under Rule 803(3)).

[40]    *Liberty Mutual Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir. 1992) (quotation omitted); *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).

[41]    *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994).

- 13 -

**Memorandum of Law In Support of Defendant's
Motions in Limine, Filed November 16, 2012.**

Case 1:08-cr-00194-WMS-JJM   Document 179-1   Filed 11/16/12   Page 19 of 20

Here, there are a number of decisions from New York State courts holding that a physician-patient relationship can be established by a telephone call.[42] The government has asked that the court take judicial notice of a New York statute relating appropriate medical practice in New York, as well as a DEA guidance document.[43] The jury should also, therefore, be entitled to consider these judicial opinions as part of the mix in determining whether Dr. Maye acted outside the course of legitimate medical practice.

**POINT VI.    THE DEFENSE REITERATES ITS MOTION TO EXCLUDE EVIDENCE OF THE TRAGIC LIFE EVENTS OF DR. MAYE'S FORMER PATIENTS**

The defense previously moved to exclude evidence of the tragic life-events of individuals to whom Dr. Maye issued prescriptions on the basis that this type of evidence is unfairly prejudicial and irrelevant. The Court reserved decision on this issue.[44] Because of serious concerns with the evidence and witnesses the government intends to present, as described above, the defense respectfully requests that the Court address this issue before trial.

---

[42]    *See Cogswell v. Chapman,* 249 A.D.2d 865, 672 N.Y.S.2d 460 (3d Dep't 1998) ("Further, a doctor-patient relationship can be established by a telephone call . . . when such a call 'affirmatively advis[es] a prospective patient as to a course of treatment' and it is foreseeable that the patient would rely on the advice.") (citations omitted); *Miller v. Sullivan,* 214 A.D.2d 822, 625 N.Y.S.2d 102 (3d Dep't 1995) ("A telephone call affirmatively advising a prospective patient as to a course of treatment can constitute professional service for the purpose of creating a physician-patient relationship only when the advice, if incorrect, would be actionable.") (citations omitted); *Bienz v. Central Suffolk Hosp.,* 163 A.D.2d 269, 557 N.Y.S.2d 139 (2d Dep't 1990) (finding that whether physician's giving of advice furnished a basis on which to conclude that a physician patient relationship had arisen is a question of fact).

[43]    Gov't Trial Mem., at 16.

[44]    *See* April 24 Transcript, at 4-5.

- 14 -

280

**Memorandum of Law In Support of Defendant's
Motions in Limine, Filed November 16, 2012.**

## CONCLUSION

This Court should prevent the government from prejudicing the jury through the presentation of uncharged prescriptions, summary charts, tax returns, and any "luxury" items purchased by Dr. Maye.  And, to properly allow Dr. Maye to present evidence of his good faith and legitimate medical practice to the jury, the Court should allow the admission of statements made by and to Dr. Maye supporting his belief that his medical practice was legally and medically appropriate and should also take judicial notice of New York State cases finding that a physician-patient relationship to be established through a phone call.

Dated:        Buffalo New York
              November 16, 2012


                          **HODGSON RUSS** LLP
                          *Attorneys for John E. Maye, M.D.*

                   By:    s/Reetuparna Dutta
                          Daniel C. Oliverio,
                          Michelle L. Merola, and
                          Reetuparna Dutta, of counsel
                   The Guaranty Building
                   140 Pearl Street, Suite 100
                   Buffalo, New York 14202
                   (716) 856-4000
                   *doliveri@hodgsonruss.com*
                   *mmerola@hodgsonruss.com*
                   *rdutta@hodgsonruss.com*